## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MEIJER, INC. and MEIJER DISTRIBUTION, INC.,** on behalf of themselves and all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**WARNER CHILCOTT HOLDINGS COMPANY III, LTD.; WARNER CHILCOTT CORPORATION; WARNER CHILCOTT (US) INC.; GALEN (CHEMICALS), LTD.; and BARR PHARMACEUTICALS, INC.,**<br><br>**Defendants.** | **Civil Action No. 1:05-cv-02195-CKK**<br><br>**Judge Colleen Kollar-Kotelly**<br><br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT WARNER CHILCOTT'S
## ANSWER TO CLASS ACTION COMPLAINT

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Galen (Chemicals), Ltd. (collectively, "Warner Chilcott") answer the allegations of Meijer, Inc. and Meijer Distribution, Inc. ("Plaintiffs" or "Meijer") in its Class Action Complaint ("Complaint") as follows:

## PLAINTIFFS' ALLEGATION

1.      This case concerns a horizontal agreement between Warner Chilcott and Barr (collectively, "Defendants") not to compete in the sales of Ovcon 35 ("Ovcon"), an oral contraceptive product used to prevent pregnancy, and its AB-rated generic equivalents. As a result of this restraint of trade, Plaintiffs and the class of purchasers defined below have paid supracompetitive prices for Ovcon.

**ANSWER**

Warner Chilcott states that Paragraph 1 of the Complaint is a description of

Plaintiffs' claims to which no response is required.  To the extent a response is required, Warner

Chilcott denies the allegations contained in Paragraph 1 of the Complaint, except admits that

Ovcon is an oral contraceptive product.

**PLAINTIFFS' ALLEGATION**

2.    Warner Chilcott is a pharmaceutical company that develops, manufactures, and
markets proprietary women's healthcare and dermatology prescription pharmaceutical products.
Warner Chilcott sells Ovcon, a proprietary prescription pharmaceutical product that contains
norethindrone and ethinyl estradiol as its active pharmaceutical ingredients. Warner Chilcott is
the exclusive marketer of Ovcon, pursuant to an agreement with Bristol-Myers Squibb Company.

**ANSWER**

Warner Chilcott admits the allegations contained in the first two sentences of

Paragraph 2 of the Complaint.  Warner Chilcott denies each and every allegation contained in the

third sentence of Paragraph 2 of the Complaint.

**PLAINTIFFS' ALLEGATION**

3.    Barr is a pharmaceutical company that develops, manufactures, and markets
generic and proprietary prescription pharmaceutical products. Barr is the only company approved
by the United States Food and Drug Administration ("FDA") to sell a generic version of Ovcon
in competition with Warner Chilcott's branded Ovcon.

**ANSWER**

Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 3 of the Complaint.  Warner Chilcott denies knowledge or information sufficient to

form a belief as to the truth of each and every allegation contained in the second sentence of

Paragraph 3 of the Complaint.

**PLAINTIFFS' ALLEGATION**

4.     On or about March 24, 2004, Warner Chilcott and Barr entered into an Option and License Agreement (the "Agreement") not to compete in the sale of brand and generic Ovcon in the United States. Warner Chilcott exercised that option on May 6, 2004.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 4 of the Complaint, except admits that on or about March 24, 2004, Warner Chilcott and Barr entered into an option and license agreement, and further admits that Warner Chilcott exercised that option on May 6, 2004.  Warner Chilcott respectfully refers the Court to the agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

5.     Prior to the Defendants' Agreement, Barr planned to compete with Warner Chilcott by selling Barr's lower-priced generic Ovcon once Barr received FDA approval. Both Warner Chilcott and Barr predicted that entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's higher-priced branded Ovcon sales, by capturing approximately 50% of Ovcon's business in the first year alone.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint, except denies that Warner Chilcott predicted that a Barr generic would reduce Warner Chilcott's Ovcon sales by capturing approximately 50% of the Ovcon business in the first year alone.

**PLAINTIFFS' ALLEGATION**

6.     Barr was ready to come to market by the end of 2003 with a cheaper generic version of Ovcon and received FDA approval to do so in April, 2004.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 6 of the Complaint.

