IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MEIJER, INC., *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>WARNER CHILCOTT HOLDINGS CO.<br>    III, LTD., *et al.*,<br><br>        Defendants. | Civil Action No.: 1:05-CV-02195-CKK |
| WALGREEN CO., *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>WARNER CHILCOTT HOLDINGS CO.<br>    III, LTD., *et al.*,<br><br>        Defendants. | Civil Action No.: 1:06-CV-00494-CKK |

**DEFENDANT BARR PHARMACEUTICALS INC.'S MOTION TO COMPEL
ANSWERS TO INTERROGATORIES AND THE PRODUCTION OF DOCUMENTS**

Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Chong S. Park (D.C. Bar # 463050)
Patrick M. Bryan (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, District of Columbia 20005
(202) 879-5000
(202) 879-5200 (fax)

*Counsel for Barr Pharmaceuticals, Inc.*

Defendant Barr Pharmaceuticals, Inc. ("Barr") brings this motion to compel plaintiffs in *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.* ("*Meijer*") — Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale Drug Co., Inc., Rochester Drug Co-operative, Inc., Valley Wholesale Drug Co., Inc., American Sales Co., Inc., SAJ Distributors, Inc., and Stephen L. LaFrance Holdings, Inc. — to produce documents responsive to Barr's First Request for Production of Documents Numbers 2, 3, 4, 6, 9, 10, 12, and 16, and Interrogatory Numbers 2, 4, 5, 6, and 7.

Barr additionally moves to compel plaintiffs in *Walgreen Co. v. Warner Chilcott Holdings Co. III, Ltd.* ("*Walgreen*") — Walgreen Co., Eckard Corp., Maxi Drug, Inc., d/b/a/ Brooks Pharmacy, The Kroger Co., Albertson's, Inc., Safeway, Inc., and Hy-Vee, Inc. — to produce documents responsive to Barr's First Request for Production of Documents Numbers 2, 4, 6, 9, 10, and 16, and Interrogatory Numbers 2, 4, 5, 6, and 7.[1]

## INTRODUCTION

Direct Purchaser Plaintiffs refuse to produce documents that are directly relevant to the claims and defenses asserted in this litigation. Plaintiffs claim that they were overcharged, yet refuse to produce sales and pricing data necessary to allow Barr to evaluate their damage claims. Plaintiffs posit a "but-for" world in which a generic equivalent to Ovcon would be available for their purchase and resale, yet refuse to produce information that would permit Barr to determine demand for generic Ovcon in this "but-for" world. Plaintiffs further claim that, under *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968), Barr is disallowed from asserting a

---

[1] Plaintiffs objecting to Barr's discovery requests shall, hereinafter, be referred to collectively as "Direct Purchaser Plaintiffs", or simply "Plaintiffs".

2

"pass on" defense to plaintiffs' overcharge claims. Yet, plaintiffs impermissibly refuse to produce information that would permit Barr to determine whether it is entitled to mount such a defense under the "cost-plus" exception to the *Hanover Shoe* rule. Finally, the information plaintiffs refuse to produce is directly relevant to the claims asserted by the class of indirect purchaser plaintiffs in this coordinated proceeding. For these reasons, Direct Purchasers Plaintiffs' objections to the production of the sales data lack merit. The sales data requested by Barr are relevant to the subject-matter of this litigation, and should be produced.

## BACKGROUND

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*

Discovery in *Meijer* commenced on March 15, 2006, when the parties served their initial disclosures of information on one another, pursuant to Fed. R. Civ. P. Rule 26(a)(1). Subsequently, on May 23, 2006, Barr served plaintiffs with its First Requests for Production of Documents and First Set of Interrogatories. Plaintiffs served their responses on June 26, 2006. In their responses, Plaintiffs objected generally to Barr's Requests and Interrogatories:

> Plaintiffs object to the instructions, definitions and Documents [*sic*] Requests to the extent they request information concerning the resale of pharmaceutical products below the manufacturer level as not being relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Because Plaintiffs have alleged an overcharge theory of damages and are not seeking any damages relating to lost profits, any sales, profit, loss, or other "downstream" information is not relevant to this case.

*Meijer*, Pls.' Answers and Objections, ¶ 9; *Meijer*, Pls.' Responses and Objections, ¶ 9. Plaintiffs also raised specific objections to Barr's Document Request Numbers 2, 3, 4, 6, 9, 10, 12, and 16, and Interrogatory Numbers 2, 4, 5, 6, and 7. All of these Requests and Interrogatories seek the production of routine documents and information regarding plaintiffs' sales and pricing of Ovcon and other products.

On August 21, 2006, plaintiffs and Barr met and conferred regarding plaintiffs' discovery responses. However, plaintiffs again refused to produce the requested information.

Plaintiffs' discovery objections are only one part of a broader pattern of non-compliance with Barr's discovery requests. To date, plaintiffs have failed to produce *any* documents responsive to Barr's May 23, 2006 requests. In total, plaintiffs have produced only 133 pages of material, all in accordance with plaintiffs' March 15, 2006 initial disclosures.

