# EXHIBIT D

# Baker Hostetler

Baker&Hostetler LLP

Capitol Square, Suite 2100
65 East State Street
Columbus, OH 43215-4260

T 614.228.1541
F 614.462.2616
www.bakerlaw.com

Thomas L. Long
direct dial: 614.462.2626
e-mail: tlong@bakerlaw.com

March 1, 2006

**VIA OVERNIGHT DELIVERY**

Hon. Kent A. Jordan
J. Caleb Boggs Federal Building
844 N. King Street
Room 6325
Lockbox 10
Wilmington, DE 19801

Re:  In re Tricor Direct Purchaser Antitrust Litigation
     Louisiana Wholesale Drug Co., Inc., et al. v. Abbott Laboratories, et al.

Dear Judge Jordan:

We represent Cardinal Health, Inc. ("Cardinal Health"), a national pharmaceutical and medical products wholesaler. We have regularly represented Cardinal Health on a number of matters since its founding, including cases similar to the case before the Court. Cardinal Health has purchased Tricor directly from Abbott Laboratories ("Abbott"), one of the defendants in the above captioned matter, for many years and continues to purchase Tricor from Abbott today. As such, it appears Cardinal Health is a member of the class proposed by the September 23, 2005 Amended and Consolidated Class Action Complaint ("the Complaint") filed by Louisiana Wholesale Drug Company, Inc. and others (collectively "named Plaintiffs") in the above captioned case. We have had the opportunity to review the Complaint (in redacted form). We understand from the named Plaintiffs' counsel that your Honor is considering a request by Abbott and the other defendants ("Defendants") to pursue so-called "downstream" discovery directed at the named Plaintiffs. It is further our belief based on documents submitted to the Court by Defendants that it is Defendants' intention to pursue such "downstream" discovery from absent class members such as the large national wholesalers like Cardinal Health.

Prior to submitting this letter, we reviewed Defendants' February 27, 2006 letter-brief to this Court urging the sanctioning of "downstream" discovery and Defendants' document requests directed to Louisiana Wholesale Drug, which, among other things, seek documents and data reflecting class members' downstream sales and profits. We write, respectfully, to offer this Court Cardinal Health's perspective on Defendants' requests, given that:

Hon. Kent A. Jordan
March 1, 2006
Page 2

(1) the "downstream" discovery involved will in all probability also be sought from Cardinal Health inasmuch as Defendants' rationale for this discovery is the supposed necessity of comparing the effect of the challenged conduct on the named Plaintiffs with the challenged conduct's effect on certain absent class members, including Cardinal Health; and

(2) Defendants have asserted the need for the "downstream" discovery to determine, through some unspecified mathematical calculation, whether it would be in Cardinal Health's interest to remain in the proposed class.

Cardinal Health respectfully submits three points for the Court's consideration of Defendants' request.

First, if the point of the discovery requests is for Defendants to determine indirectly whether it is in Cardinal Health's best interests to become an absent member of any certified class in this case, it is not for Defendants to make any such decision. Defendants do not operate Cardinal Health. Cardinal Health's management determines what actions are in the best interests of the company. It is Cardinal Health's opinion, in this case, as it has been in similar delayed generic entry direct purchaser class cases in the past, that Cardinal Health is in a far better position than Defendants to assess what is, or what is not, in its best interests. In contrast, Defendants' main goal is to minimize any recovery Cardinal Health could expect to recover by participating as a class member in this litigation. In of itself, this should be sufficient to deny Defendants' requests for "downstream" discovery.

Second, in reviewing Defendants' "downstream" discovery requests, it is important for the Court to understand the significant expense, burden and disruption in normal business activities that would be occasioned in producing the documents and data responsive to Defendants' requests. Essentially, Defendants are asking for, among other things, records and data regarding millions of transactions, reflecting Cardinal Health's sales of both branded and generic versions of fenofibrate, to thousands of customers for a multi-year period. Cardinal Health currently operates twenty three distribution centers located throughout the country. Defendants' broad requests could result in productions occurring at each of these distribution centers. In addition, it is important to recognize that Cardinal Health, like some of the other larger pharmaceutical wholesalers, has grown over the past several years through the acquisition of other wholesalers. This consolidation within the industry has been well documented for some time. Unfortunately these acquisitions often result in overlapping data systems, different hardware systems, and dissimilar operating systems. If asked to recreate past data such as that contained in Defendants' "downstream" discovery requests, Cardinal Health would be faced with a massive data production issues which would require the use of "heritage" as well as current data systems and the reassignment of key data personnel away from their daily activities of servicing Cardinal Health's customers and management. In addition, Defendants' "downstream" discovery requests would also require the rationing of Cardinal Health's mainframes to run the massive data requests instead of performing the daily operations necessary to operate the company.

