# EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
RONALD J. HEDGES
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING, JR.
FEDERAL BUILDING AND COURTHOUSE
50 WALNUT STREET
NEWARK, NJ 07101
973-645-3827

October 17, 2005

**LETTER-OPINION AND ORDER**
**ORIGINAL FILED WITH CLERK OF THE COURT**

Robert A. Atkins
Paul, Wiess, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Peter S. Pearlman
Cohn, Lifland, Pearlman, Herrmann & Knopf LLP
Park 80 Plaza West-One
Saddle Brooke, N.J. 07663

Re:   Louisiana Wholesale Drug Co., et al. v. Becton Dickinson
      Civil Action No. 05-CV-1602 (JLL)

Dear Counsel:

## INTRODUCTION

This matter comes before me on defendant's request for "downstream discovery" from plaintiffs. Defendant requests downstream sales data and written communications between all plaintiffs and its customers. Plaintiffs request that the request be denied. I have considered the papers submitted in support and in opposition to the request. Oral argument was heard on September 27, 2005.

## BACKGROUND

Plaintiffs allege that defendant violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, because the prices plaintiffs paid for Hypodermic Products ("HP") were artificially inflated due to defendant's acquisition and/or maintenance of monopoly power in the HP market. Plaintiffs brought this action pursuant to §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and

1

26, to recover treble damages, equitable relief, costs, and attorneys fees.

Plaintiffs seek to certify a class pursuant to Rule 23(a), (b)(2), and/or (b)(3) on behalf of all persons and entities who purchased HP in the United States directly from defendant at any time during the period January 1, 2000 through the present, continuing until defendant ceases its anti-competitive conduct and the effect of that conduct ceases. Plaintiffs allege that class members incurred overcharges on its HP purchases because of defendant's antitrust law violations, and would have paid less for products had defendant not deterred competition from potential HP manufacturers.

By letter dated August 24, 2005, defendant requested downstream discovery from plaintiffs in order to demonstrate why class certification should be denied. During oral argument on September 27, 2005, plaintiffs were ordered to hand over customer contracts to defendant for inspection. Defendant maintained its request for downstream discovery, particularly sales data and written communications between plaintiffs and customers.

## DISCUSSION

I. *Discovery*

The scope of discovery is governed by Rule 26(b)(1). Rule 26(b)(1) provides that:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Rule 26(b)(2)(iii) provides that discovery shall be limited if the court determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

II. *Class Certification*

Class certification is governed by Rule 23. It provides that one or more class members may sue on behalf of a class only if, the "class is so numerous that joinder of all members is impracticable," a plaintiff shares common "questions of law or fact common to the class," its "claims or defenses . . . are typical of the claims or defenses of the class," and a plaintiff "will fairly and adequately protect the interests of the class." Rule 23(a)(2)-(4). In addition, a court

2

must find "that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

III. *Downstream Sales Data and Written Communications*

The issue is whether defendant's request for downstream sales data and written communications is relevant to class certification. Defendant contends that "plaintiffs are not adequate class representatives under Rule 23(a)(4) because their economic interests conflict with those of absent class members." Letter from Becton Dickinson & Company to Honorable Ronald Hedges at 1, *La. Wholesale Drug Company, Inc., et al. v. Becton Dickinson & Company*, No. 05-CV-1602 (Aug. 24, 2005) ("Becton Letter"). To support this contention defendant relies upon *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003). At issue in *Valley Drug* was "whether the district court erred by foreclosing [downstream discovery] on the question of whether some class members benefitted from the conduct alleged to have harmed the class members on the whole." 350 F.3d at 1187.

In *Valley Drug*, the plaintiffs brought an action against a pharmaceutical company for allegedly conspiring with two generic drug makers to keep a particular drug off the market. 350 F.3d at 1183-84. The plaintiffs alleged violations of § 1 of the Sherman Antitrust Act and "sought class certification for their antitrust claims under Rule 23(b)(3) of the Federal Rules of Civil Procedure." 350 F.3d at 1184. The plaintiffs were regional wholesalers who wished to maintain a class that would also include national wholesalers. 350 F.3d at 1186.

The defendants in *Valley Drug* produced evidence showing how the national wholesalers may have benefited from their alleged conduct. 350 F.3d at 1190-91. The court found the evidence persuasive and concluded that the economic interests of some class members were "potentially antagonistic to [] the named representatives purporting to represent them," vacated the ruling of the district court disallowing "downstream discovery" and "granting class certification," and remanded the case to allow for "downstream discovery." 350 F.3d at 1195-96.

*Valley Drug* noted that, although all members of plaintiffs' purported class may "have suffered antitrust injury that is cognizable under [*Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968)], "neither *Hanover Shoe* or its progeny imbue[d] the named [plaintiffs] . . . with the automatic right to certify a class where the economic reality of the situation reveals that a fundamental conflict may exist among the class members because of their different economic circumstances and different economic interests." *Valley Drug*, 350 F.3d at 1193. *Valley Drug* read *Hanover Shoe* as "directing a court to overlook the potential net gain, or conversely the potential absence of net loss, that a direct purchaser may in fact have experienced for the purposes of providing the direct purchaser with standing to sue and a means for calculating damages in antitrust violation litigation." 350 F.3d at 1193. The court noted that it "will not interpret the 'fundamental conflict/antagonistic interests' prong of" Rule 23(a)(4) any differently in antitrust suits. 350 F.3d at 1193 (noting that net economic gain of some class members must not be overlooked when determining whether Rule 23 is satisfied). This narrow reading of

3

*Hanover Shoe* is neither shared by this Court nor this circuit.

