**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MEIJER, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS CO. III, LTD., *et al.*, <br><br> Defendants. | Civil Action No.: 1:05-CV-02195-CKK <br><br> Judge Colleen Kollar-Kotelly <br> Magistrate Judge Alan Kay |
| WALGREEN CO., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS CO. III, LTD., *et al.*, <br><br> Defendants. | Civil Action No.: 1:06-CV-00494-CKK <br><br> Judge Colleen Kollar-Kotelly <br> Magistrate Judge Alan Kay |

**DEFENDANT BARR'S PHARMACEUTICALS INC.'S REPLY TO
PLAINTIFFS' OPPOSITION TO BARR'S MOTION TO COMPEL**

Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar #  430431)
Chong S. Park (D.C. Bar # 463050)
Patrick M. Bryan (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Tel.  (202) 879-5000
Fax  (202) 879-5200

*Counsel for Barr Pharmaceuticals, Inc.*

Defendant Barr Pharmaceuticals, Inc. ("Barr") respectfully submits this reply in support of its motion to compel plaintiffs in *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.* (the "Meijer plaintiffs") and *Walgreen Co. v. Warner Chilcott Holdings Co. III, Ltd.* (the "Walgreen plaintiffs") to produce sales and pricing data responsive to its discovery requests. Neither the Meijer plaintiffs nor the Walgreen plaintiffs present *any* valid justification for denying Barr discovery of information and data that are highly relevant to its defense of this case.

*First*, plaintiffs claim that their sales data are "irrelevant as a matter of law." No court has ever held this. In fact, this very Court has concluded that a direct purchaser's sales data are relevant to the issue of damages. Plaintiffs, moreover, concede that damages in this case "will have to be estimated," based on sales data for non-Ovcon products. (Walgreen Opp'n at 1.) The sales data Barr seeks are necessary to conduct such an estimate and are therefore highly relevant to the issues of this case.

*Second*, plaintiffs claim that the "cost-plus" exception to *Hanover Shoe* is "theoretical" or, alternatively, so narrow that it does not apply here. No case law supports either position. Barr should be allowed to discover plaintiffs' sales data to determine whether, under the clear authority of *Hanover Shoe*, it is entitled to raise a "pass-on" defense to plaintiffs' claims.

*Third*, plaintiffs concede that their sales data are relevant to the claims of the Indirect Purchaser Plaintiffs in this coordinated proceeding.

*Fourth*, plaintiffs claim that Barr's discovery requests are overly burdensome. Yet, plaintiffs have offered only unsupported, conclusory statements in support of this argument and, indeed, misrepresent the scope of the discovery requests. In any event, numerous courts have held that discovery may not be denied simply because it is expensive or inconvenient, or because the information requested is available from a third party.

2

For all of these reasons, Barr's motion to compel should be granted.

## ARGUMENT

**I.     PLAINTIFFS' SALES AND PRICING DATA ARE DIRECTLY RELEVANT TO THE MATTERS AT ISSUE IN THIS CASE AND SHOULD BE PRODUCED.**

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). The definition of "relevant information" in Rule 26(b)(1) is extremely broad. Numerous courts, including this one, have consistently held that information is discoverable if there is ***any possibility*** that it is relevant to some claim or defense present in the litigation. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under Rule 26(b)(1) is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."); *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 676 (D.D.C. 1989) ("Relevancy under [] Rule 26 . . . is very broadly defined, including both directly relevant material and material likely to lead to the discovery of admissible evidence."); *United States v. Am. Telephone & Telegraph*, 461 F. Supp. 1314, 1341 n. 81 (D.D.C. 1978) ("The clear policy of the rules is toward full disclosure . . . [I]t is rare that a showing can be made that a particular item of requested information is not 'relevant' under the broad definition given that word in Rule 26.").

