IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., MEIJER DISTRIBUTION, INC., LOUISIANA WHOLESALE DRUG CO., INC., ROCHESTER DRUG CO-OPERATIVE, INC., AMERICAN SALES COMPANY, INC., SAJ DISTRIBUTORS, INC., and STEPHEN L. LaFRANCE HOLDINGS, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC.,<br><br>Defendants. | No. 05 Civ. 2195 (CKK) |

**DIRECT PURCHASER CLASS PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO STRIKE REFERENCES TO
THE EXPERT REPORT OF DR. JEFFREY J. LEITZINGER
<u>IN PLAINTIFFS' CLASS REPLY PAPERS</u>**

COUNSEL LISTED ON SIGNATURE PAGE

**Dated: June 25, 2007**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. ii

SUMMARY OF ARGUMENT ................................................. 1

BACKGROUND ............................................................ 4

ARGUMENT .............................................................. 5

    A.    Defendants Have Cited No Evidence of Prejudice or Impropriety ...... 5

    B.    Plaintiffs' Citations to Dr. Leitzinger's Merits Report Are Clearly Probative of Class Certification, But Go Well Beyond the Legal Requirements ............................................... 11

    C.    The Requested Relief is Unnecessary and Unfair, and Would Needlessly Consume Party and Judicial Resources ........................ 13

CONCLUSION ........................................................... 15

# TABLE OF AUTHORITIES

*In re Buspirone Patent & Antitrust Litigation*, 210 F.R.D. 43
   (S.D.N.Y. 2002) .................................................. 2, 5-6, 10

*In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297
   (E.D. Mich. 2001) .............................................. 3, 5-6, 10, 12

*Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19 (3rd Cir. 1984) ................ 13

*Heatherly v. Zimmerman*, 15 F.3d 1159 (D.C. Cir. 1994) ....................... 13

*In re Linerboard Antitrust Litigation*, 203 F.R.D. 197 (E.D. Pa. 2001) ............ 3-4

*In re Lorazepam & Clorazepate Antitrust Litigation*, 202 F.R.D. 12
   (D.D.C. 2001) .................................................... 3, 5, 12

*Minebea Co., Ltd. v. Papst*, 231 F.R.D.3 (D.D.C. 2005) ........................ 14

*In re NASDAQ Market Makers Antitrust Litigation*, 169 F.R.D. 493
   (S.D.N.Y. 1996) ...................................................... 12

*In re Relafen Antitrust Litigation*, 218 F.R.D. 337 (D. Mass. 2003) ........... 5-6, 10

*Skogen v. Dow Chemical Co.*, 375 F.2d 692 (8th Cir. 1967) ..................... 13

## I. <u>SUMMARY OF ARGUMENT</u>

The Direct Purchaser Class Plaintiffs ("Plaintiffs") oppose Defendants' motion to strike references to the May 18, 2007 expert report of economist Jeffrey J. Leitzinger, Ph.D. ("Leitzinger Report" or the "Report") in Plaintiffs' class reply papers. Plaintiffs also oppose Defendants' request for alternative relief – a proposed sur-reply brief and/or sur-reply expert report – either of which would needlessly multiply judicial proceedings and delay the court's class certification determination. The motion is frivolous and the relief requested inefficient, unwarranted, and unprecedented.

*First*, contrary to Defendants' hollow assertions, Plaintiffs have *not* submitted "previously undisclosed" or "new" arguments or categories of evidence to the Court by citing to portions of Dr. Leitzinger's Report on the merits of the case in Plaintiffs' class reply papers. In his initial March 12, 2007 Declaration in support of class certification ("Leitzinger Declaration" or the "Declaration"), Dr. Leitzinger identified the methodology and common evidence that he would use to (a) assess the antitrust impact of defendants' alleged anti-competitive agreement on members of the proposed class; and (b) compute aggregate classwide damages. Dr. Leitzinger's May 18th Report, in turn, describes the results obtained by implementing analyses based on the exact same sources of classwide evidence of impact and damages and the same methods that Dr. Leitzinger previously identified in his earlier Declaration. In other words, the challenged citations simply amplify and put into practice the common evidence and methodology that Plaintiffs had *previously fully identified* in their opening class brief and in Dr. Leitzinger's initial Declaration.

