# EXHIBIT E

1

1    IN THE UNITED STATES DISTRICT COURT
2       FOR THE DISTRICT OF COLUMBIA
3
4   - - - - - - - - - - - - - - -
5   MEIJER, INC., et al.,        )
6          Plaintiffs,    )
7                      ) CASE NO.
8   vs.              ) 1:05-CV-02195-CKK
9                      )
10  WARNER CHILCOTT HOLDINGS      )
11  COMPANY, et al.,          )
12         Defendants.    )
13  - - - - - - - - - - - - - - -
14
15          HIGHLY CONFIDENTIAL
16      DEPOSITION OF SAUL D. FACTOR
17        FRIDAY, JUNE 15, 2007
18
19
20
21
22      BY:  MELINDA M. IBANEZ, CSR NO. 10686, CRP
23
24
25

2

1
2
3
4
5
6
7
8
9    Deposition of SAUL D. FACTOR, taken on behalf of
10  DEFENDANT BARR PHARMACEUTICALS, at 505 Montgomery
11  Street, Suite 1900, San Francisco, California,
12  commencing at 1:58 p.m., FRIDAY, JUNE 15, 2007,
13  before Melinda M. Ibanez, Certified Shorthand
14  Reporter No. 10686, pursuant to Notice.
15
16
17
18
19
20
21
22
23
24
25

3

1   APPEARANCES OF COUNSEL:
2   FOR MEIJER PLAINTIFFS:
3       BERGER & MONTAGUE, P.C.
4       BY:  ERIC L. CRAMER, ATTORNEY AT LAW
5       1622 Locust Street
6       Philadelphia, Pennsylvania 19103-6305
7       Telephone:  (215) 875-3000
8
9   FOR PLAINTIFFS RITE AID and CVS (APPEARED
10  TELEPHONICALLY):
11      HANGLEY ARONCHICK SEGAL & PUDLIN
12      BY:  MONICA REBUCK, ATTORNEY AT LAW
13      30 North Third Street, Suite 700
14      Harrisburg, Pennsylvania 17101
15      Telephone:  (717) 364-1007
16
17  FOR DEFENDANT BARR PHARMACEUTICALS:
18      KIRKLAND & ELLIS LLP
19      BY:  PATRICK M. BRYAN, ATTORNEY AT LAW
20      655 Fifteenth Street, N.W.
21      Washington, D.C. 20005
22      Telephone:  (202) 879-5285
23
24
25

4

1   APPEARANCES OF COUNSEL (CONTINUED):
2   FOR DEFENDANT WARNER CHILCOTT HOLDINGS COMPANY:
3       SIMPSON THACHER & BARTLETT LLP
4       BY:  JASON L. BATES, ATTORNEY AT LAW
5       425 Lexington Avenue
6       New York, New York 10017-3954
7
8   FOR THE WITNESS:
9       LATHAM & WATKINS LLP
10      BY:  PETER K. HUSTON, ATTORNEY AT LAW
11      505 Montgomery Street, Suite 1900
12      San Francisco, California 94111-2562
13      Telephone:  (415) 391-0600
14
15
16
17
18
19
20
21
22
23
24
25

5

1                     INDEX
2  FRIDAY, JUNE 15, 2007
3  SAUL D. FACTOR                          Page
4    Examination by MR. BRYAN              8
5    Examination by MR. CRAMER            65
6    Further examination by MR. BRYAN      66
7
8                      -oOo-
9
10    QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:
11              PAGE  LINE
12                None.
13
14
15
16
17
18
19
20
21
22
23
24
25

6

1                   EXHIBITS
2  Number          Description          Page
3  1  Document entitled "DECLARATION OF SAUL D.
4     FACTOR" - 4 pages                    7
5
6  2  Document entitled "Supply Agreement
7     STEPHEN L. LaFRANCE HOLDINGS, INC. and
8     McKESSON CORPORATION" - 24 pages      26
9
10 3  Document entitled "AGREEMENT FOR ASSIGNMENT
11    OF CLAIMS" - 2 pages                 31
12
13
14
15
16
17
18
19
20
21
22
23
24
25

7

1         FRIDAY, JUNE 15, 2007; 1:58 P.M.
2
3         (Exhibit No. 1 was marked for
4    identification.)
5
6    MR. BRYAN:  Good afternoon, Mr. Factor.
7         Before we get started, just for the sake of
8  the record, could we have all attorneys identify
9  themselves.
10        I'm Patrick Bryan, Kirkland & Ellis, on
11 behalf of Defendant Barr Pharmaceuticals.
12    MR. BATES:  Jason Bates from Simpson Thacher &
13 Bartlett on behalf of Warner Chilcott.
14    MR. HUSTON:  Peter Huston of Latham & Watkins on
15 behalf of the witness.
16    MR. CRAMER:  Eric Cramer, Berger & Montague in
17 Philadelphia, on behalf of the Meijer Plaintiffs,
18 also known as the Direct Purchaser Class Plaintiffs.
19    MS. REBUCK:  And, on the phone, Monica Rebuck on
20 behalf of Plaintiffs Rite Aid and CVS.
21
22
23
24
25

8

1              SAUL D. FACTOR,
2  having been first duly sworn, testified as follows:
3
4               EXAMINATION
5  BY MR. BRYAN:
6    Q.  Mr. Factor, you submitted a declaration in
7  support of the Meijer Plaintiffs motion for class
8  certification; is that correct?
9    A.  May I review it?
10   Q.  Certainly.
11   A.  Thank you.
12   Q.  I'm handing you what's been premarked as
13 Deposition Exhibit Number 1.
14   A.  Thank you.
15   Q.  Please take a look.
16   A.  (Witness reviewing document.)
17   Q.  Is Deposition Exhibit 1 a copy of the
18 declaration that you submitted on behalf of the
19 Meijer Plaintiffs motion for class certification,
20 sir?
21   A.  Yes, it is.
22   Q.  Okay.  And can you tell me the circumstances
23 under which you were asked to provide a declaration.
24   MR. HUSTON:  Objection, vague and ambiguous.
25   MR. CRAMER:  Join.

9

1    THE WITNESS:  I was called by our law -- the
2  McKesson law department regarding this matter and
3  asked to review and, if accurate, sign the
4  declaration.
5  BY MR. BRYAN:
6    Q.  When were you called by the law department?
7    A.  Approximately one week before I signed the
8  declaration.
9    Q.  And who contacted you?
10    A.  Rich Ardoin.
11    (Reporter interruption.)
12    THE WITNESS:  A-r-d-o-i-n, I believe.
13  BY MR. BRYAN:
14    Q.  At that time Mr. Ardoin described the nature
15  of the case?
16    A.  Yes, he did.
17    Q.  What else did Mr. Ardoin describe about
18  purposes of the declaration in this case?
19    A.  He described that --
20    MR. HUSTON:  Actually, hold on.
21    I'm a little concerned that that gets into a
22  privileged communication, so maybe you can pose
23  another question.  But that sounds like it calls for,
24  you know, attorney-client communication.
25    MR. BRYAN:  Let me try to rephrase.

10

1    Q.  You said it was approximately a week before
2  you signed the declaration that you spoke to
3  Mr. Ardoin?
4    A.  That is correct.
5    Q.  And what date did you sign the declaration?
6    A.  On May 21st.
7    Q.  Okay.  So approximately May 14th you
8  talked to Mr. Ardoin about submitting a declaration
9  in this case; is that right?
10    A.  That is correct.
11    Q.  And at that time did you receive a copy of
12  the declaration?
13    A.  Yes, I did.
14    Q.  Okay.  So you didn't draft this declaration,
15  Deposition Exhibit Number 1?
16    A.  No, I did not.
17    Q.  And am I correct that Mr. Ardoin gave you a
18  copy of the declaration for you to sign?
19    A.  Yes, he did.
20    Q.  And he did that on approximately May 14th?
21    A.  That is correct.
22    Q.  Between May 14th and May 21st did you
23  conduct any investigation regarding any of the claims
24  in the declaration?
25    MR. HUSTON:  Objection, vague and ambiguous.

11

1    MR. CRAMER:  Join.
2    MR. HUSTON:  And overbroad.
3    THE WITNESS:  No, I did not.
4  BY MR. BRYAN:
5    Q.  Other than the conversation that you had
6  with Mr. Ardoin approximately May 14th, did you have
7  any other conversations with him between the first
8  conversation and the day that you signed the
9  declaration?
10    A.  No, I did not.
11    Q.  And did you make any changes to the
12  declaration as it was first presented to you?
13    A.  No, I did not.
14    Q.  What is your position at McKesson
15  Corporation?
16    A.  I'm the senior vice president of product
17  management for generics.
18    Q.  And what do you do as senior vice president
19  for product management?
20    A.  I have responsibility for all generic
21  activities at McKesson.
22    Q.  Does that include negotiating contracts with
23  McKesson's customers?
24    A.  No, it does not.
25    Q.  Does it include setting pricing for generics

12

1  for McKesson?
2    A.  Could you be more clear on your question,
3  please.
4    Q.  Do you have any responsibility to set the
5  price at which McKesson resells generics?
6    MR. HUSTON:  Object to the question to the extent
7  it leads to downstream discovery.
8    MR. CRAMER:  Join.
9    THE WITNESS:  Yes, I do.
10  BY MR. BRYAN:
11    Q.  Can you describe for me generally what your
12  responsibility is with respect to generic pricing.
13    A.  I set the base price for generics for
14  McKesson customers.
15    Q.  What do you mean by base price?
16    A.  If you will, the book price of generics.
17    Q.  By book price, is that -- would it be fair
18  to characterize that as a list price?
19    MR. HUSTON:  Objection, vague and ambiguous.
20    THE WITNESS:  Yes, it would.
21  BY MR. BRYAN:
22    Q.  How do you set the book price for generic,
23  generally?
24    MR. CRAMER:  Objection.
25    THE WITNESS:  It's based on market demands and

13

1 market pricing.
2 BY MR. BRYAN:
3     Q.  Is a component of market pricing the price
4 at which -- or the cost at which McKesson purchases
5 the product?
6     A.  No, it is not.
7     Q.  Does McKesson sell generic pharmaceuticals
8 at WAC plus or minus fixed markup?
9     MR. CRAMER:  Objection, calls for downstream.
10    MR. HUSTON:  Join.  No, we do not.
11 BY MR. BRYAN:
12    Q.  What about branded pharmaceuticals?  Are you
13 aware whether or not branded pharmaceuticals are
14 priced by McKesson at WAC plus or minus fixed markup?
15    MR. HUSTON:  Objection, downstream.
16    MR. CRAMER:  Join.
17    THE WITNESS:  That is outside my area of
18 expertise.
19 BY MR. BRYAN:
20    Q.  Do you have any knowledge about brand
21 pricing at McKesson?
22    MR. HUSTON:  Objection, vague and ambiguous.
23    THE WITNESS:  Yes, I do.
24 BY MR. BRYAN:
25    Q.  And although it's not your specific area of

14

1 expertise, are you familiar at all with McKesson
2 pricing brand pharmaceutical products at WAC plus or
3 minus a fixed markup?
4     MR. HUSTON:  Objection, this is downstream
5 discovery, clearly irrelevant to this case.
6     MR. CRAMER:  Join.
7     THE WITNESS:  We do price on volume -- on
8 volume-based differences of cost of goods.
9 BY MR. BRYAN:
10    Q.  And in that regard does McKesson at times
11 price at WAC plus or minus a fixed markup?
12    A.  Based on volume, yes.
13    Q.  And by "Based on volume," do you mean the
14 more a customer purchases the lower the markup would
15 be?
16    MR. HUSTON:  Objection, downstream discovery.
17    MR. CRAMER:  Join.
18    THE WITNESS:  Yes.  The larger the volume of
19 purchases, typically the larger the discount.
20 BY MR. BRYAN:
21    Q.  Do you know who drafted declaration -- your
22 declaration, Deposition Exhibit 1?
23    A.  No, I do not.
24    Q.  Now, when you signed the Deposition
25 Exhibit 1, did you -- what did you do with the

15

1 declaration after you signed it on or about May 21st?
2     A.  I'm not sure I understand your question.
3     Q.  Who did you send it to?  What did you do
4 with the declaration once you signed it?
5     A.  I sent it back to Rich Ardoin.
6     Q.  So between May 14th and May 21st, the
7 declaration was sitting on your desk or what happened
8 between May 14th and May 21st?
9     A.  I reviewed the document to make sure it was
10 accurate.
11    Q.  And if I could refer you to the first
12 paragraph of Deposition Exhibit 1.  It states that I
13 have authority to execute this declaration on behalf
14 of McKesson.  Do you see that?
15    A.  Yes, I do.
16    Q.  And on what basis do you have authority to
17 execute the declaration on behalf of McKesson?
18    A.  I have authority to execute this declaration
19 on behalf of McKesson by both my position at
20 McKesson, as well as through the authority granted to
21 me by the CFO.
22    Q.  Did you discuss the declaration before
23 signing with the CFO?
24    A.  No, I did not.
25    Q.  And who is your direct report?

16

1     A.  The CF -- who is my direct --
2     Q.  Maybe I misspoke.
3         Who do you directly report to?
4     A.  The CFO.
5     Q.  And you did not discuss it with the CFO
6 before signing; is that correct?
7     MR. HUSTON:  Objection, asked and answered.
8     MR. CRAMER:  Join.
9     THE WITNESS:  That is correct.
10 BY MR. BRYAN:
11    Q.  Do you have any other persons that you
12 report directly to?
13    A.  No, I do not.
14    Q.  What is the CFO's name at McKesson?
15    A.  Franklin Starn, S-t-a-r-n.
16    Q.  And when you say that you have the authority
17 through the CFO, what do you mean by that?
18    A.  I had been granted the authority to sign
19 declarations such as these by him.
20    Q.  Have you ever done so in the past?
21    A.  Yes, I have.
22    Q.  On what occasions?
23    A.  Other similar declarations.
24    Q.  In other litigation involving different
25 products?

