IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MEIJER, INC., *et al.*,<br><br>                      Plaintiffs,<br><br>     v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*,<br><br>                      Defendants. | Civil Action No. 1:05-cv-02195-CKK<br><br>Judge Colleen Kollar-Kotelly |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION TO STRIKE ALL REFERENCES TO DR. LEITZINGER'S MAY 18, 2007 RULE 26(a) EXPERT REPORT IN PLAINTIFFS' REPLY BRIEF AND IN DR. LEITZINGER'S MAY 21, 2007 "REBUTTAL DECLARATION" IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Patrick M. Bryan (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005
(202) 879-5000
(202) 879-5200 (fax)

*Counsel for Barr Pharmaceuticals, Inc.*

Peter C. Thomas (D.C. Bar # 495928)
SIMPSON THACHER & BARTLETT LLP
601 Pennsylvania Avenue, N.W.
North Building
Washington, DC 20004
(202) 220-7700
(202) 220-7702 (fax)

Charles E. Koob (*Pro Hac Vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)

*Counsel for Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals), Ltd.*

Dated:   July 5, 2007

In their opposition brief, plaintiffs inexplicably (and repeatedly) attempt to re-hash and re-argue their motion for class certification; plaintiffs fail, however, to seriously address the central point of Defendants' motion: By waiting to submit any empirical evidence in support of their motion for class certification until submitting their reply brief (and only after their expert was deposed by Defendants), plaintiffs are attempting to deny Defendants any opportunity to test and challenge this new "expert evidence" — evidence that could and should have been presented as part of their *prima facie* case. Nothing in plaintiffs' opposition disputes or calls into question this fact.[1]

Instead, plaintiffs' opposition rests entirely on two false premises: *first*, that Dr. Leitzinger's initial declaration in support of class certification "detailed precisely the same evidence, methodology, and analysis" that was later (and first) disclosed in his so-called "rebuttal" declaration (which expressly incorporates and relies upon his separate and, as yet, untested May 18, 2007 Rule 26(a) expert report); and, *second*, that the analyses and methodologies disclosed Dr. Leitzinger's so-called "rebuttal" declaration are "*unnecessary* for class certification," Opp'n at 11 (emphasis in original), and are instead — according to plaintiffs — simply "icing on the cake," *id*. at 10. (Opp'n at 11.) From these faulty premises plaintiffs attempt to argue that their untimely submission of "expert" evidence in support of their motion for class certification is not prejudicial to Defendants and therefore no relief should be granted. None of plaintiffs' assertions, however, can withstand scrutiny.

---

[1] In plaintiffs' effort to re-argue their class certification motion, plaintiffs repeatedly mischaracterize the deposition testimony Defendants' expert, Dr. Brian Palmer, Ph.D., in an attempt to credit Dr. Leitzinger's recently disclosed methodologies and calculations. (Opp'n at 8-10.) Rather, than rebutting these irrelevant (and false) assertions here, Defendants instead address herein the fundamental issue presented by Defendants' motion, *i.e*., should plaintiffs be allowed to deny Defendants any opportunity to test, rebut, and challenge plaintiffs' previously undisclosed expert evidence in support of their motion for class certification. For the reasons stated herein, Defendants respectfully submit that the answer is clearly no.

*First*, Dr. Leitzinger's initial declaration in support of plaintiffs' motion for class certification presents no methodology at all to calculate class-wide impact and damages. Rather, Dr. Leitzinger simply speculates that, based on certain non-Ovcon, and non-oral contraceptive, general "types of evidence," a "formulaic analysis [of class-wide impact and damages] that does not require individualized inquiry" could be developed. (March 12, 2007 Decl. of Jeffrey Leitzinger, Ph.D. in Supp. of Pls.' Mot. for Class Certification ("Class Decl.") at 8-9, 17.) Dr. Leitzinger expressly states that his conclusion in this regard is based on his purported "experience with [other non-disclosed] economic models and methodologies". (*Id*. at 9.) Nowhere does Dr. Leitzinger describe any such "methodologies" or "economic models" in his initial declaration. Nor does he purport to apply any "economic models" or "methodologies" to this case. Plaintiffs' contention to the contrary is simply false.

