IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., MEIJER DISTRIBUTION, INC., LOUISIANA WHOLESALE DRUG CO., INC., ROCHESTER DRUG CO-OPERATIVE, INC., AMERICAN SALES COMPANY, INC., SAJ DISTRIBUTORS, INC., and STEPHEN L. LaFRANCE HOLDINGS, INC., on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>  v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC.,<br><br>      Defendants. | No. 05 Civ. 2195 (CKK)<br><br>ORAL ARGUMENT REQUESTED |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE MAY 21, 2007 DECLARATIONS OF <u>JOHN JAY FLINN, SAUL D. FACTOR AND BRIAN JONES</u>**

Plaintiffs Meijer, Inc., *et al*. (the "Direct Purchaser Class Plaintiffs" or "Plaintiffs") respond as follows to the Joint Motion to Strike the May 21, 2007 Declarations of John Jay Flinn, Saul D. Factor, and Brian Jones (Doc. #116) filed by defendants Barr Pharmaceuticals, Inc., Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US), Inc., Warner Chilcott Company, Inc., and Galen (Chemicals), Ltd. (collectively, "Defendants").

**PRELIMINARY STATEMENT**

Defendants have now filed a second motion seeking to strike matter they themselves made relevant to Plaintiffs' Motion for Class Certification.[1]  Defendants ask this Court to strike the Declarations of three non-parties that Plaintiffs appended to their class reply papers.

The non-parties are absent class members whom Defendants wagered – wrongly, it turns out – would line up *against* certification of the proposed class of direct purchasers in this case. Responding by way of Declaration to Defendants' speculative arguments in opposition to class certification, Cardinal Health, Inc. ("Cardinal"), McKesson Corporation ("McKesson"), and AmerisourceBergen Corporation ("ABC") (collectively, the "National Wholesalers") each unqualifiedly stated that it *wanted* this Court to certify the proposed class with the named Plaintiffs as class representatives. Each National Wholesaler also stated that Defendants' speculation – that these absent class members have interests that conflict with those of the named plaintiffs or other

---

[1] Defendants first baselessly sought to strike Plaintiffs' references, in Plaintiffs' own class reply papers, to the timely-served merits expert report of economist Jeffrey J. Leitzinger, Ph.D. (D.E. ##111, 113, 117). But, as Plaintiffs have explained elsewhere, the supposedly-offending Leitzinger Report simply employed the common evidence and methods that Dr. Leitzinger had predicted in his Class Declaration he would and could successfully use to assess impact and damages to the direct purchaser class. D.E. #113.

absent class members – was simply wrong. *See* Def. Br. Exs. A-C (National Wholesaler Declarations).

Defendants thus resort to arguing that the corporate representatives, whom each of the National Wholesalers designated to announce their true interests to this Court, lacked sufficient "personal knowledge," thereby rendering the Declarations "inadmissible." Defendants' argument is formalistic and frivolous. It is well settled in this District and Circuit that material submitted in connection with class certification, such as the National Wholesaler Declarations, need not be admissible in evidence. Even putting aside that well-settled law, those who are designated to speak for corporations – like the declarants at issue here – do not need personal knowledge for their statements to be competent evidence. Instead, corporate designees simply need to articulate the position *of the corporation*, something Defendants do not dispute these designees did, both through the Declarations and in the subsequent depositions.

To remove any doubt whatsoever concerning the positions of each of the National Wholesalers as to this litigation and whether or not "intra-class" conflicts exist between the named Plaintiffs and these absent class members, their respective counsel have addressed letters to the Court, which they have asked Plaintiffs to append hereto. These letters each explain – independent of the Declarations that Defendants seek to strike – the bases upon which each of the Declarations was submitted, and ratify their respective clients' positions about this case and the absence of the conflicts about which Defendants baselessly speculated. *See* Exs. A-C hereto.

At bottom, Defendants were surprised by, and do not like, the Declarations of the National Wholesalers. If Defendants did not want to hear what those nonparty class members had to say, Defendants should not have, in their brief opposing class certification, presumed to speak for them.

Having done so, Defendants cannot now be heard to reply to these entities, "well, who asked you, anyway?" Defendants' bid to silence Cardinal, McKesson and ABC – which, is the sole relief Defendants seek – must, respectfully, fail.

