IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., MEIJER DISTRIBUTION, INC., LOUISIANA WHOLESALE DRUG CO., INC., ROCHESTER DRUG CO-OPERATIVE, INC., AMERICAN SALES COMPANY, INC., SAJ DISTRIBUTORS, INC., and STEPHEN L. LaFRANCE HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 1:05-cv-02195-CKK <br><br> Judge Colleen Kollar-Kotelly <br><br> — REDACTED — <br> **PURSUANT TO PROTECTIVE ORDER DATED APRIL 4, 2006** |

**DEFENDANTS' OPPOSITION TO DIRECT PURCHASER
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Patrick M. Bryan  (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005
(202) 879-5000
(202) 879-5200 (fax)

*Counsel for Barr Pharmaceuticals, Inc.*

Peter C. Thomas (D.C. Bar # 495928)
SIMPSON THACHER & BARTLETT LLP
601 Pennsylvania Avenue, N.W.
North Building
Washington, DC 20004
(202) 220-7700
(202) 220-7702 (fax)

Charles E. Koob (*Pro Hac Vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)

*Counsel for Warner Chilcott Holdings
Company III, Ltd., Warner Chilcott
Corporation, Warner Chilcott (US) Inc.,
Warner Chilcott Company, Inc., and Galen
(Chemicals), Ltd.*

## Table of Contents

INTRODUCTION ................................................................................................1

BACKGROUND ..............................................................................................3

ARGUMENT ..................................................................................................9

I.  PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING
    THAT COMMON ISSUES WILL PREDOMINATE OVER
    INDIVIDUALIZED DETERMINATIONS. ........................................12

    A.  Common Impact Cannot Be Presumed. ...................................13

    B.  The Undisputed Evidence Demonstrates That Individual "Fact of
        Injury" Or Causation Issues Predominate. ...............................16

        (1)  The Heterogeneity Of Putative Class Members Precludes A
             Finding Of Common Impact. .......................................17

        (2)  Many Class Members Would Not Have Purchased Generic
             Ovcon And Thus Would Not Have Been Commonly
             Impacted. ..............................................................19

        (3)  The Undisputed Evidence Demonstrates That Branded
             Ovcon Pricing Would Not Be — And Has Not Been —
             Impacted By Generic Entry. .........................................20

    C.  Plaintiffs Fail To Offer Any Colorable Evidence Demonstrating
        That Damages Can Be Calculated On A Class-Wide Basis Using A
        Single Common Formulaic Methodology. ...................................22

        (1)  Plaintiffs' Expert's Hollow Speculation Is Contradicted By
             The Record And The Testimony Of The Named-Plaintiffs. ..........25

        (2)  The Evidence Demonstrates That The Calculation Of
             Damages Is Not Susceptible To A Single, Formulaic
             Methodology. ..........................................................26

    D.  Individualized Defenses Preclude A Finding Of Predominance. ..............26

II. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT A CLASS
    ACTION IS THE SUPERIOR METHOD OF ADJUDICATION. ......................29

III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT EACH OF
     THE REQUIREMENTS OF RULE 23(A) IS SATISFIED. ..........................32

A.     The Proposed Class Fails To Satisfy The Numerosity Requirement.........32

B.     Plaintiffs Have Failed To Demonstrate That They Assert Claims Typical Of Absent Class Members. ..........................................................34

C.     Class Conflicts Preclude Certification. ....................................................38

      (1)    The Claims Of National Wholesalers Are In Substantial Conflict With Other Members Of The Putative Class. .................39

      (2)    The Economic Interests Of The Named Plaintiffs Are Antagonistic To The Interests Of Unnamed Class Members. ...................................................................................40

IV.    THE PROPOSED CLASS IS NOT SUFFICIENTLY ASCERTAINABLE.................................................................................41

CONCLUSION..................................................................................................43

## Table of Authorities

**Cases**

*Abby v. Detroit,*
218 F.R.D. 544 (E.D. Mich. 2003) ............................................................. 30

*Abrams v. Interco, Inc.,*
719 F.2d 23 (2d Cir. 1983).......................................................................... 14

*Allen v. Prince Georges Cnty., Md.,*
737 F.2d 1299 (4th Cir. 1984) .................................................................... 23

*Bacon v. Honda of Am. Mfg., Inc.,*
205 F.R.D. 466 (S.D. Ohio 2001).............................................................. 30

*Barnes v. Am. Tobacco Co.,*
161 F.3d 127 (3d Cir. 1998), *cert. denied*, 526 U.S. 1114 (1999)................. 35

*Bayridge Volvo Am., Inc. v. Volvo Cars of N. Am., Inc.,*
No. 01 Civ. 1890RMB (KNF), 2004 WL 1824379 (S.D.N.Y. Aug. 16, 2004)............... 34

*Bell Atlantic Corp. v. AT&T Corp.,*
339 F.3d 294 (5th Cir. 2003) ...................................................................... 22

*Blades v. Monsanto Co.,*
400 F.3d 562 (8th Cir. 2005) .............................................................. passim

*Block v. First Blood Assocs.,*
125 F.R.D. 39 (S.D.N.Y. 1989) .................................................................. 34

*Boca Raton Comm. Hosp., Inc. v. Tenet Healthcare Corp.,*
238 F.R.D. 679 (S.D. Fla. 2006).................................................................. 31

*Bogus v. Am. Speech & Hearing Assoc.,*
582 F.2d 277 (3d Cir. 1978)........................................................................ 31

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) ...................................................................... 14

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
141 F.R.D. 144 (N.D. Cal. 1991).................................................................. 14

*Butt v. Allegheny Pepsi-Cola Bottling Co.,*
116 F.R.D. 486 (E.D. Va. 1987) .................................................................. 16

*Califano v. Yamasaki,*
442 U.S. 682 (1979)........................................................................................ 1

*Castano v. Am. Tobacco Co.,*
    84 F.3d 734 (5th Cir. 1996) ................................................................................ 29, 32

*Chiang v. Veneman,*
    385 F.3d 256 (3d Cir. 2004) ............................................................................... 43

*Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.,*
    198 F.R.D. 41 (E.D.N.Y. 2000) ........................................................................... 15

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) .............................................................................................. 9

*Dannenbert v. Dorison,*
    603 F. Supp. 1238 (S.D.N.Y. 1985) ................................................................... 34

*Dean v. Boeing Co.,*
    No. 02-1019-WEB, 2003 U.S. Dist. LEXIS 8787 (D. Kan. Apr. 24, 2003) ................. 25

*DeBremaecker v. Short,*
    433 F.2d 733 (5th Cir. 1970) ............................................................................... 41

*Does I through III v. Dist. of Columbia,*
    No. Civ. A. 01-02398 (HHK), 2006 WL 2864483, (D.D.C. Oct. 5, 2006) ..................... 9

*Dry Cleaning & Laundry Inst. of Detroit v. Flom's Corp.,*
    No. 91-CV-76072-DT, 1993 WL 527928 (E.D. Mich. Oct. 19, 1993) ......................... 16

*Dukes v. Wal-Mart, Inc.,*
    222 F.R.D. 189 (N.D. Cal. 2004) ......................................................................... 25

*Dunn v. Midwest Buslines, Inc.,*
    94 F.R.D. 170 (E.D. Ark. 1982) ........................................................................... 43

*East Tex. Motor Freight Sys., Inc. v. Rodriguez,*
    431 U.S. 395 (1977) ............................................................................................ 37

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ............................................................................................ 10

*Emerick v. U.S. Suzuki Motor Corp.,*
    750 F.2d 19 (3d Cir. 1984) .................................................................................. 23

*Fed. Realty Inv. Trust v. Juniper Props. Group,*
    No. Civ. A. 00-667, 2000 WL 424287 (E.D. Pa. Apr. 18, 2000) ................................ 28

*Fleck v. Cablevision VII, Inc.,*
    763 F. Supp. 622 (D.D.C. 1991), *aff'd,* 796 F.2d 508 (D.C. Cir. 1986) ..................... 35

*Forman v. Data Transfer, Inc.,*
    164 F.R.D. 400 (E.D. Pa. 1995) ............................................................... 3, 42

*Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.,*
    452 F.2d 1346 (D.C. Cir. 1970) ............................................................... 28

*Frazier v. Consol. Rail Corp.,*
    851 F.2d 1447 (D.C. Cir. 1988) ............................................................... 33

*Frazier v. Consol. Rail Corp.,*
    Civ. A. No. 85-845, 1986 WL 11237 (D.D.C. Jul. 31, 1986) ........................................... 34

*Garcia v. Johanns,*
    444 F.3d 625 (D.C. Cir. 2006) ............................................................... 32

*Gariety v. Grant Thornton, LLP,*
    368 F.3d 356 (4th Cir. 2004) ............................................................... 10, 12

*Gen. Tel. Co. of SW v. Falcon,*
    457 U.S. 147 (1982) ............................................................... passim

*General Elec. Co. v. Joiner,*
    522 U.S. 136 (1997) ............................................................... 23

*Hagen v. Winnemucca,*
    108 F.R.D. 61 (D. Nev. 1985) ............................................................... 43

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.,*
    392 U.S. 481 (1968) ............................................................... 27, 28, 37

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977) ............................................................... 27, 28, 37

*In re Agric. Chems. Antitrust Litig.,*
    No. 94-40216-MMP, 1995 WL 787538 (N.D. Fla. Oct. 23, 1995) ................................... 14

*In re Alcoholic Beverages Litig.,*
    95 F.R.D. 321 (E.D.N.Y 1982) ............................................................... 14

*In re Armored Car Antitrust Litig.,*
    472 F. Supp. 1357 (N.D. Ga. 1979), *aff'd in part, rev'd in part on other grounds,*
    645 F.2d 488 (5th Cir. 1981) ............................................................... 14

*In re Beef Indus. Antitrust Litig.,*
    CA 3-78-0123-G (Lee), 1986 WL 8890 (N.D. Tex. June 3, 1986) ................................... 16

*In re Bridgestone/Firestone, Inc.,*
    288 F.3d 1012 (7th Cir. 2002) ............................................................... 16

v

*In re Fine Paper Litig. State of Wash.*,
   632 F.2d 1081 (3d Cir. 1980)...................................................................................... 28

*In re Indus. Diamonds Antitrust Litig.*,
   167 F.R.D. 374 (S.D.N.Y. 1996) .............................................................................. 16

*In re Initial Public Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)................................................................... 10, 11, 12, 13

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   289 F.3d 98 (D.C. Cir. 2002) ............................................................................ 36, 37

*In re Master Key Antitrust Litig.*,
   528 F.2d 5 (2d Cir. 1975)......................................................................................... 14

*In re Medical Waste Servs. Antitrust Litig.*,
   No. 2:03MD1546 DAK, 2006 WL 538927 (D. Utah Mar. 3, 2006) ..................... 22, 24

*In re Methionine Antitrust Litig.*,
   204 F.R.D. 161 (N.D. Cal. 2001) ............................................................................. 24

*In re NCAA 1-A Walk-On Football Players Litig.*,
   No. C04-1254C, 2006 WL 1207915 (W.D. Wash. May 3, 2006) ........................... 15

*In re Polypropylene Carpet Antitrust Litig.*,
   178 F.R.D. 603 (N.D. Ga. 1997)............................................................................... 14

*In re Polypropylene Carpet Antitrust Litig.*,
   996 F. Supp. 18 (N.D. Ga. 1997) ............................................................................. 25