**PLAINTIFFS' ALLEGATION**

7.      To forestall Barr's competitive threat and to protect its Ovcon sales, Warner Chilcott paid Barr $20 million, pursuant to the Agreement, in exchange for Barr's agreement to refrain from selling generic Ovcon in the United States for five years.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 7 of the Complaint.

**PLAINTIFFS' ALLEGATION**

8.      The Agreement denied Plaintiffs and other purchasers of Ovcon the benefits of competition and of cheaper generic versions of Ovcon. Defendants' conduct, thus, led to supracompetitive prices for Ovcon, causing antitrust injury to its purchasers.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 8 of the Complaint.

**PLAINTIFFS' ALLEGATION**

9.      This action is brought under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover threefold damages and the costs of suit, including reasonable attorneys' fees, for injuries to Plaintiffs and members of the class in the form of overcharges resulting from Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged herein.

**ANSWER**

Paragraph 9 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 9 of the Complaint, and further denies that Plaintiffs are entitled to any relief whatsoever.

**PLAINTIFFS' ALLEGATION**

10.    This Court has jurisdiction over the subject matter of this civil action pursuant to 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337.

**ANSWER**

Paragraph 10 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 10 of the Complaint.

**PLAINTIFFS' ALLEGATION**

11.    Venue is proper in this District under 15 U.S.C. §§ 15, 22, and 26 and under 28 U.S.C. §§ 1391, because: (1) Warner Chilcott and Barr transact business and are found within this District; and (2) a substantial portion of the affected trade and commerce described below has been carried out in this District.

**ANSWER**

Paragraph 11 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint, except admits that Ovcon is sold in the District of Columbia.

**PLAINTIFFS' ALLEGATION**

12.    Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (collectively, "Meijer" or "Plaintiffs") are corporations organized under the laws of Michigan, with their principal places of business in Grand Rapids, Michigan. During the period of time covered by this Complaint, Plaintiffs purchased Ovcon directly from one or more of the named Defendants and suffered antitrust injury as a result of Defendants' anticompetitive conduct.

**ANSWER**

Paragraph 12 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 12 of the Complaint, and denies each and every allegation contained in the second sentence of Paragraph 12 of the Complaint.

**PLAINTIFFS' ALLEGATION**

13.     Defendant Warner Chilcott Holdings Company III, Ltd., is a privately-owned, for-profit enterprise organized under the laws of Bermuda, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products, including Ovcon, in the United States.

**ANSWER**

Warner Chilcott denies the allegations contained in the first sentence of Paragraph 13 of the Complaint, except admits that Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit enterprise organized, existing, and doing business under and by virtue of the laws of Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM12 Bermuda. Warner Chilcott denies the allegations contained in the second sentence of Paragraph 13 of the Complaint, except admits that subsidiaries of Warner Chilcott Holdings Company III, Ltd. are engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products, including Ovcon, in the United States.

**PLAINTIFFS' ALLEGATION**

14.     Defendant Warner Chilcott Corporation is a for-profit Delaware corporation with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-

2129. Warner Chilcott Corporation is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc.

**ANSWER**

   Warner Chilcott admits the allegations contained in Paragraph 14 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

   15.  Defendant Warner Chilcott (US), Inc., is a for-profit Delaware corporation with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Defendant Warner Chilcott (US), Inc., is a direct wholly-owned subsidiary of Defendant Warner Chilcott Corporation.

**ANSWER**

   Warner Chilcott admits the allegations contained in Paragraph 15 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

   16.  Defendant Galen (Chemicals) Limited ("Galen") is a for-profit enterprise organized under the laws of the Republic of Ireland. Galen is owned or controlled by Warner Chilcott Holdings Company III, Ltd. Galen is the entity that executed the Agreement with Barr.