### *Walgreen Co. v. Warner Chilcott Holdings Co. III, Ltd.*

Discovery in *Walgreen* commenced on April 20, 2006, when the parties served their initial disclosures of information on one another, pursuant to Fed. R. Civ. P. Rule 26(a)(1). Subsequently, on May 23, 2006, Barr served plaintiffs with its First Requests for Production of Documents and First Set of Interrogatories. Plaintiffs served their responses on June 23, 2006. In their responses, plaintiffs raised specific objections to Barr's Document Request Numbers 2, 4, 6, 9, 10, and 16, and Interrogatory Numbers 2, 4, 5, 6, and 7. All of these Requests and Interrogatories seek the production of routine documents and information regarding plaintiffs' sales and pricing of Ovcon and other products.

On August 25, 2006, plaintiffs and Barr met and conferred regarding plaintiffs' discovery responses. However, plaintiffs again refused to produce the requested information.

### ARGUMENT

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding *any matter*, not privileged, that is relevant to the claim or *defense* of any party..." Fed. R. Civ. P. 26(b)(1) (emphasis added). The definition of "relevant information" in Rule 26(b)(1) is broad. "Relevant information need not be admissible at the trial if the discovery appears *reasonably calculated* to lead to the discovery of admissible evidence." *Id.* (emphasis added). Courts thus

4

should construe discovery rules liberally to serve the purposes of discovery, including providing the parties with information essential to the proper litigation of *all* relevant facts. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Here, Direct Purchaser Plaintiffs refuse to produce sales information directly relevant to the claims and defenses at issue in this litigation. Plaintiffs attempt to avoid the obvious relevance of the information requested by invoking *Hanover Shoe* to support their assertion that the sales information requested by Barr need not be produced. However, in the context of an "overcharge" claim, *Hanover Shoe* disallows discovery of sales information *only* where such information is used to mount a "pass on" defense. *Hanover Shoe, Inc.*, 392 U.S. at 491-94. Regardless, the sales information requested by Barr is relevant to the claims of the Indirect Purchaser Plaintiffs, to whom *Hanover Shoe* does not apply. Thus, under any feasible construction of Rule 26(b)(1), the sales and pricing data that plaintiffs refuse to produce are relevant to the claims asserted in this litigation. Therefore, the Court should order Direct Purchaser Plaintiffs to produce information responsive to Barr's Requests.

I. **THE SALES DATA SOUGHT ARE DIRECTLY RELEVANT TO THE CLAIMS AND DEFENSES ASSERTED IN THIS LITIGATION**

Direct Purchaser Plaintiffs' claims are founded on a "but-for" world, in which a generic, less expensive version of Ovcon would be available for purchase and resale. In claiming that Barr and other Defendants improperly prevented a generic version of Ovcon from coming to market, plaintiffs essentially claim that they were overcharged. For Barr properly to defend against plaintiffs' overcharge claims, it must be able to assess the nature and amount of plaintiffs' purported damages. The sales and pricing data that plaintiffs refuse to produce are fundamental to this task. Further, such information is necessary to determine the amount of demand for Ovcon in plaintiffs' "but-for" world.

5

### A. Sales Data Are Relevant To Direct Purchaser Plaintiffs' Damage Claims.

Plaintiffs claim that, as a result of Barr and other Defendants' conduct, they were forced to pay artificially inflated prices for Ovcon. Plaintiffs' entire case is therefore founded on a "but-for" world in which a generic, less expensive version of Ovcon would be available for purchase and resale. Barr must be allowed to discover sales data from the *actual* world in order to establish the true extent of plaintiffs' injury.

Plaintiffs assert, without foundation, that sales data are irrelevant to their claims because they allege an overcharge theory of damages and are not seeking any damages for lost profits or sales. *See Meijer*, Pls. Answer and Objections, ¶ 9. In support of this assertion, plaintiffs cite *Hanover Shoe* for the proposition that Barr is disallowed from asserting a "pass-on" defense — that is, Barr may not claim that plaintiffs passed on their overcharges to indirect purchasers, and thereby suffered no injury.

Even under this interpretation of *Hanover Shoe* — which Barr does not accept — plaintiffs can only recover if they prove that they suffered an "overcharge" or some other concrete injury resulting from Defendants' allegedly anticompetitive conduct. *See, e.g., National Farmers' Org., Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1306 (8th Cir. 1988) ("At base, an antitrust plaintiff's damages should reflect the difference between its performance in a hypothetical market free of all antitrust violations and its actual performance in the market infected by the anticompetitive conduct."). The sales information requested by Barr is essential

to any evaluation of plaintiffs' performance in the hypothetical "but-for" world they posit and, by extension, the extent of any injury in the real world.[2]

Regardless of plaintiffs' theory of damages, the sales data requested by Barr is relevant and discoverable. In addition to allowing Barr to determine the amount of any alleged overcharge or profit levels that may be argued as a measure of damages, this information is necessary to allow Barr to evaluate the applicability of any number of defenses, including mitigation and existence of an alternative cause.