Hon. Kent A. Jordan
March 1, 2006
Page 3

Third, as Cardinal Health has done in several recent similar class actions involving challenges to a brand pharmaceutical manufacturers' alleged efforts to forestall or delay generic competition, Cardinal Health has decided that, in its considered business judgment that: (1) Cardinal Health's interests are best served by remaining a member of any Certified Class; and (2) named Plaintiffs and their counsel are fully capable of representing the interests of Cardinal Health for purposes of the Class Action.

More specifically, Cardinal Health notes that in their letter-brief Defendants have suggested that the named Plaintiffs' interest may be antagonistic to the interest of certain other class members, including Cardinal Health. As has been true in similar cases that have been certified as class actions, Cardinal Health believes there is no antagonism or conflict between the interests of the named Plaintiffs in pursuing overcharge damages in this matter and Cardinal Health's overall economic and legal interests.

Given that the principal grounds Defendants have offered for pursuing "downstream" discovery is the supposed need to determine whether the interest of the national wholesalers, such as Cardinal Health, are aligned with the interests of the named Plaintiffs and that Cardinal Health believes there is no present or foreseeable conflict between Cardinal Health and the named Plaintiffs, Cardinal Health respectfully suggests that Defendants' burdensome discovery requests have no reasonable basis and should be denied.

Sincerely,

Thomas L. Long

cc:   Mary Graham (via e-mail)
      Eric Cramer (via e-mail)

Case 1:05-cv-02195-CKK    Document 59-5    Filed 09/27/2006    Page 5 of 10

# LATHAM&WATKINS LLP

505 Montgomery Street, Suite 2000
San Francisco, California 94111-2562
Tel: (415) 391-0600 Fax: (415) 395-8095
www.lw.com

FIRM / AFFILIATE OFFICES
| | |
|---|---|
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Milan | Silicon Valley |
| Moscow | Singapore |
| Munich | Tokyo |
| New Jersey | Washington, D.C. |

March 1, 2006

Honorable Kent A. Jordan
J. Caleb Boggs Federal Building
844 N. King Street
Room 6325
Lockbox 10
Wilmington, DE 19801

Re: In Re Tricor Direct Purchaser Antitrust Litig. Louisiana Wholesale Drug Co., Inc., et al., v. Abbott Laboratories, et al., Civil Action No. 05-340 (KAJ)

Dear Judge Jordan:

We represent McKesson Corporation, a national wholesaler of pharmaceutical and other medical products. McKesson has purchased Tricor directly from defendant Abbott Laboratories for many years. McKesson continues to purchase Tricor from Abbott today. As such, it appears that McKesson would be a member of the class proposed by Louisiana Wholesale Drug Company, Inc. and others ("Plaintiffs") in the September 23, 2005 Amended and Consolidated Class Action Complaint which we have reviewed in redacted form. We understand from counsel for Plaintiffs that the Court is considering a request by Abbott and the other defendants (collectively, "Defendants") to pursue so-called "downstream" discovery directed at Plaintiff. We also understand that counsel for Plaintiffs believe that Defendants' have signaled an intention to pursue such discovery from absent class members such as McKesson.

We have reviewed Defendants' letter-brief to this Court urging the allowance of "downstream" discovery. We have also examined Defendants' discovery requests which seek documents and data reflecting class members' downstream sales and profits. We write to offer the Court our perspective on this matter in light of Defendants' assertion that they need the "downstream discovery" to determine whether it would be in McKesson's interests to remain in the proposed class. In our view, McKesson is in a better position than Defendants to assess what is (and is not) in the interests of McKesson.

To assist the Court in its consideration of Defendants' requests for "downstream" data and documents we offer three observations. First, in reviewing the requests, it is important for the Court to understand the significant expense and burden that would be involved in gathering and producing documents responsive to downstream requests. Defendants are essentially asking for, among other things, records regarding literally hundreds of thousands of

SF\551539.1

Honorable Kent A. Jordan
March 1, 2006
Page 2

**LATHAM&WATKINS**LLP

transactions, reflecting our sales of the relevant products to thousands of customers over many years. This would involve gathering documentary and electronic records from a number of sources including legacy computer systems. It would be significantly expensive and time consuming.

Second, if the point of the discovery is to determine indirectly whether it is in McKesson's "interest" to become a passive member of any certified class in this case, there are more direct ways of getting that information than compelling McKesson (or anyone) to go through the expensive and burdensome process of producing vast quantities of data and documents.

Third, McKesson has been a class member in several recent similar class actions involving antitrust challenges to manufacturers' alleged efforts to forestall or delay generic competition. In those cases McKesson has decided that, in its considered business judgment: (a) its interests are best served by the action proceeding as a Class Action with McKesson as part of the Class; and (b) the Plaintiffs and their counsel are capable of representing McKesson's interests for purposes of the Class Action.

More specifically, McKesson is aware that Defendants have suggested that the interests of the Plaintiffs may be antagonistic to the interests of certain Class members (including McKesson). McKesson does not believe there is any antagonism or conflict between the interests of the Plaintiffs in pursuing overcharge damages in the above-captioned Class Action, and McKesson's overall economic and legal interests.