In *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004), consumer plaintiffs brought an action against a pharmaceutical company for alleged "anticompetitive behavior and dissemination of false and misleading information about a lower-priced, readily available generic competitor." 391 F.3d at 521. The plaintiffs claimed that the defendant's monopolistic conduct "caused them to purchase [a] higher-priced [name-brand drug] instead of the generic product." 391 F.3d at 521. The plaintiff class included "fixed co-pay consumers . . . who paid the same price for prescription drugs regardless of whether the drugs were name-brand or generic[,] [o]ut-of-pocket consumers . . . who paid different prices for prescription drugs depending on whether they were name-brand or generic[,] [and] [t]hird [p]arty [p]ayors [that] provid[ed] prescription drug coverage and/or [paid] or reimburs[ed] part or all of the costs of prescription drugs." 391 F.3d at 522 n.2.

At issue in *Warfarin* was whether the court below abused its discretion in certifying the plaintiff class. 391 F.3d at 521. The Court of Appeals held that, despite appellant's argument that members of the class suffered varying economic injury, the plaintiff class "suffered the same injury resulting from the overpayment for [the brand-name drug]" and thus, satisfied the requirements of Rule 23(a)(4). 391 F.3d at 532.

Likewise, the court in *In re Pressure Sensitive Labelstock Antitrust Litigation*, 226 F.R.D. 492 (M.D. Pa.2005) *("Lablestock")*, noted that for purposes of class certification in antitrust suits, "[i]n the absence of some showing of conditions making it probable that some large subset of the class benefited from the [monopoly], making their interests antagonistic to other class members, downstream discovery should be disallowed." 226 F.R.D. at 498.

As here, the defendants in *Lablestock* argued that downstream discovery was necessary in order to "determine whether a conflict of interest exist[ed] among . . . named and unnamed [class members]." 226 F.R.D. at 497. The *Lablestock* defendants asserted the need to determine whether certain class members had "cost plus" contracts or "whether any plaintiff was controlled by a customer of its . . . product." 226 F.R.D. at 498. The court was unpersuaded by these arguments and found that "courts generally disallow discovery of downstream sales data" in antitrust cases. *See* 226 F.R.D. at 497 (noting that downstream discovery is generally denied in price fixing conspiracies).

*Lablestock* also noted that, in *Hanover Shoe*, the Supreme Court warned about the potential for reducing the effectiveness of antitrust actions if defendants were permitted to perform massive downstream discovery activities. 226 F.R.D. at 498. Moreover, the court found that the "relevance of the information sought" by the defendants was "clearly outweighed by the burden and expense that the . . . discovery would impose." 226 F.R.D. at 498.

The defendant here contends that absent class members may include "giant distributors" who may sell defendant's products "pursuant to 'cost plus' contracts." Becton Letter at 2. It also contends that it requires "downstream discovery to demonstrate that plaintiffs' 'overcharge' theory of damages puts them at odds with others in the class who might pursue recovery of lost profits." Becton Letter at 4. I am not persuaded.

4

Plaintiffs, during oral argument, noted that it would be overly burdensome and expensive to inquire into the downstream sales activities of every member of the plaintiff class. It supported its assertion with a letter from counsel to Cardinal Health 200, Inc., a national wholesaler and member of plaintiff class, which reiterated the "incredible expense and burden that would be involved in producing documents responsive to the downstream requests." Letter from Baker & Hostetler L.L.P. to Honorable Ronald Hedges at 2, *La. Wholesale Drug Company, Inc., et al. v. Becton Dickinson & Company*, No. 05-CV-1602 (Sept. 27, 2005) ("Cardinal Health Letter"). Also, as noted in *Lablestock*, the mere suggestion that a class member may be "controlled by its customer does not justify" the "far-reaching downstream discovery" requested by defendant. *See Lablestock*, 226 F.R.D. at 497.

As long as class members are entitled to recover overcharges, whether certain class members "made a profit on the overcharges in comparison" to other class members is generally irrelevant. *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 300-01 (D.D.C. 2000). As expressed in the Cardinal Health Letter, members of the plaintiff class can use their business judgment to determine if their interests are adequately represented by plaintiffs. *See* Cardinal Health Letter, at ¶ 5 on 2. Moreover, plaintiffs have agreed to sit with defendant to draft the class option letter that will be sent to all potential class members. This is a more direct way of ensuring there is no conflict because interested class members may opt out of the class if they so choose. The burden of downstream discovery clearly outweighs its benefit.

Moreover, adopting the narrow *Valley Drug* view of *Hanover Shoe* will make it extremely difficult and expensive to bring direct purchaser class action suits in antitrust actions. When distributors vary in size and structure, it is not uncommon for some distributors to benefit more than others from a monopolistic environment. In antitrust suits, this slight conflict should be overlooked, as what is paramount is the protection of consumers from the adverse affects of monopolistic behavior.

Pursuant to Rule 26(b)(2)(iii), discovery shall be limited to contracts between plaintiffs and its customers and shall not include downstream sales data or written communications.

## CONCLUSION

For the reasons set forth above, defendant's request for downstream discovery is denied.

**SO ORDERED.**

s/ Ronald J. Hedges
United States Magistrate Judge

cc: Judge Jose L. Linares

5