This and other courts have held that a direct purchaser's sales and pricing data may be relevant to matters at issue in similar antitrust actions. *See In re Vitamins Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) (direct purchasers' sales data were "relevant" to the issue of damages); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1190-91 (11th Cir. 2003), *remanded to* 223 F.R.D. 666 (S.D. Fla. 2004) (direct purchasers' sales data were relevant and discoverable for the purpose of evaluating the propriety of class certification). Though plaintiffs claim otherwise, no

3

court has *ever* held that a direct purchaser's sales and pricing data were irrelevant as a matter of law.[1]

Plaintiffs' sales and pricing data are directly relevant to at least three facets of this litigation: (1) plaintiffs' damage claims, (2) whether Barr is entitled to raise a "pass-on" defense under the "cost-plus" exception to *Hanover Shoe*, and (3) the claims of the Indirect Purchaser Plaintiffs. Accordingly, Barr's motion to compel should be granted.[2]

### A.   Plaintiffs' Sales And Pricing Data Are Relevant To Plaintiffs' Damage Claims And Should Be Produced.

As plaintiffs concede, any calculation of plaintiffs' alleged damages would require an estimation of:

> [] the lower price Plaintiffs would have paid for generic Ovcon; and [] the percentage of Plaintiff's Ovcon purchasers that would have been replaced with the cheaper generic had it been available (i.e., the generic substitution rate).

(Walgreen Opp'n at 1.) And, according to plaintiffs, these figures must be "estimated using information ***other than sales of generic Ovcon***." *Id.* (emphasis added).

This is exactly the point. Plaintiffs' damage claims are founded on a "but-for" world in which generic Ovcon is available for their purchase and resale. Because there are no available "real world" data for generic Ovcon, Barr needs "other" information — *i.e.*, sales and pricing

---

[1]   Throughout their briefs, plaintiffs attempt to distract the Court from the obvious relevance of their sales data by repeatedly invoking *Hanover Shoe* as if it were some sort of talisman warding away plaintiffs' fundamental obligation to participate in discovery. *Hanover Shoe **did not*** hold that "inquiry into [a] direct purchaser's sales and profits is irrelevant to an antitrust action as a matter of law." (Meijer Opp'n at 7.) Rather, *Hanover Shoe* held that in certain circumstances not present here, a direct purchaser's sales data — even if relevant — should not be produced for policy reasons. *See Hanover Shoe v. United Shoe*, 392 U.S. 481, 491-94 (1968); *see also In re Vitamins*, 198 F.R.D. at 299 ("*Hanover Shoe* and its progeny did not render irrelevant plaintiffs' individualized [sales] data because defendants are not seeking discovery of this data in order to assert a pass-on defense . . .").

[2]   Notably, plaintiffs bear the burden of proving that the sales information requested by Barr is not relevant and should not be produced. *See Peskoff v. Faber*, Civ. No. 04-526, 2006 WL 1933483, at *2 (D.D.C. July 11, 2006) ("The party resisting discovery based on relevance 'bears the burden of demonstrating that the information sought is not reasonably relevant.'").

4

data for other drugs — in order to determine the "but-for" price of, and demand for, generic Ovcon.[3]

In support of their argument that discovery of sales and pricing data should not be allowed, plaintiffs cite *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296 (D.D.C. 2000), in which this Court considered similar requests by a group of defendants for several direct-purchaser plaintiffs' sales data. As here, the defendants in *Vitamins* sought to compel the production of sales data to enable them to assess the amount of overcharges allegedly suffered by the plaintiffs. Though plaintiffs here claim otherwise, Chief Judge Hogan in that case concluded that the sales data were relevant to the issue of damages.[4] *Id.* at 301.

Plaintiffs, moreover, ignore other factors supporting the relevance of the sales data here. As an initial matter, plaintiffs can recover only if they first prove that they suffered an "overcharge" or some other cognizable antitrust injury. *See*, *e.g.*, *Hanover Shoe*, 392 U.S. at 494 (notwithstanding impermissibility of a "pass-on" defense, the plaintiff must still prove that it had been overcharged during the relevant period); *Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1306 (8th Cir. 1988). Plaintiffs' sales data are essential to any evaluation of plaintiffs' performance in the "but-for" world they propose and, by extension, the extent of any injury in the real world.