Defendants' motion should therefore be denied as it is based entirely on the incorrect notion that Plaintiffs cited new pieces of common evidence of classwide impact, or new methods for computing class damages from the Report that did not previously appear in the earlier Declaration.

**Yet, Defendants do not point to *a single piece* of actual *new* evidence or any *new* methodology in the supposedly offending citations to Dr. Leitzinger's Report.**

The relevant distinctions between Dr. Leitzinger's March 12, 2007 Declaration and his May 18, 2007 Report (on the merits) relate to the different purposes served by each respective report – *not the evidence or methods discussed* which are neither new nor inconsistent. The Declaration, which was submitted for class purposes only, set out the categories of common evidence and mode of analysis Dr. Leitzinger expected that he would use to assess classwide impact – *i.e.*, the common methods of proof used to show that delaying generic entry caused class members to pay more for Ovcon-35 products than they otherwise would have paid. The Report, which was submitted for trial purposes, used the very same common evidence of impact and analytical methods laid out in full in the Declaration to reach conclusions on the merits about injury to the class members. The Report also uses the same damages methodology set out in the Declaration to compute aggregate classwide damages. Thus, any differences between the two documents has to do with their different purposes – *not* the evidence or methods they each disclose. Nothing in Defendants' motion refutes this point – nor can it be refuted – as any side-by-side analysis of the two documents would clearly reveal.

Furthermore, Dr. Leitzinger is not blazing a new trail in this case. As his Declaration and Report both fully disclose and amplify, Dr. Leitzinger is employing here the same categories of common economic evidence and same essential methods for assessing impact and damages that he has used on behalf of similar direct purchaser classes in several analogous cases involving materially similar assessments of delayed generic entry on classes of wholesalers and retailers. *See Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43, 60 (S.D.N.Y. 2002) (*"Buspirone"*) (certifying direct purchaser class alleging antitrust injury in the form of overcharges resulting from impeded entry of

generic drugs based on the same proposed methodology for assessing antitrust impact and overcharge damages for the class); *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297, 326 (E.D. Mich. 2001) ("*Cardizem*") (same); *In re Relafen Antitrust Litig.,* 218 F.R.D. 337, 348 (D. Mass. 2003) (*"Relafen"*) (same); *see also In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12, 21 (D.D.C. 2001) ("*Lorazepam*") (same). Oddly enough, Defendants chose in the class opposition to *completely ignore* these relevant judicial decisions that are indisputably directly on point – just as here, they have failed to provide any evidence in support of the instant motion.[1]

***Second***, Defendants' assertion that Plaintiffs opening class papers were somehow deficient because they did not contain "actual calculations of impact and damages" is simply wrong as a matter of long settled class action jurisprudence. As Chief Judge Hogan held in certifying a direct purchaser class in a similar case involving a scheme to delay generic entry, at the class certification stage "plaintiffs do not have to actually prove the injury . . . rather they must demonstrate that their attempt to evidence impact will involve common issues that predominate." *Lorazepam,* 202 F.R.D. 12, 29-30 (D.D.C. 2001); *see also In re Linerboard Antitrust Litig.,* 203 F.R.D. 197, 220 (E.D. Pa.

---

[1] Moreover, Defendants have no basis for complaint that they did not have an opportunity to assess and evaluate Dr. Leitzinger's common evidence and methods in this case. Not only were they disclosed in the Declaration, the same evidence and methods for assessing impact to purchasers from manufacturers' efforts to delay the entry of less expensive generic drugs are well known and well understood to Defendants themselves. Indeed, the Defendants used an approach like the one Dr. Leitzinger used to evaluate the potential success of their scheme in this case. *See* Leitzinger Report at 23-27. Branded pharmaceutical manufacturers often seek to delay the entry of cheaper generic rivals – sometimes using legal means and sometimes, as here, not. But, it can hardly be disputed that such delay causes direct purchasers, such as class members in this case, to pay more for the drug product at issue. And, as pointed out in Dr. Leitzinger's Class Certification Rebuttal Declaration of May 21, 2007, Defendants' own expert has agreed with Dr. Leitzinger on key aspects of Dr. Leitzinger's common impact analysis. *See* Direct Purchaser Class Plaintiffs' Reply Brief in Further Support of their Motion for Class Certification ("Class Reply") at 10-12.