17

1    A.  That is correct.
2    Q.  Can you name some examples for me.
3    A.  K-Dur; K, dash, capital D-u-r.
4    Q.  Any others, sir?
5    A.  No, I have not.
6    Q.  So on the one prior occasion that you signed
7  a declaration similar to Exhibit 1, you did at that
8  time discuss the declaration before signing it with
9  your boss, Mr. Starn?
10   A.  Yes, I did.
11   Q.  At that time did Mr. Starn indicate that you
12 had authority to sign declarations or similar
13 declarations?
14   A.  Yes, he did.
15   Q.  Okay.  And at that time did he suggest to
16 you that you have authority to always sign
17 declarations on behalf of McKesson or was that a
18 one-time thing with respect to K-Dur?
19   MR. HUSTON:  Objection, vague and ambiguous.
20   MR. CRAMER:  Form.
21   THE WITNESS:  I was instructed that I have the
22 authority to sign these types of declarations on
23 behalf of McKesson.
24 BY MR. BRYAN:
25   Q.  When you said you have authority by virtue

18

1  of your position, what did you mean by that?
2    A.  I'm the senior executive responsible for
3  generics.
4    Q.  Did you discuss the declaration or your
5  authority to sign the declaration with anyone else
6  before executing it?
7    A.  Just with Mr. Ardoin.
8    Q.  No one else at McKesson?
9    A.  No.
10   Q.  If I could refer you to paragraph 3 of
11 Deposition Exhibit 1.  Paragraph 3, you state that
12 McKesson has purchased both Ovcon 35 -- and, sir, I
13 am paraphrasing -- as well as the generic equivalents
14 of Ovcon 35; is that right?
15   A.  Yes, it is.
16   Q.  How do you know specifically that McKesson
17 purchases both Ovcon 35 and continues to purchase
18 Ovcon 35 and generic equivalents today?
19   A.  McKesson is a full-line wholesaler and, as
20 such, has to meet the demands of its customers, and
21 as long as there is demand in the marketplace for
22 these products, McKesson will purchase them and
23 resell them.
24   Q.  Did you do anything to verify that McKesson
25 purchases both Ovcon 35 and generic equivalents

19

1  today?
2    A.  No, I have not.
3    Q.  In paragraph 4 you describe certain types of
4  contracts that McKesson does not have.  Is that a
5  fair characterization?
6    A.  Yes, it is.
7    Q.  Did you review any contracts before signing
8  Deposition Exhibit 1?
9    MR. CRAMER:  At any time?
10    Objection.
11   MR. HUSTON:  Join.
12 BY MR. BRYAN:
13   Q.  Let me specify.
14    Between the time that you were asked to
15 submit a declaration in this case and the time that
16 you signed it, did you review any contracts in order
17 to verify whether or not McKesson had contracts
18 specifying fixed quantities at predetermined prices?
19   A.  No, I did not.
20   Q.  In your role as senior vice president of
21 product management, do you review every contract that
22 McKesson has with its customers?
23   A.  No, I do not.
24   Q.  Does McKesson have any contracts with
25 customers in which it sells pharmaceuticals at

20

1  predetermined prices, although not in fixed
2  quantities?
3    MR. HUSTON:  Objection, vague and ambiguous.
4    MR. CRAMER:  Join.
5    THE WITNESS:  I would have to review those
6  contracts.  I would have to go back and do a review
7  on that.
8  BY MR. BRYAN:
9    Q.  Okay.  And before signing the declaration,
10 Deposition Exhibit 1, did you do anything to verify
11 whether or not McKesson has any contracts as you
12 describe in paragraph 4?
13   MR. HUSTON:  Objection, asked and answered.
14   MR. CRAMER:  Join.
15   THE WITNESS:  No, I did not.
16 BY MR. BRYAN:
17   Q.  Sir, you're aware that McKesson has assigned
18 certain rights that it may have with respect to
19 litigation against Barr and Warner Chilcott to Named
20 Plaintiffs in the Meijer litigation; is that correct?
21   A.  That is correct.
22   Q.  Are you aware of McKesson assigning any
23 rights it may have against Barr and Warner Chilcott
24 with respect to Ovcon purchases to any other
25 entities?

21

1   A.  I am personally not aware.
2   Q.  Do you know to whom McKesson has assigned
3   any rights it may have against Barr and Warner
4   Chilcott with respect to purchases of Ovcon?
5   A.  As stated in my -- as stated in my
6   declaration, Stephen L. LaFrance Holdings and SAJ
7   Distributors.
8   Q.  Before signing Deposition Exhibit 1, did you
9   review those assignments?
10   A.  No, I did not.
11   Q.  Were you aware of those assignments before
12   you signed Deposition Exhibit 1?
13   A.  Yes, I was.
14   Q.  How were you aware of them?
15   A.  Through Mr. Ardoin.
16   Q.  Before speaking to Mr. Ardoin on May 14th,
17   or thereabouts, were you aware that McKesson had
18   assigned any rights to Stephen L. LaFrance and SAJ
19   Distributors?
20   A.  No, I was not.
21   Q.  Is it fair, sir, to say that the source of
22   the information in your declaration, Deposition
23   Exhibit 1, is Mr. Ardoin?
24   MR. CRAMER:  Objection.
25   MR. HUSTON:  Objection, overbroad, vague and

22

1   ambiguous.
2   MR. CRAMER:  Join.
3   THE WITNESS:  Can you repeat the question,
4   please.
5   MR. BRYAN:  Would you mind reading that back.
6       (Record read as follows:
7       "Q.  Is it fair, sir, to say that the source
8       of the information in your declaration,
9       Deposition Exhibit 1, is Mr. Ardoin?")
10   MR. HUSTON:  Same objection.
11   MR. CRAMER:  Same objection.
12   THE WITNESS:  I'm not sure where the information
13   came from.  I can only attest to the fact that
14   Mr. Ardoin gave me the declaration to review and then
15   sign.
16   BY MR. BRYAN:
17   Q.  But before speaking to Mr. Ardoin, you
18   yourself didn't have personal knowledge of whether
19   McKesson had assigned rights to SAJ or Stephen L.
20   LaFrance; is that right?
21   MR. HUSTON:  Objection, asked and answered.
22   THE WITNESS:  Are you referring just to
23   litigation (indicating)?
24   BY MR. BRYAN:
25   Q.  No, sir.  My question was a little more

23

1   narrow.
2       You yourself were not aware before on or
3   about May 14th of this year, when you spoke to
4   Mr. Ardoin, that McKesson assigned rights related to
5   its Ovcon purchases to Stephen L. LaFrance and SAJ
6   Distributors?
7   A.  That's correct.
8   Q.  On what basis do you conclude in paragraph 5
9   of your declaration that McKesson is aware of these
10   assignments?
11   A.  Through my conversations with the legal
12   group.
13   Q.  Sir, you said the legal group.  Was there
14   anyone else other than Mr. Ardoin that you --
15   A.  No.
16   Q.  -- spoke to?
17   A.  No.
18       He is my attorney at McKesson.
19   Q.  I see.
20       Did you review any documents before signing
21   your declaration in this case?
22   MR. CRAMER:  At any time?
23       Objection.
24   MR. BRYAN:  I'll be more specific.
25   Q.  Did you review any documents related to this

24

1   litigation or related to -- that were necessary to
2   support your assertions in your declaration before
3   signing it on or about May 21st?
4   MR. CRAMER:  Same objection.
5   MR. HUSTON:  Join.
6   THE WITNESS:  I did not personally review any
7   documents.
8   BY MR. BRYAN:
9   Q.  For example, did you review a copy of the
10   complaint filed by the Meijer Plaintiffs in this
11   case?
12   A.  At what time period?
13   Q.  At any time.
14   A.  Yes, I did.
15   Q.  And when did --
16       When did you review a copy of the Meijer
17   Plaintiffs complaint?
18   A.  This morning.
19   Q.  And was that in preparation for today's
20   deposition?
21   A.  Yes, it was.
22   Q.  Did you review copies of any other complaint
23   that had been filed against Barr or Warner Chilcott
24   with respect to purchases and sales of Ovcon 35?
25   A.  No, I did not.

25

1    Q.   Review any other documents in preparation
2  for today's deposition?
3    A.   Yes, I did.
4    Q.   What other documents did you review?
5    A.   I reviewed my statement.
6    Q.   You're referring to Deposition Exhibit 1?
7    A.   I'm sorry, yes, the declaration.
8    Q.   Any others?
9    A.   That was it.
10    Q.   Now I'd like to refer you to paragraph 5 of
11  Exhibit 1 and the third bullet.  See where it states,
12  "the Named Plaintiffs seek to recover damages in the
13  form of overcharges on behalf of the Class as a whole
14  in the aggregate," and then, to paraphrase, you say
15  that -- further that these overcharge damages would
16  be allocated proportionately to class members?  Do
17  you see that?
18    A.   Yes, I do.
19    Q.   Is it correct that --
20      Well, let me ask you, sir.  What is the
21  basis for that statement?  How do you know that?
22    A.   Through my conversation with Mr. Ardoin.
23    Q.   Did you do anything to verify that
24  statement?
25    MR. CRAMER:  Objection.

26

1      Other than talking to Mr. Ardoin?
2    THE WITNESS:  No, I did not personally.
3      (Exhibit No. 2 was marked for
4      identification.)
5  BY MR. BRYAN:
6    Q.   Sir, the court reporter has handed you
7  what's been marked as Deposition Exhibit 2, and, for
8  the record, Deposition Exhibit 2 is Bates labeled
9  OVCON-SAJ 000094, ending at 000117.
10      Sir, on the face of the agreement,
11  Deposition Exhibit 2 says "Supply Agreement Stephen
12  L. LaFrance Holdings, Inc. and McKesson Corporation";
13  is that correct?
14    A.   Yes, it does.
15    Q.   So just on the face of the document, it
16  appears as if it's a supply agreement between you and
17  an assignee of McKesson Corporation in the Meijer
18  litigation, correct -- let me rephrase that.  I think
19  I added too much in there.
20      Deposition Exhibit 2 is a supply agreement
21  between McKesson Corporation and a plaintiff in the
22  Meijer litigation; is that right?
23    A.   Yes, it is.
24    Q.   Okay.  And have you seen Deposition
25  Exhibit 2 before?

27

1    A.   No, I have not.
2    Q.   And as a customer [sic] of McKesson, you
3  wouldn't review contracts in the normal course of
4  your duties?
5    MR. CRAMER:  Objection to form.
6    MR. HUSTON:  Objection --
7    MR. BRYAN:  Let me rephrase.
8    Q.   Would you in the normal course of your
9  duties as senior vice president of product management
10  at McKesson review contracts with McKesson's
11  customers such as Stephen L. LaFrance Holdings?
12    A.   Not normally.
13    Q.   Sir, if you would turn to page 7 of
14  Deposition Exhibit 2.  It's Bates labeled 000100.  I
15  just want to draw your attention to paragraph 6B for
16  a moment, if I could.  See where it states, "Subject
17  to the terms and conditions of this Section, the Cost
18  of Goods for Merchandise delivered to USA and each
19  USAF shall be Cost plus the applicable markup as
20  specified below"?  Do you see that?
21    A.   Yes, I do.
22    Q.   And by "cost plus the applicable markup,"
23  would you expect that to be the cost at which
24  McKesson purchased a product and -- for resale?
25    A.   Yes, I would.

28

1    Q.   Okay.  And you see later, in the next
2  sentence in paragraph 6B it defines the term "Cost,"
3  stating "'Cost' for the purposes of this Agreement
4  shall mean the manufacturer's published acquisition
5  cost (exclusive of cash discounts) on the date of
6  McKesson's invoice to USA or the USAF"?  Do you see
7  that?
8    A.   Yes, I do.
9    MR. HUSTON:  It goes on.  I should note you
10  truncated it.
11    MR. CRAMER:  I'm going to object this is
12  downstream discovery.
13    MR. HUSTON:  Join.
14    MR. CRAMER:  Irrelevant to this litigation.
15    MR. HUSTON:  And lacks foundation.
16  BY MR. BRYAN:
17    Q.   And it is your understanding that McKesson
18  has assigned certain rights with respect to any
19  claims it may have against Barr Pharmaceuticals and
20  Warner Chilcott to Stephen L. LaFrance, claims with
21  respect to Ovcon 35 purchases?  Is that right?
22    MR. HUSTON:  Objection, asked and answered.
23    THE WITNESS:  I'm not sure.  Can you repeat the
24  question for me, please.
25  BY MR. BRYAN:

29

1    Q.  It is your understanding that McKesson has
2  assigned certain rights that it may have -- certain
3  claims that it may have against my client, Barr
4  Pharmaceuticals, and Warner Chilcott with respect to
5  McKesson's purchases of Ovcon 35?  It has assigned
6  those rights to Stephen L. LaFrance Holdings; is that
7  right?
8    A.  That is my understanding.
9    Q.  So is it your understanding that by virtue
10  of the assignment Stephen L. LaFrance is standing in
11  the shoes of McKesson for any litigation it may have
12  or may pursue against Warner Chilcott or Barr
13  Pharmaceuticals?
14    MR. CRAMER:  Objection to form, it misstates the
15  assignment.
16    MR. HUSTON:  Join.
17    THE WITNESS:  I'm not sure I understand your
18  question, sir.
19    MR. CRAMER:  Also calls for a legal conclusion.
20  BY MR. BRYAN:
21    Q.  All right.
22      What's your understanding of the term
23  "assignment"?
24    A.  Transferring the right to something from one
25  party to another.

30

1    Q.  And is it your understanding that McKesson
2  had transferred its rights to any litigation it may
3  have against Barr and Warner Chilcott to Stephen L.
4  LaFrance?
5    MR. CRAMER:  Objection to form, misstates the
6  assignment, misstates the testimony.
7    THE WITNESS:  It is my understanding that as part
8  of an agreement that McKesson transferred at least
9  part of some rights to a claim to Stephen L. LaFrance
10  Holdings.
11  BY MR. BRYAN:
12    Q.  And by transferring it to -- transferring
13  its right to a claim to Stephen L. LaFrance Holdings,
14  Stephen L. LaFrance Holdings is standing in the shoes
15  of McKesson for purposes of any litigation it would
16  have against Barr or Warner Chilcott?
17    MR. CRAMER:  Objection, misstating what he said.
18  He said part of a plan, and also calls for a legal
19  conclusion.
20    THE WITNESS:  Sir, I don't understand the meaning
21  of standing in McKesson's shoes.
22  BY MR. BRYAN:
23    Q.  Okay.  Fair enough.
24      But your understanding is that by
25  transferring its right to a claim, McKesson does not

31

1  have its own claim for any of the purchases that it
2  had -- let me strike that and start over.
3    Q.  Is it your understanding that McKesson
4  assigned 100 percent of its rights to Stephen L.
5  LaFrance or something less than that?
6    A.  I would have to review the document, sir.
7    MR. CRAMER:  Asked and answered.
8    MR. BRYAN:  Let's mark this as 3.
9      (Exhibit No. 3 was marked for
10      identification.)
11  BY MR. BRYAN:
12    Q.  Sir, the court reporter has handed you
13  what's been marked as Deposition Exhibit 3.  You'll
14  see at the top of Exhibit Number 3 it says,
15  "Agreement For Assignment Of Claims."  Do you see
16  that?
17    A.  Yes, I do.
18    Q.  In the first paragraph it states, to
19  paraphrase, that this is an agreement entered between
20  Stephen L. LaFrance Holdings and McKesson
21  Corporation; is that fair?
22    MR. HUSTON:  Objection, the document speaks for
23  itself.
24    MR. CRAMER:  Join.
25    THE WITNESS:  Yes, it is.