*Second*, plaintiffs bear the burden to present evidence demonstrating that each element of Rule 23 has been satisfied as part of their opening motion. As such, it was plaintiffs' burden to present evidence, as part of their opening papers, that impact and damages can be calculated on a class-wide basis. *See*, *e.g.*, *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 303 (5th Cir. 2003) (holding that a plaintiff seeking class certification must present a reliable damages model that functions on a class-wide basis); *In re Medical Waste Servs. Antitrust Litig.*, No. 2:03MD1546 DAK, 2006 WL 538927, at *8 (D. Utah Mar. 3, 2006). Plaintiffs concede this fact. (Opp'n at 11.) Thus, plaintiffs' assertion that the methodologies and calculations first disclosed in Dr. Leitzinger's "rebuttal" declaration and Rule 26(a) expert report — methodologies and calculations that plaintiffs now rely upon in support of their motion for class certification — are "*unnecessary* for class certification," Opp'n at 11 (emphasis in original), and "icing on the cake," *id*. at 10, is both disingenuous and contrary to the law.

2

Indeed, plaintiffs' assertion begs the following questions, (i) if the newly disclosed analyses and methodologies contained in Dr. Leitzinger's Rule 26(a) report are "*unnecessary*" to plaintiffs' motion for class certification, why then would plaintiffs cite that report more than twenty times in their reply brief in support of class certification? and, (ii) why would Dr. Leitzinger's "rebuttal" declaration in support of class certification repeatedly refer to his separate Rule 26(a) report for "[a] full statement of [his] conclusions and the supporting bases [therefor]"? (May 21, 2007 Class Cert. Rebuttal Decl. of Jeffrey Leitzinger, Ph.D. ("Rebuttal Decl.") at 3; *see also id.* at 7 n. 22, 11, 14, 17, 19.) Moreover, why do plaintiffs spend nearly all fourteen pages of their opposition brief attempting justify the untimely introduction of "unnecessary" expert evidence in support of class certification? Plaintiffs fail to address these questions, let alone explain the fundamental inconsistency of their position.

In short, plaintiffs have attempted to submit and rely upon previously undisclosed and, as yet, unchallenged expert evidence in support of their motion for class certification, thereby denying Defendants any opportunity to respond. Thus, plaintiffs' submission of Dr. Leitzinger's Rule 26(a) report in connection with their reply brief in support of their motion for class certification is highly prejudicial and improper. Accordingly, Defendants respectfully request that all references in plaintiffs' reply brief, and in Dr. Leitzinger's May 21, 2007 Class Certification Rebuttal Declaration, to Dr. Leitzinger's May 18, 2007 Rule 26(a) report should be stricken, or in the alternative, Defendants should be granted leave to submit a sur-reply after Dr. Leitzinger has been deposed regarding the contents of his May 18, 2007 Rule 26(a) report.

**ARGUMENT**

I.  **DR. LEITZINGER'S "REBUTTAL DECLARATION" IMPROPERLY INTRODUCES NEW EVIDENCE ON REPLY THAT PROPERLY BELONGED IN PLAINTIFFS' MOTION.**

In their opposition, plaintiffs assert that Dr. Leitzinger's "rebuttal" declaration employs "the very same common evidence and methods to prove classwide impact and aggregate class damages" that were "disclosed" in his initial declaration submitted in support of plaintiffs' motion for class certification and that Defendants "do not claim otherwise." (Opp'n at 5 (emphasis omitted).) Plaintiffs go so far as to claim that Dr. Lietzinger's initial declaration "detailed precisely the same evidence, methodology, and analysis" later used by Dr. Leitzinger in his Rule 26(a) report and "rebuttal" declaration. (*Id*. at 11.) These assertions are simply false and border on the absurd.