## BACKGROUND

### A.  Class Certification Briefing

On March 12 of this year, Plaintiffs filed their Motion for Class Certification, which is now fully briefed and before the Court. D.E. ## 92-95. In opposing that motion, Defendants devoted an entire section of their brief to speculating that supposed intra-class conflicts precluded Plaintiffs' ability to meet the requisites of Rule 23(a)(4), which requires that the named plaintiffs be deemed "adequate" representatives of the proposed class. D.E. #99, at 38-41.[2] Specifically referring to Cardinal, McKesson, and ABC, Defendants argued that "The Claims of National Wholesalers Are In Substantial Conflict With Other Members Of The Putative Class." D.E. #99, at 39. Defendants

---

[2] Defendants made that argument even though many of the same named Plaintiffs in this case have repeatedly been found by courts to satisfy Rule 23(a) in analogous cases, including where the National Wholesalers were absent class members. *E.g.*, *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001). The list of such cases grows when classes certified in light of settlement are considered – which includes, no less, the class certified on remand in the case upon which Defendants hinge their entire argument in opposition to class certification: *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003). *See In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317, Omnibus Order Granting Motion for Certification of Direct Purchaser ("Sherman Act") Class ¶ 1 (S.D. Fla. Feb. 25, 2005) (following remand in *Valley Drug*) (Ex. D hereto); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) (granting final approval to direct purchaser settlement class); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, Misc No. 04mc535 (D.D.C. Jan 6, 2006) (order certifying settlement class) (Ex. E hereto); *In re K-Dur Antitrust Litig.*, No. 01-1652, Order Preliminarily Approving Partial Settlement, Certifying a Settlement Class and Authorizing Notice to the Class and Setting Hearing ¶ 1 (D.N.J. Sept. 30, 2004) (Ex. F hereto). "Cases certifying classes for settlement . . . have the same precedential value as other [class certification] cases." *Id. Taylor v. District of Columbia Water & Sewer Auth.*, 205 F.R.D. 43, 49 n.6 (D.D.C. 2002) (citations omitted).

theorized that Cardinal, McKesson, and ABC – the only absent class members to which Defendants specifically referred – would not want the Court to certify the proposed direct purchaser class because, in supposed conflict with the named Plaintiffs, continuing this litigation would purportedly be against the financial interests of the National Wholesalers.[3]

In response, each of the National Wholesalers, by their designated representatives, submitted the Declarations that Defendants now want stricken. Def. Br. Exs. A-C. Contrary to Defendants' hypothesis, Cardinal, McKesson and ABC each stated, by the Declarations, its respective official position: that its "interests would best be served by the Court certifying the proposed class of direct purchasers, represented by the Named Plaintiffs and their counsel, and allowing this action to proceed as a class action" with each National Wholesaler "remaining a member of the class"; and, that they believed there was *no* antagonism or conflict between the interests of the Named Plaintiffs in pursuing overcharge damages in this case and Cardinal, McKesson and ABC's "overall legal and economic interests." *Id.*

In their reply brief in further support of class certification, Plaintiffs vigorously disputed the purported legal and factual underpinnings of Defendants' "conflict" argument,[4] and noted that the positions taken by the National Wholesalers, as articulated in the Declarations, refuted Defendants' speculation about intra-class conflicts entirely. D.E. #103, at 18-20.

---

[3]Defendants' argument was based entirely upon the Eleventh Circuit's *Valley Drug* decision, whose reasoning, Plaintiffs demonstrate in Part III below, is both inapplicable (in part because of the existence of the very Declarations at issue in this motion) and widely criticized. Moreover, *Valley Drug* simply invites plaintiffs to "bring forth evidence to the court that no fundamental conflict exists among the class members" (350 F.3d at 1196), which is precisely what Cardinal, McKesson and ABC, by their Declarations, did here.

[4]Defendants falsely suggest, citing nothing whatsoever, that Plaintiffs did not dispute Defendants' argument. Def. Br. at 1.

Shortly after the Declarations were filed and served on Defendants, Defendants expressed interest in taking the depositions of the corporate representatives that each of the National Wholesalers had respectively designated to sign a Declaration on the corporation's behalf. Even though discovery directed to absent class members is typically quite limited (*e.g.*, *Disability Rights Council v. Washington Metro. Area Trans. Auth.*, No. 04-498, 2006 WL 2588710, *1 (D.D.C. Sept. 7, 2006)), Plaintiffs and the National Wholesalers facilitated this request. Counsel for each of the National Wholesalers agreed to accept service, by email, of Defendants' subpoenas naming the individual corporate designee who signed each Declaration, which Defendants paired with corresponding document requests directed to the corporation.

### B.    Depositions of Cardinal, McKesson and ABC's Designees

On June 8, 2007, Defendants took the deposition, in Columbus, Ohio, of the employee that Cardinal designated to sign its Declaration, John Jay Flinn. Def. Br. Ex. D (transcript). Mr. Flinn noted that he was represented at the deposition by Cardinal's counsel, Thomas L. Long, Esq. of Baker & Hostetler in Columbus, Ohio. *Id.* at 2:10-13; 9:3-7. Mr. Flinn testified that he did not draft Cardinal's Declaration, but that it was drafted by Cardinal's legal department for his signature. *Id.* at 15:16-16:19. Before signing the Declaration, Mr. Flinn discussed it only with counsel for Cardinal. *Id.* at 20:3-9. The statements in Cardinal's Declaration are based, almost solely, on Mr. Flinn's privileged discussions with Cardinal's counsel. *Id.* at 33:15-19; 48:21-49:20; 53:3-54:17; 57:18-58:6; 61:16-25; 75:1-11; 81:4-82:11; 83:13-84:1.[5]

---

[5]In Plaintiffs' view, Defense counsel abused Cardinal's cooperation in presenting its designee for a deposition by asking questions that Defendants now concede had nothing whatsoever to do with the Declaration (Def. Br. at 2 n.1, 10 ("*other* types of contracts . . . and *other* factors")). Moreover, the propriety of those questions are the subject of a fully-briefed motion pending before the Court
(continued...)