*In re Rezulin Prods. Liab. Litig.*,
   210 F.R.D. 61 (S.D.N.Y. 2002) ............................................................................... 16

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)..................................................................................... 13

*J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*,
   628 F.2d 994 (7th Cir. 1980) .................................................................................... 38

*Kansas v. UtiliCorp United, Inc.*,
   497 U.S. 199 (1990)................................................................................................... 27

*Kas v. Fin. Gen. Bankshares, Inc.*,
   105 F.R.D. 453 (D.D.C. 1984).................................................................................. 35

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) .......................................................................... 31, 32

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,*
  149 F.R.D. 65 (D.N.J. 1993) ................................................................. 33

*London v. Wal-Mart Stores, Inc.,*
  340 F.3d 1246 (11th Cir. 2003), *cert. denied*, 543 U.S. 1081 (2005) .............................. 31

*Love v. Turlington,*
  733 F.2d 1562 (11th Cir. 1984) .............................................................. 10

*McCarthy v. Kleindienst,*
  741 F.2d 1406 (D.C. Cir. 1984) ..................................................... 10, 12, 29, 32

*Miller v. Hygrade Food Prods. Corp.,*
  89 F. Supp. 2d 643 (E.D. Pa. 2000) .......................................................... 11

*Moore v. PaineWebber, Inc.,*
  306 F.3d 1247 (2d Cir. 2002) ................................................................. 16

*Morris v. McCaddin,*
  553 F.2d 866 (4th Cir. 1977) ................................................................. 41

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  259 F.3d 154 (3d Cir. 2001), *cert. denied*, 534 U.S. 951 (2001) ................................... 10

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) ........................................................................... 29

*Phillips v. Klassen,*
  502 F.2d 362 (D.C. Cir.), *cert. denied*, 419 U.S. 996 (1974) ................................... 39

*Pickett v. IBP, Inc.,*
  No. Civ. 96-A-1103-N, 2001 WL 34886460 (M.D. Ala. Dec. 26, 2001) ......................... 16

*Pickett v. Iowa Beef Processors,*
  209 F.3d 1276 (11th Cir. 2000) ............................................................... 40

*Pigford v. Glickman,*
  182 F.R.D. 341 (D.D.C. 1998) ............................................................. 38, 41

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.,*
  100 Fed. Appx. 296 (5th Cir. 2004) ........................................................ 25, 26

*Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.,*
  --- F.3d ----, 2007 WL 816518 (5th Cir. Mar. 19, 2007) ...................................... 1

*Richards v. Delta Air Lines, Inc.,*
  453 F.3d 525 (D.C. Cir. 2006) ................................................................ 9

*Robinson v. Tex. Auto. Dealers Ass'n,*
    387 F.3d 416 (5th Cir. 2004), *cert. denied,* 544 U.S. 949 (2005)..............10, 15

*Rodriguez v. Dep't of Treasury,*
    108 F.R.D. 360 (D.D.C. 1985)...............................................................26, 29

*Rosario v. Livaditis,*
    963 F.2d 1013 (7th Cir. 1992), *cert. denied,* 506 U.S. 1051 (1993)................12

*Rutstein v. Avis Rent-A-Car Sys., Inc.,*
    211 F.3d 1228 (11th Cir. 2000), *cert. denied,* 532 U.S. 919 (2001)...........11, 12

*Sample v. Monsanto Co.,*
    218 F.R.D. 644 (E.D. Mo. 2003) ....................................................................24

*Selby v. Principal Mut. Ins. Co.,*
    197 F.R.D. 48 (S.D.N.Y. 2000) ......................................................................43

*Sirota v. Solitron Devices, Inc.,*
    673 F.2d 566 (2d Cir. 1982)............................................................................11

*Skogen v. Dow Chem. Co.,*
    375 F.2d 692 (8th Cir. 1967) ..........................................................................23

*Stastny v. S. Bell Tel. & Tel. Co.,*
    628 F.2d 267 (4th Cir. 1980) ..........................................................................11

*State of Ala. v. Blue Bird Body Co.,*
    573 F.2d 309 (5th Cir. 1978) ..........................................................13, 15, 16, 23

*Stromberg Sheet Metal Works, Inc. v. Wash. Gas Energy Sys., Inc.,*
    448 F. Supp. 2d 64 (D.D.C. 2006)..................................................................28

*Szabo v. Bridgeport Machs., Inc.,*
    249 F.3d 672 (7th Cir. 2001) .....................................................................11, 12

*Taylor v. Dist. of Columbia Water & Sewer Auth.,*
    Civ. No. 01-00561 (HHK), 2007 WL 766229 (D.D.C. Mar. 20, 2007) ...........34

*Twelve John Does v. District of Columbia,*
    117 F.3d 571 (D.C. Cir. 1997)........................................................................38

*Unger v. Amedisys, Inc.,*
    401 F.3d 316 (5th Cir. 2005) ..........................................................................12

*Valley Drug Co. v. Geneva Pharms., Inc.,*
    350 F.3d 1181 (11th Cir. 2003) .................................................................39, 40

*Visa U.S.A., Inc., v. Wal-Mart Stores, Inc.,*
  536 U.S. 917 (2002) ................................................................................ 13

*Wagner v. Taylor,*
  836 F.2d 578 (D.C. Cir. 1987) .................................................................. 9

*Williams v. Glickman,*
  No. Civ.A. 95-1149 (TAF), 1997 WL 33772612 (D.D.C. Feb. 14, 1997) ...................... 42

*Windham v. American Brands, Inc.,* 565 F.2d 59 (4th Cir. 1977), *cert. denied,* 435 U.S.
  968 (1978) ............................................................................................. 15

**Rules**

Fed. R. Civ. P. 17(a) ................................................................................. 28

Fed. R. Civ. P. 23(a)(1) ......................................................................... 32, 33, 34

Fed. R. Civ. P. 23(a)(3) ............................................................................. 35

Fed. R. Civ. P. 23(b) ................................................................................ 10

Fed. R. Civ. P. 23(b)(3)(A)–(D) .................................................................. 30

**Other Authorities**

5 JAMES WM. MOORE ET AL.,
  MOORE'S FEDERAL PRACTICE § 23.21 (3d ed. 2005) .......................................... 42

7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE,
  FEDERAL PRACTICE & PROCEDURE § 1768 (2d ed. 1986) .................................... 41

*Advisory Committee Notes to 1966 Amendments to Rule 23,*
  39 F.R.D. 69 (1966) ............................................................................... 31

Congressional Budget Office,
  *How Increased Competition from Generic Drugs Has Affected Prices and Returns
  in the Pharmaceutical Industry,* July 1998 ....................................................... 21

Frank, R. and D. Salkever,
  *Generic Entry and the Pricing of Pharmaceuticals,* Journal of Economics and
  Management Strategy, Vol. 6, No. 1, Spring 1997 ............................................... 21

Grabowski, H. and J. M. Vernon,
  *Brand Loyalty, Entry, and Price Competition in Pharmaceuticals after the 1984
  Drug Act,* Journal of Law and Economics, Vol. 35, Oct. 1992 ............................... 21

MANUAL FOR COMPLEX LITIGATION § 21.222 (4th ed. 2004) .................................. 42

## INTRODUCTION

As the Fifth Circuit recently recognized, "class certification may be the backbreaking decision that places 'insurmountable pressure' on a defendant to settle, even where the defendant has a good chance of succeeding on the merits." *Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, --- F.3d ----, 2007 WL 816518, at *4 (5th Cir. Mar. 19, 2007). For this reason, courts must hold plaintiffs to their burden of proving — not merely alleging — that the essential requirements of Rule 23 have been satisfied. Indeed, if merely parroting the legal standards of Rule 23 and pointing to non-specific, "expected" evidence were enough to satisfy Rule 23, nearly "every complaint . . . would automatically lead to a certification order." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004). This is neither consistent with the policies underlying Rule 23, nor the Supreme Court's admonition that certification is appropriate only after "rigorous analysis" of the plaintiffs' proof.

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979); thus, a plaintiff bears the special burden of demonstrating that his individual claims are "representative" of the absent class members and their claims. The named plaintiffs, however, have utterly defaulted on their burden to demonstrate that the essential requirements of Rule 23 — including predominance of common issues, superiority, numerosity, typicality, and adequacy — have been satisfied.

*First*, plaintiffs present no colorable evidence demonstrating that their proposed class satisfies Rule 23(b)(3)'s requirements that common issues predominate. Here, plaintiffs propose two theories of (class-wide) injury: (1) direct purchasers would have purchased Barr's lower priced generic had it been available earlier, and (2) had Barr's generic product entered the market

1

earlier, direct purchasers would have obtained lower prices on Warner Chilcott's (branded) Ovcon 35 ("Ovcon"). Plaintiffs "expect" to demonstrate such class-wide injury through governmental and academic studies relating to the effects of generic competition generally, *i.e.*, studies having nothing to do with the relevant market (or products) in this case. Contrary to plaintiffs' expectations, however, real-world data concerning branded and generic Ovcon demonstrates that many putative class members would ***not*** have purchased Barr's generic product and, indeed, have not purchased it since it was introduced in October 2006. Moreover, undisputed testimony as well as real-world data make clear that direct purchasers would not have obtained lower prices on Warner Chilcott's (branded) Ovcon upon the introduction of Barr's generic. Therefore, class-wide or common injury cannot be inferred from the non-specific (and irrelevant) "evidence," as plaintiffs propose, nor can it be presumed in light of the undisputed record. Indeed, here, the evidence demonstrates that determining "fact of injury" or impact and damages requires individualized inquiry into each putative class member's actual purchasing practices.

*Second*, even if common issues predominated (notwithstanding the individual issues surrounding a determination of fact of injury and damages), plaintiffs cannot establish that a class action provides a superior method of adjudication. Indeed, two other lawsuits have been filed by other "direct purchasers" raising identical claims as plaintiffs here. Thus, direct purchasers are clearly incented to act and, indeed, have acted, to pursue their claims individually.

*Third*, plaintiffs make no effort to satisfy three of the fundamental requirements of Rule 23(a) — namely, numerosity, typicality, and adequacy. Instead, plaintiffs ask this Court to rely solely on their unsupported beliefs regarding what plaintiffs *expect* the evidence in this case will

be. This is clearly not enough to satisfy their burden. Equally important, plaintiffs' unsupported beliefs are contradicted by the record.

*Fourth*, the proposed class period — extending "from April 22, 2004, through the present *and continuing until the effects of Defendants' anticompetitive conduct have ceased*" — renders plaintiffs' proposed class unascertainable. (Pls.' Am. Class Action Compl. ("Am. Compl."), D.E. #30, ¶ 61.)[1] That is, before membership in the proposed class can be determined, this Court must determine what "effects," if any, defendants' conduct had and when those effects ceased. This "flies directly in the face of a basic tenet of class certification: a court may not inquire into the merits of the case at the class certification stage." *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995).

In short, plaintiffs here have defaulted on their burden to demonstrate that each prerequisite to class certification is satisfied. Plaintiffs' bare allegations and assurances of what the evidence is "expect[ed]" to show does not satisfy their burden. Nor can plaintiffs' bare allegations stand in light of the record evidence demonstrating that class certification is inappropriate.[2] Accordingly, plaintiffs' motion for class certification should be denied.