**ANSWER**

   Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 16 of the Complaint.  Warner Chilcott denies the remaining allegations contained in

Paragraph 16 of the Complaint, except admits that Galen (Chemicals) Limited executed an

option agreement with Barr on March 24, 2004.  Warner Chilcott respectfully refers the Court to

the agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

17.    Unless otherwise specified, Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US), Inc., and Galen (Chemicals) Limited are referred to herein collectively as "Warner Chilcott." Warner Chilcott develops, manufactures, and markets proprietary women's healthcare and dermatology prescription pharmaceutical products. For the fiscal quarter ending March 31, 2005, Warner Chilcott Holdings Company III, Ltd. reported net revenue of approximately $133.7 million. During that period, sales of Ovcon increased 30.8% to approximately $22,900,000 for the quarter. During the twelve month period ending September 30, 2004, Warner Chilcott's gross profit margin on product net sales was approximately 89%.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 17 of the Complaint, except admits that Warner Chilcott develops, manufactures, and markets proprietary women's healthcare and dermatology prescription pharmaceutical products. Warner Chilcott further admits that its net unaudited revenue for the fiscal quarter ending March 31, 2005 was approximately $133.7 million, and that Warner Chilcott's gross margin on product net sales was approximately 89% in the twelve months ending September 30, 2004.

**PLAINTIFFS' ALLEGATION**

18.    Defendant Barr Pharmaceuticals, Inc. ("Barr") is a Delaware corporation with a principal place of business at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519. Barr Laboratories, Inc. is a wholly-owned subsidiary of Barr Pharmaceuticals, Inc. Barr develops, manufactures, and markets generic and proprietary prescription pharmaceutical products. In the twelve months ending June 30, 2004, Barr had net revenues of approximately $349 million and net income of approximately $123 million.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 18 of the Complaint.

**PLAINTIFFS' ALLEGATION**

19.    During the relevant period, Ovcon was sold throughout the United States. Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state and national lines. Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

**ANSWER**

Paragraph 19 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint, except admits that Ovcon is sold in the United States. Warner Chilcott further denies it has engaged in any unlawful activity.

**PLAINTIFFS' ALLEGATION**

20.    Defendants employed, in furtherance of their unlawful conduct, the United States mails and interstate and international telephone lines, as well as means of interstate and international travel.

**ANSWER**

Paragraph 20 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation in Paragraph 20 of the Complaint.

**PLAINTIFFS' ALLEGATION**

21.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act"), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs, while maintaining incentives for pharmaceutical companies to invest in developing new drugs.

**ANSWER**

Paragraph 21 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint, except admits that the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), 21 U.S.C. § 355(j) (2005), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, 35 U.S.C. § 271(e) (2005), have procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFFS' ALLEGATION**

22.    A drug manufacturer must obtain approval from the U.S. Food and Drug Administration ("FDA") before the manufacturer may lawfully introduce a new drug in the United States.

**ANSWER**

Paragraph 22 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFFS' ALLEGATION**

23.    To have one of its new drugs considered for approval, a manufacturer must file a New Drug Application ("NDA") with the FDA. The NDA must contain information demonstrating that the drug is safe and effective for its intended use. 21 U.S.C. § 355(b) (2005).

**ANSWER**

Paragraph 23 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFFS' ALLEGATION**

24.    A drug that is approved through the NDA process may be listed by the FDA as a "Reference Listed Drug" in an FDA publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly referred to as the "Orange Book."

**ANSWER**

Paragraph 24 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott admits that a pharmaceutical may be listed in the "Orange Book."

**PLAINTIFFS' ALLEGATION**

25.    An "AB-rated" generic drug is one that the FDA has determined to be bioequivalent to its corresponding Reference Listed Drug. A generic drug contains the same active pharmaceutical ingredient(s) (or contains the same therapeutic moiety, but may be a different salt, ester, or complex of that moiety) as the corresponding Reference Listed Drug, but may contain other ingredients (such as colors and flavors) that are different. A generic drug is comparable to a Reference Listed Drug in dosage form, strength, route of administration, quality, performance characteristics, and intended use. 21 U.S.C. § 355(j)(8)(B) (2005).

**ANSWER**

Paragraph 25 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott admits that the Hatch-Waxman Act has provisions concerning generic pharmaceuticals, but denies that the Hatch-Waxman Act is applicable to this case.