Within this Circuit, it is well-settled that ***any possibility*** that information requested in discovery may be relevant to the subject-matter of the action will satisfy Rule 26(b)(1)'s requirements. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F. 3d 1007, 1012 (D.C. Cir. 1997); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 85, 86 (D.D.C. 2005). Given the myriad number of ways in which the sales information requested by Barr is connected to the very heart of plaintiffs' claims and Barr's potential defenses, this information is unquestionably discoverable and should be produced.

    **B.**    **Sales Data Are Relevant To The Issue Of Demand For Ovcon In The "But For" World.**

In addition to evaluating the extent of plaintiffs' alleged injury in the actual world, the sales data requested by Barr are also needed to permit Barr to determine the demand for both Ovcon and any generic substitute in the "but-for" world plaintiffs propose. Substantial evidence

---

[2] It is not at all clear that plaintiffs have limited their damages claim to overcharges. In their Consolidated Amended Class Action Complaint, plaintiffs in *Meijer* allege that "Members of the Class have sustained substantial losses and damage to their business and property in the form of overcharges, ***among other things***. *Meijer*, Consol. Am. Compl., ¶ 81 (emphasis added). Barr remains in the dark as to what damages will ultimately be sought and, accordingly, should be allowed to discover information relating to plaintiffs' sales and profits because such information is relevant to other theories of damages that plaintiffs may assert.

exists that wholesalers like plaintiffs make significantly greater profits on brand name drugs than on generic drugs. Accordingly, the requested sales data are relevant to show that in the "but-for" world, plaintiffs would have had incentives to purchase the branded Ovcon and not the generic alternative.

The requested data are also relevant to other demand factors. For example, the introduction of a generic drug is often accompanied by reduced marketing for the brand name alternative. This often results in a demand shift away from the branded drug to an entirely different brand name drug. In this case, the introduction of a generic substitute to Ovcon could have spurred a demand shift from Ovcon to other oral contraceptives. Because the sales data are necessary to evaluate all of the factors that would affect demand for Ovcon in plaintiffs' "but-for" world, they are relevant and should be produced.

II.  **DIRECT PURCHASER PLAINTIFFS' OBJECTIONS TO THE PRODUCTION OF THE SALES DATA ARE WITHOUT MERIT**

    A.  **Sales Data Are Relevant And Discoverable Under The "Cost-Plus" Exception To *Hanover Shoe*.**

It is well-established that *Hanover Shoe* allows a manufacturer to assert a "pass-on" defense to an overcharge claim where a direct purchaser sells the product at issue through "cost-plus" sales — *i.e.*, when a direct purchaser's pricing of the product is determined by its cost from the manufacturer plus a set additional amount. In *Hanover Shoe*, the Supreme Court recognized that "there might be situations — for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged — where the considerations requiring that the passing-on defense not be permitted in this case would not be present." *Hanover Shoe*, 392 U.S. at 494. Similarly, in *Illinois Brick Co. v. Illinois*, 431 U.S.

720, 736 (1977), the Court further observed that in a cost-plus contract situation, the bar on asserting the pass-on defense is unnecessary:

> In [a cost-plus] situation, the [direct] purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case."

*Id.*

In the pharmaceutical industry, it is common for wholesalers such as plaintiffs to sell their product at a fixed markup over their purchase price. Given that plaintiffs may have "cost-plus" agreements with their purchasers, Barr should be permitted to discover plaintiffs' sales and pricing data to determine whether it is entitled to assert a "pass on" defense. *Cf.*, *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190-91 (11th Cir. 2003) (discovery of sales data allowed to evaluate propriety of class certification).

### III. SALES DATA ARE DIRECTLY RELEVANT TO THE INDIRECT PURCHASER PLAINTIFFS' CLAIMS

Even if the Court were to accept plaintiffs' argument that the sales data is not relevant to the subject-matter of this case, the information is nonetheless discoverable because it is directly relevant to the claims asserted by other plaintiffs in this coordinated proceeding. The "Indirect Purchaser Plaintiffs" are consumers and third-party payors who allege that they have been damaged by paying too much for Ovcon. *Hanover Shoe* does not apply to indirect purchasers. Therefore, unlike Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs cannot plausibly argue that *Hanover Shoe* disallows discovery of the sales and pricing data at issue here. Information regarding Direct Purchaser Plaintiffs' sales to indirect purchasers is relevant and necessary to assess the nature and amount of any damages incurred by the Indirect Purchaser Plaintiffs.

## CONCLUSION

For the foregoing reasons, Barr respectfully requests that the Court order plaintiffs in *Meijer* to produce documents responsive to Barr's Document Request Numbers 2, 3, 4, 6, 9, 10, 12, and 16, and Interrogatory Numbers 2, 4, 5, 6, and 7. Barr further requests that this Court order plaintiffs in *Walgreen* to produce documents responsive to Barr's Document Request Numbers 2, 4, 6, 9, 10, and 16, and Interrogatory Numbers 2, 4, 5, 6, and 7.

Date: September 13, 2006

Respectfully submitted,

/s/ Karen N. Walker
Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Chong S. Park (D.C. Bar # 463050)
Patrick M. Bryan (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel. (202) 879-5000
Fax (202) 879-5200

*Counsel for Barr Pharmaceuticals, Inc.*