Given that the main grounds Defendants have offered for pursuing downstream discovery is the supposed need to determine whether the interests of the national wholesalers are aligned with the interests of the Plaintiffs, and that McKesson believes there is no present or foreseeable conflict, McKesson respectfully suggests that Defendants' request to take this burdensome discovery has no reasonable basis, and therefore should be denied.

Very truly yours,

*/s/ Peter K. Huston*

Peter K. Huston
of LATHAM & WATKINS LLP

SF\551539.1

Case 1:05-cv-02195-CKK    Document 59-5    Filed 09/27/2006    Page 8 of 10

**Buchanan Ingersoll** PC
ATTORNEYS

Steven E. Bizar
215 665 3826
bizarse@bipc.com

1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985
T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

March 1, 2006

The Honorable Kent A. Jordan, U.S.D.J.
J. Caleb Boggs Federal Building
844 N. King Street, Room 6325
Lockbox 10
Wilmington, DE 19801

Re:   *In Re Tricor Direct Purchaser Antitrust Litigation, Louisiana Wholesale Drug Co., Inc., et al. v. Abbott Laboratories, et al.*
<u>Civil Action No.: 05-340 (KAJ)</u>

Dear Judge Jordan:

We represent AmerisourceBergen Corporation ("ABC"), a national wholesaler of pharmaceuticals and related products and services. ABC has purchased Tricor directly from one of the defendants in the above-captioned case, Abbott Laboratories ("Abbott"), for many years and continues to do so today. As such, it appears that the Company would be a member of the class proposed by the September 23, 2005 Amended and Consolidated Class Action Complaint filed by Louisiana Wholesale Drug Company, Inc. and others ("Plaintiffs") in the above captioned case. We understand from counsel for Plaintiffs that your Honor is considering a request by Abbott and the other defendants (collectively, "Defendants") to pursue so-called "downstream" discovery directed at the named plaintiffs, and signaling Defendants' intention to pursue such discovery from absent class members such as the three major national wholesalers, of which ABC is one.

We have reviewed Defendants' February 27, 2006 letter brief to this Court urging the Court to allow it pursue "downstream" discovery. In addition, we have examined Defendants' First Set of Requests for Production of Documents and Things to Louisiana Wholesale Drug Company, Inc. (specifically, Request Nos. 5 – 8, 10 -22, 41, and 46) which, among other things, seek documents and data reflecting the class members' downstream *sales and profits*. This is confirmed by Defendants' letter brief.

Accordingly, we respectfully write to offer this Court our perspective on this matter given that (1) downstream discovery, in all likelihood, will also be sought from ABC, and (2) Defendants have asserted that they need "downstream" discovery as part of their alleged need to determine whether it would be in ABC's best interests to remain in the proposed class.

The Honorable Kent A. Jordan, U.S.D.J.
March 1, 2006
Page - 2 -

With respect to determining whether it is in the interests of ABC to remain in the proposed class, there is no one more qualified to make that determination than ABC itself. Defendants' argument that they, not ABC, should and are qualified to make this decision based on their review and analysis – through unspecified mathematical computations – of downstream sales and profits is tenuous, at best. If anything, Defendants' interests are diametrically *opposed* to those of ABC: Defendants' main goal here is to *minimize* any recovery that ABC could expect from participating in this litigation as a member of the proposed class.

In addition, even a cursory review of the "downstream" discovery requests makes clear that the expense and burden involved in compiling and producing the data requested would be staggering. Defendants seek, among other things, records reflecting sales of both branded and generic versions of fenofibrate. In all likelihood, these records would literally include hundreds of thousands of transactions with thousands of customers over a period of several years. In order to properly respond to such requests, ABC would be required to gather documentary and electronic records from numerous offices and computer systems. The expense and burden that would be placed upon ABC (an absent class member, not a class representative plaintiff) to produce this information would be very great, especially in light of the fact that less expensive and burdensome alternatives clearly exist.

Specifically, ABC will – as it has done in several recent similar class actions involving antitrust challenges to manufacturers' alleged efforts to forestall or delay generic competition – use its considered business judgment to determine if its interests are best served by the action proceeding as a class action with ABC part of the class. Plaintiffs and their counsel are fully capable of representing the interests of ABC for purposes of this class action. Moreover, ABC disputes Defendants' assertion that Plaintiffs' and ABC's interests are sufficiently antagonistic so as to preclude class certification. This "conflict" theory is not novel and ABC, as it has in the past, disputes Defendants' assertion that any such conflict exists.

Accordingly, because the main grounds Defendants have offered for pursuing "downstream" discovery is the supposed need to determine whether the interests of the national wholesalers are aligned with the interests of the Plaintiffs, and ABC believes that there is no present conflict, ABC respectfully suggests that Defendants' plea to take this burdensome discovery is without justification and, therefore, should be denied.

We appreciate Your Honor's time and consideration.

Respectfully yours,

Steven E. Bizar

SEB/mml