---

[3] According to plaintiffs' own expert economist, "One may develop the but-for world based upon empirical data from a comparable generic product, or a sampling of other branded drugs that have faced generic competition in the market." (Leitzinger Decl. at 31.)

[4] Though the court ultimately denied defendants' motion to compel, it did so because discovery "would impose an undue burden on plaintiffs and [] this burden outweighs any potential benefit defendants might yield from this data." *Id.* at 301. Two factors distinguish this case from *Vitamins* and warrant granting Barr's motion to compel. First, the scope of the information requested by Barr is much narrower than that requested by the *Vitamins* defendants. The *Vitamins* defendants requested sales information for thousands of different products, *id.* at 298-99; Barr has requested sales information for a limited number of drugs — drugs within the same therapeutic category. Consequently, the factor which led Judge Hogan to deny the *Vitamins* defendants' motion to compel is not present here. Further, as noted above, the Eleventh Circuit has since explicitly permitted the discovery of a direct purchaser's sales data. *See Valley Drug Co.*, 350 F.3d at 1190-91.

Further, it is not at all clear that the Meijer plaintiffs "seek only overcharge damages." (Meijer Opp'n at 15.) The Meijer plaintiffs allege in their Consolidated Amended Class Action Complaint that "[m]embers of the Class have sustained substantial losses and damage to their business and property in the form of overcharges, *among other things*." (Meijer Consol. Am. Compl. ¶ 81 (emphasis added).) Barr should therefore be allowed to discover plaintiffs' sales and pricing data in the event that the Meijer plaintiffs claim damages based on lost profits or sales.

      **B.**    **Plaintiffs' Sales and Pricing Data Are Relevant And Discoverable Under The Cost-Plus Exception To *Hanover Shoe*.**

*Hanover Shoe* explicitly allows a manufacturer to raise a "pass-on" defense where a direct purchaser sells the product at issue through "cost-plus" sales — *i.e.*, where a direct purchaser's pricing of the product is determined by its cost from the manufacturer plus a set additional amount. *See Hanover Shoe*, 392 U.S. at 494; *see also Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977).

The Meijer and Walgreen plaintiffs argue, for different reasons, that the cost-plus exception to *Hanover Shoe* does not apply here. Neither argument has merit. The Meijer plaintiffs claim, without support, that the cost-plus exception is "theoretical" and "vanishing." (*See* Meijer Opp'n at 19-20.) However, the primary case cited by the Meijer plaintiffs to support this tenuous proposition, *Kansas v. Utilicorp United*, 497 U.S. 199 (1990), did not even involve a cost-plus contract. *Id*. at 217-18. In fact, the court in *Utilicorp* explicitly recognized the continuing viability of the cost-plus exception. *Id.*

The Walgreen plaintiffs argue, also without support, that the cost-plus exception does not apply where a retailer sells a product to an indirect purchaser.[5] (Walgreen Opp'n at 5.) Plaintiffs may not limit discovery based upon their unsupported representation that the cost-plus exception does not apply. Nor is Barr required to accept plaintiffs' conclusory assertion that one of its potential legal defenses is not applicable. The Federal Rules of Civil Procedure simply do not permit this type of unilateral limitation on discovery of a party's potential defense.

In short, Barr should be allowed to discover plaintiffs' sales and pricing data in order to determine whether plaintiffs sell Ovcon on a cost-plus basis to indirect purchasers. Such discovery would permit Barr to assess whether, under the clear authority of *Hanover Shoe*, it is entitled to raise a pass-on defense to plaintiffs' claims.