2001) (same); *Cardizem*, 200 F.R.D. at 307 (same). Plaintiffs have most assuredly met their burden on this point, well prior to serving their class rebuttal papers. The opening papers and Declaration fully set out the common evidence and common methods to assess impact and damages to class members in this case. Nevertheless, there is absolutely no reason why Dr. Leitzinger's Report should be ignored if it is helpful to the Court -- just like any other record evidence produced or developed in this case.

*Third*, Defendants' Motion to Strike impermissibly seeks to thwart both the Local Rules of this Court and this Court's scheduling Order -- both of which provide that the moving party is entitled to the final brief on their own motion. Defendants' motion seeks to recast and rewrite Plaintiffs class reply papers, or, in the alternative, file additional briefs and reports on class certification. Not only are Defendants not entitled to the "last word" on Plaintiffs' motion, but Defendants have not provided a single reason why additional briefing or expert analysis on class issues, which would burden both the parties, their experts, and the Court, is necessary or warranted. Respectfully, should the Court wish to hear further from the parties on their views of the respective evidence and law in the record, we are certain that both sides would stand ready to appear for oral argument on class certification. For all of these reasons, Defendants' Motion to Strike should be denied.

## BACKGROUND

Plaintiffs are wholesalers and retailers of pharmaceutical products who filed this antitrust action on behalf of themselves and a proposed class of similarly situated entities that purchase the oral contraceptive Ovcon 35 directly from defendant Warner Chilcott Corp. ("Warner Chilcott"). Plaintiffs allege that, in violation of federal antitrust laws, Warner Chilcott paid defendant Barr

Pharmaceuticals, Inc. ("Barr") not to sell a competing, generic version of Ovcon 35. Plaintiffs allege that Defendants' conspiracy artificially inflated the price of the drug compound, forcing direct purchasers to pay higher prices for Ovcon 35 products than they would have paid, had generic versions been sold. As in several prior direct purchaser actions challenging efforts to impede generic competition, the direct purchaser plaintiffs here seek damages in the form of the overcharges (trebled) they paid, and continue to pay for, Ovcon 35 products due to the challenged conduct in restraint of trade.[2]

## ARGUMENT

### A.   Defendants Have Cited No Evidence of Prejudice or Impropriety

Defendants imply that Dr. Leitzinger's and the Plaintiffs' citations to Dr. Leitzinger's May 18, 2007 Report were, in some way, nefarious and prejudicial. Neither is the case.

Plaintiffs and Dr. Leitzinger fully disclosed all relevant citations, common evidence, and methodologies to the other side in their opening class papers. *Plaintiffs' rebuttal papers reveal that they are relying on the very same common evidence and methods to prove classwide impact and aggregate class damages that they disclosed in their opening papers – and, tellingly, Defendants do not claim otherwise.* Here is how Plaintiffs described Dr. Leitzinger's approach in the introduction to their opening class motion:

> Similarly, just as in *Relafen*, *Cardizem*, *Buspirone* and *Lorazepam*, Plaintiffs have met their burden on class certification as to injury or fact of impact: proof of antitrust injury, or fact of impact, will be demonstrated here by common, class-wide

---

[2]Overcharges are recoverable where, as here, Defendants conspire to exclude a cheaper competing product for a period of time. Evidence that class members would have purchased some amount of the lower-priced generic Ovcon 35 and/or discounted brand-name Ovcon 35 had generic Ovcon 35 been available is proof that the direct purchasers paid overcharges, and thus incurred antitrust injury. *Relafen*, 218 F.R.D. at 344; *Cardizem*, 200 F.R.D. at 309-14.