32

1  BY MR. BRYAN:
2    Q.  Then if you skip down to the first numbered
3  paragraph under "Now, Therefore" -- do you see that?
4    A.  Yes, I do.
5    Q.  Reading that paragraph, it states, "McKesson
6  hereby conveys, assigns and transfers to LaFrance
7  50 percent of all rights, title and interest in and
8  to all causes of action it may have against
9  Defendants under the laws of the United States or of
10  any State arising out of or relating to McKesson's
11  purchase of Ovcon which was subsequently resold to
12  LaFrance," and then it goes on.  Do you see that?
13    A.  Yes, I do.
14    Q.  Based on this document, Deposition Exhibit
15  Number 3, is it your understanding that McKesson
16  assigned only some of its rights to any claims that
17  it may have against Barr or Warner Chilcott with
18  respect to purchases of Ovcon?
19    MR. HUSTON:  Objection, lacks foundation.
20    MR. CRAMER:  Join.
21    THE WITNESS:  It would appear that way, yes.
22  BY MR. BRYAN:
23    Q.  And going back to Exhibit Number 2, for the
24  sales of Ovcon 35 from McKesson to Stephen LaFrance,
25  is it fair to characterize those sales as being based

33

1  on cost plus a specified markup?
2    MR. CRAMER:  Objection, downstream, irrelevant,
3  not likely to lead to discovery of relevant
4  information.
5    MR. HUSTON:  Join.
6    THE WITNESS:  Could you repeat the question,
7  please.
8  BY MR. BRYAN:
9    Q.  With respect to McKesson's sales of Ovcon 35
10  to Stephen L. LaFrance, is it fair to characterize
11  McKesson's sales as being based on the cost to
12  McKesson to purchase Ovcon 35 plus a specified
13  markup?
14    MR. HUSTON:  Same objection.
15    MR. CRAMER:  Join.
16    THE WITNESS:  Potentially.
17  BY MR. BRYAN:
18    Q.  Now, if we refer back to page 7 of
19  Deposition Exhibit Number 2, do you recall it states
20  that cost of goods shall be cost plus the applicable
21  markup as specified below?  Correct?
22    MR. HUSTON:  Objection, vague and ambiguous and
23  asked and answered.
24    MR. CRAMER:  Join.
25    THE WITNESS:  It states that it's the cost at the

34

1  date of the invoice, which may not be the cost that
2  McKesson purchased it at.
3  BY MR. BRYAN:
4    Q.  McKesson may get other rebates?
5    MR. CRAMER:  Misstates the testimony.
6    THE WITNESS:  That is not what I said.
7      McKesson may get other costs due to timing
8  of different things that occur in the marketplace.
9  BY MR. BRYAN:
10    Q.  Are you familiar with the contract between
11  McKesson and Warner Chilcott with respect to sales of
12  Ovcon 35?
13    A.  No, I'm not.
14    Q.  Who would be responsible for negotiating or
15  signing such contracts?
16    A.  Greg Yonko, Y-o-n-k-o.
17    Q.  And what is Mr. Yonko's position?
18    A.  Senior vice president product management
19  brands.
20    Q.  Is it fair to characterize him as your
21  branded counterpart?
22    A.  Yes, I would.
23    Q.  So in terms of responsibilities, Mr. Yonko
24  would have similar responsibilities to you only with
25  respect to brands, whereas you have responsibilities

35

1  for generics; is that fair?
2    MR. HUSTON:  Objection, lacks foundation.
3    THE WITNESS:  Yes, similar responsibilities.
4  BY MR. BRYAN:
5    Q.  Did you discuss this litigation at all with
6  Mr. Yonko at any time?
7    A.  No, I did not.
8    Q.  Did you discuss with anyone in Mr. Yonko's
9  organization McKesson's purchases of Ovcon 35?
10    A.  No, I did not.
11    Q.  Now let's refer back to Deposition
12  Exhibit 1, if we could, for a moment, and direct your
13  attention to paragraph 6.  You state, "McKesson has
14  determined, in its considered business judgment, that
15  its interests would best be served by the Court
16  certifying the proposed class of direct purchasers."
17  Do you see that?
18    A.  Yes, I do.
19    Q.  And what do you mean by "considered business
20  judgment"?
21    A.  Based on both an economic and business
22  judgment, and for efficiency, McKesson believes that
23  its interests is best served by the court certifying
24  the class.
25    Q.  Were you involved in that considered

36

1  business judgment?
2    A.  No, I was not.
3    MR. HUSTON:  Objection, vague and ambiguous.
4    THE WITNESS:  No, I was not.
5  BY MR. BRYAN:
6    Q.  Do you know who was responsible for reaching
7  that considered business judgment?
8    A.  This is a business judgment that has been in
9  place for a while, before my arrival to McKesson.
10    Q.  I understand, sir.
11      But my question was specifically do you know
12  who was responsible for reaching that considered
13  business judgment that McKesson's interests in this
14  case would be best served by the court certifying a
15  class?
16    A.  No, I do not.
17    Q.  To your knowledge, were any documents
18  prepared analyzing whether it would be in McKesson's
19  considered business judgment or interests to be a
20  member of the proposed class?
21    A.  I do not know.
22    Q.  Did you yourself conduct any analysis of
23  whether McKesson's interests would be served by
24  participating as a class member in the Meijer
25  Plaintiffs proposed class?

37

1    A.  No, I did not.
2    Q.  In paragraph 6 you go on to state that
3  McKesson's interests would also be served by being
4  "represented by the Named Plaintiffs and their
5  counsel."  Do you see that?
6    A.  Yes, I do.
7    Q.  Have you yourself had any experience with
8  the Named Plaintiffs or their counsel before signing
9  your declaration?
10    MR. HUSTON:  Objection, compound.
11    THE WITNESS:  Yes, I have.
12  BY MR. BRYAN:
13    Q.  Okay.  Can you describe for me what
14  experience you've had with the Named Plaintiffs prior
15  to May 21st, 2007.
16    MR. HUSTON:  That's a different question,
17  but . . .
18    THE WITNESS:  I testified in another litigation.
19  BY MR. BRYAN:
20    Q.  And is it correct that the other litigation
21  you're referring to is K-Dur?
22    A.  That is correct.
23    Q.  And what Named Plaintiffs that are involved
24  in the Meijer case, in this case, were also involved
25  in the K-Dur case?

38

1    MR. HUSTON:  Do you want to give him a list of
2  the Named Plaintiffs in this case?  It might help
3  him.
4  BY MR. BRYAN:
5    Q.  Well, sir, if you could answer to the best
6  of your recollection.  I'll try to find a list for
7  you, but do you recall any of them?
8    A.  I know that Stephen L. LaFrance Holding was
9  one.  I don't know all the -- I don't recall all of
10  the plaintiffs in this case.
11    Q.  Is it that you just can't recall all the
12  plaintiffs in this case or you just were never aware
13  of all the Named Plaintiffs in this case?
14    A.  I reviewed the document this morning, but I
15  don't recall.  I'm sorry.
16    Q.  And what document were you referring to?
17    A.  The -- the actual -- I don't know what it's
18  called.
19    MR. HUSTON:  The complaint.
20    THE WITNESS:  The complaint.  Thank you.
21  BY MR. BRYAN:
22    Q.  Outside of the litigation involving K-Dur,
23  were you aware of any of the Named Plaintiffs prior
24  to signing your declaration of May 21st, 2007?
25    MR. CRAMER:  Form.

39

1    MR. HUSTON:  Yeah, vague and ambiguous.
2    THE WITNESS:  I'm sorry.  I don't understand your
3  question.
4  BY MR. BRYAN:
5    Q.  Well, sir, what I'm getting at is in
6  paragraph 6 of your declaration you state that
7  McKesson's interests would best be served by being
8  represented by the Named Plaintiffs and their
9  counsel.
10    I'm trying to get a sense for what
11  experience that you had with the Named Plaintiffs and
12  their counsel prior to signing the declaration on
13  May 21st, 2007.
14    A.  In addition to the K-Dur case, I know that
15  McKesson has had other cases with the same counsel
16  and plaintiffs.
17    Q.  How do you know that?
18    A.  I was informed of that.
19    Q.  By whom?
20    A.  By Mr. Ardoin.
21    Q.  Have you met Mr. Cramer at any time before
22  sitting here today?
23    A.  Just out in the hallway.
24    MR. BRYAN:  Why don't we take a five-minute
25  break, if that's okay.

40

1    MR. HUSTON:  Sure.
2    (Recess taken.)
3  BY MR. BRYAN:
4    Q.  Sir, referring you to paragraph 7 of your
5  declaration, Deposition Exhibit 1, you state, "Based
6  on past experience, McKesson is confident that the
7  Named Plaintiffs and their counsel are fully capable
8  of representing McKesson's interests."  Do you see
9  that?
10    A.  Yes, I do.
11    Q.  What past experience are you referring to?
12    A.  Both my past experience in the K-Dur issue,
13  as well as my knowledge of the other litigations that
14  these plaintiffs and counsels have been associated
15  with.
16    Q.  Okay.  What was your past experience with
17  the counsel for the Named Plaintiffs?
18    MR. HUSTON:  Objection, asked and answered.
19  BY MR. BRYAN:
20    Q.  That leads you to be -- or McKesson
21  confident in them in this case?
22    A.  McKesson is confident in them based on their
23  judgment of how they performed in those past cases.
24    Q.  Is that your judgment or someone else's at
25  McKesson?

41

1    A.  Based on my statement, McKesson's judgment.
2    Q.  And who at McKesson would have made that
3  judgment if not yourself?
4    A.  The law department.
5    Q.  In paragraph 8 you state that, "In recent
6  years, McKesson has been a class member in other
7  antitrust cases."
8       Are you referring to the K-Dur litigation
9  that you mentioned there -- or you mentioned earlier
10  today?
11    A.  As one of many.
12    Q.  Can you name any others?
13    A.  Off the top of my head, Hytrin was, I
14  believe, one.  I believe one was Buspar.
15       (Reporter interruption.)
16    THE WITNESS:  B-u-s-p-a-r, H-y-t-r-i-n.
17  BY MR. BRYAN:
18    Q.  You didn't submit a declaration in either of
19  those cases, did you?
20    A.  No, I did not.
21    Q.  Were you involved in the Hytrin or Buspar
22  case at all?
23    A.  No, I was not.
24    Q.  How did you learn of those?
25    A.  Through my dealings with Mr. Ardoin on this

42

1  and the K-Dur case.
2    Q.  And in paragraph 8 you refer to McKesson's
3  "economic and other interests."  Do you see that, the
4  second-to-last sentence in paragraph 8 of Exhibit 1?
5    A.  Yes, I do.
6    Q.  What economic and other interests are you
7  referring to?
8    A.  McKesson believes that it is in their
9  economic interest, obviously, financial interest and
10  the financial interests of our shareholders, to be
11  part of -- as part of the class in this case.
12    Q.  Sir, but I was asking what specific economic
13  interests -- let's start with economic interests.
14       What are you referring to by the term
15  "economic interests" in paragraph 8 of your
16  declaration?
17    MR. CRAMER:  Asked and answered.
18    MR. HUSTON:  Join.
19    THE WITNESS:  Our financial interests in this
20  case.
21  BY MR. BRYAN:
22    Q.  How --
23       What do you mean by your financial interests
24  in this case?
25    MR. HUSTON:  Objection, vague and ambiguous.

43

1    MR. CRAMER:  Join.
2    THE WITNESS:  The financial interests of McKesson
3  and its stockholders in terms of a potential
4  settlement or award.
5  BY MR. BRYAN:
6    Q.  Has McKesson determined whether it would be
7  better off as a class member versus suing on its own?
8    A.  McKesson believes that it is in their best
9  interests to be a part of the class.
10    Q.  Did anyone, to your knowledge, at McKesson
11  study whether it made more sense to be suing on its
12  own or a member of the class?
13    MR. HUSTON:  Objection, vague and ambiguous.
14    MR. CRAMER:  Join.
15    THE WITNESS:  No.  This has been McKesson's
16  policy.
17  BY MR. BRYAN:
18    Q.  Okay.  Who is responsible for that policy?
19    A.  I do not know.
20    Q.  So is it fair to say that you haven't
21  assessed what McKesson's economic and other interests
22  would be by being a member of a class versus being
23  outside the class suing on its own?
24    MR. CRAMER:  Form.
25    THE WITNESS:  That is correct.

44

1  BY MR. BRYAN:
2    Q.  Is it also fair that you have no personal
3  knowledge of whether McKesson would be entitled to
4  more damages as a member of the class versus suing on
5  its own?
6    A.  Could you repeat the question, please.
7       (Record read as follows:
8       "Q.  Is it also fair that you have no
9       personal knowledge of whether McKesson would
10       be entitled to more damages as a member of
11       the class versus suing on its own?")
12    MR. HUSTON:  Objection, incomplete hypothetical,
13  vague and ambiguous.
14    MR. CRAMER:  Join.
15    THE WITNESS:  I have no knowledge.
16  BY MR. BRYAN:
17    Q.  So is it possible that McKesson would be
18  entitled to less recovery as a member of the class
19  versus if it sued on its own?
20    MR. HUSTON:  Objection, incomplete hypothetical
21  and beyond the scope of this witness's knowledge.
22    THE WITNESS:  I have no knowledge.
23  BY MR. BRYAN:
24    Q.  But is it possible?
25    MR. HUSTON:  Objection, asked and answered, vague

45

1 and ambiguous.
2    THE WITNESS:  I don't know.
3 BY MR. BRYAN:
4    Q.  You haven't studied it?
5    MR. HUSTON:  Objection, asked and answered.
6    THE WITNESS:  That is correct.
7 BY MR. BRYAN:
8    Q.  What do you mean by "overcharge damages" in
9 the last sentence of paragraph 8?
10    A.  Overcharge damages would be the difference
11 between what McKesson paid for the brand versus what
12 it would have paid for it for the generic.
13    Q.  Have you yourself used that term before in
14 any context outside of your declaration in this case?
15    A.  I do not recall.
16    Q.  That term "overcharge damages" as it's used
17 throughout Deposition Exhibit 1, you yourself haven't
18 used that before; is that fair?
19    MR. HUSTON:  Objection, asked and answered.
20    MR. CRAMER:  Join.
21    THE WITNESS:  I do not recall.
22 BY MR. BRYAN:
23    Q.  And you said your understanding of
24 overcharge damages was the difference between what
25 McKesson paid for branded Ovcon 35 versus what it

46

1 would have paid for generic; is that correct?
2    MR. HUSTON:  Objection, asked and answered.
3    MR. CRAMER:  Join.
4    THE WITNESS:  That is correct.
5 BY MR. BRYAN:
6    Q.  How did you come to that understanding?
7    A.  Because it's just my understanding.
8    Q.  Did you just wake up one day and have an
9 understanding of overcharge damages?
10    What I'm getting at is -- is where does that
11 term come from?
12    A.  I don't -- I don't recall.
13    Q.  Let's go on to paragraph 9 of Exhibit
14 Number 1.  You state that "McKesson does not believe
15 that there is antagonism or conflict between the
16 interests of the Named Plaintiffs in pursuing
17 overcharge damages in this case and McKesson's
18 overall economic and legal interests."  Do you see
19 that?
20    A.  Yes, I do.
21    Q.  What's the basis for your assertion in
22 paragraph 9 of Exhibit 1?
23    A.  McKesson believes that its interests is the
24 same as the Named Plaintiffs in this issue.
25    Q.  When you say McKesson, are you referring to