Even a cursory review of Dr. Leitzinger's initial declaration in support of plaintiffs' motion for class certification reveals that it discloses no "methodology" at all. Rather, in his initial declaration, Dr. Leitzinger merely concludes that only that this case "lends itself [] to class-wide analysis," and that he is "confident" that he could perform a "formulaic analysis [of class-wide impact and damages] that does not require individualized inquiry." (Class Decl. at 8-9.) Dr. Leitzinger's conclusions are based on his purported "experience with economic models and methodologies" which he surmises could be "reliably" applied to this case. (*Id*. at 9.) However, Dr. Leitzinger nowhere describes such "methodologies" or "economic models" in his initial declaration. Rather, Dr. Leitzinger merely states that — *if* he were to develop a methodology to purportedly assess class-wide impact and damages — he may develop what he termed a "benchmark for market performance" and would calculate alleged "overcharges" as the "difference between the generic Ovcon 35 price . . . and the Ovcon 35 brand price . . . multiplied by the volume of generic" purchases. (*Id*. at 32.) Plaintiffs contend that this vague narrative

4

"set[s] out the precise methodology [Dr. Leitzinger] would use to measure aggregate overcharges to the class." (Opp'n at 7.) It clearly does not.

Dr. Leitzinger's failure to specify his purported "methodologies" in his initial declaration in support of plaintiffs' motion for class certification is not surprising. During his deposition Dr. Leitzinger testified that he had not — at the time he submitted his initial declaration — determined how he would purportedly calculate class-wide impact and damages:

> Q: [Y]ou have not decided what the appropriate benchmark would be for your analysis of damages?
>
> A: I -- I think as is clear in the declaration, ***I did not hold out a -- a specific benchmark as appropriate for damages***. I identified several places one could look for a benchmark that either -- that I have used or the companies themselves have used in analyzing the problem, but that's as far as things -- that's as far as I went in terms of the declaration.

(Apr. 4, 2007 Deposition Tr. of Jeffrey Leitzinger, Ph.D. ("Leitzinger Tr.") at 50 (attached as Ex. A) (emphasis added).) Moreover, Dr. Leitzinger testified that he had not performed any empirical or quantitative analyses in support of his initial declaration. (*Id*. at 30-32.)

Instead, plaintiffs waited over one month *after* Defendants filed their opposition to plaintiffs' motion for class certification to disclose Dr. Leitzinger's purported methodologies to calculate class-wide impact and damages. In his Rule 26(a) expert report (expressly incorporated into his "rebuttal" declaration in support of class certification), Dr. Leitzinger describes his purported method to calculate class-wide impact and damages, including the means by which he purportedly calculated the size of the putative class, alleged "but-for prices," alleged per unit overcharges, and the so-called "generic equilibrium." (May 18, 2007 Expert Report of Jeffrey Leitzinger, Ph.D. ("26(a) Report") at 28-44.) Dr. Leitzinger also describes the data on which he relied and reveals the assumptions he made regarding the putative class and class members' purchases of Ovcon 35. (*Id*.) Most importantly, in his expert report, Dr. Leitzinger — ***for the***

5

*first time* — describes the means by which he purportedly calculated class-wide impact and damages in this case. (*Id.*; *see also* Rebuttal Decl. at 14 ("The economic evidence regarding antitrust injury presented in my Expert Report . . . "); *id.* at 17 ("simply refer[ring]" one to his "Expert Report" for a description of his methodology to calculate alleged "overcharge" damages).) [2]

This information is conspicuously absent from Dr. Leitzinger's initial declaration and plaintiffs' bald claim to the contrary cannot withstand scrutiny. Indeed, Dr. Leitzinger himself concedes in his so-called "rebuttal" declaration that "[a] full statement of [his] conclusions" in support of plaintiffs' motion for class certification (and "the supporting bases" therefor) are contained — *not* in his initial declaration in support of plaintiffs' motion for class certification but in — his 26(a) Report submitted well after his Defendants opposition brief was filed and well after Dr. Leitzinger was initially deposed.[3] (Rebuttal Decl. at 3.)