On June 14, 2007, Defendants took the deposition, in Philadelphia, Pennsylvania, of the employee that ABC designated to sign its Declaration, Brian Jones. Def. Br. Ex. F (transcript). Mr. Jones testified that he was represented at the deposition by ABC's counsel, Howard Scher, Esq. of Buchanan Ingersoll & Rooney in Philadelphia, Pennsylvania. *Id.* at 3:3-6; 8:16-22. Mr. Jones testified that he was asked by ABC's legal department to read, approve, and sign the Declaration, which he did not draft, which stated ABC's position in this case. *Id.* at 9:14-24; 12:25-14:10. ABC's legal department authorized Mr. Jones to sign the Declaration, Mr. Jones testified. *Id.* at 15:1-8. The statements in ABC's Declaration are based, almost exclusively, on Mr. Jones's privileged discussions with ABC's in-house counsel, Jon Sturz. *Id.* at 30:10-17; 31:5-10; 32:13-16; 36:3-9; 37:21-25. The judgments expressed in the Declaration are not Mr. Jones's; they are, he testified, those of ABC's legal department. *Id.* at 35:10-36:2; 44:3-9; 45:12-19; 75:11-16.[6]

---

[5](...continued)
concerning whether such "downstream discovery"– which has been universally condemned by practically every court in the nation (including this one, *see In re Vitamins Antitrust Litig.*, 198 F.R.D. 296 (D.D.C. 2000)) – may be had by defendants in an antitrust case brought by direct purchasers. D.E. ## 55, 59, 74. Counsel for Cardinal – not counsel for Plaintiffs – objected and instructed his client not to answer such questions. Defendants now unfairly seek to tar *Plaintiffs* for instructions to a nonparty witness issued by that nonparty's own counsel. (Counsel for Plaintiffs once joined in counsel for Cardinal's instruction to his witness not to answer a question. *Id.* at 31:24. Counsel intended only to join in the objection (and not the instruction). Class counsel obviously has no authority to direct witnesses that they do not directly represent not to answer questions at a deposition. In any event, Defendants' claim that Class counsel "joined in instructing the witnesses not to answer many of Defendants' questions" (Def. Br. at 2) – is simply false.)

[6]As with the Cardinal deposition, Defense counsel abused ABC's cooperation in presenting its designee for a deposition by asking questions that had nothing whatsoever to do with the Declaration, which are the subject of a fully-briefed motion concerning the proper scope of discovery in this case. D.E. ## 55, 59, 74. Counsel for ABC objected and instructed his client not to answer such questions. Defendants unfairly seek to fault Plaintiffs for instructions to a nonparty witness issued by counsel for that witness. In purported support, Defendants appear to invoke Rule 37(b)(2) (Def. Br. at 12), which does not apply to nonparties. Rule 37(a)(1), which does pertain to nonparties,
(continued...)

On June 15, 2007, Defendants took the deposition, in San Francisco, California, of the employee that McKesson designated to sign its Declaration, Saul D. Factor. Def. Br. Ex. E (transcript). Mr. Factor was represented by McKesson's counsel, Peter K. Huston, Esq. of Latham & Watkins in San Francisco, California. *Id.* at 4:8-13. Mr. Factor testified that he signed the Declaration after McKesson's legal department contacted him and asked him to sign it on behalf of McKesson. *Id.* at 8:22-9:10; 10:17-19. The source of the statements in McKesson's Declaration is, almost exclusively, Mr. Factor's privileged conversations with McKesson's counsel. *Id.* at 21:11-22:15; 23:8-18; 25:20-26:2; 35:13-36:10; 39:10-20; 41:21-42:1; 61:12-22; 63:4-24; 64:6-13; 66:4-67:2. McKesson's legal department reached the judgments expressed in McKesson's Declaration. *Id.* at 40:4-41:4. Mr. Factor makes it clear that he is speaking for McKesson, not for himself. *Id.* at 42:2-43:19; 46:21-24; 48:18-1; 51:2-7; 61:15-22; 66:4-13.

## ARGUMENT

### I. THE DECLARANTS' "PERSONAL KNOWLEDGE" IS UNNECESSARY

The entire premise of Defendants' motion rests upon a misconception. Defendants pretend that each designated declarant is speaking on behalf of himself, based on his own personal knowledge, and is merely talking "about" the corporate entity that employs and has designated him. Defendants then attack each declarant for lacking sufficient personal knowledge, and deem the Declarations "neither colorable nor admissible evidence." Def. Br. at 2.