## BACKGROUND

The "direct purchaser plaintiffs" — Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale Drug Co., Inc., Rochester Drug Co-operative, Inc., American Sales Co., Inc., SAJ Distributors, Inc., and Stephen L. LaFrance Holdings, Inc. (collectively, "plaintiffs") — allege that the exclusive license and supply agreements between Warner Chilcott and Barr "ke[pt]

---

[1]    Unless otherwise noted, all *emphasis* was added and internal quotation marks omitted.

[2]    In order to facilitate this Court's review of defendants' opposition, defendants have submitted a separate Appendix containing the deposition testimony, expert declarations, and other non-docketed documents cited herein.

generic competition to Ovcon out of the market," Am. Compl. ¶ 72, and thus allegedly deprived

plaintiffs of the ability to purchase a lower priced generic version Ovcon, an oral contraceptive,

*id.* ¶ 75.[3]  These so-called "direct purchaser plaintiffs" are anything but typical direct purchasers:

*American Sales,*

Redacted

(*See*
Deposition of Laura Schneider ("Schneider Tr.") at 6, 24.)  American Sales thus
stopped purchasing Ovcon directly from Warner Chilcott in 2005 and has no
claim arising from its Ovcon purchases after that time.  (*Cf.* Am. Compl. ¶ 10
(indicating that American Sales has not obtained any assignment of any claims
from Cardinal or any other entity).)

*Louisiana Wholesale* is a small regional drug wholesaler.  During the putative
class period,           Redacted

(*See* OVCON_LWD0003-04.)

*Meijer and Meijer Distribution* are indirect purchasers, *i.e.*, they purchased
Ovcon, not from Warner Chilcott, but from Frank W. Kerr Co. ("Kerr")
      **Redacted**        drug wholesalers.  (*See* Deposition of Jacqueline DeBruler
("DeBruler Tr.") at 33.)  These Meijer entities — as indirect purchasers — thus
sue only as assignees (of Kerr).  (*See* Am. Compl. ¶ 12.)

*SAJ Distributors and Steven L. LaFrance Holdings* (collectively "SAJ") are also
indirect purchasers of Ovcon.  (*Id.* ¶ 14.)  They purchased Ovcon from national
wholesaler McKesson Corporation ("McKesson")
      (*Id.*; *see also* OVCON SAJ 0001-02 t

Redacted

*Rochester Drug* is a small regional drug cooperative serving non-chain,
community pharmacies in New York State, New Jersey, Pennsylvania, Ohio,

---

3   Because all patents relating to Ovcon expired in 1976, any pharmaceutical manufacturer could (and still can)
enter the market with a generic version of Ovcon.  Plaintiffs thus do not — and cannot — allege that the license
and supply agreements between Warner Chilcott and Barr kept any other manufacturer from introducing a
generic form of Ovcon, even during the term of the parties' agreement.

Redacted

(*See, e.g.*, Deposition of Dean Sykes
("Sykes Tr.") at 29; Deposition of Phillip Cadero ("Cadero Tr.") at 120-121; Deposition of Lincoln Lutz ("Lutz
Tr.") at 83-84; Deposition of David Vucurevich ("Vucurevich Tr.") at 57-59.)

4

West Virginia, and Maryland.  (*See* RDC Drug, http://www.rdcdrug.com (last visited Apr. 12, 2007).)  During the proposed class period, Rochester Drug **Redacted**
(*See* Apr. 12, 2007 Declaration of Brian L. Palmer ("Palmer Decl.") Ex. C.)[4]

With these questionable (and mostly indirect purchasing) class representatives, class counsel seek to certify a putative class of diverse entities that purchased Ovcon *directly* from Warner Chilcott.  (*See* Am. Compl. ¶¶ 61-62 (defining the proposed class as "[a]ll persons and entities in the United States who purchased Ovcon directly" from Warner Chilcott).)[5]  Although plaintiffs claim that defendants' supply agreement "deprived [them] of the ability to purchase" a lower-priced generic version of Ovcon, plaintiffs' proposed class period does not close upon the date that Barr's generic version of Ovcon, Balziva, became available.  Instead, plaintiffs' proposed class period extends indefinitely from "April 22, 2004, through the present and *continuing until the effects of Defendants' anticompetitive conduct have ceased ("Class Period")*."  (*Id.*)  Therefore, the members of the proposed class cannot be ascertained until a determination of when the alleged "effects" of defendants' conduct ceased.

Complicating things even further, as Warner Chilcott's sales data confirms, the putative class encompasses several different types of purchasers, each with unique purchasing patterns, pricing, and interests:

- **Redacted**

---

[4]  Plaintiff Valley Wholesale was dismissed with prejudice from this action on October 2, 2006.  (*See* Stip. of Dismissal of Pl. Valley Wholesale Drug Company, Inc., D.E. #60.)

[5]  Plaintiffs' motion for class certification seeks certification of a class of "[a]ll persons and entities in the United States who purchased Ovcon 35 directly from the *Defendants*."  (Pls.' Mem. ¶ 3.)  Because Barr never sold Ovcon 35 (and, instead, merely supplied Warner Chilcott), defendants presume that plaintiffs' motion is in error and that the class definition identified in plaintiffs' Amended Complaint as well as in plaintiffs' memorandum of law in support of their motion (both of which define the proposed class as all entities that purchased Ovcon directly from "*Warner Chilcott*") is correct.  (*See* Am. Compl. ¶ 61; *see also* Pls.' Mem. at 2.)

- 
- 
-                 **Redacted**
- 
- 

(*See* Palmer Decl. ¶¶ 32-46.)[6]

Although members of the putative class are quite diverse, the total number of putative

class members is quite small.  Based on Warner Chilcott's actual sales data, the putative class

includes             **Redacted**               (*Id.* ¶ 58.)  Indeed, many

purchasers have already opted out of the proposed class.  (*Id.* ¶ 38; *see also Walgreen Co., et al.*

*v. Warner Chilcott Holdings Co. III, Ltd., et al.*, Civ. Action No. 1:06-cv-00494-CKK (D.D.C.)

(Mar. 15, 2006), and *CVS Pharmacy, Inc., et al. v. Warner Chilcott Holdings Co. III, Ltd., et al.*,

Civ. Action No. 1:06-cv-00795-CKK (D.D.C.) (May 1, 2006).)

Among the approximately two dozen members of the putative class are three large

national wholesalers — McKesson, AmerisourceBergen, and Cardinal.

                  **Redacted**               (Palmer Decl.

¶ 44.)  These national wholesalers, in turn, sold to chain retail pharmacies       **Redacted**

           as well as to other indirect purchasers, such as named plaintiffs SAJ and

Stephen L. LaFrance Holdings.  (*Id.* ¶¶ 65-72          **Redacted**

---

[6]   Other direct purchasers of Ovcon include

                 **Redacted**

In contrast, regional wholesalers

**Redacted**

(*Id.* ¶ 45.)  These regional wholesalers

(*See, e.g.*, Deposition of Larry Doud ("Doud Tr.") at 60-61.)

Generic companies (including Barr) typically sell directly to retail chains.  Therefore, when a new generic product enters the market for the first time, the independent wholesalers stand to lose a very large volume of sales altogether — rather than simply converting their sales from the branded to generic product — because retailers bypass the wholesalers completely when they purchase generic product.

**Redacted**

(*See, e.g.*, Schneider Tr. at 25

Sykes Tr. at 82,

115                   **Redacted**

; *see also* Leitzinger Tr. at 65

**Redacted**

This bypass of wholesalers by their customers is not just a theoretical possibility.  As Dr. Palmer demonstrates (using real-world data),

**Redacted**

(Palmer Decl. ¶¶ 55, 67-68.)  For example,

**Redacted**

(*Id.*)

7

**Redacted**

(*Id.* ¶ 68.)

(*Id.* ¶ 53.)   Thus, determining which entities were "overcharged," as plaintiffs allege, requires a highly individualized inquiry into each class member's purchasing practices.

Such an inquiry, however, would be exceedingly complex because of the wide variation in Ovcon pricing, negotiations, and purchasing contracts among members of the putative class. For instance, some named plaintiffs purchased Ovcon

**Redacted**

(*Id.* ¶ 71; *see also* OVCON-SAJ 000094-117.)   These contracts also

**Redacted**

(*Id.* ¶ 66.)  Other putative class members,

(Palmer Decl. ¶¶ 60, 66, 70.)  These and other purchaser-specific differences among putative class members render any class-wide assessment of "fact of injury" or damages highly individualized.

These — undisputed — facts stand in stark contrast to the tenuous and speculative assertions found in plaintiffs' memorandum in support of their motion.  Rule 23 requires a "rigorous analysis," and its requirements plainly cannot be met in circumstances such as those found here.

## ARGUMENT

It is axiomatic that it is a plaintiff's burden to *prove* — not just allege as plaintiffs suggest — that the requirements of Rule 23 have been satisfied. *See Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 156 (1982); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006). Plaintiffs have failed, however, to undertake even a cursory analysis of the factual and legal issues that beset their proposed class. Despite purporting to bring a class on behalf of all direct purchasers of Ovcon, neither the (largely indirect purchasing) named plaintiffs nor their expert examine actual purchases of Ovcon or the purchasing practices of the diverse class that they seek to represent. Nor do they offer any factual support on how fact of injury (or causation) and damages would be shown on a class-wide basis. In fact, nowhere in their papers do plaintiffs or their expert cite a single deposition or any data reflecting real-world purchases and sales of Ovcon or its generic counterpart, Balziva. Instead, with respect to each requirement of Rule 23, plaintiffs (and their expert) rest solely on hollow assurances and the bare allegations of their complaint. This is not enough.

Parroting the legal standards and bare allegations of the complaint does not carry plaintiffs' burden. Nor can plaintiffs avoid their burden by asserting that the Court may not inquire into "the merits." (Pls.' Mem. at 11.) The law is clear that in analyzing whether a class should be certified, the Court *need not* accept plaintiffs' allegations as true but may probe behind the pleadings to make that determination. *See, e.g., Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978) ("[E]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims."); *Wagner v. Taylor*, 836 F.2d 578, 588 (D.C. Cir. 1987); *Does I through III v. Dist. of Columbia*, No. Civ. A. 01-02398 (HHK), 2006 WL 2864483, at *1 (D.D.C. Oct. 5, 2006) ("[T]he court may consider matters

9

beyond the pleadings to ascertain whether the asserted claims or defenses are susceptible of resolution on a class-wide basis.") (citing *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 n.8 (D.C. Cir. 1984)); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) ("If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order.").[7]

The Supreme Court has mandated that a class "may only be certified if the trial court is satisfied, after a ***rigorous analysis***," that each of the requirements of Rule 23 have been satisfied. *Falcon*, 457 U.S. at 161. Thus, "[t]o make a determination on class certification, a district court must conduct an intense factual investigation," *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005), and probe the factual and legal underpinnings of each of the named plaintiff's claims, *see, e.g.*, *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001), *cert. denied*, 534 U.S. 951 (2001) ("A class certification decision requires a thorough examination of the factual and legal allegations."); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (stating that "[b]efore deciding whether to allow a case to proceed as a class action [] a judge should make

---

[7]     Indeed, while the Supreme Court in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974), cautioned that courts may not conduct an inquiry into the merits of the case in order to determine whether it may be maintained as a class action, the Supreme Court did *not* — contrary to plaintiffs' assertion — limit the class certification analysis to the allegations found within the four corners of a plaintiff's complaint. As the Second Circuit recently observed in *In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 33 (2d Cir. 2006), "careful examination of *Eisen* reveals that there is no basis for thinking that a specific Rule 23 requirement need not be fully established [through competent evidence]" by a plaintiff seeking certification. Rather, "all of the evidence must be assessed" in determining whether the requirements have been satisfied, *id.* at 27, and that "determination[] can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement," *id.* at 41. *See also Kleindienst*, 741 F.2d at 1413; *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (*Eisen* "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements.").

whatever factual and legal inquiries are necessary under Rule 23."). The Court therefore must be satisfied that the plaintiffs have developed a "sufficient evidentiary record" in support of each requirement of Rule 23. *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982); *see also Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 654 (E.D. Pa. 2000) ("I conclude that to grant the relief sought by Hygrade would be to commit the very same error for which the district court in *Falcon* was criticized, namely the determination of class status without a sufficient evidentiary record.")