**PLAINTIFFS' ALLEGATION**

26.    The Hatch-Waxman Act established a procedure that has often allowed generic drugs to enter the market earlier than had been possible in the past. The resulting competition benefits purchasers of drugs by leading to cheaper prices.

**ANSWER**

Paragraph 26 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies the allegations contained in Paragraph 26 of the Complaint, except admits that the Hatch-Waxman Act has provisions concerning generic pharmaceuticals. Warner Chilcott further denies that the Hatch-Waxman Act is applicable to this case.

**PLAINTIFFS' ALLEGATION**

27.    The Hatch-Waxman Act allows a company to seek FDA approval to market a generic version of a Reference Listed Drug by filing an Abbreviated New Drug Application ("ANDA"). 21 U.S.C. § 355(j) (2005). An ANDA is generally not required to include preclinical (animal) and clinical (human) data to establish safety and effectiveness.

**ANSWER**

Paragraph 27 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the Hatch-Waxman Act has provisions concerning generic pharmaceuticals.

**PLAINTIFFS' ALLEGATION**

28.    Because the FDA has already determined that a Reference Listed Drug is safe and effective for use, an ANDA filer may rely on the safety and efficacy data previously provided for a specific Reference Listed Drug, so long as the ANDA filer sufficiently demonstrates to the FDA that its generic drug is bioequivalent to the Reference Listed Drug.

**ANSWER**

Paragraph 28 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint, except admits that the FDA has procedures concerning generic pharmaceuticals.

-12-

**PLAINTIFFS' ALLEGATION**

29.    Generic drugs invariably cost substantially less than the branded drugs to which they are bioequivalent. Typically, the first generic version of a brand name drug is sold at a substantial discount to the brand, followed by increasingly steeper discounts as more generics enter the market.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 29 of the Complaint.

**PLAINTIFFS' ALLEGATION**

30.    Generic drugs, after their introduction, promptly capture a significant share of their branded counterparts' sales, causing a significant reduction of the branded drug's unit and dollar sales.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 30 of the Complaint.

**PLAINTIFFS' ALLEGATION**

31.    Competition from generic drugs generates large savings on purchases of pharmaceutical products. A 1998 Congressional Budget Office Report estimates that in 1994 alone, consumers saved $8-10 billion on prescriptions at retail pharmacies by purchasing generic drugs instead of their equivalent brand name drugs.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 31 of the Complaint, except denies that the Congressional Budget Office Report referenced in Paragraph 31 of the Complaint is applicable to this case.

**PLAINTIFFS' ALLEGATION**

32.    Ovcon has been available to the general public as a prescription pharmaceutical product since approximately 1976. It is not subject to patent protection.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 32 of the Complaint, except admits that Ovcon was approved by the FDA in approximately 1976.  Warner Chilcott admits the allegations contained in the second sentence of Paragraph 32 of the Complaint.

**PLAINTIFFS' ALLEGATION**

33.    Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS") manufactured, distributed, and marketed Ovcon in the United States.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint, except denies that Bristol-Myers Squibb Company ("BMS") was the only company marketing Ovcon in the United States prior to January 26, 2000.

**PLAINTIFFS' ALLEGATION**

34.    On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title, and interest in Ovcon products. Warner Chilcott entered into a supply agreement with Bristol Myers-Squibb Laboratories Company ("BMSLC"), a wholly owned subsidiary of BMS. The supply agreement states the terms and conditions associated with the supply of Ovcon product by BMSLC to Warner Chilcott.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint, except admits that on

January 26, 2000 Warner Chilcott purchased from BMS certain rights, title, and interest in

Ovcon products.  Warner Chilcott further admits that it entered into a supply agreement with

BMSLC, and that the supply agreement states the terms and conditions associated with the

supply of Ovcon product from BMSLC to Warner Chilcott.  Warner Chilcott respectfully refers

the Court to the supply agreement for the terms thereof.


**PLAINTIFFS' ALLEGATION**

35.    Warner Chilcott then began marketing Ovcon manufactured by BMSLC and
continues to be the exclusive marketer of Ovcon at the present time.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 35 of the Complaint, except admits that

Warner Chilcott marketed Ovcon after entering into the agreement with BMSLC.