**C.     Plaintiffs' Sales And Pricing Data Are Relevant To The Indirect Purchaser Plaintiffs' Claims And Should Be Produced.**

The Meijer and Walgreen plaintiffs concede that the sales and pricing data requested by Barr are relevant to the claims of other classes of plaintiffs in this coordinated proceeding. (*See* Meijer Opp'n at 22-23; Walgreen Opp'n at 6.) As noted in Barr's motion to compel, the "Indirect Purchaser Plaintiffs" are consumers and third party payors who allege that they have been damaged by paying too much for Ovcon. *Hanover Shoe* does not apply to claims brought by indirect purchasers. Therefore, plaintiffs cannot reasonably claim that *Hanover Shoe* disallows discovery of the sales and pricing data at issue here, in this coordinated proceeding.

Because the sales and pricing data are directly relevant to Barr's defenses and the issues of this case, Barr's motion to compel should be granted.

---

[5]   Plaintiffs claim that "selling 'at a fixed markup' has literally nothing to do with the stringent requirements of the cost-plus exception . . . ." (Walgreen Opp'n at 5.) To support this proposition, plaintiffs cite *Illinois Brick*, which they read far too broadly. *Illinois Brick* held only that the cost-plus exception does not apply where a contractor adds a fixed percentage markup to the cost of his materials in submitting bids. *See Illinois Brick*, 431 U.S. at 743-44.

## II. PLAINTIFFS HAVE NOT SHOWN THAT PRODUCTION OF THEIR SALES AND PRICING DATA WOULD BE SO BURDENSOME THAT SUCH DATA SHOULD NOT BE PRODUCED.

The Meijer and Walgreen plaintiffs claim that responding to Barr's discovery requests would prove unduly oppressive, requiring their employees to expend "literally hundreds of hours" sorting through "millions of pages of documents" that would "disrupt Plaintiffs' day-to-day business operations for weeks." (Meijer Opp'n at 11-12.)  Plaintiffs bear the burden of proving that responding to Barr's discovery requests would prove unduly burdensome.  *See United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C. 1981) (the burden of proving good cause for a protective order requires a "particular and ***specific demonstration of fact***, as distinguished from stereotyped and conclusory statements . . . .") (emphasis added); *see also Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996); *cf. Panola Land Buyers' Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (the burden of proving good cause for a protective order is not met by "the recitation of expense and burdensomeness [which] are merely conclusory" statements).  Indeed, plaintiffs' burden is a heavy one.  That discovery would be burdensome and expensive is not, standing alone, a valid basis for refusing to order discovery where discovery is otherwise appropriate.  *See In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 426 (N.D. Ill. 1977).  Particularly where, as here, plaintiffs concede the relevance of the information requested to the issue of damages, plaintiffs cannot avoid production by simply offering unsupported, conclusory statements regarding the alleged burden of responding to Barr's discovery requests.[6]

---

[6] The Meijer plaintiffs reference three letters submitted by the direct purchaser plaintiffs in an antitrust case currently pending in the United States District Court for the District of Delaware, *In re Tricor Direct Purchaser Antitrust Litig.*, No. 1:05-CV-00340-KAJ ("*Tricor*").  Plaintiffs' reason for citing these letters is not clear.  Though the *Tricor* plaintiffs argued that compliance with similar requests for sales and pricing data would prove unduly burdensome, this was not the court's basis for denying discovery.  (*See* Meijer Opp'n Ex. E at 34-35.)  Rather, the court concluded that the specific information requested by the *Tricor* defendants was not relevant to any matter at issue in the litigation.  *Id*.

Plaintiffs' claim that production here would be overly burdensome is based on a misrepresentation of the scope of Barr's discovery requests. In their brief, the Meijer plaintiffs cite three of Barr's allegedly burdensome document requests. Two of these three requests seek documents regarding *only* Ovcon. Plaintiffs distort the scope of the third request, Barr Document Request No. 6, claiming that it seeks "what would amount to every scrap of paper and all electronic data related to all of Plaintiffs' sales of all contraceptive products to all of its downstream customers . . . ." (Meijer Opp'n at 11.) By its plain language, however, this document request seeks only documents related to how plaintiffs decide which contraceptives to sell and how to price them. This request *does not* seek purchase orders, invoices, receipts, and the like.