> evidence. Among other things, Plaintiffs have submitted an expert declaration by a noted economist, Jeffrey J. Leitzinger, Ph.D., who has extensive experience analyzing economic impact and damages in antitrust drug cases generally, and *specifically* in the delayed generic entry antitrust cases discussed above (among other similar pending actions), in which district courts have certified classes of direct purchasers of brand-name prescription drugs. *See Declaration of Jeffrey J. Leitzinger, Ph.D. ("Leitzinger Decl.")* (Exh. A in accompanying volume of exhibits) at 2-4 and Exh. 1. Dr. Leitzinger concludes, among other things, that the same type of common evidence that other courts deemed suitable and sufficient for class certification purposes in directly analogous cases is available here. *Leitzinger Decl.* at 9, 16-30. *See, e.g., Cardizem*, 200 F.R.D. at 308; *Buspirone*, 210 F.R.D. at 58; *Relafen*, 218 F.R.D. at 344.

Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification at 4-5.

Dr. Leitzinger explained in his Declaration that, based on his extensive experience in similar antitrust pharmaceutical cases and in the pharmaceutical economics area generally, he would assess direct purchaser classwide impact and compute aggregate class damages from Defendants' illegal agreement to delay market entry of generic Ovcon 35 using only common evidence that would be applicable to all direct purchasers. Class Decl. at 7-8. Thus, he opined that in this case -- like numerous other antitrust cases filed by direct purchasers of pharmaceuticals -- calculating aggregate overcharges for a class of direct purchasers could be based on a classwide formula that does not require individualized inquiry as to each class member. *Id.* at 8; *see also Cardizem*, 200 F.R.D. at 308-09; *Relafen*, 218 F.R.D. at 343-344; *Buspirone*, 210 F.R.D. at 58.

In his initial Class Declaration, Dr. Leitzinger also opined that he would not need to perform an individualized inquiry of the circumstances of each separate class member in order to determine antitrust impact. Class Decl. at 9. Dr. Leitzinger explained that his analysis would rely upon three main sources of common evidence of impact of Defendants' efforts to delay generic entry: (1) the abundant economic literature, governmental studies, and published empirical evidence regarding the well-understood and pronounced marketwide effects of generic competition and of delaying or

-6-

blocking that competition (*id.* at 17-23); (2) Defendants' internal generic penetration models and forecasts projecting the effects of Defendants' own anticompetitive conduct (*id.* at 23-26); and (3) data reflecting the actual effects of generic competition and delayed generic competition (*id.* at 27). Dr. Leitzinger further set out the precise methodology he would use to measure aggregate overcharges to the class, explaining that it was a method he had developed and used – with the approval of many courts – in several prior analogous cases involving delayed generic entry and its effects on classes of direct purchasers. *Id.* at 31-32. Even a casual review of Plaintiffs' opening class papers will reveal extensive discussions of the types and nature and specifics of the abundant common evidence available to prove impact on class members in this case. *See* Direct Purchaser Class Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification at 24-28.

Furthermore, as he had done in other analogous cases, where similar classes of direct purchasers of pharmaceuticals have been certified, Dr. Leitzinger described in his initial Class Declaration the precise methodology he would use to calculate aggregate overcharge damages for the class. He explained that he would use several categories of common evidence of antitrust impact to develop a "benchmark for market performance" in the "but-for world" (the world as it would have existed had generic competition not been restrained by Defendants' illicit agreement). *Id.* at 31. Dr. Leitzinger then stated that he would use the following methodology to calculate the aggregate overcharge based on common evidence:

> [t]he sum of (1) the difference between the generic Ovcon 35 price Class members would have paid in the but-for world and the Ovcon 35 brand price actually paid by Class members, multiplied by the volume of generic substitution by the Class that was forestalled by the impairment of generic competition; (2) the difference between the discounted brand prices for Class members would have paid in the but-for world had generic competition not been restrained and the actual Ovcon 35 brand price actually paid by Class members, multiplied by the branded volumes the Class would have continued to purchase after generic entry into the market; and (3) the difference

between the but-for and actual generic Ovcon 35 prices multiplied by generic volume purchased.