47

1 anyone particularly at McKesson, any one person in
2 particular that may have studied this issue?
3    A.  No, I do not -- I am not.
4    Q.  So, to your knowledge --
5    Well, let me ask you this:  Have you studied
6 whether -- done anything to verify whether there is
7 an antagonism or conflict between McKesson's
8 interests and the interests of the Named Plaintiffs?
9    A.  No, I have not.
10    Q.  To your knowledge, did anybody at McKesson
11 do so?
12    A.  I do not believe so.
13    Q.  Going on to paragraph 10, you state that
14 "McKesson hereby waives any such alleged conflict of
15 interest."
16    You see I was skipping forward to the bottom
17 of paragraph 10?
18    A.  (Witness reviewing document.)
19    That is correct.
20    Q.  Who at McKesson has the authority to waive
21 any such conflict of interest?
22    MR. HUSTON:  Objection, vague and ambiguous.
23    THE WITNESS:  I do not know.
24 BY MR. BRYAN:
25    Q.  Was paragraph 10 of Deposition Exhibit 1 --

48

1 let me strike that.
2    Did you make any change or suggest any
3 revisions to paragraph 10 of Deposition Exhibit 1?
4    MR. HUSTON:  Objection, asked and answered.
5    MR. CRAMER:  Join.
6    THE WITNESS:  No, I did not.
7 BY MR. BRYAN:
8    Q.  So the statement that "McKesson waives any
9 such alleged conflict of interest" was in the draft
10 that was handed to you before you signed this?
11    A.  That is correct.
12    Q.  What do you mean by "antagonism or
13 conflict," going back to paragraph 9?
14    MR. HUSTON:  Paragraph 9?
15    MR. BRYAN:  Yes.
16    MR. HUSTON:  Objection, asked and answered.
17    MR. CRAMER:  Join.
18    THE WITNESS:  We believe that our interests are
19 aligned with the Named Plaintiffs.
20 BY MR. BRYAN:
21    Q.  How so?
22    MR. HUSTON:  Objection, vague and ambiguous.
23    MR. CRAMER:  Join.
24    THE WITNESS:  We believe that we are both
25 pursuing overcharge damages.

49

1  BY MR. BRYAN:
2      Q.  If McKesson would recover less as a class
3  member by virtue of some decision the Named
4  Plaintiffs made with respect to calculating such
5  overcharge damages, would that give rise to a
6  conflict between McKesson's interests and other
7  plaintiffs' interests?
8      MR. HUSTON:  Objection, incomplete hypothetical.
9      MR. CRAMER:  Join, vague and ambiguous.
10     THE WITNESS:  Can you read back the question,
11 please.
12     (Record read as follows:
13     "Q.  If McKesson would recover less as a
14     class member by virtue of some decision the
15     Named Plaintiffs made with respect to
16     calculating such overcharge damages, would
17     that give rise to a conflict between
18     McKesson's interests and other plaintiffs'
19     interests?")
20     THE WITNESS:  According to my declaration, we
21 were waiving any such rights.
22 BY MR. BRYAN:
23     Q.  Well, I was asking for your opinion, sir.
24 Would that give rise to --
25         If McKesson was going to make less as a

50

1  class member in this case than it could if it pursued
2  its claims alone by virtue of some decision the Named
3  Plaintiffs made, would that give rise to a conflict?
4      MR. HUSTON:  Objection, incomplete hypothetical
5  and calls for a legal conclusion.
6      MR. CRAMER:  Join.
7      THE WITNESS:  I don't believe so.
8  BY MR. BRYAN:
9      Q.  So in -- is it correct, then, if --
10         Let me ask you this:  Why is that?
11     A.  Because we have decided that we are aligned
12 in this -- in this case with the Named Plaintiffs.
13     Q.  Even though it may be the case that McKesson
14 would recover less as a class member than if it
15 pursued its interests alone?
16     MR. HUSTON:  Objection, incomplete hypothetical,
17 vague and ambiguous.
18     MR. CRAMER:  Join, and also misstates the facts.
19     THE WITNESS:  I stand by what I said earlier.
20 BY MR. BRYAN:
21     Q.  And what you stated earlier was that
22 McKesson's interests are aligned; is that right?
23     A.  That is correct.
24     Q.  Good or bad?
25     MR. HUSTON:  Objection, argumentative, vague and

51

1  ambiguous.
2      THE WITNESS:  We believe that we are aligned with
3  the Named Plaintiffs.
4  BY MR. BRYAN:
5      Q.  And when you say "we," who are you referring
6  to?
7      A.  McKesson.
8      Q.  Did you discuss any potential conflict of
9  interest between McKesson and any other plaintiff in
10 the proposed class?  Anyone?
11     A.  No, we did not.
12     Q.  And you haven't analyzed whether McKesson
13 would be better off in or out of the class; is that
14 right?
15     MR. HUSTON:  Objection, asked and answered
16 several times.
17     MR. CRAMER:  Join.
18     THE WITNESS:  No, I have not.
19 BY MR. BRYAN:
20     Q.  Are you familiar with McKesson's customers'
21 purchases of Ovcon 35 and the generic, balziva?
22     MR. HUSTON:  Objection, vague and ambiguous.
23     MR. CRAMER:  Calls for downstream discovery as
24 well.  Objection.
25     THE WITNESS:  Can you be more specific?

52

1  BY MR. BRYAN:
2      Q.  How much balziva does McKesson purchase
3  versus Ovcon 35, in terms of relative volumes?
4      MR. CRAMER:  Objection.
5          At any particular point in time?
6  BY MR. BRYAN:
7      Q.  Since balziva became available in
8  October 2006.
9      MR. CRAMER:  Objection.
10     THE WITNESS:  I would have to go to the data --
11 I'm sorry.
12     MR. CRAMER:  No.  Go ahead.
13     THE WITNESS:  I would have to go back to the data
14 to evaluate for an answer.
15 BY MR. BRYAN:
16     Q.  Before signing your declaration, Exhibit 1,
17 did you analyze or look at McKesson's purchases of
18 Ovcon 35 or balziva?
19     A.  No, I did not.
20     Q.  As senior vice president of product
21 management for generics, do you -- you're responsible
22 for purchases and sales of balziva; is that right?
23     A.  Yes, I am.
24     Q.  And after balziva became available on the
25 market, did McKesson's purchases of Ovcon 35 decline?

53

1    A.  I would have to go back to the data to
2  review.
3    Q.  Do any of McKesson's customers that purchase
4  Ovcon 35 from McKesson not purchase balziva from
5  McKesson?
6    MR. HUSTON:  Can I have that one reread, please.
7    (Record read as follows:
8    "Q.  Do any of McKesson's customers that
9    purchase Ovcon 35 from McKesson not purchase
10   balziva from McKesson?")
11   MR. HUSTON:  Objection, downstream discovery.
12   (Record read as follows:
13   "Q.  Do any of McKesson's customers that
14   purchase Ovcon 35 from McKesson not purchase
15   balziva from McKesson?")
16   MR. HUSTON:  Objection, lacks foundation.
17   THE WITNESS:  I would have to go back to the
18  sales data to look at that.
19  BY MR. BRYAN:
20   Q.  Is it the case that some customers of
21  McKesson do not purchase generics from McKesson
22  although they may purchase branded products from
23  McKesson?
24   A.  Yes, that is the case.
25   Q.  So, for example, a retailer such as

54

1  Albertsons may have purchased Ovcon 35 from McKesson,
2  but it would purchase balziva from another source?
3    MS. REBUCK:  Objection.
4    MR. CRAMER:  Also, is this a hypothetical?
5    MR. HUSTON:  Objection, I'm a little confused.
6  Objection, lacks foundation.
7    MR. CRAMER:  Join.
8    THE WITNESS:  Are you discussing just Albertsons?
9  BY MR. BRYAN:
10   Q.  Just -- I was using Albertsons as an
11  example.
12       So is it your understanding that customers
13  such as Albertsons may have purchased Ovcon 35 but
14  purchased balziva from another source?
15   MR. HUSTON:  Objection --
16   MS. REBUCK:  Objection, lacks foundation.
17   MR. HUSTON:  -- vague and ambiguous as to the
18  term "such as Albertsons."
19   MR. CRAMER:  Join in both.
20   THE WITNESS:  It is possible.
21  BY MR. BRYAN:
22   Q.  Since balziva became available on the market
23  have you yourself, in your role as senior vice
24  president of product management for generics, made
25  any effort to reach out to retailers that may be

55

1  purchasing balziva from another source?
2    MR. HUSTON:  Objection, vague and ambiguous.
3    THE WITNESS:  I have personally not.
4  BY MR. BRYAN:
5    Q.  After balziva entered the market, what
6  happened to McKesson's volume of purchases of both
7  Ovcon 35 and balziva?
8    MR. CRAMER:  Asked and answered.
9    MR. HUSTON:  Join.
10   THE WITNESS:  I would have to review the sales
11  tape.
12  BY MR. BRYAN:
13   Q.  So, sitting here today, you don't know if
14  they went up or down?
15   MR. HUSTON:  Objection, asked and answered.
16   MR. CRAMER:  Join.
17   THE WITNESS:  I have to review the sales tape.
18  BY MR. BRYAN:
19   Q.  What is the sales tape?  Is that a specific
20  report?
21   A.  No.  It's just a record of sales.
22   Q.  And how is that tabulated?  Monthly?
23  Weekly?
24   A.  I would have to go to one of my analysts to
25  pull the information from our computers.

56

1    Q.  What analyst would you ask for that
2  information?
3    A.  Are you referring for a name?
4    Q.  Yes, sir.
5    A.  Michael Ziemke, Z-i-e-m-k-e.
6    Q.  Mr. Ziemke would know, for example, what
7  McKesson's purchase volumes of both Ovcon 35 and
8  balziva would be?
9    MR. HUSTON:  Objection, misstates the testimony.
10   THE WITNESS:  He would be able to secure the
11  information.
12  BY MR. BRYAN:
13   Q.  Does McKesson also purchase Zenchent?
14   A.  I would have to go back to the purchase
15  tapes to look at that.
16   Q.  So, sitting here today, you're not certain
17  whether McKesson has purchased Zenchent at all?
18   A.  I would believe we would as -- being a
19  full-line wholesaler, but to be accurate I would have
20  to go back to purchase data.
21   Q.  In terms of McKesson's purchases and sales
22  of Ovcon 35 and balziva, can you say whether McKesson
23  makes more on a sale of Ovcon 35 or a sale of
24  balziva?
25   MR. HUSTON:  Objection, vague and ambiguous,

57

1  calls for downstream discovery.
2     MR. CRAMER:  Join.
3     THE WITNESS:  On the average, McKesson makes more
4  on generics than they do on brands.
5  BY MR. BRYAN:
6     Q.  How much more?
7     MR. HUSTON:  Objection, vague and ambiguous.
8     MR. CRAMER:  Join.
9     MR. HUSTON:  Incomplete hypothetical.
10  BY MR. BRYAN:
11     Q.  In relative terms, sir.  I'm not looking for
12  specific numbers.
13     MR. HUSTON:  Same objections.
14     THE WITNESS:  Significantly more.
15  BY MR. BRYAN:
16     Q.  What do you mean by significant?
17     MR. HUSTON:  Patrick, I think you're going to
18  have to be more specific in your question if you want
19  a more specific answer.
20        Are you talking about all generics over all
21  time?
22     MR. BRYAN:  No.  It was limited to balziva.
23     MR. HUSTON:  Oh, okay.
24     THE WITNESS:  I do not know the exact pricing of
25  the products at this moment.  I would have to review

58

1  the information.
2  BY MR. BRYAN:
3     Q.  So in terms of whether McKesson makes more
4  on Ovcon 35 sales or balziva sales, sitting here
5  today, you don't know whether it makes more on one
6  versus the other?
7     MR. HUSTON:  Objection, calls for downstream
8  discovery.
9     MR. CRAMER:  Also misstates the testimony.
10     THE WITNESS:  As I said, in the aggregate,
11  McKesson makes more on generics than they do on
12  brands.  On each individual item, I can't be a
13  hundred percent sure without the data in front of me.
14  BY MR. BRYAN:
15     Q.  Okay.  So specifically with respect to
16  Ovcon 35 and balziva sales, sitting here today,
17  without the data in front of you, you can't say
18  whether McKesson makes more on a sale of one versus
19  the other?
20     A.  No, I can't.
21     MR. HUSTON:  Objection, downstream discovery.
22  BY MR. BRYAN:
23     Q.  Sir?
24     A.  Without the data, I cannot.
25     Q.  When you were referring to sales in the

59

1  aggregate, were you referring to sales of branded
2  pharmaceuticals and generic pharmaceuticals across
3  the whole line or a specific segment?
4     MR. HUSTON:  Objection, vague and ambiguous.
5     THE WITNESS:  I was referring to the whole line.
6  BY MR. BRYAN:
7     Q.  So, just to clarify, you weren't referring
8  to the average profit margin or revenue on a sale of
9  a branded oral contraceptive versus a generic
10  contraceptive?
11     MR. CRAMER:  Misstates the testimony.
12     THE WITNESS:  As I stated, in aggregate across
13  all product lines.
14     MR. BRYAN:  Why don't we take a short break.  I
15  think I don't have much more.
16     MR. HUSTON:  Okay.  Five minutes?
17        (Recess taken.)
18  BY MR. BRYAN:
19     Q.  Mr. Factor, is it correct that, based on
20  your understanding, not all McKesson's customers
21  purchase balziva from McKesson?
22     MR. HUSTON:  Objection, asked and answered.
23     MR. CRAMER:  Join.
24  BY MR. BRYAN:
25     Q.  And just to clarify, when I say McKesson's

60

1  customers, I'm referring to McKesson customers that
2  previously purchased Ovcon 35.
3     A.  Can you repeat the question for me, please.
4        (Record read as follows:
5        "Q.  And just to clarify, when I say
6        McKesson's customers, I'm referring to
7        McKesson customers that previously purchased
8        Ovcon 35.")
9     THE WITNESS:  I would have to go back to the
10  sales tape -- the sales records to verify that.
11  BY MR. BRYAN:
12     Q.  I understand that you'd want to verify that,
13  but I'm just asking, sitting here today, do you have
14  any understanding of whether all McKesson's customers
15  that purchased Ovcon 35 from it do not all or less
16  than all purchase balziva from McKesson?
17     MR. HUSTON:  Objection, lacks foundation.
18     MR. CRAMER:  Join.
19     THE WITNESS:  I would have to -- I could not give
20  you an -- any kind of accurate answer unless I looked
21  at the data.
22  BY MR. BRYAN:
23     Q.  So the answer to my question is you don't
24  have an understanding one way or the other, sitting
25  here today?