---

[2] Plaintiffs apparently contend that because Dr. Leitzinger performed similar analyses in *other* antitrust cases, that somehow these other cases put Defendants on notice of his purported methodologies in this case. (Opp'n at 2-3.) As an initial matter, in two of the three cases cited by plaintiffs (*Cardizem* and *Buspirone*), Dr. Leitzinger did not actually offer any opinion in support of class certification — *i.e.*, classes were already certified before Dr. Leitzinger was engaged by the plaintiffs in those cases. (*See* Leitzinger Dep. Tr. at 41-42.) More importantly, Dr. Leitzinger himself admits that any analysis he performed in another case — involving other products and other parties — says nothing about any purported analysis he might perform in this case. (*Id.* at 69 (testifying that ***"as you go from case to case and product to product there are differences in the facts as – as they are presented in each case that make the calculation, in its – in its final and detailed form somewhat different from case to case."***).) Incredibly, plaintiffs also claim that Defendants should have already known of Dr. Leitzinger's methodologies because Defendants purportedly "used an approach like the one Dr. Leitzinger used to evaluate the potential success of their scheme in this case." (Opp'n at 3 n. 1.) In support of this argument, plaintiffs refer to Defendants' internal projections on generic substitution rates — projections which have nothing to do with either Dr. Leitzinger's previously undisclosed methodologies or Defendants ability to test and rebut those methodologies.

[3] Notably, Defendants do not assert, as plaintiffs contend, that plaintiffs' "opening class papers were somehow deficient" because they failed to disclose Dr. Leitzinger's "'*actual calculations of impact and damages*'". (Opp'n at 3 (emphasis added).) Nowhere in Defendants' motion is the phrase "actual calculations of impact and damages" ever used. Rather, as the foregoing discussion clearly shows, Defendants' motion is predicated on the improper and prejudicial attempt to wait until their reply to set forth *any* purported methodology at all to calculate class-wide impact and damages.

6

It was plaintiffs' burden to come forward with this information in connection with their opening brief, and not — as they have here — "save it for the reply." *See, e.g.*, *Emrick v. U.S. Suzuki Motors Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) ("It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof."); 6 J. Wigmore, *Evidence* § 1873 at 678 (Chadbourne rev. 1976). Plaintiffs cannot keep their expert evidence in reserve "hoping to achieve some tactical advantage by a dramatic final statement on the issue[s]." *Skogen v. Dow Chem. Co.*, 375 F.2d 692, 706 (8th Cir. 1967) (superseded on other grounds); *see also Heatherly v. Zimmerman*, No. 92-7050, 1993 WL 523995, at *2 (D.C. Cir. Dec. 10, 1993).

By waiting to submit any empirical analyses or methodologies in support of their motion for class certification until submitting their reply brief, plaintiffs are attempting to deny Defendants any opportunity to test and challenge this new "expert evidence." Because Dr. Leitzinger's so-called "rebuttal" declaration unquestionably introduces evidence on reply that properly belonged in plaintiffs' opening papers in support of their motion for class certification, all references in Dr. Leitzinger's "rebuttal" declaration and all references in plaintiffs' reply brief to Dr. Leitzinger's separate Rule 26(a) report should be stricken in their entirety or, alternatively, Defendants should be granted leave to file a sur-reply in opposition to plaintiffs' motion for class certification.

## II. DEFENDANTS' REQUESTED RELIEF IS BOTH NECESSARY AND APPROPRIATE.

Plaintiffs contend that "Defendants do not cite a single case that holds that it is improper for a plaintiff to cite an expert's report on the merits in class certification briefing," Opp'n at 13,

and assert that Defendants are attempting to "turn [a] long-standing rule" that a "moving party is entitled to have the last word" "upside down," *id*. at 14. Plaintiffs miss the point.