This argument is doubly flawed. ***First,*** materials submitted in connection with class certification, like the Declarations at issue here, need not be admissible in evidence. *Disability*

---

[6](...continued)
prevents Defendants from seeking relief in this judicial district, where none of the nonparty depositions took place.

*Rights Council v. Washington Metro. Trans. Auth.*, 239 F.R.D. 9, 24 (D.D.C. 2006) (denying motions to strike because "[e]vidence need not be admissible at trial in order to be submitted for purposes of a class certification inquiry. * * * Accordingly, the court need not and will not review plaintiffs' submissions for admissibility") (citing *In re Rand Corp.,* No. 02-8007, 2002 WL 1461810, at *1 (D.C. Cir. July 8, 2002) ("the propriety of a district court's refusal to scrutinize for admissibility and probative value evidence proffered to demonstrate that the requirements of Federal Rule of Civil Procedure 23(a) are satisfied is well-settled")).[7]

**Second,** Defendants know very well that the employees whom the National Wholesalers designated to execute Declarations were *not* speaking for themselves in their personal capacities, or based upon their own personal knowledge. Rather, the Declarations themselves expressly state that each declarant was designated to execute the Declaration on behalf of *the corporation*. *See* Def. Br. Exs. A-C, ¶ 1 ("I have authority to execute this Declaration on behalf of [the corporation]"). In addition, the Declarations speak in terms of the *corporation's* state of mind and interests, not those of the declarant. *Id.* ¶ 5 ("[the corporation] is aware that"); ¶ 6 ("[the corporation] has determined"); ¶ 7 ("[the corporation] is confident that").

If the Declarations themselves were not sufficiently clear to Defendants on that point, the deposition testimony of each declarant, reviewed above, places beyond question that the National Wholesalers themselves, through their respective in-house legal departments and outside counsel,

---

[7]*See also Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 279 (S.D. Ala. 2006) ("the Federal Rules of Evidence are not stringently applied at the class certification stage because of the preliminary nature of such proceedings"); *In re Hartford Sales Practices Litigation*, 192 F.R.D. 592, 597 (D. Minn.1999) ("[o]n a motion for class certification, the evidentiary rules are not strictly applied and courts will consider evidence that may not be admissible at trial"); *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 582 (W.D. Mich. 2001) (same).

are the source of the statements contained in each Declaration, and that the individual designated by each, respectively, to execute the Declarations did so as a corporate designee, and not in his own right.[8]

Of course, "it is not literally possible to take the deposition of a corporation." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). Instead, someone must be designated to speak *for* a corporation. *Id.*; *see also Rainey v. Am. Forest and Paper Assoc., Inc.*, 26 F. Supp.2d 82, 94 (D.D.C. 1998) ("a designee . . . is 'speaking for the corporation' about matters to which the corporation has reasonable access"). When a corporation designates a witness to speak for it, the "personal knowledge" requirement of F.R.E. 602 – to which defendants attempt to hold Cardinal, McKesson and ABC's declarants – is inapplicable. Instead, the designee properly testifies to the position of *the corporation*. *E.g.*, *E.E.O.C. v. Thorman & Wright Corp.*, -- F.R.D. --, 2007 WL 1638602, *4 (D. Kan. June 5, 2007) ("personal knowledge of the designated subject matter by the selected deponent is of no consequence").[9]

---

[8] *See* Flinn Tr. (Def. Br. Ex. D) at 15:16-16:19; 20:3-9; 33:15-19; 48:21-49:20; 53:3-54:17; 57:18-58:6; 61:16-25; 75:1-11; 81:4-82:11; 83:13-84:1; Jones Tr. (Def. Br. Ex. F) at 9:14-24; 12:25-14:10; 15:1-8; 30:10-17; 31:5-10; 32:13-16; 36:3-9; 37:21-25; 35:10-36:2; 44:3-9; 45:12-19; 75:11-16; Factor Tr. (Def. Br. Ex. E) at 8:22-9:10; 10:17-19; 21:11-22:15; 23:8-18; 25:20-26:2; 35:13-36:10; 39:10-20; 41:21-42:1; 61:12-22; 63:4-24; 64:6-13; 66:4-67:2; 40:4-41:4; 42:2-43:19; 46:21-24; 48:18-1; 51:2-7; 61:15-22; 66:4-13. That Defendants, in issuing subpoenas to Cardinal, McKesson and ABC – service of which was accepted by outside counsel for each corporation – placed the name of the declarant himself on the subpoena rather than the name of the corporation under Rule 30(b)(6) is of no moment. Cardinal, McKesson and ABC had *already* designated a representative to speak for each corporation, respectively, when preparing and executing their respective Declarations, obviating Defendants' need to invoke Rule 30(b)(6).