This case is no longer at the pleading stage. As such, plaintiffs may not demonstrate the requirements for class certification through reliance on bald assertions and unsupported allegations that contradict what the record (after nearly a year of discovery) makes clear. *See, e.g., In re Initial Public Offering Secur. Litig.*, 471 F.3d at 41; *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000), *cert. denied*, 532 U.S. 919 (2001) (observing that a plaintiff must prove, not merely allege, that class certification is proper based on the specific facts of each case); *Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 276-78 (4th Cir. 1980) (certification denied given plaintiff's "bald assertion[s]" found to be "unsupportable except by speculation in unwarranted assumptions"). Yet, as discussed below, plaintiffs' motion rests solely on the conclusory (and factually incorrect) allegations and speculation regarding what they say the "evidence will show." (Pls.' Mem. at 14.) Plaintiffs' "expert" (who has done no empirical analysis), in turn, merely assumes that plaintiffs' allegations are true and, incredibly, presumes answers to critical questions concerning proof of class-wide impact and damages without examining whether his presumptions are justified based on the facts of this case. Accordingly, plaintiffs have failed to satisfy their burden to show that (1) common issues will predominate over individualized causation questions; (2) a class action is a superior method of

adjudicating claims; and, (3) all of the requirements of Rule 23(a) — in particular, numerosity, typicality, and adequacy — have been satisfied. Finally, plaintiffs have failed to demonstrate that their class definition is sufficiently ascertainable or properly defined.

## I.     PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THAT COMMON ISSUES WILL PREDOMINATE OVER INDIVIDUALIZED DETERMINATIONS.

Plaintiffs have not shown, and cannot show, as they must under Rule 23(b)(3), that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Rutstein*, 211 F.3d at 1233; *see also Kleindienst*, 741 F.2d at 1411. To satisfy their burden, plaintiffs must do more than — as they suggest — simply make a "threshold showing" through hollow assurances and bare allegations that common issues exist.[8] *See, e.g., In re Initial Public Offering Sec. Litig.*, 471 F.3d at 32 (reversing district court order granting certification because court's "use of a 'some showing' standard was error"); *Blades v. Monsanto Co.*, 400 F.3d 562, 575 (8th Cir. 2005) ("in ruling on class certification, a court may be required to *resolve* disputes concerning the factual setting of the case," including "the resolution of expert disputes concerning the import of evidence."); *Gariety*, 368 F.3d at 366 ("the factors spelled out in Rule 23 must be addressed through findings"); *Szabo*, 249 F.3d at 676. Quite simply, "the

---

[8] Plaintiffs also — incorrectly — assert that the predominance requirement of Rule 23(b)(3) is satisfied simply by demonstrating a "common nucleus of anti-competitive conduct." (Pls.' Mem. at 18.) Plaintiffs, however, conflate Rule 23(a)(2)'s "commonality" requirement with 23(b)(3)'s "predominance" requirement. *See, e.g., Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement."). Although a "common nucleus" of fact may be sufficient to satisfy commonality under Rule 23(a), it is *not* sufficient to satisfy the predominance requirement of Rule 23(b)(3). *See, e.g., Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (noting the predominance requirement is "'far more demanding'" than the commonality requirement under Rule 23(a)) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).)

requirements of Rule 23 must be met, not just supported by some evidence." *In re Initial Public Offering Sec. Litig.*, 471 F.3d at 33; *see also Falcon*, 457 U.S. at 160.

In an antitrust action such as this, a class action plaintiff must establish — not merely allege — that "fact of injury, or impact" (*i.e.*, causation) and damages can be proven through common, class-wide evidence. *State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 320 (5th Cir. 1978); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) (plaintiff must be able to prove antitrust violation, injury, causation and damages using common evidence), *cert. denied sub. nom. Visa U.S.A., Inc., v. Wal-Mart Stores, Inc.*, 536 U.S. 917 (2002); *Blades*, 400 F.3d at 566. Moreover, "each plaintiff must still prove that this conspiracy . . . did in fact cause him injury" — *i.e.*, that "he had to pay supra-competitive prices." *Blue Bird Body Co.*, 573 F.2d at 327.

Here, plaintiffs attempt to side-step their burden by suggesting that class-wide fact of injury or impact can be presumed, and by simply alleging that unspecified "methodologies" to demonstrate impact and damages on a class-wide basis "are available." The law, however, is clear: plaintiffs cannot simply presume class-wide impact. Nor can plaintiffs rely on bare allegations and hollow assurances that "methodologies" to demonstrate impact and damages on a class-wide basis "are available" or, simply, that unspecified "methodologies exist." (Pls.' Mem. at 22, 27.) Such hollow assurances fall far short of plaintiffs' burden. Moreover, contrary to plaintiffs' bare allegations, the record evidence makes clear that individual, not common, issues predominate.

## A.     Common Impact Cannot Be Presumed.

Contrary to plaintiffs' assertion, the "Court cannot presume that, simply because Plaintiffs have alleged a national price-fixing conspiracy, Plaintiffs' proof of antitrust impact will be common to all Plaintiffs and will predominate at trial." *In re Polypropylene Carpet Antitrust*

*Litig.*, 178 F.R.D. 603, 620 (N.D. Ga. 1997); *see also Blades*, 400 F.3d at 572 ("[P]roof of

conspiracy is not proof of common injury."); *Abrams v. Interco, Inc.*, 719 F.2d 23, 29 (2d Cir.

1983) ("A member of the class is not entitled to recover unless the defendant engaged in conduct

with respect to him"); *cf.* Pls.' Mem. at 22 (asserting that common impact "may [] be ***presumed*** -

because such an overarching conspiracy will invariably inflate the prices paid by all direct

purchasers.") (citing *In re Master Key Antitrust Litig.*, 528 F.2d 5, 12 n.11 (2d Cir. 1975)).[9]

Rather, it is plaintiffs' burden to "show they plan to use common evidence that reveals impact as

to each member of the proposed class without resorting to lengthy individualized examinations."

*Id.*; *see also In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 327 (E.D.N.Y 1982) (plaintiffs

must demonstrate "impact or injury said to have resulted from the conspiracy . . . on a class-wide

basis"); *In re Agric. Chems. Antitrust Litig.*, No. 94-40216-MMP, 1995 WL 787538, at *4 (N.D.

Fla. Oct. 23, 1995) (certification is appropriate "only if the common proof demonstrates some

damage *to each class member*").[10]

　　　Nor can plaintiffs rely, as they contend, on the so-called "dominant judicial view clearly

favor[ing]" class certification in antitrust cases. (Pls.' Mem. at 3.) *Cf. Broussard v. Meineke*

*Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342-343 (4th Cir. 1998) ("We have previously

recognized that the need for individualized proof of damages bars class certification in some

---

[9]   Notably, *In re Master Key Antitrust Litig.*, does not hold that impact may be presumed in antitrust cases in the class certification context. To the contrary, there, the court merely held that refusal by the district court to certify interlocutory appeal of its class certification ruling was not an appealable order. 528 F.2d at 8. Nor does the *dicta* cited by plaintiffs support their claim that impact from an alleged conspiracy may be presumed. Rather, the *Master Key* court merely noted that once plaintiffs have proved *at trial* (i) the existence of a conspiracy, and (ii) that the conspiracy had the effect of stabilizing prices above the competitive level, a jury could infer injury to each appellee. *Id.* at 12 n.11.

[10]   Even if impact could be "presumed" in antitrust cases, such a presumption is not justified in actions, as here, "concerning disparate consumers." *In re Armored Car Antitrust Litig.*, 472 F. Supp. 1357, 1371 (N.D. Ga. 1979), *aff'd in part, rev'd in part on other grounds*, 645 F.2d 488 (5th Cir. 1981); *see also Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991).

antitrust cases."); *Blue Bird Body Co.*, 573 F.2d at 316 ("[T]here are no hard and fast rules which have developed regarding the suitability of a particular type of antitrust class for class action treatment."). Rather, "class certification in antitrust cases ultimately depends on satisfaction of Rule 23's requirements, *as in any other context*." *In re NCAA I-A Walk-On Football Players Litig.*, No. C04-1254C, 2006 WL 1207915, at *3 (W.D. Wash. May 3, 2006).

When, as here, the evidence demonstrates that individual issues relating to causation and damages predominate over common questions, class certification is routinely denied. For example, in *Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.*, 198 F.R.D. 41 (E.D.N.Y. 2000), the court determined that, while the putative plaintiff class shared common antitrust claims, differences in injury, and damages precluded class certification. *Id.* at 47. Similarly, in *Windham v. American Brands, Inc.*, 565 F.2d 59, 66 (4th Cir. 1977), *cert. denied*, 435 U.S. 968 (1978), the Fourth Circuit affirmed the trial court's refusal to certify a class when it appeared that sales of various grades of tobacco at several markets over four marketing seasons would require mini-trials and individualized proof of impact and damage. And, in *Robinson v. Tex. Automobile Dealers Ass'n*, 387 F.3d 416 (5th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005), the Fifth Circuit reversed certification of a class alleging an horizontal price-fixing conspiracy because the "court would have to hear evidence regarding *each purported class member and his transaction*." *Id.* at 424 (emphasis in original). "Such an individual examination would destroy any alleged predominance in the proposed class." *Id.*

Here, certification likewise should be denied because the issues pertinent to key elements of plaintiffs' claims, including causation and damages, are not susceptive to proof by common evidence, but require individualized determinations that will predominate. Not only do

individualized questions of causation and damages exist, but plaintiffs have failed to present a single, common, formulaic method for determining damages.

**B.    The Undisputed Evidence Demonstrates That Individual "Fact of Injury" Or Causation Issues Predominate.**

Where "fact of injury" (or causation) requires individualized rather than common proof, certification is inappropriate. *See, e.g., Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1254 (2d Cir. 2002) (class certification inappropriate when liability depends on whether each plaintiff personally received a material misrepresentation, and relied on it, suffering injury); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002) (national class action failed due in part to "different discounts" afforded putative class members thus making proof of impact an individualized analysis).[11] "To determine whether impact [or "fact of injury"] can be proven through common evidence," the Court must consider "the nature of the underlying industry and types of products involved as well as the evidence plaintiffs are relying upon to demonstrate impact." *Pickett v. IBP, Inc.*, No. Civ. 96-A-1103-N, 2001 WL 34886460, at *8 (M.D. Ala. Dec. 26, 2001) (citing *Blue Bird Body Co., Inc.*, 573 F.2d at 327).