**PLAINTIFFS' ALLEGATION**

36.    Warner Chilcott's sales of Ovcon have continued to increase. Ovcon's net sales
have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 36 of the

Complaint, except admits that Warner Chilcott's sales of Ovcon have increased since it

purchased the product, and further admits that the price of Ovcon has risen.


**PLAINTIFFS' ALLEGATION**

37.    Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing
products, and Ovcon is highly profitable. For the twelve months ending September 30, 2004,
Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

**ANSWER**

Warner Chilcott denies the allegations contained in the first sentence of Paragraph 37 of the Complaint, except admits that Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products, and further admits that Warner Chilcott earns a profit on Ovcon. Warner Chilcott admits the allegations contained in the second sentence of Paragraph 37 of the Complaint.

**PLAINTIFFS' ALLEGATION**

38.    In September of 2001, Barr filed ANDAs with the FDA for approval to market AB-rated generic versions of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 38 of the Complaint.

**PLAINTIFFS' ALLEGATION**

39.    In January of 2003, Barr publicly announced its intention to launch a generic version of Ovcon by the end of 2003.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 39 of the Complaint.

**PLAINTIFFS' ALLEGATION**

40.    Barr planned to offer its generic version of Ovcon for sale at a price approximately 30% less than the price charged by Warner Chilcott.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 40 of the Complaint.

**PLAINTIFFS' ALLEGATION**

41.    Barr projected that its generic Ovcon would capture approximately 50% of
Warner Chilcott's branded Ovcon sales within the first year of introduction.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 41 of the Complaint.

**PLAINTIFFS' ALLEGATION**

42.    Warner Chilcott expected that Barr would price its generic Ovcon at
approximately 30% less than the price Warner Chilcott charges for branded Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 42 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

43.    Warner Chilcott projected that generic Ovcon would capture at least 50% of
Ovcon's new prescriptions within the first year of introduction. Warner Chilcott calculated that,
as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would
decline by at least $100 million over a three year period.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 43 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

44.     Warner Chilcott's first attempt to combat the threat posed by the entry of a generic version of Ovcon was the development of a line extension to Ovcon. Specifically, its strategy was to replace Ovcon with a chewable form of Ovcon prior to the generic entry of Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 44 of the Complaint, except admits that Warner Chilcott has developed a new, innovative, patented product, Ovcon Chewable.

**PLAINTIFFS' ALLEGATION**

45.     Warner Chilcott planned to convert its Ovcon customers to Ovcon Chewable and to stop selling Ovcon. Warner Chilcott planned to engage in various practices that would ultimately result in the replacement of prescriptions for (and supply of) non-chewable Ovcon with chewable Ovcon, despite the fact that the change to a chewable form of Ovcon brought no benefit to patients or purchasers of the drug but was only sought by Warner Chilcott to preserve its monopoly profits on Ovcon. Prescriptions for Ovcon Chewable would not be able to be filled at pharmacies with a generic Ovcon product (absent express approval of the patient's physician) because any generic version of Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER**

Warner Chilcott denies the allegations contained in the first two sentences of Paragraph 45 of the Complaint, and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in third sentence of Paragraph 45 of the Complaint.

**PLAINTIFFS' ALLEGATION**

46.     By mid-2003, however, Warner Chilcott's "switch" strategy to protect its Ovcon revenues was in jeopardy. Barr's generic Ovcon entry appeared imminent, and Ovcon Chewable had not obtained FDA approval.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 46 of the

Complaint, except admits that Ovcon Chewable obtained FDA approval in November 2003.

**PLAINTIFFS' ALLEGATION**

47.    In May of 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 47 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

48.    By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 48 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

49.    In August of 2003, Warner Chilcott and Barr engaged in discussions regarding an arrangement by which Barr would refrain from selling its generic Ovcon product in the United States.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 49 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

50.    On September 10, 2003, Warner Chilcott and Barr signed a letter of intent to enter into an agreement that gave Warner Chilcott the exclusive option to market all products produced pursuant to Barr's ANDAs for generic versions of Ovcon. Pursuant to the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon product when Barr received final FDA approval.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 50 of the

Complaint, except admits that on September 10, 2003, Warner Chilcott and Barr executed a

letter of intent.  Warner Chilcott respectfully refers the Court to the letter of intent for the terms

thereof.