Plaintiffs also half-heartedly claim that they need not produce their sales and pricing data because "extensive information concerning national, market-wide sales of Ovcon . . . is available to defendants from subscription services such as IMS . . . ." (Meijer Opp'n at 12.) Even if Barr were to accept plaintiffs' arguments that the information it has requested is the same as that available from IMS or other third parties (which it does not), this is not a valid reason to deny Barr's motion to compel. *See Fort Washington Res., Inc. v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994) (defendant had to produce requested documents regardless of the fact that the same documents were either in the plaintiff's possession or readily accessible to the plaintiff). Plaintiffs must prove that the "unreasonably cumulative or duplicative" data obtainable from the third party is "more convenient, less burdensome, or less expensive" than it would be for plaintiffs to produce such information. *See* Fed. R. Civ. P. 26(b)(2)(i). Plaintiffs have not offered anything more than conclusory statements on this point.

Finally, plaintiffs claim that they need not produce sales and pricing information relevant to the claims of the Indirect Purchaser Plaintiffs because production of such information would be "extremely expensive and disruptive to Plaintiffs' businesses." (Meijer Opp'n at 22.) Plaintiffs cite *In re Vitamins* as their sole support for this argument, the relevant facts of which are easily distinguishable from those at issue here. Defendants in *Vitamins* sought to compel the production of sales data regarding "thousands of different products" sold by plaintiffs, data which would consist of "literally every document relating to the businesses of the plaintiffs selling those products." *In re Vitamins*, 198 F.R.D. at 298-99. Barr seeks the production of sales and pricing data for only Ovcon and drugs within the same therapeutic category, Combined Hormonal Contraceptives. Plaintiffs have not and cannot reasonably claim that the minor imposition created by Barr's discovery requests at all approaches that faced by the *Vitamins* plaintiffs.

Because plaintiffs have not met their burden of proving that the production of the sales and pricing data requested by Barr would prove unduly burdensome, Barr's motion to compel should be granted.[7]

---

[7] The Walgreen plaintiffs attempt to bolster their claim that production would be too burdensome by asserting that they are "prohibited by federal law from producing data that identifies individual patients or consumers." (Walgreen Opp'n at 7.) But Barr has *not* requested *any* information about patients or consumers; rather, it has requested only sales and pricing data. Thus, plaintiffs' bald assertion is simply wrong.

**CONCLUSION**

For all of the foregoing reasons, Barr respectfully requests that the Court order the Meijer plaintiffs to produce documents responsive to Barr's Document Request Numbers 2, 3, 4, 6, 9, 10, 12, and 16, and Interrogatory Numbers 2, 4, 5, 6, and 7. Barr further requests that the Court order the Walgreen plaintiffs to produce documents responsive to Barr's Document Request Numbers 2, 4, 6, 9, 10, and 16, and Interrogatory Numbers 2, 4, 5, 6, and 7.

Date: October 10, 2006                               Respectfully submitted,


                                                     ____/s/ Chong S. Park_____
                                                     Karen N. Walker (D.C. Bar # 412137)
                                                     Mark L. Kovner (D.C. Bar # 430431)
                                                     Chong S. Park (D.C. Bar # 463050)
                                                     Patrick M. Bryan (D.C. Bar # 490177)
                                                     KIRKLAND & ELLIS LLP
                                                     655 Fifteenth Street, N.W.
                                                     Washington, D.C. 20005
                                                     Tel. (202) 879-5000
                                                     Fax (202) 879-5200

                                                     *Counsel for Barr Pharmaceuticals, Inc.*