Class Decl. at 32. All of the necessary evidence to be used, and all of this analysis of this evidence, was laid out in detail in Dr. Leitzinger's Declaration. There can be no dispute on that point. Moreover, as pointed out above, there is also no dispute that several courts, in viewing this *same basic evidence and analysis regarding the economic effects of delayed generic entry on classes of direct purchasers*, found these materials and analyses sufficient for class certification purposes. The fact is because the effects of generic competition in pharmaceutical markets are so well studied and understood, and the data and evidence so abundant, it is fairly straightforward to assess classwide impact in this case (as it was in prior cases).

On April 12, 2007, Defendants filed their Opposition to Plaintiffs' Motion for Class Certification. Defendants also submitted a declaration from their retained economist, Brian L. Palmer, Ph.D., in an attempt to refute Dr. Leitzinger. *See* Declaration of Brian L. Palmer, Ph.D., dated April 12, 2007.[3] Pertinent here, Dr. Palmer's 38-page report does not refute the central analytical framework Dr. Leitzinger described in his Declaration for measuring impact and damages to class members in this case. Dr. Palmer:

- conceded that generic drugs are typically sold at prices well below the corresponding brand and rapidly take sales directly from the brand (Palmer Deposition at 131-32);

- confirmed that it is appropriate as an economic matter to measure a portion of the overcharge as the difference between the price class members paid for the brand and the (lower) price class members would have paid for the generic had entry not been delayed (Palmer Deposition at 161).

---

[3]Attached as Exh. 3 to Defendants' Opposition to Class Certification.

-8-

*See* Plaintiffs' Class Reply at 3-4.[4] Thus, as Plaintiffs point out in their Class Reply, Dr. Palmer's own analysis confirms what Plaintiffs' common evidence shows: all or nearly all Class members pay less for a particular drug when generic versions of that drug enter, and thus suffer antitrust injury when that entry is delayed. In other words, Defendants themselves have effectively confirmed that predominantly classwide evidence is available to prove impact (in the form of overcharges) to all or nearly all class members. Given Defendants' admissions, and their prior failure to grapple with, let alone refute, the numerous cases directly on point, further briefing on class would be entirely futile.

In accordance with the Court's scheduling Order, on May 18, 2007, Plaintiffs' served Dr. Leitzinger's expert report on the merits of this case. In the Report, Dr. Leitzinger performed the very analysis that he described in detail in his initial, March 12, 2007 Class Declaration, utilizing the precise methodology and much of the very same common evidence he set forth in his earlier submission. Dr. Leitzinger explained that in conducting his analysis on the merits in this case he relied upon: (1) the economic literature and empirical evidence regarding the effects of generic competition (*id.* at 18-23); (2) Defendants' internal generic penetration models and forecasts (*id* at 23-26); and (3) data reflecting the actual effects of generic competition and of delayed generic entry. *Id.* at 26-27. These exact same categories of evidence and very same methodology had been set out in detail in his earlier Class Declaration. Dr. Leitzinger then calculated the aggregate damages to the class using the precise methodology he outlined in his initial Class Declaration with the very

---

[4] A compilation of excerpts from the Deposition of Brian Palmer of May 3, 2007 is attached to Plaintiffs' Class Reply as Exh. B.

same evidence he said would be available. *Id.* at 28-44. None of this is refuted by Defendants' motion.

Thus, the only material difference between the two Leitzinger submissions is that in his merits report, Dr. Leitzinger actually reached his conclusions about classwide antitrust impact, and performed the damages calculations, using the methods and evidence he laid out in detail in his Class Declaration. *See* Class Decl. at 2-4 (describing the methodology used in this case which mirrored that endorsed in *Relafen, Cardizem,* and *Buspirone,* all analogous cases in which class certification has been granted based, in part, on a similar analysis of class-wide evidence of delayed entry of generic competition).

On May 21, 2007, Plaintiffs filed their Reply in Further Support of their Motion for Class Certification. Plaintiffs submitted a rebuttal declaration concerning class certification issues from Dr. Leitzinger at that time. *See* Class Certification Rebuttal Declaration of Jeffrey J. Leitzinger, Ph.D., dated May 21, 2007 ("Rebuttal Decl."). In his Rebuttal Declaration, Dr. Leitzinger discussed and rebutted the assertions proffered in Dr. Palmer's declaration. Dr. Leitzinger explained:

> [h]aving now submitted an Expert Report containing both class-wide proof of antitrust injury and a class-wide calculation of aggregate overcharge damages, Dr. Palmer's claims about whether these analyses can be done on a class-wide basis have necessarily been superseded by the actual analyses and calculations in my Expert Report, which I incorporate herein and attach as Exhibit 3.