61

1   A.  I could not tell you today whether that was
2   an accurate statement or not.
3   **Q.  Okay.  Let's look at paragraph 6 of**
4   **Deposition Exhibit 1.  I'm just focusing on the last**
5   **part of that sentence, where you state that**
6   **McKesson's interests would be served -- to**
7   **paraphrase, be served by allowing this action to**
8   **proceed as a class action with McKesson remaining as**
9   **a member of the class.**
10      **Do you see that?**
11   A.  Yes.
12   **Q.  Do you contend that Mckesson would not opt**
13   **out of any class if it was certified?**
14   MR. HUSTON:  Objection, incomplete hypothetical.
15   THE WITNESS:  It is my understanding that
16   McKesson has determined that it wants to be part of
17   the class.
18   BY MR. BRYAN:
19   **Q.  And that understanding is based on your**
20   **conversation with Mr. Ardoin.**
21   A.  That is correct, as well as what we've done
22   in other cases.
23   **Q.  To your understanding, has McKesson reached**
24   **any kind of financial agreement or understanding with**
25   **the Named Plaintiffs or the counsel in this case?**

62

1   A.  Not to my knowledge.
2   **Q.  Did McKesson reach any understanding with**
3   **Named Plaintiffs that it would not opt out of any**
4   **class if it was certified?**
5   A.  Not to my knowledge.
6   **Q.  Did you discuss that with anyone at**
7   **McKesson?**
8   A.  No, I did not.
9   **Q.  And, sir, just if I could have you turn to**
10   **the very last page of your declaration, and just flip**
11   **back from the last page to the prior page.  It looks**
12   **to me that the font on page 4 of your declaration is**
13   **slightly different; is that correct?**
14   A.  Yes, it does look that way.
15   **Q.  Did you fax your signature to anyone after**
16   **signing?**
17   A.  Yes, I did.
18   **Q.  So --**
19   A.  I was in -- I was out of town, and I had
20   taken this with me to review, and when I was
21   satisfied that it was correct, I signed it and faxed
22   it into the law offices.
23   **Q.  And when did you do that?**
24   A.  On May 21st.
25   **Q.  And what do you mean by satisfied that it**

63

1   was correct?  What did you do to determine that --
2   A.  That I was -- I was significantly -- that I
3   agreed with what was in the document.
4   **Q.  But it is correct, sir, that you didn't do**
5   **anything to verify whether all the statements in**
6   **Deposition Exhibit 1 were correct?  Is that correct?**
7   MR. HUSTON:  Objection, asked and answered and
8   overbroad.
9   MR. CRAMER:  Join.
10   MR. HUSTON:  Compound.
11   MR. CRAMER:  Also misstates the testimony.
12   THE WITNESS:  I discussed the documents with our
13   law department, Mr. Ardoin, and he verified that
14   these attestations were correct.
15   BY MR. BRYAN:
16   **Q.  So is it fair, then, that you are attesting**
17   **to Mr. Ardoin's statements?**
18   MR. HUSTON:  Objection, misstates the prior
19   testimony.
20   MR. CRAMER:  Join.
21   THE WITNESS:  No.
22      I discussed with him certain parts of this,
23   of the statement, and when I was satisfied with the
24   answers, then I signed it.
25   BY MR. BRYAN:

64

1   **Q.  Other than the conversation that you**
2   **mentioned on May 14th, did you have any other**
3   **discussions with respect to your declaration in this**
4   **case between May 14th and the time you signed it?**
5   A.  I do not believe so.
6   **Q.  How long was your initial conversation with**
7   **Mr. Ardoin?**
8   A.  My guess is it was about 15 to 20 minutes.
9   **Q.  So after your 15- to 20-minute conversation**
10   **with Mr. Ardoin, a week later you signed the**
11   **declaration, correct?**
12   MR. HUSTON:  Objection, asked and answered.
13   THE WITNESS:  That is correct.
14   BY MR. BRYAN:
15   **Q.  And in that 15- to 20-minute conversation**
16   **you didn't review any documents related to McKesson's**
17   **contracts; is that correct?**
18   MR. HUSTON:  Objection, asked and answered.
19   MR. CRAMER:  Join.
20   THE WITNESS:  That is correct.
21   BY MR. BRYAN:
22   **Q.  And in that 15 to 20 minutes that you spoke**
23   **to counsel for McKesson, you were satisfied that**
24   **everything that was in your declaration was correct?**
25   MR. HUSTON:  Objection, misstates the testimony.

65

1    MR. CRAMER:  Join.
2    THE WITNESS:  Yes.
3        After the 15 minutes, I was satisfied that
4  it was accurate and I would sign it.
5    MR. BRYAN:  Mr. Factor, I appreciate your time
6  today.
7    THE WITNESS:  Thank you.
8    MR. BRYAN:  Does Simpson Thacher have any
9  questions?
10    MR. BATES:  I have no questions.
11    MR. CRAMER:  I just have two questions.
12
13            EXAMINATION
14  BY MR. CRAMER:
15    **Q.  Mr. Factor, my name is Eric Cramer.  I'm one**
16  **of the counsel for the Meijer Plaintiffs, also known**
17  **as the Direct Purchaser Class Plaintiffs.**
18        **Would you please turn to paragraph 9 of your**
19  **declaration, Exhibit 1 to this deposition, please.**
20        **Paragraph 9 says, "McKesson does not believe**
21  **that there is antagonism or conflict between the**
22  **interests of the Named Plaintiffs in pursuing**
23  **overcharge damages in this case and McKesson's**
24  **overall economic and legal interests."**
25        **Did I read that correctly?**

66

1    A.  Yes, you did.
2    **Q.  Thank you.**
3        **Is it fair to say -- strike that.**
4        **Is it your belief that someone at McKesson**
5  **verified the accuracy of that statement?**
6    MR. BRYAN:  Objection to form.
7    THE WITNESS:  Yes, it is.
8  BY MR. CRAMER:
9    **Q.  Is it your belief that someone at McKesson**
10  **verified the accuracy of every statement in this**
11  **declaration?**
12    MR. BRYAN:  Objection to form.
13    THE WITNESS:  Yes, it is.
14    MR. CRAMER:  That's all I have.  Thank you.
15    MR. BRYAN:  Just one follow-up, sir.
16
17          FURTHER EXAMINATION
18  BY MR. BRYAN:
19    **Q.  What is that belief based on?**
20    A.  My conversations with Rich Ardoin and the
21  law department.
22    **Q.  You're referring to the 15-minute**
23  **conversation you had with Mr. Ardoin on or about**
24  **May 14th?**
25    A.  That is correct.

67

1    **Q.  Anything else?**
2    A.  No, sir.
3    MR. BRYAN:  Thank you.
4    THE REPORTER:  Can I just get everyone's orders
5  on the record.
6    MR. HUSTON:  I'll take one.
7    MR. BRYAN:  Yeah.
8    MR. HUSTON:  One other thing before we go off the
9  record:  I don't know the details of the protective
10  order in this case, but I'd like to designate this
11  transcript highly confidential under the terms of the
12  protective order.
13    MR. BRYAN:  That's fine.
14        I believe my colleague had forwarded a copy
15  of the protective order, and it allows you to
16  designate, and fully expected it to be.
17    MR. HUSTON:  Okay.  Thank you.
18    MR. CRAMER:  I'll take a copy, ASCII and
19  condensed, Minuscript, and email it to me, please.
20    MR. CRAMER:  Same.
21    MR. CRAMER:  The same.
22    THE REPORTER:  Do you want the same, ASCII and
23  condensed?
24    MR. HUSTON:  Sure.
25        I probably don't need an ASCII.

68

1    MS. REBUCK:  I do not need a copy, no.
2        (The proceedings concluded at 3:23 p.m.)
3
4        I, SAUL D. FACTOR, the witness herein,
5  do hereby certify that the foregoing testimony of the
6  pages of this deposition to be a true and correct
7  transcript, subject to the corrections, if any
8  shown on the attached page.
9
10        _____
11            SAUL D. FACTOR
11  Subscribed and sworn to before me
12  this _____ day of _____ 2007.
13  _____
14        NOTARY PUBLIC
15
16
17
18
19
20
21
22
23
24
25

69

```
1
2                    Pg.  of  Pgs.
3
4
5        I wish to make the following changes, for
6    the following reasons:
7    PAGE LINE
8    ____ ____  CHANGE: _____
9            REASON: _____
10   ____ ____  CHANGE: _____
11           REASON: _____
12   ____ ____  CHANGE: _____
13           REASON: _____
14   ____ ____  CHANGE: _____
15           REASON: _____
16   ____ ____  CHANGE: _____
17           REASON: _____
18   ____ ____  CHANGE: _____
19           REASON: _____
20   ____ ____  CHANGE: _____
21           REASON: _____
22   ____ ____  CHANGE: _____
23           REASON: _____
24   ____ ____  CHANGE: _____
25           REASON: _____
```

70

```
1
2    PAGE LINE
3    ____ ____  CHANGE: _____
4            REASON: _____
5    ____ ____  CHANGE: _____
6            REASON: _____
7    ____ ____  CHANGE: _____
8            REASON: _____
9    ____ ____  CHANGE: _____
10           REASON: _____
11   ____ ____  CHANGE: _____
12           REASON: _____
13   ____ ____  CHANGE: _____
14           REASON: _____
15   ____ ____  CHANGE: _____
16           REASON: _____
17   ____ ____  CHANGE: _____
18           REASON: _____
19   ____ ____  CHANGE: _____
20           REASON: _____
21
22
23
24
25
```

71

```
1    STATE OF CALIFORNIA      )
2                            )   ss
3    COUNTY OF SAN MATEO      )
4         I hereby certify that the witness in the
5    foregoing deposition of SAUL D. FACTOR, was by me
6    duly sworn to testify to the truth, the whole truth
7    and nothing but the truth, in the within-entitled
8    cause; that said deposition was taken at the time and
9    place herein named; that the deposition is a true
10   record of the witness' testimony as reported by me, a
11   duly certified shorthand reporter and a disinterested
12   person, and was thereafter transcribed into
13   typewriting by computer.
14        I further certify that I am not interested
15   in the outcome of the said action, nor connected
16   with, nor related to any of the parties in said
17   action, nor to their respective counsel.
18        IN WITNESS WHEREOF, I have hereunto set my
19   hand this 25th day of June, 2007.
20
21
           - - - - - - - - - - - - - - -
22        MELINDA M. IBANEZ, CSR #10686
23        STATE OF CALIFORNIA
24
25
```

## A

**able** 56:10
**accuracy** 66:5,10
**accurate** 9:3 15:10
  56:19 60:20 61:2
  65:4
**acquisition** 28:4
**action** 32:8 61:7,8
  71:15,17
**activities** 11:21
**actual** 38:17
**added** 26:19
**addition** 39:14
**afternoon** 7:6
**aggregate** 25:14
  58:10 59:1,12
**agreed** 63:3
**agreement** 6:6,10
  26:10,11,16,20
  28:3 30:8 31:15,19
  61:24
**ahead** 52:12
**Aid** 3:9 7:20
**al** 1:5,11
**Albertsons** 54:1,8
  54:10,13,18
**aligned** 48:19 50:11
  50:22 51:2
**alleged** 47:14 48:9
**allocated** 25:16
**allowing** 61:7
**allows** 67:15
**ambiguous** 8:24
  10:25 12:19 13:22
  17:19 20:3 22:1
  33:22 36:3 39:1
  42:25 43:13 44:13
  45:1 47:22 48:22
  49:9 50:17 51:1,22
  54:17 55:2 56:25
  57:7 59:4
**analysis** 36:22
**analyst** 56:1
**analysts** 55:24
**analyze** 52:17
**analyzed** 51:12
**analyzing** 36:18
**answer** 5:10 38:5
  52:14 57:19 60:20
  60:23

**answered** 16:7
  20:13 22:21 28:22
  31:7 33:23 40:18
  42:17 44:25 45:5
  45:19 46:2 48:4,16
  51:15 55:8,15
  59:22 63:7 64:12
  64:18
**answers** 63:24
**antagonism** 46:15
  47:7 48:12 65:21
**antitrust** 41:7
**anybody** 47:10
**appear** 32:21
**APPEARANCES**
  3:1 4:1
**APPEARED** 3:9
**appears** 26:16
**applicable** 27:19,22
  33:20
**appreciate** 65:5
**approximately** 9:7
  10:1,7,20 11:6
**Ardoin** 9:10,14,17
  10:3,8,17 11:6
  15:5 18:7 21:15,16
  21:23 22:9,14,17
  23:4,14 25:22 26:1
  39:20 41:25 61:20
  63:13 64:7,10
  66:20,23
**Ardoin's** 63:17
**area** 13:17,25
**argumentative**
  50:25
**arising** 32:10
**ARONCHICK** 3:11
**arrival** 36:9
**ASCII** 67:18,22,25
**asked** 8:23 9:3 16:7
  19:14 20:13 22:21
  28:22 31:7 33:23
  40:18 42:17 44:25
  45:5,19 46:2 48:4
  48:16 51:15 55:8
  55:15 59:22 63:7
  64:12,18
**asking** 42:12 49:23
  60:13
**assertion** 46:21

**assertions** 24:2
**assessed** 43:21
**assigned** 20:17 21:2
  21:18 22:19 23:4
  28:18 29:2,5 31:4
  32:16
**assignee** 26:17
**assigning** 20:22
**assignment** 6:10
  29:10,15,23 30:6
  31:15
**assignments** 21:9,11
  23:10
**assigns** 32:6
**associated** 40:14
**attached** 68:8
**attention** 27:15
  35:13
**attest** 22:13
**attestations** 63:14
**attesting** 63:16
**attorney** 3:4,12,19
  4:4,10 23:18
**attorneys** 7:8
**attorney-client** 9:24
**authority** 15:13,16
  15:18,20 16:16,18
  17:12,16,22,25
  18:5 47:20
**available** 52:7,24
  54:22
**Avenue** 4:5
**average** 57:3 59:8
**award** 43:4
**aware** 13:13 20:17
  20:22 21:1,11,14
  21:17 23:2,9 38:12
  38:23
**A-r-d-o-i-n** 9:12

## B

**back** 15:5 20:6 22:5
  32:23 33:18 35:11
  48:13 49:10 52:13
  53:1,17 56:14,20
  60:9 62:11
**bad** 50:24
**balziva** 51:21 52:2,7
  52:18,22,24 53:4
  53:10,15 54:2,14