*First*, Defendants do not contend that a plaintiff is never entitled to cite an expert's Rule 26(a) report in support of class certification. Rather, Defendants contend (and have shown) that it is improper and prejudicial to rely upon any expert evidence in support of class certification if (as here) that evidence properly could and should have been disclosed as part of a plaintiff's *prima facie* case. Indeed, one of the purposes of the Rule 26 "is to prevent unfair surprise [] and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examination at trial." *Minebea Co., Ltd., et al. v. Papst, et al.*, 231 F.R.D. 3, 5-6 (D.D.C. 2005) (internal citations omitted). The Rule thus "prevents experts from 'lying in wait' to express new opinions at the last minute," thereby denying — as here — "the opposing party the opportunity to depose the expert on the new information or closely examine the expert's new testimony." *Id*. at 6; *see also Peterson v. Knight Architects, Eng'rs, Planners, Inc.*, No. 97-1439, 1999 WL 1313696 at *13 (N.D. Ill. Nov. 4, 1999) ("Raising an issue for the first time in reply is improper," precisely because "it deprives the opposing party of a meaningful chance to respond."). By failing to disclose Dr. Leitzinger's purported methodologies to calculate class-wide impact and damages until submitting their reply brief, plaintiffs have attempted to do precisely that.[4]

*Second*, by opposing Defendants' request to depose Dr. Leitzinger regarding his newly disclosed methodologies (and to submit a sur-reply), plaintiffs are not only asking to have "the

---

[4] Plaintiffs' suggestion that Defendants have "had every opportunity to question Dr. Leitzinger about" his methodologies during his deposition, Opp'n at 11, simply defies logic. The assertions and methodologies set forth in Dr. Leitzinger's Rule 26(a) (and expressly incorporated into his "rebuttal" declaration) were served well over a month *after* he was initially deposed.

8

last word," they are seeking to have the *only* word.  In other words, plaintiffs seek to deny Defendants any opportunity to test or rebut Dr. Leitzinger's newly disclosed "expert" evidence.  Such a result is clearly inconsistent with the policies underlying Rule 26.

Thus, far from "unprecedented," as plaintiffs contend, Opp'n at 1, Defendants' requested relief is both appropriate and necessary.  *See*, *e.g*., *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 611 (S.D.N.Y. 2004) (finding that where one party submits an untimely declaration in support of a claim, the court should "ensure a level playing field and afford both parties an opportunity for full discovery" by striking the untimely expert evidence or permitting the opposing party to depose the expert on the newly introduced evidence); *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994), *reh'g den*., No. 9303125, 1994 U.S. App. LEXIS 30026 (7th Cir. Oct. 27, 1994); *see also* May 24, 2006 Order, *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, Civ. Action No. 9:05-80183-PAS (S.D. Fla.) (attached as Ex. B) (granting defendant's motion for leave to file a sur-reply in opposition to plaintiff's motion for class certification where plaintiff submitted expert evidence in support of plaintiff's motion for the first time on reply).

## CONCLUSION

For all the foregoing reasons, as well as the reasons set out in Defendants' original Motion to Strike, Defendants respectfully request that this Court enter an Order striking all references in plaintiffs' reply brief in support of their motion for class certification, and all references in Dr. Leitzinger's May 21, 2007 "rebuttal" declaration, to Dr. Leitzinger's May 18, 2007 Rule 26(a) expert report or, alternatively, grant Defendants leave to file a sur-reply (including memorandum and expert sur-rebuttal declarations if needed) in opposition to plaintiffs' motion for class certification after an opportunity to depose Dr. Leitzinger.

Dated: July 5, 2007

Respectfully submitted,

   /s/ Karen N. Walker
Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Patrick M. Bryan (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005
(202) 879-5000
(202) 879-5200 (fax)

*Counsel for Barr Pharmaceuticals, Inc.*

   /s/ Peter C. Thomas
Peter C. Thomas (D.C. Bar # 495928)
SIMPSON THACHER & BARTLETT LLP
601 Pennsylvania Avenue, N.W.
North Building
Washington, DC 20004
(202) 220-7700
(202) 220-7702 (fax)

Charles E. Koob (*Pro Hac Vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)

*Counsel for Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals), Ltd.*