[9] *See also Pro-Football, Inc. v. Harjo*, No. 99-1385, 2006 WL 2092637, *6 (D.D.C. July 26, 2006) (Kollar-Kotelly, J.) (referencing difference between personal knowledge requirement of F.R.E. 602 and the knowledge of a corporation under Rule 30(b)(6)); *PPM Finance, Inc. v. Norandal USA, Inc.*, 297 F. Supp.2d 1072, 1085-86 (N.D. Ill. 2004) ("[a] Rule 30(b)(6) witness, however, need not
(continued...)

Thus, Defendants' entire argument rests on premises that not only misstate, apparently on purpose,[10] the role of the declarants, but which are wholly without legal support. As designees of their respective corporations, Messrs. Flinn, Factor, and Jones need not have personal knowledge, but simply must express the position of the corporations that designated them. Here, they expressed the position of the National Wholesalers concerning whether certain conflicts Defendants theorized existed did or did not, in the view of the corporation, exist.[11] Defendants' arguments, and the case law they cite, are simply inapposite.

---

[9](...continued) have personal knowledge of the facts to which he testifies, because he testifies as to the corporation's position on the matters set forth in the Rule 30(b)(6), not his personal opinion"); *Gucci America, Inc. v. Ashley Reed Trading, Inc.*, No. 00-6041, 2003 WL 22327162, *3 (S.D.N.Y. 2003) ("[b]ecause Rule 30(b)(6) witnesses testify on the corporation's behalf, courts routinely hold that such deponents need not have personal knowledge on a given subject, so long as they are able to convey the information known to the corporation"); *Nutramax Labs., Inc. v. Twin Labs., Inc.*, 183 F.R.D. 458, 469 (D. Md. 1998) (corporate designees are not restricted by F.R.E. 602).

[10] Defendants betray, three times in their very own brief, their feigned ignorance that the assertions in the Declarations are those of the corporations, not the declarants themselves. Def. Br. at 5 ("nor did a single declarant conduct any analyses or research into *'their'* assertions") (emphasis added; quotation marks in original); *id.* at 6 ("the declarants did not even go so far as to review a single document substantiating *'their'* purported assertions") (same); *id.* at 10 ("denied the opportunity to explore *'their'* purported opinions or assertions") (same).

[11] There was nothing, therefore, for Defendants to "rebut" in the testimony of the declarants. Def. Br. at 3, 11. The positions of Cardinal, McKesson and ABC are just that — the positions taken by those nonparty corporations on issues that Defendants themselves asked about in opposing class certification.

**II.    CARDINAL, McKESSON AND ABC VALIDLY ACT THROUGH THEIR LAWYERS, AND THOSE JUDGMENTS SHOULD NOT BE SECOND-GUESSED**

    **A.    The National Wholesalers' Counsel Should Not Be Second-Guessed**

Suggesting that the judgments and determinations reached by the National Wholesalers were somehow insufficiently informed,[12] or unauthorized,[13] Defendants effectively ask the Court to disregard the Declarations and the positions expressed in them. Yet, as was made clear in unrebutted deposition testimony, the Declarations and the statements in them are the product of judgments made, and advice rendered, by *counsel* for the National Wholesalers.[14] Whether the attorneys for these entities gave their respective clients good advice, followed proper corporate procedure, or were properly authorized to cause the Declarations to issue, is *not* something that Defendants can (or even in fact have) questioned. *See In re Armored Car Antitrust Litig.*, 645 F.2d 488, 492-93 (11th Cir. 1981) (defendant lacked standing to challenge authority of counsel to communicate to the court the desire of his client and affiliated entities to opt out of class action) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)).

---

[12]*E.g.*, Def. Br. at 4 ("none of the Wholesaler Declarations offer any facts" but rather contain "conclusory assertions or opinions"); *id.* at 5 ("nor did a single declarant conduct any analyses or research into 'their' assertions"); *id.* at 5 ("bereft of any factual basis"); *id.* at 6 ("the declarants did not even go so far as to review a single document substantiating 'their' purported assertions").

[13]*E.g.*, Def. Br. at 7 n.5 ("declarants cannot waive conflicts as to which they do not even have . . . the authority to testify").

[14]*See* Flinn Tr. (Def. Br. Ex. D) at 33:15-19; 48:21-49:20; 53:3-54:17; 57:18-58:6; 61:16-25; 75:1-11; 81:4-82:11; 83:13-84:1; Factor Tr. (Def. Br. Ex. E) at 21:11-22:15; 23:8-18; 25:20-26:2; 35:13-36:10; 39:10-20; 40:4-41:4; 41:21-42:1; 61:12-22; 63:4-24; 64:6-13; 66:4-67:2; Jones Tr. (Def. Br. Ex. F) at 30:10-17; 31:5-10; 35:10-36:2; 32:13-16; 36:3-9; 37:21-25; 44:3-9; 45:12-19; 75:11-16.