Here, plaintiffs merely promise that "fact of damage, or antitrust impact will be demonstrated," (Pls.' Mem. at 21), through such non-specific "evidence" as "governmental and

---

[11] *See also In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 66 (S.D.N.Y. 2002) (declining to certify a class because "a myriad of individualized causation inquiries" were required); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 384 (S.D.N.Y. 1996) (rejecting common proof of injury where "negotiations with each purchaser" would require court to "scrutinize each transaction to ascertain whether the purchaser paid a supra-competitive price"); *Dry Cleaning & Laundry Inst. of Detroit v. Flom's Corp.*, No. 91-CV-76072-DT, 1993 WL 527928, at *4 (E.D. Mich. Oct. 19, 1993) (rejecting class certification where "thousands of transactions were involved over many years; each transaction was different; [and] various plaintiffs may have purchased the dry cleaning supplies [at] different prices and varying quantities [and] in different ways"); *Butt v. Allegheny Pepsi-Cola Bottling Co.*, 116 F.R.D. 486, 491-92 (E.D. Va. 1987) (proof of impact varied "by customer, by transaction, and by products purchased" so that "individualized" issues "overwhelm the common ones"); *In re Beef Indus. Antitrust Litig.*, CA 3-78-0123-G (Lee), 1986 WL 8890, at *1-2 (N.D. Tex. June 3, 1986) (rejecting class certification in price-fixing case because the prices actually paid "resulted from a multitude of varying factors.").

academic studies relating to" the effects of generic competition generally, *id.* at 23. (*See also* Mar. 12, 2007 Declaration of Jeffrey Leitzinger ("Leitzinger Decl.") at 18-19.) Plaintiffs contend that through these non-Ovcon (and non-oral contraceptive) specific academic studies, as well as                                          plaintiffs may show that

**Redacted**

(*See* Leitzinger Decl. at 16, 18-27.) Contrary to plaintiffs' expectations regarding what the evidence "will" show, the undisputed evidence — based on real-world data — reveals that plaintiffs and their expert cannot demonstrate class-wide impact or damages. Instead, individualized issues predominate the critical questions concerning impact and damages. These individual issues mean that "any overarching dispute . . . cannot satisfy the Rule 23(b)(3) predominance standard." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

    (1)    **The Heterogeneity Of Putative Class Members Precludes A Finding Of Common Impact.**

As a threshold matter, plaintiffs cannot demonstrate common impact or "fact of injury" given the                    **Redacted**

(*See* Palmer Decl. ¶¶ 65-66, 69-73.) As an initial matter, the putative class includes

(*Id.*

¶ 44.) These entities                    **Redacted**

(*Id.* ¶¶ 54, 66.) Moreover, some named plaintiffs purchased Ovcon

**Redacted**

**Redacted**

                 (*Id.* ¶ 71; *see also*

OVCON-SAJ 000094-117; Sykes Tr. at 121

            [12]  To the extent that the

                 **Redacted**

putative plaintiffs would                          (as

plaintiffs              contend), this would result in          that would have to

be taken into account in assessing "fact of injury" and damages. (Palmer Decl. ¶ 71.) In

addition, pricing among other putative class members is

                      (*Id.* ¶¶ 9-10, 60, 70.) These contracts also had

        **Redacted**

                 (*Id.* ¶ 66.) Other putative class members, such as

                 (*Id.* ¶¶ 60, 66, 71.) Thus,

to determine whether class members were, in fact, impacted — let alone to determine the amount

of damages — the Court would have to wade through the myriad of

        **Redacted**          Simply put, these and other individualized

---

[12]  Indeed, the named plaintiffs acknowledge that        **Redacted**

           **Redacted**

(Sykes Tr. at 118.)

differences among putative class members render any assessment of "fact of injury" or damages highly individualized.

> **(2)    Many Class Members Would Not Have Purchased Generic Ovcon And Thus Would Not Have Been Commonly Impacted.**

Plaintiffs ignore these complexities and the heterogeneity of pricing and business models among members of the putative class and, instead, simply presume that common impact is established because                              **Redacted**

(Leitzinger Decl. at 16.)  But, contrary to plaintiffs' (and their expert's) speculations in this regard, many class members would not have (and, indeed, have not) purchased Barr's generic Ovcon, Balziva.  (*Id.* ¶¶ 67-68.)  In fact,

**Redacted**

(Palmer Decl. ¶ 53 & Ex. H; *see also* Leitzinger Tr. at 108

**Redacted**

Thus, contrary to plaintiffs' unsupported assertion that "Defendants' agreement cannot be illegal as to some direct purchasers but not others," Pls.' Mem. at 4, this direct evidence establishes that certain putative class members were not (commonly) impacted (*i.e.*, "overcharged") by the absence of a generic Ovcon; indeed, some were not injured at all.  More importantly here, determining whether a putative class member would have purchased a lower priced generic in the but-for world requires an individualized analysis.

Moreover, as Dr. Palmer demonstrates (using real-world data),

**Redacted**

19

**Redacted**

. (*Id.* ¶ 55

& Ex. E.)  In fact,

**Redacted**

(*Id.*)[13]  Therefore, neither plaintiffs, their expert, nor the Court can simply presume (as plaintiffs'

expert proposes) that generic entry would have resulted in

(*See* Leitzinger Decl. at 30-31.)

Rather, each putative class member's purchases would have to be analyzed individually in order

to ascertain whether each class member was "overcharged" as plaintiffs allege.

> **(3)     The Undisputed Evidence Demonstrates That Branded Ovcon Pricing
> Would Not Be — And Has Not Been — Impacted By Generic Entry.**

   Plaintiffs' expert similarly speculates that

**Redacted**

(*See* Leitzinger Decl. at 18.)  As support, Dr. Leitzinger cites

(*See* Leitzinger Decl. at 18-

23.)  Remarkably, however, neither the articles Dr. Leitzinger cites, nor actual, real-world data

---

[13]    *See also* Schneider Tr. at 25

Sykes Tr. at 82, 115

Notably, plaintiffs'

expert —

**Redacted**

(*See* Leitzinger Tr. at 119-20.)

support his conclusion.  In fact, several of the articles on which Dr. Leitzinger relies directly contradict his speculative assertion.  *See, e.g.,* Frank, R. and D. Salkever, *Generic Entry and the Pricing of Pharmaceuticals*, J. Econ. & Mgmt., Vol. 6, No. 1, Spring 1997, at 89 ("[I]ncreased competition from generics is not accompanied by lower prices for brand-name drugs.  ***We found no evidence of brand-name price reductions being associated with entry by generic producers.***") (cited in Lietzinger Decl. at 18).[14]  More importantly, actual data demonstrates that

Redacted                                    (*See* Palmer Decl. ¶¶ 53 & Exs.

G-H.)

This is not surprising.  The undisputed testimony demonstrates that Warner Chilcott's Ovcon pricing would not be impacted by Balziva or any other generic entrant.  Indeed, Warner Chilcott's CEO testified that a

Redacted

(Deposition of Roger Boissonneault at 184.)  This testimony is underscored by and, in fact, consistent with the testimony and experience of the named plaintiffs and other direct purchasers.  (*See, e.g.,* Schneider Tr. at 74

Redacted

; DeBruler Tr. at 54

; *see also* Deposition of Robert Breetz ("Breetz Tr.") at 60

Redacted

; Lutz Tr. at

---

14  *See also* Congressional Budget Office, *How Increased Competition from Generic Drugs Has Affected Prices and Returns in the Pharmaceutical Industry*, July 1998 at 29 ("A number of empirical studies found that the prices of brand name drugs continue to rise faster than inflation after generic entry."); *id.* at 31 ("[T]he rate of price increases among those three groups of brand name drugs are small and consistent with the notion that generic competition does not have a large effect on brand name prices."); Grabowski, H. and J. M. Vernon, *Brand Loyalty, Entry, and Price Competition in Pharmaceuticals after the 1984 Drug Act*, J. L. & Econ., Vol. 35, Oct. 1992, at 347 ("Rather in most cases the firms continued to increase their prices at the same rate as prior to [generic] entry."); Palmer Decl. ¶¶ 78-86.

21

93-94                                                                      , Cadero Tr. at
                              **Redacted**
109

      Thus, contrary to Dr. Leitzinger's (and plaintiffs') bare speculation, the evidence demonstrates that the introduction of Balziva has had no impact on the price of (or discounts offered on) branded Ovcon.

      In sum, as the foregoing evidence demonstrates, determining "fact of injury" or impact requires individualized inquiry into each putative class member's pricing and purchasing practices, including determining whether each class member would have purchased a lower priced generic (Balziva) had it been available earlier as plaintiffs allege. Indeed, the evidence demonstrates that some members of the putative class may not have been injured at all. Therefore, class certification is inappropriate. *See, e.g., Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005).

### C.    Plaintiffs Fail To Offer Any Colorable Evidence Demonstrating That Damages Can Be Calculated On A Class-Wide Basis Using A Single Common Formulaic Methodology.

      A plaintiff seeking certification cannot hide behind the (unsupported) promise that damages *may* be calculated at some future date using some unspecified methodology; rather, a plaintiff must present a reliable methodology to calculate class-wide damages at the class certification stage. *See, e.g., Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 303 (5th Cir. 2003) (holding that a plaintiff seeking class certification must present a reliable damages model that functions on a class-wide basis); *Blades*, 400 F.3d at 571 ("[D]amages to all class members must be shown to justify the class action."); *In re Medical Waste Servs. Antitrust Litig.*, No. 2:03MD1546 DAK, 2006 WL 538927, at *8 (D. Utah Mar. 3, 2006) ("[E]ven in price-fixing cases, plaintiffs are required to demonstrate that a reliable method exists for calculating damages

22

class-wide."); *see also Blue Bird Body Co.*, 573 F.2d at 328. Yet, plaintiffs do not even attempt

to show that damages can be calculated — *in this case* — using common, class-wide proof.[15]

Instead, plaintiffs point to their expert, Dr. Leitzinger, and assert only that in the past he

has purportedly been capable of "estimat[ing] damages in the aggregate" "in several similar class

actions." (Pls.' Mem. at 28.) This adds nothing. Logically, whether, in other cases — involving

other products, prices, consumers, manufacturers, and purchasers — a different set of plaintiffs

was purportedly capable of demonstrating that damages were susceptible to formulaic, class-

wide proof says nothing about whether the named plaintiffs here can do so. Similarly, plaintiffs

cannot rely on Dr. Leitzinger's unsupported boast that

Leitzinger Decl. at 31, or his speculation regarding

**Redacted**

Leitzinger Decl. at 30-32. Quite simply, Dr. Leitzinger's hollow speculation is far

from sufficient in demonstrating a single, formulaic methodology to calculate damages, let alone

colorable evidence. *Cf. General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in

either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the *ipse dixit* of the expert.").[16]

---

[15]   Notably, plaintiffs' (and their expert's) failure to come forward with a common methodology to calculate class-wide damages is not for want of discovery or necessary data. Plaintiffs (and presumably their expert) have possessed relevant Ovcon sales and transaction data and other discovery for nearly one year. (*See* June 23, 2006 Letter from A. Rizzi to T. Brock, L. Nussbaum, *et al.*) Despite possessing this data, plaintiffs' expert, Dr. Leitzinger, remarkably, **Redacted** (*See* Leitzinger Tr. at 7-8; *see also* Leitzinger Decl., *generally.*)

[16]   If plaintiffs' failure to come forward with a formulaic methodology to calculate class-wide damages reflects a decision to "save it for the reply brief," the Court should disallow such a tactic. *See Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) (excluding expert testimony offered in rebuttal "which properly belongs in the case-in-chief"); *see also Allen v. Prince Georges Cnty., Md.*, 737 F.2d 1299, 1305-06 (4th Cir. 1984); *Skogen v. Dow Chem. Co.*, 375 F.2d 692, 706 (8th Cir. 1967) (when "[t]he issues [a]re known to plaintiffs," there is no justification for delaying the presentation of expert evidence until reply).