**PLAINTIFFS' ALLEGATION**

51.    On March 24, 2004, Defendants signed the Agreement, as contemplated by their letter of intent, and Warner Chilcott paid Barr $1,000,000.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 51 of the

Complaint, except admits that Warner Chilcott and Barr entered into an option agreement on

March 24, 2004, and further admits that Warner Chilcott paid Barr $1,000,000 in consideration

for the option.  Warner Chilcott respectfully refers the Court to the option agreement for the

terms thereof.

**PLAINTIFFS' ALLEGATION**

52.    Under the Agreement, within 45 days after FDA approval of Barr's Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a licensee for five years.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 52 of the Complaint, except admits that it entered into an option agreement with Barr. Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

53.    On April 22, 2004, the FDA approved Barr's ANDAs to produce and market generic Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 53 of the Complaint.

**PLAINTIFFS' ALLEGATION**

54.    On April 23, 2004, Barr publicly announced its intention to begin marketing its generic version of Ovcon in the event that Warner Chilcott chose not to exercise its option under the Agreement.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 51 of the Complaint, except admits that Barr publicly contemplated marketing a generic Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties associated with making generic Ovcon commercially available.

**PLAINTIFFS' ALLEGATION**

55.    On May 6, 2004, Warner Chilcott exercised its option under the Agreement. Pursuant to the terms of the Agreement, Warner Chilcott paid Barr $19,000,000 in exchange for Barr's promise not to compete with Warner Chilcott by introducing a generic version of Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 55 of the

Complaint, except admits that on May 6, 2004 Warner Chilcott exercised the option, and further

admits that Warner Chilcott paid Barr $19,000,000 upon the exercise of the option. Warner

Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

56.    As a consequence of the anticompetitive Agreement, no generic version of Ovcon
was ever launched, and Barr has agreed not to launch a generic version of Ovcon until at least
May, 2009.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 56 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

57.    In the absence of the anticompetitive Agreement, Barr would have begun
marketing its product shortly after obtaining FDA approval.

**ANSWER**

Warner Chilcott denies knowledge and information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 57 of the Complaint, except denies that Barr

had the capability to market a generic Ovcon shortly after obtaining FDA approval.

**PLAINTIFFS' ALLEGATION**

58.    In the absence of the competitive threat that Barr would have provided in a free
marketplace, purchasers of Ovcon were required to continue purchasing the brand-name Ovcon
product when a less expensive generic version would have otherwise been available.

**ANSWER**

   Warner Chilcott denies each and every allegation contained in Paragraph 58 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

  59. If Barr had introduced its generic product into the market, the prices paid by purchasers for Ovcon products would have decreased rapidly and substantially.

**ANSWER**

   Warner Chilcott denies each and every allegation contained in Paragraph 59 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

  60. Barr has abided by its agreement not to sell generic Ovcon in the United States. No company, other than Barr, has received FDA approval for a generic version of Ovcon.

**ANSWER**

   Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 60 of the Complaint.


**PLAINTIFFS' ALLEGATION**

  61. The Agreement between Warner Chilcott and Barr destroyed the competition that is intrinsic to our market-based economy.

**ANSWER**

   Warner Chilcott denies each and every allegation contained in Paragraph 61 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

62.     Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following class:

> All persons and entities in the United States who purchased Ovcon directly from Defendants or their subsidiaries at any time from April 22, 2004 through the present and continuing until the effects of Defendants' anticompetitive conduct have ceased (the "Class Period"). Excluded from the class are Defendants, their parents, employees, subsidiaries and affiliates, and all government entities (the "Class").

**ANSWER**

Paragraph 62 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies that it engaged in anticompetitive conduct, and further denies that Plaintiffs are entitled to any relief whatsoever. Warner Chilcott further denies that this suit can be litigated as class action under Federal Rule of Civil Procedure 23(b)(3) or any other rule.