*Id.* at 2. Of course, the methods and evidence Dr. Leitzinger relied upon in his Report are the very same ones he laid out in his Class Declaration, which, in turn, are based on those relied upon by at least three Courts to certify analogous cases. *See generally Cardizem, Relafen,* and *Buspirone.* There is absolutely nothing improper or prejudicial in Dr. Leitzinger's Rebuttal Declaration or his Report. These documents simply note – as icing on the cake from a class

-10-

certification perspective – that not only are common evidence and methods *available* to assess classwide impact and compute aggregate class damages, but that Dr. Leitzinger has already *used* exactly that evidence and those methods in this case when he analyzed the merits of this case.

Defendants' claim that they were in any way prejudiced thus defies credibility. First, because Dr. Leitzinger indisputably detailed precisely the same evidence, methodology, and analysis in his opening Class Declaration, Defendants had every opportunity to question Dr. Leitzinger about those methods and common evidence during his deposition, and address the methodology and analysis in their opposition briefing and supporting papers. That they failed to refute the abundant common evidence of impact and distinguish the main analogous cases is not a reason to prejudicially sanction Plaintiffs or to allow further briefing on the subject. Second, as discussed below, the analysis in the Report, while fully supportive and probative of class certification, and may be helpful to the Court, is *unnecessary* for class certification.

### B. Plaintiffs' Citations to Dr. Leitzinger's Merits Report Are Clearly Probative of Class Certification, But Go Well Beyond the Legal Requirements

Defendants argue that Plaintiffs have the burden of showing class certification is appropriate in this case. Plaintiffs agree. That burden was met here through, *inter alia,* Dr. Leitzinger's initial Class Declaration (and opening class briefing), which specifically explained how common evidence and methods can form the basis for assessing classwide impact and for calculating aggregate damages to this class of direct purchasers. Indeed, as pointed out above, this very same basic evidence and analysis led several prior courts to certify analogous cases in delayed generic entry cases.

Defendants argue Plaintiffs' citations to Dr. Leitzinger's Report – which used the methodology disclosed in his earlier Class Declaration to assess classwide impact and actually

-11-

calculate aggregate damages (before automatic trebling under the antitrust laws) – somehow shows that Plaintiffs' *opening* class papers were deficient. This makes no sense. Defendants' argument is based on their implicit yet erroneous assertion that Plaintiffs were required to perform and cite to the Court an actual damage calculation in their opening class papers in order to establish class certification. Defendants also implicitly assume that all evidence that is probative on a motion (or a point) is also somehow necessary to win that motion or prove that point. Of course, neither of Defendants' rather novel assumptions or assertions is accurate; certainly no court has adopted them.

Plaintiffs were under no obligation to actually prove impact on the class or compute damages for purposes of class certification: Plaintiffs are simply required to show, at the class certification stage, that antitrust impact can be established through common proof, and that a colorable method for assessing classwide damages is available. In fact, in an analogous antitrust case involving similar allegations of antitrust violations in the pharmaceutical industry, this Court certified a class of direct purchaser plaintiffs based on their economic expert's report "detail[ing] the approach the plaintiffs *intend to take* with respect to analyzing impact." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. at 29-30 (emphasis added). Chief Judge Hogan explained that at the class certification stage "plaintiffs do not have to actually prove the injury . . . rather they must demonstrate that their attempt to evidence impact will involve common issues that predominate." *Id.; see also, e.g., Cardizem*, 200 F.R.D. at 308 (intention to prove antitrust impact and aggregate damages through common evidence sufficient to establish at class certification stage); *In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996).

Thus, proving classwide impact and successfully computing class wide damages is unnecessary at the class stage. Plaintiffs surely met their burden without the citations to the Report

in Plaintiffs' rebuttal papers. Nevertheless, the fact that the impact and damages analysis were actually carried out in this case, based on the evidence and methods disclosed in the Class Declaration, is certainly relevant to class certification. The Court should not be forced to ignore this record evidence in deciding the class certification motion, nor should the presence of expert reports on the merits be used to bootstrap multiplication of class certification proceedings unnecessarily.