**assertions** 54:22 55:1,5,7
  56:8,22,24 57:22
  58:4,16 59:21
  60:16
**Barr** 2:10 3:17 7:11
  20:19,23 21:3
  24:23 28:19 29:3
  29:12 30:3,16
  32:17
**Bartlett** 4:3 7:13
**base** 12:13,15
**based** 12:25 14:12
  14:13 32:14,25
  33:11 35:21 40:5
  40:22 41:1 59:19
  61:19 66:19
**basis** 15:16 23:8
  25:21 46:21
**Bates** 4:4 7:12,12
  26:8 27:14 65:10
**behalf** 2:9 7:11,13
  7:15,17,20 8:18
  15:13,17,19 17:17
  17:23 25:13
**belief** 66:4,9,19
**believe** 9:12 41:14
  41:14 46:14 47:12
  48:18,24 50:7 51:2
  56:18 64:5 65:20
  67:14
**believes** 35:22 42:8
  43:8 46:23
**Berger** 3:3 7:16
**best** 35:15,23 36:14
  38:5 39:7 43:8
**better** 43:7 51:13
**beyond** 44:21
**book** 12:16,17,22
**boss** 17:9
**bottom** 47:16
**brand** 13:20 14:2
  45:11
**branded** 13:12,13
  34:21 45:25 53:22
  59:1,9
**brands** 34:19,25
  57:4 58:12
**break** 39:25 59:14
**Bryan** 3:19 5:4,6 7:6
  7:10 8:5 9:5,13,25

**11**:4 12:10,21 13:2
  13:11,19,24 14:9
  14:20 16:10 17:24
  19:12 20:8,16 22:5
  22:16,24 23:24
  24:8 26:5 27:7
  28:16,25 29:20
  30:11,22 31:8,11
  32:1,22 33:8,17
  34:3,9 35:4 36:5
  37:12,19 38:4,21
  39:4,24 40:3,19
  41:17 42:21 43:5
  43:17 44:1,16,23
  45:3,7,22 46:5
  47:24 48:7,15,20
  49:1,22 50:8,20
  51:4,19 52:1,6,15
  53:19 54:9,21 55:4
  55:12,18 56:12
  57:5,10,15,22 58:2
  58:14,22 59:6,14
  59:18,24 60:11,22
  61:18 63:15,25
  64:14,21 65:5,8
  66:6,12,15,18 67:3
  67:7,13,20
**bullet** 25:11
**business** 35:14,19
  35:21 36:1,7,8,13
  36:19
**Buspar** 41:14,21
**B-u-s-p-a-r** 41:16

## C

**calculating** 49:4,16
**California** 2:11 4:12
  71:1,23
**called** 9:1,6 38:18
**calls** 9:23 13:9 29:19
  30:18 50:5 51:23
  57:1 58:7
**capable** 40:7
**capital** 17:3
**case** 1:7 9:15,18
  10:9 14:5 19:15
  23:21 24:11 36:14
  37:24,24,25 38:2
  38:10,12,13 39:14
  40:21 41:22 42:1

42:11,20,24 45:14
46:17 50:1,12,13
53:20,24 61:25
64:4 65:23 67:10
**cases** 39:15 40:23
41:7,19 61:22
**cash** 28:5
**cause** 71:8
**causes** 32:8
**certain** 19:3 20:18
28:18 29:2,2 56:16
63:22
**Certainly** 8:10
**certification** 8:8,19
**certified** 2:13 61:13
62:4 71:11
**certify** 68:5 71:4,14
**certifying** 35:16,23
36:14
**CF** 16:1
**CFO** 15:21,23 16:4
16:5,17
**CFO's** 16:14
**change** 48:2 69:8,10
69:12,14,16,18,20
69:22,24 70:3,5,7
70:9,11,13,15,17
70:19
**changes** 11:11 69:5
**characterization**
19:5
**characterize** 12:18
32:25 33:10 34:20
**Chilcott** 1:10 4:2
7:13 20:19,23 21:4
24:23 28:20 29:4
29:12 30:3,16
32:17 34:11
**circumstances** 8:22
**claim** 30:9,13,25
31:1
**claims** 6:11 10:23
28:19,20 29:3
31:15 32:16 50:2
**clarify** 59:7,25 60:5
**class** 7:18 8:7,19
25:13,16 35:16,24
36:15,20,24,25
41:6 42:11 43:7,9
43:12,22,23 44:4

**clear** 12:2
**clearly** 14:5
**client** 29:3
**colleague** 67:14
**COLUMBIA** 1:2
**come** 46:6,11
**commencing** 2:12
**communication**
9:22,24
**COMPANY** 1:11
4:2
**complaint** 24:10,17
24:22 38:19,20
**component** 13:3
**compound** 37:10
63:10
**computer** 71:13
**computers** 55:25
**concerned** 9:21
**conclude** 23:8
**concluded** 68:2
**conclusion** 29:19
30:19 50:5
**condensed** 67:19,23
**conditions** 27:17
**conduct** 10:23 36:22
**confident** 40:6,21,22
**confidential** 1:15
67:11
**conflict** 46:15 47:7
47:14,21 48:9,13
49:6,17 50:3 51:8
65:21
**confused** 54:5
**connected** 71:15
**considered** 35:14,19
35:25 36:7,12,19
**contacted** 9:9
**contend** 61:12
**context** 45:14
**CONTINUED** 4:1
**continues** 18:17
**contraceptive** 59:9
59:10
**contract** 19:21
34:10

**contracts** 11:22 19:4
19:7,16,17,24 20:6
20:11 27:3,10
34:15 64:17
**conversation** 11:5,8
25:22 61:20 64:1,6
64:9,15 66:23
**conversations** 11:7
23:11 66:20
**conveys** 32:6
**copies** 24:22
**copy** 8:17 10:11,18
24:9,16 67:14,18
68:1
**Corporation** 6:8
11:15 26:12,17,21
31:21
**correct** 8:8 10:4,10
10:17,21 16:6,9
17:1 20:20,21 23:7
25:19 26:13,18
33:21 37:20,22
43:25 45:6 46:1,4
47:19 48:11 50:9
50:23 59:19 61:21
62:13,21 63:1,4,6
63:6,14 64:11,13
64:17,20,24 66:25
68:6
**corrections** 68:7
**correctly** 65:25
**cost** 13:4 14:8 27:17
27:19,22,23 28:2,3
28:5 33:1,11,20,20
33:25 34:1
**costs** 34:7
**counsel** 3:1 4:1 37:5
37:8 39:9,12,15
40:7,17 61:25
64:23 65:16 71:17
**counsels** 40:14
**counterpart** 34:21
**COUNTY** 71:3
**course** 27:3,8
**court** 1:1 26:6 31:12
35:15,23 36:14
**Cramer** 3:4 5:5 7:16
7:16 8:25 11:1
12:8,24 13:9,16
14:6,17 16:8 17:20

19:9 20:4,14 21:24
22:2,11 23:22 24:4
25:25 27:5 28:11
28:14 29:14,19
30:5,17 31:7,24
32:20 33:2,15,24
34:5 38:25 39:21
42:17 43:1,14,24
44:14 45:20 46:3
48:5,17,23 49:9
50:6,18 51:17,23
52:4,9,12 54:4,7
54:19 55:8,16 57:2
57:8 58:9 59:11,23
60:18 63:9,11,20
64:19 65:1,11,14
65:15 66:8,14
67:18,21
**CRP** 1:22
**CSR** 1:22 71:22
**customer** 14:14 27:2
**customers** 11:23
12:14 18:20 19:22
19:25 27:11 51:20
53:3,8,13,20 54:12
59:20 60:1,1,6,7
60:14
**CVS** 3:9 7:20

---
**D**
---
**D** 1:16 2:9 5:3 6:3
8:1 68:4,10 71:5
**damages** 25:12,15
44:4,10 45:8,10,16
45:24 46:9,17
48:25 49:5,16
65:23
**dash** 17:3
**data** 52:10,13 53:1
53:18 56:20 58:13
58:17,24 60:21
**date** 10:5 28:5 34:1
**day** 11:8 46:8 68:12
71:19
**dealings** 41:25
**decided** 50:11
**decision** 49:3,14
50:2
**declaration** 6:3 8:6
8:18,23 9:4,8,18

10:2,5,8,12,14,18
10:24 11:9,12
14:21,22 15:1,4,7
15:13,17,18,22
17:7,8 18:4,5
19:15 20:9 21:6,22
22:8,14 23:9,21
24:2 25:7 37:9
38:24 39:6,12 40:5
41:18 42:16 45:14
49:20 52:16 62:10
62:12 64:3,11,24
65:19 66:11
**declarations** 16:19
16:23 17:12,13,17
17:22
**decline** 52:25
**Defendant** 2:10 3:17
4:2 7:11
**Defendants** 1:12
32:9
**defines** 28:2
**delivered** 27:18
**demand** 18:21
**demands** 12:25
18:20
**department** 9:2,6
41:4 63:13 66:21
**deposition** 1:16 2:9
8:13,17 10:15
14:22,24 15:12
18:11 19:8 20:10
21:8,12,22 22:9
24:20 25:2,6 26:7
26:8,11,20,24
27:14 31:13 32:14
33:19 35:11 40:5
45:17 47:25 48:3
61:4 63:6 65:19
68:6 71:5,8,9
**describe** 9:17 12:11
19:3 20:12 37:13
**described** 9:14,19
**Description** 6:2
**designate** 67:10,16
**desk** 15:7
**details** 67:9
**determine** 63:1
**determined** 35:14
43:6 61:16

**difference** 45:10,24
**differences** 14:8
**different** 16:24 34:8
  37:16 62:13
**direct** 7:18 15:25
  16:1 35:12,16
  65:17
**directly** 16:3,12
**discount** 14:19
**discounts** 28:5
**discovery** 12:7 14:5
  14:16 28:12 33:3
  51:23 53:11 57:1
  58:8,21
**discuss** 15:22 16:5
  17:8 18:4 35:5,8
  51:8 62:6
**discussed** 63:12,22
**discussing** 54:8
**discussions** 64:3
**disinterested** 71:11
**Distributors** 21:7,19
  23:6
**DISTRICT** 1:1,2
**document** 6:3,6,10
  8:16 15:9 26:15
  31:6,22 32:14
  38:14,16 47:18
  63:3
**documents** 23:20,25
  24:7 25:1,4 36:17
  63:12 64:16
**downstream** 12:7
  13:9,15 14:4,16
  28:12 33:2 51:23
  53:11 57:1 58:7,21
**draft** 10:14 48:9
**drafted** 14:21
**draw** 27:15
**due** 34:7
**duly** 8:2 71:6,11
**duties** 27:4,9
**D-u-r** 17:3
**D.C** 3:21

**E**

**earlier** 41:9 50:19
  50:21
**economic** 35:21
  42:3,6,9,12,13,15

**43**:21 46:18 65:24
**efficiency** 35:22
**effort** 54:25
**either** 41:18
**Ellis** 3:18 7:10
**else's** 40:24
**email** 67:19
**entered** 31:19 55:5
**entities** 20:25
**entitled** 6:3,6,10
  44:3,10,18
**equivalents** 18:13
  18:18,25
**Eric** 3:4 7:16 65:15
**et** 1:5,11
**evaluate** 52:14
**everyone's** 67:4
**exact** 57:24
**examination** 5:4,5,6
  8:4 65:13 66:17
**example** 24:9 53:25
  54:11 56:6
**examples** 17:2
**exclusive** 28:5
**execute** 15:13,17,18
**executing** 18:6
**executive** 18:2
**Exhibit** 7:3 8:13,17
  10:15 14:22,25
  15:12 17:7 18:11
  19:8 20:10 21:8,12
  21:23 22:9 25:6,11
  26:3,7,8,11,20,25
  27:14 31:9,13,14
  32:14,23 33:19
  35:12 40:5 42:4
  45:17 46:13,22
  47:25 48:3 52:16
  61:4 63:6 65:19
**EXHIBITS** 6:1
**expect** 27:23
**expected** 67:16
**experience** 37:7,14
  39:11 40:6,11,12
  40:16
**expertise** 13:18 14:1
**extent** 12:6

**F**

**face** 26:10,15

**fact** 22:13
**Factor** 1:16 2:9 5:3
  6:4 7:6 8:1,6 59:19
  65:5,15 68:4,10
  71:5
**facts** 50:18
**fair** 12:17 19:5
  21:21 22:7 30:23
  31:21 32:25 33:10
  34:20 35:1 43:20
  44:2,8 45:18 63:16
  66:3
**familiar** 14:1 34:10
  51:20
**fax** 62:15
**faxed** 62:21
**Fifteenth** 3:20
**filed** 24:10,23
**financial** 42:9,10,19
  42:23 43:2 61:24
**find** 38:6
**fine** 67:13
**first** 8:2 11:7,12
  15:11 31:18 32:2
**Five** 59:16
**five-minute** 39:24
**fixed** 13:8,14 14:3
  14:11 19:18 20:1
**flip** 62:10
**focusing** 61:4
**following** 69:5,6
**follows** 8:2 22:6
  44:7 49:12 53:7,12
  60:4
**follow-up** 66:15
**font** 62:12
**foregoing** 68:5 71:5
**form** 17:20 25:13
  27:5 29:14 30:5
  38:25 43:24 66:6
  66:12
**forward** 47:16
**forwarded** 67:14
**foundation** 28:15
  32:19 35:2 53:16
  54:6,16 60:17
**Francisco** 2:11 4:12
**Franklin** 16:15
**FRIDAY** 1:17 2:12
  5:2 7:1

**front** 58:13,17
**fully** 40:7 67:16
**full-line** 18:19 56:19
**further** 6:5 25:15
  66:17 71:14

**G**

**generally** 12:11,23
**generic** 11:20 12:12
  12:22 13:7 18:13
  18:18,25 45:12
  46:1 51:21 59:2,9
**generics** 11:17,25
  12:5,13,16 18:3
  35:1 52:21 53:21
  54:24 57:4,20
  58:11
**getting** 39:5 46:10
**give** 38:1 49:5,17,24
  50:3 60:19
**go** 20:6 37:2 46:13
  52:10,12,13 53:1
  53:17 55:24 56:14
  56:20 60:9 67:8
**goes** 28:9 32:12
**going** 28:11 32:23
  47:13 48:13 49:25
  57:17
**Good** 7:6 50:24
**goods** 14:8 27:18
  33:20
**granted** 15:20 16:18
**Greg** 34:16
**group** 23:12,13
**guess** 64:8

**H**

**hallway** 39:23
**hand** 71:19
**handed** 26:6 31:12
  48:10
**handing** 8:12
**HANGLEY** 3:11
**happened** 15:7 55:6
**Harrisburg** 3:14
**head** 41:13
**help** 38:2
**hereunto** 71:18
**highly** 1:15 67:11
**hold** 9:20