Rather, the attorneys for McKesson, Cardinal, and ABC are, as a matter of law, presumed authorized to act on behalf of their clients. *E.g.*, *Adem v. Bush*, No. 05-723, 2006 WL 1193853, *3 (D.D.C. Apr. 28, 2006) (rejecting defendant's suggestion that plaintiff's counsel was not authorized to act on behalf of plaintiff, because "when an attorney of record appears in an action for one of the parties, his authority, in the absence of any proof to the contrary, will be presumed").[15]

Because of this presumption, the National Wholesalers are not required to adduce evidence that their lawyers were authorized to act on their behalf, nor need their lawyers demonstrate that they were acting within the authorization granted by the National Wholesalers. *Communist Party*, 332 F.2d at 327-28 (tax court committed error by requiring petitioner to prove the authority of its lawyers to act for it); *id.* at 329 (client "is [erroneously] said to have failed to prove something which is presumed to exist"). Nor are the National Wholesalers required to demonstrate that they properly followed their own internal procedures in vesting their lawyers with the authority to act in connection with this litigation. *Id.* at 328-29. Rather, "the steps necessary to create such authority are presumed to exist until demonstrated to have been omitted." *Id.* at 329 & n.6 (citing *Bank of U.S. v. Dandridge*, 25 U.S. 40, 44 (1827)). Defendants do not even try to make such a showing.

---

[15]*See also Communist Party v. Comm'r*, 332 F.2d 325, 327-28 (D.C. Cir. 1964) (explaining the "ancient presumption" of "the authority of a duly licensed attorney, appearing in regular course, to act for the litigant he purports to represent"); *Booth v. Fletcher*, 101 F.2d 676, 683 (D.C. Cir. 1938) ("the presumption is that an attorney at law who appears in regular manner on behalf of a party litigant has authority to do so"). This presumption "is bottomed on the knowledge that members of the bar do not take lightly their responsibilities as officers of the court." *Communist Party*, 332 F.2d at 328-29. The presumption attaches not only for routine expressions of the clients' desires – such as those at issue here – but also for the most substantial and consequential waivers of a client's rights. *E.g., Matzo v. Postmaster General*, 685 F. Supp. 260, 262 (D.D.C. 1987) ("there is a presumption of an attorney's authority to settle a case"); *In re Cargill, Inc.*, 66 F.3d 1256, 1261 (1st Cir. 1995) (refusing to undo attorney's waiver of client's right to seek recusal of district judge, noting that "it is common ground that civil litigants ordinarily are bound by their attorneys' tactical judgments").

Accordingly, there can be no question that counsel for the National Wholesalers were properly acting on their respective clients' behalf in coming to the judgments they did and in causing the Declarations at issue to be drafted and executed.

To the extent there ever was a question, it is mooted, of course, by the letters addressed to this Court by outside counsel for each of the National Wholesalers. In those letters, attached as Exs. A-C hereto, counsel for Cardinal, McKesson and ABC clearly and unmistakably ratify the contents of the Declarations, and reiterate, on behalf of their respective clients, that (1) there are no conflicts between the interests of their clients and the named Plaintiffs in this lawsuit, and (2) they want the Court to certify the direct purchaser class, with the named Plaintiffs as the class representatives and with their respective National Wholesaler clients as class members. For instance, Thomas L. Long, Esq. of Baker & Hostetler, counsel for Cardinal, states:

> [A]s Cardinal Health's counsel, I represent to the Court the facts and statements set forth in Mr. Flinn's Declaration reflect Cardinal Health's position and analysis. As has been true in other, similar cases, it is Cardinal Health's considered business judgment that participating in this case as an absent member of a certified class is in its best interests.

Ex. A at 2. Similarly, Peter L. Huston, Esq. of Latham & Watkins, counsel for McKesson, states:

> McKesson has determined, as Mr. Factor stated, that its interests would best be served by the Court certifying the proposed class of direct purchasers, represented by the named plaintiffs and their counsel, and allowing this action to proceed as a class action with McKesson remaining a member of the class. As stated in Mr. Factor's declaration, McKesson does not consider there to be a conflict of interest between McKesson and the named Plaintiffs and if any conflict did exist, McKesson would waive it.

Ex. B. at 1. Finally, Howard D. Scher, Esq. of Buchanan Ingersoll & Rooney, counsel for ABC, states:

> As counsel for ABC, I represent to the Court that the facts and statements set out in the Jones Declaration do, in fact, reflect ABC's position with regard to this case. For the reasons set out in the Declaration, it is ABC's considered business judgment that participating in this case as an absent member of a certified class is in the company's best interests.

Ex. C. at 1. Thus, there is simply no room to question the position of the National Wholesalers concerning whether this case should be certified, with the named Plaintiffs as class representatives, or whether there are conflicts between the interests of the National Wholesalers and those of the named Plaintiffs. Though Defendants do not like what they have to say, the National Wholesalers are crystal clear: contrary to Defendants' speculation, there are no conflicts, and the direct purchaser class should be certified.