This is not the first time that Dr. Leitzinger has offered such speculative, and non-specific opinions on issues related to calculating class-wide damages. For example, in *In re Medical Waste Services Antitrust Litigation*, the plaintiffs, as here, alleged class-wide injury and damages as a result of an alleged horizontal agreement not to compete, and offered Dr. Leitzinger's opinion as evidence that such damages could be calculated on a class-wide basis. 2006 WL 538927, at *5. There, as here, Dr. Leitzinger "d[id] not offer a specific method to calculate damages on a class-wide basis" but only offered "three boilerplate approaches to damages that may or may not be applicable in this case." *Id.* at *8. These "approaches" relied on "four categories of common evidence"; however, "none [was] supported with actual evidence." *Id.* at *7. The court found that Dr. Leitzinger's non-specific analysis "and assurances of future solutions regarding damages" were far from sufficient to satisfy plaintiffs' "strict burden of proof that all the requirements of [Fed. R. Civ. P.] 23 – specifically Rule 23(b)(3) – [we]re clearly met." *Id.* at *7; *see also Sample v. Monsanto Co.*, 218 F.R.D. 644, 650 (E.D. Mo. 2003) (denying class certification for lack of predominance, in part, because plaintiffs' expert, Dr. Leitzinger, merely "presume[d]" without analysis that class-wide impact and damages could be calculated "without any consideration of whether the markets or the alleged conspiracy at issue [] actually operated in such a manner so as to justify that presumption."), *aff'd sub nom.*, *Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005).

For the same reasons, plaintiffs' (and their expert's) bare allegations and "assurances of future solutions regarding damages" should be found insufficient here. *See also In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 164 (N.D. Cal. 2001) (denying class certification, in part, because expert declaration "contain[ed] [only] a brief, generic description of how" measure of damages would be calculated).

(1)    **Plaintiffs' Expert's Hollow Speculation Is Contradicted By The Record And The Testimony Of The Named Plaintiffs.**

Even if Dr. Leitzinger's assurances of future solutions regarding damages were sufficient to demonstrate that a methodology to calculate class-wide damages exists, Dr. Leitzinger's unsupported opinions cannot stand in light of the undisputed evidence.[17]    For example, as described above, Dr. Leitzinger opines — without analysis — that

Redacted

(Leitzinger Decl. at 29, 31.)    But Dr. Leitzinger's speculation is flatly contradicted by the testimony of named plaintiffs and other direct purchasers, as well as actual, real-world experience. (*See, e.g.*, Doud at 72, 83; DeBruler Tr. at 54, 82-83, 104; Schneider Tr. at 74; Breetz Tr. at 60; Deposition of Dan Salemi ("Salemi Tr.") at 84; Lutz Tr. at 93; Cadero Tr. at 109; *see also* Palmer Decl. ¶ 53 & Exs. G-H.)    Similarly, contrary to Dr. Leitzinger's assumption that

Redacted

Leitzinger Decl. at 30, the record makes clear that

*see* Palmer Decl. ¶ 53 & Ex. H; *see also* Section I.B.(2), *supra*.    In light of this evidence, Dr. Leitzinger's opinion regarding the availability of a formulaic methodology to calculate class-wide damages cannot stand.

---

[17]    Importantly, in assessing whether a plaintiff satisfies the prerequisites to certification, "[t]he district court [i]s not required to accept the [plaintiffs'] expert's view." *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 Fed. Appx. 296, 299 (5th Cir. 2004).    Thus, plaintiffs' assertion that the court "need not, indeed should not" examine the evidence presented to the Court simply because the case is "in the context of class certification," Pls.' Mem. at 27, is plainly not the law. *See also Dean v. Boeing Co.*, No. 02-1019-WEB, 2003 U.S. Dist. LEXIS 8787, at *33-35 (D. Kan. Apr. 24, 2003) (at class certification stage, court should determine whether expert testimony is "so fatally flawed as to be inadmissible as a matter of law"); *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18, 26 (N.D. Ga. 1997) (at class certification stage, court examined whether the expert's methodology was probative evidence of Rule 23 requirements); *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004) ("[T]he question is whether the expert evidence is sufficiently probative to be useful in evaluating whether class certification requirements have been met.").

(2)    **The Evidence Demonstrates That The Calculation Of Damages Is Not Susceptible To A Single, Formulaic Methodology.**

As Dr. Palmer's analysis shows,

(*See* Palmer Decl. ¶¶ 64-75.)  Indeed,

(*Id.*)  Quite

simply,                                              **Redacted**

(*Id.* ¶ 75.)  *See Piggly Wiggly Clarksville, Inc.*, 100 Fed. Appx. at 299 ("Plaintiffs complain that they offered an expert's view that damages could be calculated in a relatively straightforward manner . . . [but] given the numerous independent factors that go into both the prices that should have been paid and the price that was actually paid, that there could be any general formula for calculating damages with precision, amounting to more than speculation, without requiring some degree of individual inquiry into the individual facts of 52,000 Plaintiffs . . . it is not reasonable to assume that a generalized formula can be created.")

D.    **Individualized Defenses Preclude A Finding Of Predominance.**

In addition to the presence of individualized issues surrounding proof of impact and damages, individualized issues predominate (and preclude certification) with respect to defenses to putative plaintiffs' claims. *See, e.g., Rodriguez v. Dep't of Treasury*, 108 F.R.D. 360, 363 (D.D.C. 1985) (where "a defense unique to the class representative is asserted, the attention of the trier of fact may be distracted from the issue that would be controlling for the rest of the class. Such a situation often warrants denial of class certification."). For example,

**Redacted**                          (*See, e.g.,* OVCON-SAJ

00094-117.)  There is a well established exception to *Hanover Shoe's* bar on asserting the "pass-on" defense for overcharges for "cost-plus" sales, *i.e.,* when a direct purchaser's downstream

26

pricing is determined by its cost from the manufacturer plus a set additional amount. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977); *see also Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990). Whether a pass-on defense may be asserted against each class member will require an individualized analysis of their purchasing and sales contracts.

Moreover, to the extent that some class members have assigned their claims to other parties, an individual examination of each and every class member's assignment would also be required. Indeed, according to plaintiffs' expert, Dr. Leitzinger,

**Redacted**

(*See* Leitzinger Tr. at 10-11.) To the extent that any putative class member has assigned its rights to another party, that class member cannot recover against the defendants. Therefore, defendants would be able to assert as a defense to any class member's claims that the class member had assigned some or all of its claims to other parties. This would require a detailed and individualized inquiry.

These assignments also create another individualized issue: whether the assignment was an effective assignment. For example, Meijer and Meijer Distribution purport to sue as assignees of direct purchaser Kerr, Am. Compl. ¶ 12, but the Meijer plaintiffs' assignment ostensibly does not cover claims involved in this lawsuit. Specifically,

**Redacted**

(*See*

OVCON_MEIJER 0062.)

Finally, assignments of claims may give rise to another unique defense regarding antitrust standing.  Plaintiffs SAJ Distributors and Steven L. LaFrance Holdings (collectively, "SAJ") obtained a **Redacted** [18] (*See* Am. Compl. ¶ 14.)   SAJ thus stands in the shoes of McKesson for purposes of this litigation.  *See Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 452 F.2d 1346, 1358 n.69 (D.C. Cir. 1970) ("[A]n assignee stands in the shoes of his assignor, deriving the same but no greater rights and remedies than the assignor then possessed."); *Stromberg Sheet Metal Works, Inc. v. Wash. Gas Energy Sys., Inc.*, 448 F. Supp. 2d 64, 69 (D.D.C. 2006) ("It is well-settled that an assignee of a contract stands in the shoes of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract.").

**Redacted**

(*See* OVCON-SAJ 000094-117.)

Under a well-established Supreme Court precedent, McKesson did not suffer "antitrust injury" for those sales because any alleged "overcharge" was — by definition — not felt by McKesson but was "passed on."[19]  *See Hanover Shoe, Inc.*, 392 U.S. at 494; *Illinois Brick Co.*, 431 U.S. at

---

[18] **Redacted** (*See* OVCON_SAJ 0001-02.)
*See, e.g.*, Fed. Realty Inv. Trust v. Juniper Props. Group, No. Civ. A. 00-667, 2000 WL 424287, at *4 (E.D. Pa. Apr. 18, 2000); *see also* Fed. R. Civ. P. 17(a).  While a partial assignment "is operative as if the part had been a separate right[,] . . . the partial assignee may *not* maintain the original suit against the obligor unless all parties having the collective right to the entire claim are joined in the proceeding."  *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1091 (3d Cir. 1980).

**Redacted**

[19] **Redacted**
*See Illinois Brick Co.*,
(Continued...)

736. Therefore, McKesson would not have standing to sue under the antitrust laws. *Id.* Because (by virtue of its assignment of claims from McKesson) SAJ is standing in the shoes of McKesson, SAJ does not have standing to sue. This and other individualized defenses preclude a finding of predominance. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984) ("The possible existence of this individualized defense militates against resolution of this cause of action on a classwide basis."); *Rodriguez*, 108 F.R.D. at 363.

In short, certification of this putative class would require the Court to consider a myriad of different issues and a wide variety of factual situations and legal determinations with respect to each putative class member. Individual issues of law and fact would have to be litigated and decided on a plaintiff-by-plaintiff basis, thus precluding any finding of predominance. *Amchem Prods., Inc.*, 521 U.S. at 624.

## II.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT A CLASS ACTION IS THE SUPERIOR METHOD OF ADJUDICATION.

Were the predominance of individual issues not enough, the "most compelling rationale" for class certification — a negative value suit — is completely missing from this case. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) ("The most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit."). The putative class —

**Redacted**

(*See* Palmer Decl. ¶¶ 44 & n.50.) Plaintiffs nevertheless claim, without support, that a

---

431 U.S. at 735.                    **Redacted**

class action is a superior method of adjudication because these proposed class members would have little incentive to litigate claims on their own behalf. (Pls.' Mem. at 29.) That argument is absurd in light of the lawsuits filed by other "direct purchasers" raising identical claims as plaintiffs here. (*See Walgreen Co., et al. v. Warner Chilcott Holdings Co. III, Ltd., et al.*, Civ. Action No. 1:06-cv-00494-CKK (D.D.C.) (Mar. 15, 2006), and *CVS Pharmacy, Inc., et al. v. Warner Chilcott Holdings Co. III, Ltd., et al.*, Civ. Action No. 1:06-cv-00795-CKK (D.D.C.) (May 1, 2006).). Class actions are intended as a vehicle for the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc.*, 521 U.S. at 617; *see also Abby v. Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2003) (class actions are "designed primarily to allow the vindication of rights in cases where the monetary amount at stake would not provide adequate incentive for any individual to bring a solo action."). This is clearly not the case.

Rule 23(b)(3), moreover, identifies several factors to be considered in determining whether a class action is superior, including: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). Plaintiffs ignore these factors. However, applying these factors here it is clear that a class action is not the superior method of adjudicating claims.