**PLAINTIFFS' ALLEGATION**

63.     The Class is so numerous that joinder of all members is impracticable. Plaintiffs believe that the Class numbers one hundred or more.

**ANSWER**

Paragraph 63 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 63 of the Complaint.

**PLAINTIFFS' ALLEGATION**

64.     There are questions of law or fact common to the Class, including:

(a)    whether Defendants entered into an agreement not to compete in the sales of Ovcon and its generic equivalents;

(b)    whether Defendants' agreement not to compete was unlawful;

(c)    whether Defendants' unlawful conduct caused Plaintiffs and the other members of the Class to pay more for Ovcon than they would have paid absent Defendants' conduct; and

(d)    whether Defendants' conduct caused antitrust injury to the business or property of their direct purchaser customers and, if so, the appropriate measure of damages.

**ANSWER**

Paragraph 64 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 64 of the Complaint.

**PLAINTIFFS' ALLEGATION**

65.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting only individual members.

**ANSWER**

Paragraph 65 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 65 of the Complaint.

**PLAINTIFFS' ALLEGATION**

66.    Plaintiffs' claims are typical of the claims of the Class because all Class members, including Plaintiffs, suffered antitrust injury in the same way as a result of Defendants' conduct, and the claims of each Class member arise out of the same nucleus of operative facts and are based on the same legal theories.

**ANSWER**

        Paragraph 66 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 66 of the Complaint.

**PLAINTIFFS' ALLEGATION**

    67.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel experienced in class action and antitrust litigation, and Plaintiffs have no interest in this litigation that is adverse to, or in conflict with, the interests of the other members of the Class.

**ANSWER**

        Paragraph 67 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies the allegations contained in the first sentence of Paragraph 67 of the Complaint, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 67 of the Complaint.

**PLAINTIFFS' ALLEGATION**

    68.    A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty that will be encountered in the management of the claims advanced by the Class that would preclude class certification.

**ANSWER**

        Paragraph 68 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies that a class action is superior to any other available method for the fair and efficient adjudication of this controversy, and further denies that a class action is the proper vehicle for this action.  Warner Chilcott denies

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 68 of the Complaint.

**PLAINTIFFS' ALLEGATION**

69.    Warner Chilcott and Barr's Agreement not to compete is a naked restraint of trade. On its face it eliminates competition, and it has no plausible procompetitive justification.

**ANSWER**

Paragraph 69 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 69 of the Complaint.

**PLAINTIFFS' ALLEGATION**

70.    The Agreement is anticompetitive pursuant to every relevant legal analysis.

**ANSWER**

Paragraph 70 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 70 of the Complaint.

**PLAINTIFFS' ALLEGATION**

71.    Defendants' conduct had the purpose and effect of unreasonably and illegally restraining trade and preventing competition.

**ANSWER**

Paragraph 71 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 71 of the Complaint.

**PLAINTIFFS' ALLEGATION**

72.    Defendants' horizontal agreement not to compete is not ancillary to any procompetitive undertaking: Preventing competition from Barr's generic Ovcon for five years is not subordinate to any procompetitive undertaking, but is rather the primary purpose of the Agreement. Preventing competition from Barr's generic Ovcon for five years is not reasonably necessary to accomplish any undertaking that enhances competition.

**ANSWER**

Paragraph 72 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 72 of the Complaint.

**PLAINTIFFS' ALLEGATION**

73.    Defendants could have accomplished any of the purported competitive benefits of the Agreement by other less-restrictive means that would not have destroyed competition.

**ANSWER**

Paragraph 73 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 73 of the Complaint.

**PLAINTIFFS' ALLEGATION**

74.    As a direct and proximate result of the illegal conduct alleged in this complaint, Plaintiffs and other purchasers of Ovcon were forced to pay more for Ovcon than they otherwise would have paid. Defendants' unlawful conduct deprived Plaintiffs of the benefits of competition that the antitrust laws were designed to secure.

**ANSWER**

Paragraph 74 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 74 of the Complaint.

**PLAINTIFFS' ALLEGATION**

75.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

**PLAINTIFFS' ALLEGATION**

76.    The Agreement between Warner Chilcott and Barr constitutes a restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 76 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 76 of the Complaint.