### C. The Requested Relief is Unnecessary and Unfair, and Would Needlessly Consume Party and Judicial Resources

The relief Defendants seek: the striking of references to an expert's report in class certification briefing, or, alternatively, leave to file a sur-reply brief and additional expert report, is unprecedented, unwarranted, and extraordinary.

Defendants do not cite a single case that holds that it is improper for a plaintiff to cite an expert's report on the merits in class certification briefing, nor do they cite any cases in which material was struck from a rebuttal class certification brief or supporting declaration. Instead, the cases upon which Defendants rely (which were often quoted selectively and out of context) involve instances where parties were attempting to introduce testimony or evidence improperly at trial. *See Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 21 (3rd Cir. 1984) (in products liability action involving motorcycle accident, court did not abuse discretion by failing to admit during plaintiff's case-in-chief or rebuttal at trial, a video-tape that should have been listed as an exhibit on pretrial memorandum); *Skogen v. Dow Chemical Co.*, 375 F.2d 692, 705 (8th Cir. 1967) (*per curiam*)(in products liability case court did not abuse discretion in refusing to allow a rebuttal witness to testify at trial where the evidence was cumulative of testimony of two other expert witnesses and should have been offered in case-in-chief at trial); *Heatherly v. Zimmerman*, 15 F.3d 1159 (D.C. Cir. 1994) (trial court did not abuse discretion in limiting rebuttal to trial testimony that was not first presented

-13-

during defense case); *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (excluding from trial evidence supplemental expert report submitted one week before start of trial).

The Local Rules of this Court provide that a moving party is entitled to have the last word on its motions. *See* Rule 7 of the Rules of the United States District Court of the District of Columbia. Defendants' motion seeks, for no good reason, to turn this long-standing rule upside down. Plaintiffs submitted opening class papers with a lengthy, detailed, and extensively supportive expert Declaration. Defendants submitted an expert report in support of their opposition to class certification, and Plaintiffs have submitted rebuttal papers. Now, without actually showing any prejudice or describing in detail any "surprise" or newly disclosed evidence or analysis, Defendants want to pick and chose the record evidence that Plaintiffs are allowed to cite in their rebuttal. This is improper.

There is no reason why Plaintiffs should not be permitted to cite Dr. Leitzinger's Report, just as Plaintiffs are permitted to cite to all other record evidence in their Class Reply or other briefing in this matter. Moreover, allowing Defendants leave to file yet another brief and yet another report on class certification will needlessly multiply proceedings and unnecessarily consume judicial resources. Defendants have failed to point to any particular evidence or method that was not disclosed in Plaintiffs' opening class papers, and do not and cannot show prejudice unfairness or hardship. Defendants simply want another bite at the apple. They have failed to supply any justification for the extraordinary relief they are seeking.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order denying Defendants' Motion to Strike.

Dated: June 25, 2007

/s/
_____
William Isaacson (D.C. Bar No. 414788)
Tanya Chutkan (D.C. Bar No. 420478)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
(202) 237-2727
(202) 237-6131 (Fax)

Richard B. Drubel (D.C. Bar No. 334359)
Kimberly H. Schultz
BOIES, SCHILLER & FLEXNER LLP
26 S. Main Street
Hanover, NH 03755
(609) 643-9090
(609) 643-9010 (Fax)

Daniel Berger
Eric L. Cramer
Ellen T. Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (Fax)

Linda P. Nussbaum (D.C. Bar No. 483254)
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
(212) 687-1980
(212) 687-7714 (Fax)

Bruce E. Gerstein
Barry S. Taus
Kevin S. Landau

GARWIN GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10011
(212) 398-0055
(212) 764-6620 (Fax)

Thomas M. Sobol
HAGENS BERMAN SOBOL
  & SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142
(617) 482-3700

Dianne M. Nast
RODA NAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200

*Executive Committee for Direct Purchaser Class Plaintiffs*