**Holding** 38:8
**Holdings** 1:10 4:2
  6:7 21:6 26:12
  27:11 29:6 30:10
  30:13,14 31:20
**hundred** 58:13
**Huston** 4:10 7:14,14
  8:24 9:20 10:25
  11:2 12:6,19 13:10
  13:15,22 14:4,16
  16:7 17:19 19:11
  20:3,13 21:25
  22:10,21 24:5 27:6
  28:9,13,15,22
  29:16 31:22 32:19
  33:5,14,22 35:2
  36:3 37:10,16 38:1
  38:19 39:1 40:1,18
  42:18,25 43:13
  44:12,20,25 45:5
  45:19 46:2 47:22
  48:4,14,16,22 49:8
  50:4,16,25 51:15
  51:22 53:6,11,16
  54:5,15,17 55:2,9
  55:15 56:9,25 57:7
  57:9,13,17,23 58:7
  58:21 59:4,16,22
  60:17 61:14 63:7
  63:10,18 64:12,18
  64:25 67:6,8,17,24
**hypothetical** 44:12
  44:20 49:8 50:4,16
  54:4 57:9 61:14
**Hytrin** 41:13,21
**H-y-t-r-i-n** 41:16

**I**

**Ibanez** 1:22 2:13
  71:22
**identification** 7:4
  26:4 31:10
**identify** 7:8
**include** 11:22,25
**incomplete** 44:12,20
  49:8 50:4,16 57:9
  61:14
**INDEX** 5:1
**indicate** 17:11
**indicating** 22:23

**individual** 58:12
**information** 21:22
22:8,12 33:4 55:25
56:2,11 58:1
**informed** 39:18
**initial** 64:6
**instructed** 5:10
17:21
**interest** 32:7 42:9,9
47:15,21 48:9 51:9
**interested** 71:14
**interests** 35:15,23
36:13,19,23 37:3
39:7 40:8 42:3,6
42:10,13,13,15,19
42:23 43:2,9,21
46:16,18,23 47:8,8
48:18 49:6,7,18,19
50:15,22 61:6
65:22,24
**interruption** 9:11
41:15
**investigation** 10:23
**invoice** 28:6 34:1
**involved** 35:25
37:23,24 41:21
**involving** 16:24
38:22
**irrelevant** 14:5
28:14 33:2
**issue** 40:12 46:24
47:2
**item** 58:12

**J**
**Jason** 4:4 7:12
**Join** 8:25 11:1 12:8
13:10,16 14:6,17
16:8 19:11 20:4,14
22:2 24:5 28:13
29:16 31:24 32:20
33:5,15,24 42:18
43:1,14 44:14
45:20 46:3 48:5,17
48:23 49:9 50:6,18
51:17 54:7,19 55:9
55:16 57:2,8 59:23
60:18 63:9,20
64:19 65:1
**judgment** 35:14,20

35:22 36:1,7,8,13
36:19 40:23,24
41:1,3
**June** 1:17 2:12 5:2
7:1 71:19

**K**
**K** 4:10 17:3
**kind** 60:20 61:24
**Kirkland** 3:18 7:10
**know** 9:24 14:21
18:16 21:2 25:21
36:6,11,21 38:8,9
38:17 39:14,17
43:19 45:2 47:23
55:13 56:6 57:24
58:5 67:9
**knowledge** 13:20
22:18 36:17 40:13
43:10 44:3,9,15,21
44:22 47:4,10 62:1
62:5
**known** 7:18 65:16
**K-Dur** 17:3,18
37:21,25 38:22
39:14 40:12 41:8
42:1

**L**
**L** 3:4 4:4 6:7 21:6,18
22:19 23:5 26:12
27:11 28:20 29:6
29:10 30:3,9,13,14
31:4,20 33:10 38:8
**labeled** 26:8 27:14
**lacks** 28:15 32:19
35:2 53:16 54:6,16
60:17
**LaFRANCE** 6:7
21:6,18 22:20 23:5
26:12 27:11 28:20
29:6,10 30:4,9,13
30:14 31:5,20 32:6
32:12,24 33:10
38:8
**larger** 14:18,19
**Latham** 4:9 7:14
**law** 3:4,12,19 4:4,10
9:1,2,6 41:4 62:22
63:13 66:21

**laws** 32:9
**lead** 33:3
**leads** 12:7 40:20
**learn** 41:24
**legal** 23:11,13 29:19
30:18 46:18 50:5
65:24
**let's** 31:8 35:11
42:13 46:13 61:3
**Lexington** 4:5
**limited** 57:22
**line** 5:11 59:3,5 69:7
70:2
**lines** 59:13
**list** 12:18 38:1,6
**litigation** 16:24
20:19,20 22:23
24:1 26:18,22
28:14 29:11 30:2
30:15 35:5 37:18
37:20 38:22 41:8
**litigations** 40:13
**little** 9:21 22:25 54:5
**LLP** 3:18 4:3,9
**Locust** 3:5
**long** 18:21 64:6
**look** 8:15 52:17
53:18 56:15 61:3
62:14
**looked** 60:20
**looking** 57:11
**looks** 62:11
**lower** 14:14

**M**
**M** 1:22 2:13 3:19
71:22
**management** 11:17
11:19 19:21 27:9
34:18 52:21 54:24
**manufacturer's**
28:4
**margin** 59:8
**mark** 31:8
**marked** 7:3 26:3,7
31:9,13
**market** 12:25 13:1,3
52:25 54:22 55:5
**marketplace** 18:21
34:8

**markup** 13:8,14
14:3,11,14 27:19
27:22 33:1,13,21
**MATEO** 71:3
**matter** 9:2
**McKESSON** 6:8 9:2
11:14,21 12:1,5,14
13:4,7,14,21 14:1
14:10 15:14,17,19
15:20 16:14 17:17
17:23 18:8,12,16
18:19,22,24 19:4
19:17,22,24 20:11
20:17,22 21:2,17
22:19 23:4,9,18
26:12,17,21 27:2
27:10,24 28:17
29:1,11 30:1,8,15
30:25 31:3,20 32:5
32:15,24 33:12
34:2,4,7,11 35:13
35:22 36:9 39:15
40:6,20,22,25 41:2
41:6 42:8 43:2,6,8
43:10 44:3,9,17
45:11,25 46:14,23
46:25 47:1,10,14
47:20 48:8 49:2,13
49:25 50:13 51:7,9
51:12 52:2 53:4,5
53:9,10,14,15,21
53:21,23 54:1
56:13,17,22 57:3
58:3,11,18 59:21
60:1,7,16 61:8,12
61:16,23 62:2,7
64:23 65:20 66:4,9
**McKesson's** 11:23
27:10 28:6 29:5
30:21 32:10 33:9
33:11 35:9 36:13
36:18,23 37:3 39:7
40:8 41:1 42:2
43:15,21 46:17
47:7 49:6,18 50:22
51:20 52:17,25
53:3,8,13 55:6
56:7,21 59:20,25
60:6,14 61:6 64:16
65:23

**mean** 12:15 14:13
16:17 18:1 28:4
35:19 42:23 45:8
48:12 57:16 62:25
**meaning** 30:20
**meet** 18:20
**Meijer** 1:5 3:2 7:17
8:7,19 20:20 24:10
24:16 26:17,22
36:24 37:24 65:16
**Melinda** 1:22 2:13
71:22
**member** 36:20,24
41:6 43:7,12,22
44:4,10,18 49:3,14
50:1,14 61:9
**members** 25:16
**mentioned** 41:9,9
64:2
**Merchandise** 27:18
**met** 39:21
**Michael** 56:5
**mind** 22:5
**minus** 13:8,14 14:3
14:11
**Minuscript** 67:19
**minutes** 59:16 64:8
64:22 65:3
**misspoke** 16:2
**misstates** 29:14 30:5
30:6 34:5 50:18
56:9 58:9 59:11
63:11,18 64:25
**misstating** 30:17
**moment** 27:16
35:12 57:25
**Monica** 3:12 7:19
**Montague** 3:3 7:16
**Montgomery** 2:10
4:11
**Monthly** 55:22
**morning** 24:18
38:14
**motion** 8:7,19

**N**
**name** 16:14 17:2
41:12 56:3 65:15
**named** 20:19 25:12
37:4,8,14,23 38:2

38:13,23 39:8,11
40:7,17 46:16,24
47:8 48:19 49:3,15
50:2,12 51:3 61:25
62:3 65:22 71:9
**narrow** 23:1
**nature** 9:14
**necessary** 24:1
**need** 67:25 68:1
**negotiating** 11:22
34:14
**never** 38:12
**New** 4:6,6
**normal** 27:3,8
**normally** 27:12
**North** 3:13
**NOTARY** 68:14
**note** 28:9
**Notice** 2:14
**Number** 6:2 8:13
10:15 31:14 32:15
32:23 33:19 46:14
**numbered** 32:2
**numbers** 57:12
**N.W** 3:20

---
**O**
---

**object** 12:6 28:11
**objection** 8:24 10:25
12:19,24 13:9,15
13:22 14:4,16 16:7
17:19 19:10 20:3
20:13 21:24,25
22:10,11,21 23:23
24:4 25:25 27:5,6
28:22 29:14 30:5
30:17 31:22 32:19
33:2,14,22 35:2
36:3 37:10 40:18
42:25 43:13 44:12
44:20,25 45:5,19
46:2 47:22 48:4,16
48:22 49:8 50:4,16
50:25 51:15,22,24
52:4,9 53:11,16
54:3,5,6,15,16
55:2,15 56:9,25
57:7 58:7,21 59:4
59:22 60:17 61:14
63:7,18 64:12,18

64:25 66:6,12
**objections** 57:13
**obviously** 42:9
**occasion** 17:6
**occasions** 16:22
**occur** 34:8
**October** 52:8
**offices** 62:22
**Oh** 57:23
**okay** 8:22 10:7,14
17:15 20:9 26:24
28:1 30:23 37:13
39:25 40:16 43:18
57:23 58:15 59:16
61:3 67:17
**once** 15:4
**one-time** 17:18
**oOo** 5:8
**opinion** 49:23
**opt** 61:12 62:3
**oral** 59:9
**order** 19:16 67:10
67:12,15
**orders** 67:4
**organization** 35:9
**outcome** 71:15
**outside** 13:17 38:22
43:23 45:14
**Ovcon** 18:12,14,17
18:18,25 20:24
21:4 23:5 24:24
28:21 29:5 32:11
32:18,24 33:9,12
34:12 35:9 45:25
51:21 52:3,18,25
53:4,9,14 54:1,13
55:7 56:7,22,23
58:4,16 60:2,8,15
**OVCON-SAJ** 26:9
**overall** 46:18 65:24
**overbroad** 11:2
21:25 63:8
**overcharge** 25:15
45:8,10,16,24 46:9
46:17 48:25 49:5
49:16 65:23
**overcharges** 25:13

---
**P**
---

**page** 5:3,11 6:2

27:13 33:18 62:10
62:11,11,12 68:8
69:7 70:2
**pages** 6:4,8,11 68:6
**paid** 45:11,12,25
46:1
**paragraph** 15:12
18:10,11 19:3
20:12 23:8 25:10
27:15 28:2 31:18
32:3,5 35:13 37:2
39:6 40:4 41:5
42:2,4,15 45:9
46:13,22 47:13,17
47:25 48:3,13,14
61:3 65:18,20
**paraphrase** 25:14
31:19 61:7
**paraphrasing** 18:13
**part** 30:7,9,18 42:11
42:11 43:9 61:5,16
**participating** 36:24
**particular** 47:2 52:5
**particularly** 47:1
**parties** 71:16
**parts** 63:22
**party** 29:25
**Patrick** 3:19 7:10
57:17
**Pennsylvania** 3:6,14
**percent** 31:4 32:7
58:13
**performed** 40:23
**period** 24:12
**person** 47:1 71:12
**personal** 22:18 44:2
44:9
**personally** 21:1 24:6
26:2 55:3
**persons** 16:11
**Peter** 4:10 7:14
**Pg** 69:2
**Pgs** 69:2
**pharmaceutical**
14:2
**pharmaceuticals**
2:10 3:17 7:11
13:7,12,13 19:25
28:19 29:4,13 59:2
59:2

**Philadelphia** 3:6
7:17
**phone** 7:19
**place** 36:9 71:9
**plaintiff** 26:21 51:9
**plaintiffs** 1:6 3:2,9
7:17,18,20 8:7,19
20:20 24:10,17
25:12 36:25 37:4,8
37:14,23 38:2,10
38:12,13,23 39:8
39:11,16 40:7,14
40:17 46:16,24
47:8 48:19 49:4,7
49:15,18 50:3,12
51:3 61:25 62:3
65:16,17,22
**plan** 30:18
**please** 8:15 12:3
22:4 28:24 33:7
44:6 49:11 53:6
60:3 65:18,19
67:19
**plus** 13:8,14 14:2,11
27:19,22 33:1,12
33:20
**point** 52:5
**policy** 43:16,18
**pose** 9:22
**position** 11:14 15:19
18:1 34:17
**possible** 44:17,24
54:20
**potential** 43:3 51:8
**Potentially** 33:16
**predetermined**
19:18 20:1
**premarked** 8:12
**preparation** 24:19
25:1
**prepared** 36:18
**presented** 11:12
**president** 11:16,18
19:20 27:9 34:18
52:20 54:24
**previously** 60:2,7
**price** 12:5,13,15,16
12:17,18,22 13:3
14:7,11
**priced** 13:14

**prices** 19:18 20:1
**pricing** 11:25 12:12
13:1,3,21 14:2
57:24
**prior** 17:6 37:14
38:23 39:12 62:11
63:18
**privileged** 9:22
**probably** 67:25
**proceed** 61:8
**proceedings** 68:2
**product** 11:16,19
13:5 19:21 27:9,24
34:18 52:20 54:24
59:13
**products** 14:2 16:25
18:22 53:22 57:25
**profit** 59:8
**proportionately**
25:16
**proposed** 35:16
36:20,25 51:10
**protective** 67:9,12
67:15
**provide** 8:23
**PUBLIC** 68:14
**published** 28:4
**PUDLIN** 3:11
**pull** 55:25
**purchase** 18:17,22
32:11 33:12 52:2
53:3,4,9,9,14,14
53:21,22 54:2 56:7
56:13,14,20 59:21
60:16
**purchased** 18:12
27:24 34:2 54:1,13
54:14 56:17 60:2,7
60:15
**Purchaser** 7:18
65:17
**purchasers** 35:16
**purchases** 13:4
14:14,19 18:17,25
20:24 21:4 23:5
24:24 28:21 29:5
31:1 32:18 35:9
51:21 52:17,22,25
55:6 56:21
**purchasing** 55:1

**purposes** 9:18 28:3
30:15
**pursuant** 2:14
**pursue** 29:12
**pursued** 50:1,15
**pursuing** 46:16
48:25 65:22
**P.C** 3:3
**p.m** 2:12 7:1 68:2

## Q

**quantities** 19:18
20:2
**question** 9:23 12:2,6
15:2 22:3,25 28:24
29:18 33:6 36:11
37:16 39:3 44:6
49:10 57:18 60:3
60:23
**questions** 5:10 65:9
65:10,11