### B.    The Substance of the National Wholesalers' Positions Should Not Be Second-Guessed

It would be improper for the Court to second-guess the substance or sagacity of the legal and business judgments Cardinal, McKesson and ABC reached, as expressed in the Declarations, even putting aside the deference their counsel enjoy in reaching and announcing those judgments. The National Wholesalers are each large, sophisticated corporations, ranked 19, 16 and 27, respectively, in the 2006 "*Fortune* 500." Their legal and business judgment should be respected. It is highly unusual for a Court to second-guess such judgments.

For instance, in the analogous context of Rule 19(a), the issue – virtually identical to that raised by Defendants' class certification opposition here – is whether pending litigation, if permitted to proceed, would impair or impede an absent party's interests. In permitting litigation to proceed, courts accept without question the absentee's judgment – like that of Cardinal, McKesson and ABC here – that the lawsuit does not threaten its interests. *E.g.*, *U.S. v. San Juan Bay Marina*, 239 F.3d

400, 407 (1st Cir. 2001); *Tribune Co. v. Swiss Reinsurance America Corp.*, No. 02-C-4772, 2003 WL 22282465, *6 (N.D. Ill. Sept. 30, 2003). If courts do not second-guess an absent party's decision in the Rule 19(a) context that pending litigation does not threaten its interests, there is no reason for this Court to engage in such second-guessing here merely because a different rule contained in Title IV of the Federal Rules of Civil Procedure is at issue.[16]

### III.   THIS ENTIRE DISPUTE SPRINGS FROM INAPPOSITE OUT-OF-CIRCUIT AUTHORITY

The National Wholesalers did not submit Declarations without provocation. They did so to clarify what their interests in this litigation were, because Defendants had argued that the Eleventh Circuit's *Valley Drug* decision somehow precluded a finding that the named Plaintiffs could adequately represent the National Wholesalers under Rule 23(a)(4). D.E. #99, at 38-41. *Valley Drug* is, however, at best inapplicable, for at least three independently sufficient reasons.

***First***, in *Valley Drug*, the Eleventh Circuit based its holding primarily on that court's understanding, based on its interpretation of the limited record before it at that time, that the National Wholesalers – Cardinal, McKesson and ABC – "have chosen not to participate in the litigation," which the court took to mean that the National Wholesalers' interests were not aligned with those of the named class representatives. *Id.* at 1193. The Eleventh Circuit had inferred, in other words, from certain circumstantial record evidence what the interests of the National Wholesalers were.

---

[16]Moreover, courts refrain from engaging in analysis of the economic rationality of a party's business judgments to determine whether it should be second-guessed. *E.g.*, *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1310 (11th Cir. 2003) ("we must exercise prudence in labeling a given action as being contrary to the actor's economic interests, lest we be too quick to second-guess well-intentioned business judgments of all kinds"); *In re Citric Acid Litig.,* 191 F.3d 1090, 1101 (9th Cir. 1999) (same).

Here, by contrast, the National Wholesalers have clearly expressed that their interests *are* aligned with those of the named class representatives, that they *want* this Court to certify the proposed direct purchaser class, with the named Plaintiffs as class representatives, and that there is *no* conflict between their interests and those of the named Plaintiffs. There is no need here for the Court to infer from an incomplete record, as the Eleventh Circuit did in *Valley Drug*. Both the National Wholesaler Declarations and the letters from their counsel (Exs. A-C hereto) constitute the very evidence that *Valley Drug* invites plaintiffs to "bring forth . . . to the court that no fundamental conflict exists among the class members." *Id.* at 1196. The concerns expressed by the Eleventh Circuit are thus not present here, and for that reason alone *Valley Drug* is simply inapplicable.

*Second*, Defendants' argument that the named Plaintiffs are inadequate representatives of the National Wholesalers was entirely based on the speculation that the National Wholesalers, supposedly unlike the named Plaintiffs, somehow "benefit" when the entry of generic drugs is delayed. But that speculation, even if true,[17] has nothing whatsoever to do with any conflict that has any logical connection with this lawsuit. That is, there is absolutely nothing about the continued prosecution of this lawsuit, or the certification of the proposed direct purchaser class, that could speed up or slow down the entry of generic Ovcon-35. This lawsuit did not seek injunctive relief, and even if it did, generic versions of Ovcon-35 are already on the market now, which would render

---

[17]Even though absolutely irrelevant both to class maintainability and to the underlying claim in this case, the National Wholesalers, during their depositions, made it quite clear that they do *not* benefit from delayed market entry of less-expensive generic drugs. For example, McKesson's designated representative, Mr. Factor, testified that McKesson makes "significantly more" money from generic drugs than from branded drugs. Factor Tr. (Def. Br. Ex. E) at 56:21-58:13. Likewise, Cardinal's designated representative, Mr. Flinn, confirmed that Cardinal *wants* to see the introduction of generics, because "we provide services to our customers . . . if the customer wants it, Cardinal wants it." Flinn Tr. (Def. Br. Ex. D) at 56:10-16.