*First*, as discussed above, the proposed class is composed of

<strong>Redacted</strong>                                                  (*See*

Palmer Decl. ¶ 44.) These class members clearly have an interest in individually controlling the

30

prosecution of their claims; for example, large retailers are likely to be incented to obtain product discounts, promotional awards, or other non-cash settlements as compensation for their claims. These large retailers, such as Wal-Mart, would be precluded from pursuing these alternative forms of compensation in the context of a single direct purchaser class.

*Second*, as described above, there are currently two other lawsuits pending, concerning exactly the same conduct and raising identical claims as alleged in plaintiffs' complaint. Indeed, this alone counsels strongly against certification. [20]

*Third*, the interests of concentrating the litigation in a particular forum are minimal where — as here — "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff[s]," in light of treble damages and costs of suit available to antitrust plaintiffs. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) (citing *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003), *cert. denied*, 543 U.S. 1081 (2005)). Indeed, in such cases courts "are likely to find that individual suits, rather than a single class action, are the superior method of adjudication." *Id.*

*Fourth*, as described above, there are numerous difficulties likely to be encountered in the management of a class action in this case given the multitude of individualized issues surrounding fact of damage (and the extent of damages) among each class member. Here, the

---

[20] *See Advisory Committee Notes to 1966 Amendments to Rule 23,* 39 F.R.D. 69, 104 (1966) ("The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action."); *Amchem Prods., Inc.*, 521 U.S. at 616 ("'Th[e] interest [in individual control] can be high where the stake of each member bulks large and his will and ability to take care of himself are strong . . . .'") (citation omitted); *Bogus v. Am. Speech & Hearing Assoc.*, 582 F.2d 277, 290 n.17 (3d Cir. 1978) ("We note that the existence of other litigation may also weigh against class certification to the extent that such actions betoken an interest in individual litigation."); *Boca Raton Comm. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 700 (S.D. Fla. 2006) (noting "the fact that [other potential class members] were able and willing to sue separately" from the proposed class was a "factor that counsel[ed] *against* certification.").

practical problems surrounding an examination of individual contracts and individual purchasing

patterns among the varying types of purchasers would be insurmountable.[21]

### III.     PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT EACH OF THE REQUIREMENTS OF RULE 23(A) IS SATISFIED.

It is plaintiffs' burden to demonstrate through competent evidence that each of the

requirements of Rule 23(a) — including numerosity, commonality, typicality, and adequacy —

is satisfied. *See Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006). Failure to adequately

demonstrate any one of these requirements is fatal to their motion class certification. *Id.*; *see*

*also Kleindienst*, 741 F.2d at 1410 ("It is elementary that four prerequisites must be satisfied for

a class action under Rule 23(a)."). Yet, plaintiffs make no effort to satisfy three of these

fundamental requirements — namely, numerosity, typicality, and adequacy — and, instead, ask

this Court to rely solely on their unsupported "belie[fs]" and hollow assurances regarding what

plaintiffs expect the evidence in this case will be. (Pls.' Mem. at 12, 14-15.) This is clearly not

enough, especially in light of the fact that discovery is nearly complete. More importantly,

plaintiffs' unsupported "belie[fs]" are contradicted by the undisputed evidence.

### A.     The Proposed Class Fails To Satisfy The Numerosity Requirement.

Class certification is appropriate "only if" the proposed "class is so numerous that joinder

of all members [would be] impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs assert that this

fundamental prerequisite to certification "need not detain the court" because they *"believe that*

---

[21] "In many respects, the [court's] predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay*, 382 F.3d at 1269. Here, individual, not common, issues predominate. Therefore, even if plaintiffs could demonstrate some plausible efficiency by joining multiple claims in a single forum, the proposed class action is hardly manageable: the individualized causation inquiries into each class member's purchasing practices, pricing, assignments of claims, and other issues will be a time-consuming, attorney-intensive practice. At bottom, if this Court certifies plaintiffs' proposed class action "[t]he net result may be a waste, not a savings, in judicial resources." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 749 (5th Cir. 1996).

defendant Warner Chilcott sold Ovcon 35 to, at minimum, dozens of direct purchasers" and members of the proposed class are "dispersed geographically across the country." (Pls.' Mem. at 12.) Plaintiffs claim that their unsupported assurances are "more than sufficient to satisfy the numerosity requirement." (*Id.*) To the contrary, plaintiffs' mere beliefs add nothing and, indeed, fall far short of satisfying their burden under Rule 23(a). *See Frazier v. Consol. Rail Corp.*, 851 F.2d 1447, 1456 (D.C. Cir. 1988) (affirming district court's denial of class certification because plaintiffs presented "no colorable evidence" demonstrating that the numerosity requirement of Rule 23 was satisfied and did not "carry their burden of demonstrating that joinder was impracticable."); *see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993) ("[C]ourts have repeatedly recognized, *mere conclusory or speculative allegations that joinder is impractical are not sufficient to satisfy the numerosity requirement of Rule 23(a)(1).*").[22]

Not only are plaintiffs' unsupported beliefs insufficient to carry their burden under Rule 23(a), they are contradicted by the undisputed evidence. There are, in fact,    **Redacted**

**Redacted**    (*See* Palmer Decl. ¶ 58.) Thus, the seven named plaintiffs purport to represent    **Redacted**    Although "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement . . . courts in this jurisdiction have observed that a class of *at least forty members* is sufficiently large to meet this requirement." *Taylor v. Dist. of Columbia Water & Sewer Auth.*, Civ. No. 01-00561

---

[22]  Plaintiffs, troublingly, imply that their failure to come forward with any evidence to satisfy this fundamental requirement of Rule 23(a) is based on their lack of data necessary to identify members of the putative class. Specifically, plaintiffs claim that "Warner Chilcott's transactional records, *which will be produced during the course of discovery*, will identify the precise number of Class members." (Pls.' Mem. at 12.) Plaintiffs, however, have possessed relevant transactional and customer data since June 2006. (*See* 06/23/06 Letter from A. Rizzi to T. Brock, L. Nussbaum, *et al.*) Plaintiffs therefore have no justification for their failure to present evidence supporting the motion and their representation to their contrary is, at best, disingenuous.

(HHK), 2007 WL 766229, at *2 (D.D.C. Mar. 20, 2007); *see also Frazier v. Consol. Rail Corp.*, Civ. A. No. 85-845, 1986 WL 11237, at *3 (D.D.C. Jul. 31, 1986) ("*[C]lasses of fewer than 40 are too small to meet the numerosity requirement.*"), *aff'd*, 851 F.2d 1447, 1456 n.10 (D.C. Cir. 1988). ("We are aware of no appellate decision reversing a district court's denial of class certification on grounds of inadequate numerosity where fewer than 40 prospective members exist."). The putative class falls well short of this threshold.

Furthermore, there is no evidence that joinder of    **Redacted**

**Redacted**    — is impracticable simply because purchasers are "geographically dispersed." Plaintiffs offer no evidence on this point and cite no authority for the proposition that geographic dispersion of putative class members (even if true) is alone sufficient to satisfy the numerosity requirement of Rule 23(a). *Cf. Bayridge Volvo Am., Inc. v. Volvo Cars of N. Am., Inc.*, No. 01 Civ. 1890RMB (KNF), 2004 WL 1824379, at *3 (S.D.N.Y. Aug. 16, 2004) ("[G]eographic dispersion is not enough to meet Rule 23(a)'s requirement [that] the number of potential class members make joinder impracticable.") (quoting *Block v. First Blood Assocs.*, 125 F.R.D. 39 (S.D.N.Y. 1989)); *see also Dannenbert v. Dorison*, 603 F. Supp. 1238, 1243 (S.D.N.Y. 1985) (class certification denied notwithstanding dispersed locations of thirty-three investors because "Rule 23(a)(1) by its terms requires that the number of potential class members make joinder impracticable, and that is clearly not the case here."). In short, plaintiffs do not — and cannot — offer any evidence demonstrating that a fundamental prerequisite to class certification — numerosity — has been satisfied.

**B.    Plaintiffs Have Failed To Demonstrate That They Assert Claims Typical Of Absent Class Members.**

Even if the proposed class was sufficiently numerous to warrant certification, plaintiffs cannot demonstrate that their claims are typical of absent class members. "The typicality

requirement is designed to align the interests of the class and the class representatives." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998), *cert. denied*, 526 U.S. 1114 (1999). The typicality requirement thus precludes certification ""when the legal or factual position of the representatives is markedly different from that of other members, even though common issues of law or fact are raised."" *Fleck v. Cablevision VII, Inc.* 763 F. Supp. 622, 625 (D.D.C. 1991) (quoting *Kas v. Fin. Gen. Bankshares, Inc.*, 105 F.R.D. 453 (D.D.C. 1984), *aff'd*, 796 F.2d 508 (D.C. Cir. 1986)). Here, plaintiffs claim that the typicality requirement of Rule 23(a)(3) is "easily satisfied" because they "rely on facts and legal theories identical to those of the Class" and "[t]ypicality is readily established in antitrust cases." (Pls.' Mem. at 14-15.) Plaintiffs, however, ignore key factual and legal differences among the purported class "representatives" and the proposed class.

As an initial matter, the named plaintiffs (mostly regional wholesalers)

In contrast,

**Redacted**

(*See* Palmer Decl. ¶¶ 44, 52-56.) Unlike the named plaintiffs,

**Redacted**

(*Id.* ¶¶ 52-56.)

More directly, although the named plaintiffs purport to represent a class of direct purchasers, many of the named plaintiffs were (largely) indirect, not direct, purchasers of Ovcon:

- *American Sales* purchased Ovcon    **Redacted**

- *Louisiana Wholesale*    **Redacted**

- ***Meijer and Meijer Distribution*** purchased Ovcon from wholesaler Kerr, not Warner Chilcott; and,

- ***SAJ and Steven LaFrance Holdings*** purchased Ovcon from nationwide wholesaler, McKesson, not Warner Chilcott.

(*Id.* ¶¶ 32-36.) These indirect purchasers are hardly "representatives" of a putative class of direct purchasers. *See* Fed. R. Civ. P. 23(a)(3); *Falcon*, 457 U.S. 147, 158 n.13.

Importantly, although many — not all — of these named plaintiffs received assignments of claims from their direct purchasing wholesalers, this does not render their claims typical of absent (direct purchasing) class members. Rather, as described above, the assignments themselves give rise to unique defenses that belie the typicality of the named plaintiffs' claims.

For example, the claims of plaintiff SAJ and La France Holdings are not typical because they stand in the shoes of their assignor, McKesson, which itself does not have standing. *See* Section I.D, *supra*. Quite simply, " [w]ithout individual standing to raise a legal claim, [SAJ] does ***not have the requisite typicality to raise the same claim on behalf of a class***." *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002).

For the same reason, the claims of plaintiffs Louisiana Wholesale, Meijer Distribution and Meijer are not "typical" of absent class members.

**Redacted**

(*See* Palmer Decl. ¶ 33; *cf.* Am. Compl. ¶ 11.) Although Meijer and Meijer Distribution purport to sue as assignees of direct purchaser Kerr, *id.* ¶ 12,

(*See* OVCON_MEIJER 0062

**Redacted**

36

Therefore, the Meijer plaintiffs are indirect purchasers, and clearly not "representative" of absent class members — they are not even members of the class that they purport to represent.  *See Amchem Prods., Inc.*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members" it purports to represent) (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Named plaintiffs American Sales and Rochester Drug fare no better as class "representatives."