**PLAINTIFFS' ALLEGATION**

77.    As a direct and proximate result of the unlawful conduct of Defendants in restraining competition in the sale of Ovcon and its generic equivalents, Plaintiffs and other members of the Class have been injured in their business and property, in that they paid more for Ovcon than they otherwise would have paid in the absence of Defendants' unlawful conduct.

**ANSWER**

Paragraph 77 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 77 of the Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, respectfully request:

A.    That the Court certify the Class, defined herein, certify Plaintiffs as representatives of the Class, and designate its counsel as counsel for the Class;

B.    Judgment in their favor and against Defendants for the damages representing the overcharge damages incurred by Plaintiffs and the other members of the Class defined herein, trebled;

C.    Pre- and post judgment interest;

D.    Costs of suit, including reasonable attorneys' fees; and

E.    Such other and further relief as the Court deems just and proper.

## ANSWER

Wherefore, Warner Chilcott denies that this suit can be litigated as class action, denies that Plaintiffs are entitled to any relief whatsoever, and respectfully requests judgment for Warner Chilcott along with costs and attorneys' fees, as may be allowed by law, and such further relief as the Court deems appropriate.  Furthermore, Warner Chilcott denies every allegation contained in the Complaint not specifically herein admitted.

## AFFIRMATIVE DEFENSES

Warner Chilcott states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiffs.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim against Warner Chilcott on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE
### (Justification)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.


## SIXTH AFFIRMATIVE DEFENSE
### (Preservation of Business)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.


## SEVENTH AFFIRMATIVE DEFENSE
### (No Injury to Competition)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's actions have injured competition in any relevant market.


## EIGHTH AFFIRMATIVE DEFENSE
### (Pro-Competitive Effects)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's alleged actions have pro-competitive effects that benefit competition as a whole in any relevant market. Warner Chilcott's alleged actions increased competition and are in furtherance of trade.

## NINTH AFFIRMATIVE DEFENSE
### (No Consumer Harm)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed consumers.

## TENTH AFFIRMATIVE DEFENSE
### (No Harm to Plaintiffs)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed Plaintiffs.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Knowledge or Intent)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no knowledge, intention or belief that its actions might illegally restrain trade.  Further, Warner Chilcott could not have known that its actions might illegally restrain trade.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Willful or Flagrant Act)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any willful, flagrant or unconscionable act.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Good Faith Reliance)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott relied in good faith on the actions of the Federal Trade Commission.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (No Notice)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (No Concealment)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Failure to Identify Appropriate Markets)

Plaintiffs' claims are barred, in whole or in part, because Plaintiff has not properly alleged either a relevant product market or a relevant geographic market.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (No Market Power)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has and had no market power.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Causation)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's actions were not the proximate cause in fact of Plaintiffs' alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent that Plaintiffs have failed to mitigate, minimize or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Lawful Conduct)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with respect to the Plaintiffs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Not Maintainable as a Class Action)

Plaintiffs' claims are barred, in whole or in part, because the action against Warner Chilcott is not properly maintained as a class action.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Lack of Antitrust Injury)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered antitrust injury.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Pattern or Practice)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any pattern or practice of illegal activity.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (No Standing)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs do not have standing.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Failure to Plead a Proper Party)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to plead a proper party.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Reservation of Additional Defenses)

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

## JURY DEMAND

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## WARNER CHILCOTT'S PRAYER FOR RELIEF

Wherefore, Warner Chilcott prays as follows:

1.     That the Court enter judgment for Warner Chilcott on all counts;

2.     That the Court award Warner Chilcott reasonable costs and expenses including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.

December 20, 2005                           Respectfully submitted,

                                  By:    /s/
                                        _____
                                        Kevin J. Arquit, D.C. Bar #438511
                                        Charles E. Koob, *pro hac vice* pending
                                        SIMPSON THACHER & BARTLETT LLP
                                        425 Lexington Avenue
                                        New York, New York 10017
                                        (212) 455-2000

                                        *Counsel for Warner Chilcott Defendants*