## R

**reach** 54:25 62:2
**reached** 61:23
**reaching** 36:6,12
**read** 22:6 44:7 49:10
49:12 53:7,12 60:4
65:25
**reading** 22:5 32:5
**REASON** 69:9,11
69:13,15,17,19,21
69:23,25 70:4,6,8
70:10,12,14,16,18
70:20
**reasons** 69:6
**rebates** 34:4
**Rebuck** 3:12 7:19
7:19 54:3,16 68:1
**recall** 33:19 38:7,9
38:11,15 45:15,21
46:12
**receive** 10:11
**Recess** 40:2 59:17
**recollection** 38:6
**record** 7:8 22:6 26:8
44:7 49:12 53:7,12
55:21 60:4 67:5,9
71:10
**records** 60:10

**recover** 25:12 49:2
49:13 50:14
**recovery** 44:18
**refer** 15:11 18:10
25:10 33:18 35:11
42:2
**referring** 22:22 25:6
37:21 38:16 40:4
40:11 41:8 42:7,14
46:25 51:5 56:3
58:25 59:1,5,7
60:1,6 66:22
**regard** 14:10
**regarding** 9:2 10:23
**related** 23:4,25 24:1
64:16 71:16
**relating** 32:10
**relative** 52:3 57:11
**relevant** 33:3
**remaining** 61:8
**repeat** 22:3 28:23
33:6 44:6 60:3
**rephrase** 9:25 26:18
27:7
**report** 15:25 16:3,12
55:20
**reported** 71:10
**reporter** 2:14 9:11
26:6 31:12 41:15
67:4,22 71:11
**represented** 37:4
39:8
**representing** 40:8
**reread** 53:6
**resale** 27:24
**resell** 18:23
**resells** 12:5
**resold** 32:11
**respect** 12:12 17:18
20:18,24 21:4
24:24 28:18,21
29:4 32:18 33:9
34:11,25 49:4,15
58:15 64:3
**respective** 71:17
**responsibilities**
34:23,24,25 35:3
**responsibility** 11:20
12:4,12
**responsible** 18:2

34:14 36:6,12
43:18 52:21
**retailer** 53:25
**retailers** 54:25
**revenue** 59:8
**review** 8:9 9:3 19:7
19:16,21 20:5,6
21:9 22:14 23:20
23:25 24:6,9,16,22
25:1,4 27:3,10
31:6 53:2 55:10,17
57:25 62:20 64:16
**reviewed** 15:9 25:5
38:14
**reviewing** 8:16
47:18
**revisions** 48:3
**Rich** 9:10 15:5
66:20
**right** 10:9 18:14
22:20 26:22 28:21
29:7,21,24 30:13
30:25 50:22 51:14
52:22
**rights** 20:18,23 21:3
21:18 22:19 23:4
28:18 29:2,6 30:2
30:9 31:4 32:7,16
49:21
**rise** 49:5,17,24 50:3
**Rite** 3:9 7:20
**role** 19:20 54:23

## S

**SAJ** 21:6,18 22:19
23:5
**sake** 7:7
**sale** 56:23,23 58:18
59:8
**sales** 24:24 32:24,25
33:9,11 34:11
52:22 53:18 55:10
55:17,19,21 56:21
58:4,4,16,25 59:1
60:10,10
**San** 2:11 4:12 71:3
**satisfied** 62:21,25
63:23 64:23 65:3
**SAUL** 1:16 2:9 5:3
6:3 8:1 68:4,10

71:5
**says** 26:11 31:14
65:20
**scope** 44:21
**second-to-last** 42:4
**Section** 27:17
**secure** 56:10
**see** 15:14 23:19
25:11,17 27:16,20
28:1,6 31:14,15
32:3,12 35:17 37:5
40:8 42:3 46:18
47:16 61:10
**seek** 25:12
**seen** 26:24
**SEGAL** 3:11
**segment** 59:3
**sell** 13:7
**sells** 19:25
**send** 15:3
**senior** 11:16,18 18:2
19:20 27:9 34:18
52:20 54:23
**sense** 39:10 43:11
**sent** 15:5
**sentence** 28:2 42:4
45:9 61:5
**served** 35:15,23
36:14,23 37:3 39:7
61:6,7
**set** 12:4,13,22 71:18
**setting** 11:25
**settlement** 43:4
**shareholders** 42:10
**shoes** 29:11 30:14
30:21
**short** 59:14
**shorthand** 2:13
71:11
**shown** 68:8
**sic** 27:2
**sign** 9:3 10:5,18
16:18 17:12,16,22
18:5 22:15 65:4
**signature** 62:15
**signed** 9:7 10:2 11:8
14:24 15:1,4 17:6
19:16 21:12 48:10
62:21 63:24 64:4
64:10

**significant** 57:16
**significantly** 57:14
63:2
**signing** 15:23 16:6
17:8 19:7 20:9
21:8 23:20 24:3
34:15 37:8 38:24
39:12 52:16 62:16
**similar** 16:23 17:7
17:12 34:24 35:3
**Simpson** 4:3 7:12
65:8
**sir** 8:20 17:4 18:12
20:17 21:21 22:7
22:25 23:13 25:20
26:6,10 27:13
29:18 30:20 31:6
31:12 36:10 38:5
39:5 40:4 42:12
49:23 56:4 57:11
58:23 62:9 63:4
66:15 67:2
**sitting** 15:7 39:22
55:13 56:16 58:4
58:16 60:13,24
**skip** 32:2
**skipping** 47:16
**slightly** 62:13
**sorry** 25:7 38:15
39:2 52:11
**sounds** 9:23
**source** 21:21 22:7
54:2,14 55:1
**speaking** 21:16
22:17
**speaks** 31:22
**specific** 13:25 23:24
42:12 51:25 55:19
57:12,18,19 59:3
**specifically** 18:16
36:11 58:15
**specified** 27:20 33:1
33:12,21
**specify** 19:13
**specifying** 19:18
**spoke** 10:2 23:3,16
64:22
**ss** 71:2
**stand** 50:19
**standing** 29:10

30:14,21
**Starn** 16:15 17:9,11
**start** 31:2 42:13
**started** 7:7
**state** 18:11 32:10
35:13 37:2 39:6
40:5 41:5 46:14
47:1 61:5 71:1,23
**stated** 21:5,5 50:21
59:12
**statement** 25:5,21
25:24 41:1 48:8
61:2 63:23 66:5,10
**statements** 63:5,17
**states** 1:1 15:12
25:11 27:16 31:18
32:5,9 33:19,25
**stating** 28:3
**Stephen** 6:7 21:6,18
22:19 23:5 26:11
27:11 28:20 29:6
29:10 30:3,9,13,14
31:4,20 32:24
33:10 38:8
**stockholders** 43:3
**Street** 2:11 3:5,13
3:20 4:11
**strike** 31:2 48:1 66:3
**studied** 45:4 47:2,5
**study** 43:11
**subject** 27:16 68:7
**submit** 19:15 41:18
**submitted** 8:6,18
**submitting** 10:8
**Subscribed** 68:11
**subsequently** 32:11
**sued** 44:19
**suggest** 17:15 48:2
**suing** 43:7,11,23
44:4,11
**Suite** 2:11 3:13 4:11
**supply** 6:6 26:11,16
26:20
**support** 8:7 24:2
**sure** 15:2,9 22:12
28:23 29:17 40:1
58:13 67:24
**sworn** 8:2 68:11
71:6
**S-t-a-r-n** 16:15

**T**
**tabulated** 55:22
**take** 8:15 39:24
59:14 67:6,18
**taken** 2:9 40:2 59:17
62:20 71:8
**talked** 10:8
**talking** 26:1 57:20
**tape** 55:11,17,19
60:10
**tapes** 56:15
**Telephone** 3:7,15,22
4:13
**TELEPHONICA...**
3:10
**tell** 8:22 61:1
**term** 28:2 29:22
42:14 45:13,16
46:11 54:18
**terms** 27:17 34:23
43:3 52:3 56:21
57:11 58:3 67:11
**testified** 8:2 37:18
**testify** 71:6
**testimony** 30:6 34:5
56:9 58:9 59:11
63:11,19 64:25
68:5 71:10
**Thacher** 4:3 7:12
65:8
**Thank** 8:11,14
38:20 65:7 66:2,14
67:3,17
**thereabouts** 21:17
**thing** 17:18 67:8
**things** 34:8
**think** 26:18 57:17
59:15
**third** 3:13 25:11
**time** 9:14 10:11 17:8
17:11,15 19:9,14
19:15 23:22 24:12
24:13 35:6 39:21
52:5 57:21 64:4
65:5 71:8
**times** 14:10 51:16
**timing** 34:7
**title** 32:7
**today** 18:18 19:1
39:22 41:10 55:13

56:16 58:5,16
60:13,25 61:1 65:6
**today's** 24:19 25:2
**top** 31:14 41:13
**town** 62:19
**transcribed** 71:12
**transcript** 67:11
68:7
**transferred** 30:2,8
**transferring** 29:24
30:12,12,25
**transfers** 32:6
**true** 68:6 71:9
**truncated** 28:10
**truth** 71:6,6,7
**try** 9:25 38:6
**trying** 39:10
**turn** 27:13 62:9
65:18
**two** 65:11
**types** 17:22 19:3
**typewriting** 71:13
**typically** 14:19

**U**
**understand** 15:2
29:17 30:20 36:10
39:2 60:12
**understanding**
28:17 29:1,8,9,22
30:1,7,24 31:3
32:15 45:23 46:6,7
46:9 54:12 59:20
60:14,24 61:15,19
61:23,24 62:2
**United** 1:1 32:9
**USA** 27:18 28:6
**USAF** 27:19 28:6

**V**
**vague** 8:24 10:25
12:19 13:22 17:19
20:3 21:25 33:22
36:3 39:1 42:25
43:13 44:13,25
47:22 48:22 49:9
50:17,25 51:22
54:17 55:2 56:25
57:7 59:4
**verified** 63:13 66:5

66:10
**verify** 18:24 19:17
20:10 25:23 47:6
60:10,12 63:5
**versus** 43:7,22 44:4
44:11,19 45:11,25
52:3 58:6,18 59:9
**vice** 11:16,18 19:20
27:9 34:18 52:20
54:23
**virtue** 17:25 29:9
49:3,14 50:2
**volume** 14:7,12,13
14:18 55:6
**volumes** 52:3 56:7
**volume-based** 14:8
**vs** 1:8

**W**
**WAC** 13:8,14 14:2
14:11
**waive** 47:20
**waives** 47:14 48:8
**waiving** 49:21
**wake** 46:8
**want** 27:15 38:1
57:18 60:12 67:22
**wants** 61:16
**Warner** 1:10 4:2
7:13 20:19,23 21:3
24:23 28:20 29:4
29:12 30:3,16
32:17 34:11
**Washington** 3:21
**Watkins** 4:9 7:14
**way** 32:21 60:24
62:14
**week** 9:7 10:1 64:10
**Weekly** 55:23
**went** 55:14
**weren't** 59:7
**we've** 61:21
**WHEREOF** 71:18
**wholesaler** 18:19
56:19
**wish** 69:5
**within-entitled** 71:7
**witness** 4:8 5:10
7:15 8:16 9:1,12
11:3 12:9,20,25

13:17,23 14:7,18
16:9 17:21 20:5,15
22:3,12,22 24:6
26:2 28:23 29:17
30:7,20 31:25
32:21 33:6,16,25
34:6 35:3 36:4
37:11,18 38:20
39:2 41:16 42:19
43:2,15,25 44:15
44:22 45:2,6,21
46:4 47:18,23 48:6
48:18,24 49:10,20
50:7,19 51:2,18,25
52:10,13 53:17
54:8,20 55:3,10,17
56:10 57:3,14,24
58:10 59:5,12 60:9
60:19 61:15 63:12
63:21 64:13,20
65:2,7 66:7,13
68:4 71:4,10,18
**witness's** 44:21
**wouldn't** 27:3

**Y**
**Yeah** 39:1 67:7
**year** 23:3
**years** 41:6
**Yonko** 34:16,23
35:6
**Yonko's** 34:17 35:8
**York** 4:6,6
**Y-o-n-k-o** 34:16

**Z**
**Zenchent** 56:13,17
**Ziemke** 56:5,6
**Z-i-e-m-k-e** 56:5

**#**
**#10686** 71:22

**0**
**000094** 26:9
**000100** 27:14
**000117** 26:9

**1**
**1** 6:3 7:3 8:13,17
10:15 14:22,25

15:12 17:7 18:11
19:8 20:10 21:8,12
21:23 22:9 25:6,11
35:12 40:5 42:4
45:17 46:14,22
47:25 48:3 52:16
61:4 63:6 65:19
**1:05-CV-02195-C...**
  1:8
**1:58** 2:12 7:1
**10** 47:13,17,25 48:3
**100** 31:4
**10017-3954** 4:6
**10686** 1:22 2:14
**14th** 10:7,20,22 11:6
  15:6,8 21:16 23:3
  64:2,4 66:24
**15** 1:17 2:12 5:2 7:1
  64:8,9,15,22 65:3
**15-minute** 66:22
**1622** 3:5
**17101** 3:14
**1900** 2:11 4:11
**19103-6305** 3:6

**2**

**2** 6:6,11 26:3,7,8,11
  26:20,25 27:14
  32:23 33:19
**20** 64:8,22
**20-minute** 64:9,15
**20005** 3:21
**2006** 52:8
**2007** 1:17 2:12 5:2
  7:1 37:15 38:24
  39:13 68:12 71:19
**202** 3:22
**21st** 10:6,22 15:1,6,8
  24:3 37:15 38:24
  39:13 62:24
**215** 3:7
**24** 6:8
**25th** 71:19
**26** 6:8

**3**

**3** 6:10 18:10,11 31:8
  31:9,13,14 32:15
**3:23** 68:2
**30** 3:13

**31** 6:11
**35** 18:12,14,17,18,25
  24:24 28:21 29:5
  32:24 33:9,12
  34:12 35:9 45:25
  51:21 52:3,18,25
  53:4,9,14 54:1,13
  55:7 56:7,22,23
  58:4,16 60:2,8,15
**364-1007** 3:15
**391-0600** 4:13

**4**

**4** 6:4 19:3 20:12
  62:12
**415** 4:13
**425** 4:5

**5**

**5** 23:8 25:10
**50** 32:7
**505** 2:10 4:11

**6**

**6** 35:13 37:2 39:6
  61:3
**6B** 27:15 28:2
**65** 5:5
**655** 3:20
**66** 5:6

**7**

**7** 6:4 27:13 33:18
  40:4
**700** 3:13
**717** 3:15

**8**

**8** 5:4 41:5 42:2,4,15
  45:9
**875-3000** 3:7
**879-5285** 3:22

**9**

**9** 46:13,22 48:13,14
  65:18,20
**94111-2562** 4:12