such injunctive relief, even if sought, moot. The only relief sought in this case is in the form of overcharge damages, which all class members have an interest in recovering. Defendants' speculation about "benefit" is thus completely immaterial to the continued prosecution of this lawsuit. *See McReynolds v. Sodhexo Marriott Svcs., Inc.*, 208 F.R.D. 428, 446 (D.D.C. 2002) ("only those conflicts of interest that relate to the subject matter of the lawsuit are relevant to the adequacy determination. This principle has been widely recognized") (citations omitted).

**Third**, *Valley Drug*'s reasoning has been rejected outside of the Eleventh Circuit as contravening the Supreme Court's decisions in *Hanover Shoe, Inc. v. United Machinery Corp.*, 392 U.S. 481 (1968) and *Illinois Brick Co. v. Illinois*, 421 U.S. 720 (1977), both of which declared irrelevant in an antitrust case the possibility that, rather than suffering harm, a plaintiff may have in fact "benefitted" from being able to resell the subject product at a higher price owing to the complained-of overcharge.[18] *E.g.*, *In re Hypodermic Prods. Antitrust Litig.*, No. 05-1602, 2006 U.S. Dist. LEXIS 89353, *15-20 (D.N.J. Sept. 7, 2006) (rejecting *Valley Drug*) (citing, *inter alia*, Joshua P. Davis and David F. Sorensen, *Chimerical Class Conflicts in Federal Antitrust Litigation: The Fox Guarding the Chicken House in* Valley Drug, 39 U.S.F. L. REV. 141, 159-63 (2004)); *In re K-Dur Antitrust Litig.*, No. 01-1652, Special Master's Report and Recommendation at 20-26 (D.N.J. Jan.

---

[18]It is true that, *before* the Supreme Court's landmark ruling in *Illinois Brick*, many courts held it *was* relevant to consider that a party seeking overcharge damages benefitted from the supracompetitive pricing caused by alleged anticompetitive conduct. *E.g., Obron v. Union Camp Corp.*, 477 F.2d 542, 543 (6th Cir. 1973); *West Virginia v. Pfizer*, 440 F.2d 1079, 1086, 1088 (2d Cir. 1971). But the Supreme Court in *Illinois Brick* rejected such reasoning once and for all, and expressly overturned those prior decisions. *Illinois Brick*, 431 U.S. at 743-44 & n.28; *County of Oakland v. City of Detroit*, 866 F.2d 839, 848-49 (6th Cir. 1989) (observing that *Illinois Brick* "repudiated" *Obron*).

2, 2007) (Ex. G) (rejecting *Valley Drug*); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43, 59-61 (S.D.N.Y. 2002) (rejecting reasoning identical to that of *Valley Drug*).[19]

Thus, *Valley Drug*, without which this motion would not even exist, is simply not good law, and even if it were, it is inapplicable here.

## CONCLUSION

The sole relief that Defendants seek is the striking of the Declarations of nonparty class members Cardinal, McKesson and ABC. Defendants have shown no entitlement to such relief. For any or all of the above reasons, Defendants' motion should be denied.

Dated: July 16, 2007.

/s/
_____
William Isaacson (D.C. Bar No. 414788)
Tanya Chutkan (D.C. Bar No. 420478)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
(202) 237-2727
(202) 237-6131 (Fax)

---

[19] *See also In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 344 (D. Mass. 2003) (rejecting defense class certification argument that "determining the economic harm suffered by the plaintiffs requires individual inquiries regarding the extent and effect of bypass [a class member's loss of unit sales caused by the cessation of defendant's illegal conduct] experienced by each purchaser"); *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297, 311-17 (E.D. Mich. 2001) (rejecting, as irrelevant to class certification, defendants' argument that there would be "'winners' and 'losers' in the but-for world because some class members would have been 'better off' and others would be 'worse off'" if defendants ceased their anticompetitive conduct earlier); *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 85 (E.D.N.Y. 2000) (defendant's argument that its illegal conduct benefitted some class members and thus would "create 'winners' and 'losers' . . . is immaterial when an antitrust plaintiff proceeds on an 'overcharge theory' of damages").

Richard B. Drubel (D.C. Bar No. 334359)
Kimberly H. Schultz
BOIES, SCHILLER & FLEXNER LLP
26 S. Main Street
Hanover, NH 03755
(609) 643-9090
(609) 643-9010 (Fax)

Daniel Berger
Eric L. Cramer
Ellen T. Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (Fax)

Linda P. Nussbaum (D.C. Bar No. 483254)
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
(212) 687-1980
(212) 687-7714 (Fax)