**Redacted**

(*See* Schneider Tr. at 15.)  Therefore,

**Redacted**

*Hanover Shoe, Inc.*, 392 U.S. at 494;
*Illinois Brick Co.*, 431 U.S. at 736; *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d at 108.

Named plaintiff Rochester Drug's claims are — by admission — not typical of absent class members.  Specifically, Rochester Drug's President testified that

**Redacted**

(Doud Tr. at 91; *see also id.* at 82

**Redacted**

Rochester Drug's claims therefore are unlike those of the putative class.  (*See* Am. Compl. ¶ 6 (alleging putative class "paid supracompetitive prices for Ovcon").)
Moreover, **Redacted** (*See* Palmer

37

Decl. Ex. H.)  Therefore, there is substantial question whether Rochester Drug is a member of the class it purports to represent because it could not have been "overcharged" as plaintiffs allege.  *See also* I.B.(2), *supra*.

In short, none of the named plaintiffs' claims are typical of members of the diverse putative class of ***direct purchasers***, which, as described above, each exhibit unique purchasing patterns, pricing, and interests.  *See* Section I.B, *supra*; *see also* Palmer Decl. ¶¶ 52-56.  The claims of the putative class differ greatly, such that the named plaintiffs' claims are not typical of the majority of the class.  The legitimacy of a class action, however, depends on the typicality of the named plaintiffs' claims and their ability to represent all class members.  *See, e.g., Amchem Prods., Inc.*, 521 U.S. at 627 (named plaintiffs serve "as representative[s] for the whole, not for a separate constituency").  Because the claims of the named plaintiffs differ greatly from absent class members, class certification is inappropriate.[23]

### C.    Class Conflicts Preclude Certification.

It is plaintiffs' burden to demonstrate that they are adequate representatives, and part of that analysis is showing that the interests of ***all*** of the proposed class members are substantially aligned.  *See Pigford v. Glickman*, 182 F.R.D. 341, 350 (D.D.C. 1998) (stating that Rule 23(a)(4) "necessitates an inquiry into . . . any disparity of interest between class representatives and members of the class.") (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).  Here, contrary to plaintiffs' hollow assurance that "[t]here are no foreseeable intra-class conflicts," Pls.' Mem. at 15-16, the record evidence demonstrates that the interests of

---

[23] Defenses to plaintiffs' individualized claims, as discussed in Part I.D, will likewise differ (*e.g.*, defenses with respect to antitrust standing) and similarly preclude any finding of typicality.  *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy typicality of the class as well as bring into question the adequacy of the named representation.").

proposed class members are not substantially aligned; indeed, fundamental intra-class conflicts exist. (Palmer Decl. ¶¶ 59-62 & Ex. F.)

> **(1)    The Claims Of National Wholesalers Are In Substantial Conflict With Other Members Of The Putative Class.**

"A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefited other members of the class." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (vacating district court's order certifying class of direct purchasers for failure to consider evidence offered by defendants that national drug wholesalers benefited from delayed generic entry); *see also Phillips v. Klassen*, 502 F.2d 362, 365 (D.C. Cir.) (affirming denial of class certification where some class members benefited from challenged conduct); *cert. denied*, 419 U.S. 996 (1974).   Here, the record evidence demonstrates   that

**Redacted**

  *see* Palmer Decl. ¶ 44)

**Redacted**

(*See, e.g.*, OVCON-SAJ 00094-117; *see also* Palmer Decl. ¶¶ 60, 66, 70.)   Because of this, these "national wholesalers arguably make more money on the sale of the branded product [Ovcon] than on the generic product [Balziva] because wholesalers charge more for, and collect more from, branded products than generic drugs." *Valley Drug Co.*, 350 F.3d at 1191.   Moreover, these wholesalers "are often bypassed in the distribution chain for many generic sales, causing them to lose sales." *Id.* Indeed, the record evidence demonstrates that

**Redacted**

(Palmer Decl. ¶¶ 67-68.)   Thus,

39

"these class members appear to benefit from the effects of the conduct alleged to be wrongful by the named plaintiffs because their net economic situation is better off when branded drugs dominate the market." *Valley Drug Co.*, 350 F.3d at 1191; *see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (reversing class certification because evidence demonstrated that some unnamed class members benefited from agreements alleged to have harmed named plaintiffs).

Plaintiffs make no effort to address, let alone rebut, this evidence. Yet, as the Eleventh Circuit observed in *Valley Drug*, plaintiffs do not have an "automatic right to certify a class where the economic reality of the situation reveals that a fundamental conflict may exist among the class members because of their different economic circumstances and different economic interests." *Id.* at 1193. Indeed, where — as here — "defendants have presented evidence that the cognizable antitrust injury suffered by the national wholesalers may have been outweighed by the economic benefits these parties experienced in the absence of generic competition," class certification is inappropriate. *Id.*

> (2)    **The Economic Interests Of The Named Plaintiffs Are Antagonistic To The Interests Of Unnamed Class Members.**

Although plaintiffs do not offer any methodology to calculate class-wide damages, a single, uniform formula to calculate class-wide damages — one that does not take into account the pricing structures and terms among putative plaintiffs

—                                     **Redacted**

(Leitzinger Tr. at 119, 129-30; Palmer Decl. ¶ 61.)


**Redacted**

(Palmer Decl. ¶ 61.)  Moreover,

40

**Redacted**

(*Id.* ¶ 62.)  As described above, wholesalers are often bypassed in the distribution chain for generic drugs, causing them to realize lower unit sales volumes after generic entry.  Therefore,

**Redacted**

(*Id.*)  As Dr. Palmer demonstrates,

**Redacted**

. (*Id.* & Ex. F.)

These "disparit[ies] of interest between class representatives and members of the class," *Pigford*, 182 F.R.D. at 350, render named plaintiffs inadequate representatives of absent class members, *e.g.*, *Morris v. McCaddin*, 553 F.2d 866, 870-71 (4th Cir. 1977) (affirming district court's denial of class certification where "the interests of the named plaintiffs would have been antagonistic to the interests of many of the unnamed members of the class"); 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 1768, at 326 (2d ed. 1986) ("It is axiomatic that a putative class representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives he purports to represent.").

## IV.  THE PROPOSED CLASS IS NOT SUFFICIENTLY ASCERTAINABLE.

"It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).  The proposed definition must, at least, be sufficiently definite so that it is "feasible for the court to determine whether a particular [purchaser] is or is not a

41

member of the proposed class." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1] (3d ed. 2005). Put simply, this Court must be able to identify the proposed class members without detailed factual inquiry. *See, e.g., Williams v. Glickman*, No. Civ.A. 95-1149 (TAF), 1997 WL 33772612, at *4 (D.D.C. Feb. 14, 1997) (denying motion for class certification "[b]ecause the Court must answer numerous fact-intensive questions before determining if an individual may join the class, [thus] the proposed class is not clearly defined"); *see also* MANUAL FOR COMPLEX LITIGATION § 21.222 (4th ed. 2004).

Plaintiffs have in no way demonstrated that their proposed definition is sufficiently precise to make positive identification of its membership feasible without an improper inquiry into the merits. The proposed class definition includes all "persons and entities . . . who purchased Ovcon directly from Warner Chilcott . . . at any time from April 22, 2004, though the present ***and continuing until the effects of Defendants' anticompetitive conduct have ceased***." (Am. Compl. ¶ 61.) Because the proposed class period is indefinite, *i.e.*, it extends "until the [alleged] effects of Defendants' anticompetitive conduct" cease, it is not yet possible to determine who is in the proposed class. Rather, in order to determine class membership the Court must first

**Redacted**

(*See* Palmer Decl. ¶¶ 47-48.)

Plaintiffs' "proposed class definition [thus] flies directly in the face of a basic tenet of class certification: a court may not inquire into the merits of the case at the class certification stage." *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995); 5 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 23.21[3][c] (3d ed. 2005) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to

determine whether a particular person is a member of the class."). Specifically, what effects, if any, defendants' alleged conduct had on purchasers and when any such effects ceased are not questions appropriate for resolution on class certification.[24]    Indeed, plaintiffs' proposed definition                    **Redacted**

(*See* Palmer Decl. ¶ 48.)

## CONCLUSION

For the above-stated reasons, plaintiffs' motion for class certification should be denied.

Dated: April 12, 2007

Respectfully submitted,

*[signature]*

Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Patrick M. Bryan (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005
(202) 879-5000
(202) 879-5200 (fax)

*Counsel for Barr Pharmaceuticals, Inc.*

---

[24]    *See, e.g., Chiang v. Veneman,* 385 F.3d 256, 272 (3d Cir. 2004) ("declin[ing] to modify the class definition to include Virgin Islanders who claim that they were discriminated against," where "[l]imiting the class to those who were in fact discriminated against would seem to prejudge the merits of the case") (citation omitted); *Selby v. Principal Mut. Ins. Co.,* 197 F.R.D. 48, 55 (S.D.N.Y. 2000) ("A class's definition will be rejected when it 'requires addressing the central issue of liability in a case' and therefore the inquiry into whether a person is a class member essential require[s] a mini-hearing on the merits of each [plaintiff's] case.") (citation omitted); *Hagen v. Winnemucca,* 108 F.R.D. 61, 63 (D. Nev. 1985) (denying certification where proposed definition would require court "to determine whether a person's constitutional rights had actually been violated in order to determine whether that person was a class member"); *Dunn v. Midwest Buslines, Inc.,* 94 F.R.D. 170, 171-72 (E.D. Ark. 1982) (denying certification in Title VII action where certification required "a finding of discrimination in order to define the class").

43

_/s/ Peter C. Thomas_

Peter C. Thomas (D.C. Bar # 495928)
SIMPSON THACHER & BARTLETT LLP
601 Pennsylvania Avenue, N.W.
North Building
Washington, DC 20004
(202) 220-7700
(202) 220-7702 (fax)

Charles E. Koob (_Pro Hac Vice_)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)

_Counsel for Warner Chilcott Holdings
Company III, Ltd., Warner Chilcott
Corporation, Warner Chilcott (US) Inc.,
Warner Chilcott Company, Inc., and Galen
(Chemicals), Ltd._

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April 2007, I caused an unredacted copy of Defendants' Opposition To Direct Purchaser Plaintiffs' Motion for Class Certification and accompanying Appendix to be served by first-class mail upon the parties listed on the service list below.

_____
Patrick M. Bryan

William Isaacson (D.C. Bar No. 414788)
Tanya Chutkan (D.C. Bar No. 420478)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015

Richard B. Drubel (D.C. Bar No. 334359)
Kimberly H. Schultz
BOIES, SCHILLER & FLEXNER LLP
26 S. Main Street
Hanover, NH 03755

Linda P. Nussbaum (D.C. Bar No. 483254)
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY 10022

Daniel Berger
Eric L. Cramer
Ellen T. Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103

Steig D. Olson
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
150 East 52nd Street, 30th Floor
New York, NY 10022

Michael D. Hausfeld (D.C. Bar No. 153742)
Brian A. Ratner (D.C. Bar No. 73284)
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
1100 New York Avenue, N.W., Suite 500 West
Washington, DC 20005

Bruce E. Gerstein
Kevin S. Landau
GARWIN GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10011

David U. Fierst (D.C. Bar No. 912899)
STEIN, MITCHELL & MEZINES, LLP
1100 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036

Thomas M. Sobol
HAGENS BERMAN SOBOL
  & SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142

Dianne M. Nast
RODA NAST, P.C.
801 Estelle Drive
Lancaster, PA 17601