UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MEIJER, INC., *et al.,*

                         Plaintiffs,

        v.

WARNER CHILCOTT HOLDINGS
COMPANY III, LTD., *et al.,*

                         Defendants.

Civil Action No. 05-2195 (CKK)

## DIRECT PURCHASER CLASS PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT WITH WARNER CHILCOTT DEFENDANTS ONLY

Plaintiffs Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale Drug Co., Inc.,

Rochester Drug Co-Operative, Inc., American Sales Company, Inc., SAJ Distributors, Inc., and

Stephen L. LaFrance Holdings, Inc. (collectively the "Direct Purchaser Class Plaintiffs" or the

"Plaintiffs"), by their undersigned counsel ("Class Counsel"), move for an order pursuant to

Federal Rule 23(e) granting preliminary approval to a partial settlement of this direct purchaser

antitrust class action (the "Settlement") between the Class[1] and Warner Chilcott Public Limited

Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner

---

[1] The Court, in its Opinion and Order dated October 22, 2007, granted Plaintiffs' motion for certification of a Class defined as follows:

> All persons or entities in the United States who purchased Ovcon 35 directly from Warner Chilcott at any time during the period April 22, 2004 through December 31, 2006. Excluded from the Class are Defendants and their officers, directors, management, and employees, subsidiaries or affiliates, and all governmental entities. Also excluded are hospitals, universities and clinics.

Pursuant to the Settlement Agreement, the parties agreed that the definition of the Class should be amended to explicitly exclude any claims asserted, whether by assignment or otherwise, by the following entities: Walgreen Co., Eckerd Corporation, Maxi Drug, Inc. d/b/a Brooks Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc., CVS Pharmacy, Inc., Rite Aid Corporation, and Rite Aid Hdqtrs. Corp (hereinafter referred to as "the Class").

Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals), Ltd. (together, "Warner Chilcott," or the "Warner Chilcott Defendants"), amending the class definition to exclude certain entities who have separately pursued their claims, approving the form and manner of notice to the Class, appointing a claims administrator, and approving a proposed schedule for completing the approval process.[2]

The Settlement, which was achieved after extensive mediation sessions with Magistrate Judge Kay, includes a cash payment of nine million dollars ($9,000,000) from Warner Chilcott to the Class as well as other non-cash consideration, including Warner Chilcott's agreement to cooperate with Plaintiffs in certain specified ways in Plaintiffs' pursuit of the litigation against the remaining defendant, Barr Pharmaceuticals, Inc. ("Barr"). If finally approved by the Court, the Settlement would represent a superior and highly beneficial result for the Class.

## I.    PRELIMINARY STATEMENT

Counsel for Warner Chilcott and the Direct Purchaser Class Plaintiffs have executed a Settlement Agreement dated November 28, 2007 (the "Agreement" attached as Exhibit A). The Agreement provides, among other things, that Warner Chilcott will pay the Class Nine Million Dollars ($9,000,000) in cash (the "Settlement Fund"), plus interest earned thereon, less any fees and expenses awarded by the Court. Agreement ¶ 6. The Agreement provides further that Warner Chilcott will cooperate with Plaintiffs in certain specified ways in Plaintiffs' continued prosecution of its claims in this case against Barr, including production of additional documentation and certification of documents for trial. *Id.* ¶ 14. In exchange, the Class will agree to seek dismissal of all claims against Warner Chilcott with prejudice and provide Warner Chilcott with a release. *Id.* ¶ 4(b).

---

[2] Plaintiffs note that an order granting final approval of a proposed settlement should not be issued earlier than 90 days after the dates on which the appropriate federal and state officials are notified of the settlement. *See* 28 U.S.C. § 1715.

Strategically, the Settlement with Warner Chilcott offers the Class significant advantages in prosecuting its claims against Barr. For instance, Warner Chilcott and Barr have sought to justify their anticompetitive conduct in this case by arguing that (a) Warner Chilcott needed to pay Barr to refrain from entering the market with Barr's competing generic Ovcon product so that Barr could exclusively sell Ovcon to Warner Chilcott because Warner Chilcott supposedly needed a new raw material supplier; and (b) the entry of a low priced generic Ovcon product is supposedly bad for consumers because it reduces the incentives that brand name companies like Warner Chilcott have for promoting their more expensive products through advertising and sampling. Whatever one may say about these defenses, one thing is clear: they make a lot more sense coming from Warner Chilcott than they do from Barr. If the Settlement is approved, Barr – a generic drug manufacturer – will be put in the awkward position on summary judgment and at trial of speaking for Warner Chilcott as to Warner Chilcott's supply needs and, absurdly, arguing that Barr's own entry as a competitor with a less expensive generic product would have actually harmed consumers – *an argument that contradicts numerous of Barr's own public statements about the consumer benefits of generic competition.*

Given the benefits to the Class that emanate from this partial Settlement, the certified class representatives all support the Settlement. Likewise, Class Counsel have concluded, after extensive discovery and investigation of the facts,[3] and after considering the claims asserted in the Amended Class Action Complaint filed on April 14, 2006 (the "Complaint"), and the possible legal and factual defenses thereto, that it would be in the best interests of the Class to enter into this Settlement Agreement. Not only is Warner Chilcott making a payment of $9 million, but as part of the Settlement, it is cooperating with Plaintiffs in their claims against the

---

[3] Fact and expert discovery have concluded and, at this time, the parties are briefing motions for summary judgment.

remaining defendant, Barr. Class Counsel consider the Settlement to be fair, reasonable, adequate and in the best interests of the Class.

Finally, and significantly, Class Counsel have also communicated about the Settlement with counsel for three of the largest members of the Class, namely, AmerisourceBergen Corp., McKesson Corp., and Cardinal Health, Inc. These three Class members, each Fortune 500 corporations, make up a significant percentage of the claims of the Class in this case (and will likely be entitled, collectively, to more than 50% of the net Settlement Fund). As the Court will recall, they each of these entities previously submitted declarations to the Court in support of certification of the Class, which declarations the Court relied upon, in part, in certifying the Class. All three of these entities support the Settlement with Warner Chilcott.

Accordingly, by this Motion, Class Counsel request that the Court enter the attached Order preliminarily approving the Settlement (the "Order"), a proposed form of which is submitted with this Motion as Exhibit B, which will: (1) grant preliminary approval of the Settlement; (2) approve the form and manner of giving notice to the Class; (3) set a hearing for final approval of the Settlement; (4) appoint a claims administrator; and (5) set a schedule for other deadlines.

With respect, the Motion should be granted because the proposed Settlement falls well within the range of possible approval and there are no grounds to doubt its fairness. The Settlement was negotiated by experienced counsel, with extensive oversight by Magistrate Judge Kay, intermittently over the course of a year and after considerable hard-fought litigation. It has the explicit support of all named Plaintiffs and three of the largest absent members of the Class. Finally, public policy favors the settlement of complex class actions. Accordingly, Class Counsel respectfully request that the Court enter the proposed Order.

4

## II.    **FACTUAL AND PROCEDURAL BACKGROUND**

This case has been aggressively prosecuted and vigorously defended for more than two years. The action was commenced in November 2005 with the filing of six complaints by different Direct Purchaser Class Plaintiffs, all alleging that Warner Chilcott and Barr violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by illegally delaying the entry of generic Ovcon 35. The complaints each alleged that in exchange for a $20 million payment, Barr agreed not to sell its generic Ovcon 35 in competition with Warner Chilcott's Ovcon 35. This agreement, the complaints alleged, denied direct purchasers of Ovcon 35 the benefits of generic competition and caused them to pay higher prices for Ovcon 35 Products (brand and AB rated generic versions of Ovcon 35). Plaintiffs conferred and agreed to form an Executive Committee to prosecute the related cases. The Court approved the Executive Committee format in an Order dated April 4, 2006. On April 14, 2006, the Complaint was filed. Warner Chilcott answered the Complaint on May 3, 2006, and Barr answered on May 8, 2006.

*Document Discovery and Related Disputes Before the Court.*

Discovery commenced in March 2006. To date, Defendants have produced more than 1.3 million pages of documents, some of which had previously been produced to the Federal Trade Commission (FTC) in the related action. These documents were carefully reviewed and analyzed by teams of attorneys and paralegals. In addition, after the Class drafted and served subpoenas, thousands of pages of third party documents were produced and analyzed. Subsequently, working cooperatively with the State Attorneys' General and the individual direct purchaser plaintiffs, Plaintiffs took and defended more than 25 fact witness depositions, and more than a dozen expert depositions. Together with the individual direct purchaser plaintiffs, Class Counsel retained experts in the following areas: pharmaceutical industry and economics,

5

damages and pharmaceutical supply chain issues. Class Counsel consulted extensively with their experts regarding economic, pharmaceutical and marketing issues including the quantification of damages incurred by the Class.

Plaintiffs have also taken and analyzed the depositions of Barr's and Warner Chilcott's experts. Finally, jointly with the State Attorneys' General and the individual direct purchaser plaintiffs, Plaintiffs have prepared and filed a motion for partial summary judgment and are currently preparing their response to Barr's motion for summary judgment. Therefore, by the time this Settlement was entered into, the parties were well aware of the strengths and weaknesses of their cases and all party and third party fact discovery, and extensive expert discovery had been completed.

*Class Certification.*

Following completion of extensive class discovery, including submission of expert reports and the taking and defending of expert depositions, on March 12, 2007, the Direct Purchaser Plaintiffs filed a motion for certification of the following class:

> All persons and entities in the United States who purchased Ovcon 35 directly from Defendants or their subsidiaries at any time during the period April 22, 2004 through the present and continuing until the effects of Defendants' anticompetitive conduct have ceased (the "Class"). Excluded from the Class are Defendants and their officers, directors, subsidiaries or affiliates, and all governmental entities.

Defendants filed an opposition to class certification on April 12, 2007. Plaintiffs replied on May 21, 2007, and altered the class definition to make the class period end on December 31, 2006. The parties litigated a number of discovery issues with respect to the class motion before Magistrate Judge Kay. On October 22, 2007, the Court granted the Direct Class Purchasers' motion and certified the requested Class.

*The Settlement*

The Settlement was reached through a series of arm's-length negotiations between Class Counsel and counsel for Warner Chilcott. On November 13, 2006, the Court ordered the parties to attempt mediation and appointed Magistrate Judge Alan Kay to preside over those proceedings. Settlement discussions then took place, intermittently, for nearly one year before the instant Settlement was agreed to, including several in person meetings with Magistrate Judge Kay in addition to numerous telephone conferences with him.

As part of the Settlement, the Warner Chilcott Defendants have agreed to cooperate with Plaintiffs in certain ways in the continued litigation of this action against Barr. Among other things, they agreed to produce additional documents and to provide certificates of authenticity for documents to be used at trial. They have also agreed to offer certain valuable cooperation with respect to the withdrawal of certain reports by experts retained by Warner Chilcott in this action. Agreement ¶14. The Settlement Agreement's "Most Favored Nations Provision" (Agreement ¶13) provides, up until an expiration date, a disincentive for the Class to settle its litigation with Barr for an amount less than the Class accepted from the Warner Chilcott Defendants.

## III.    ARGUMENT

### A.    Preliminary Approval of the Settlement is Warranted

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis. While approval of class settlements lies within the discretion of this Court, *see United States v. District of Columbia,* 933 F. Supp. 42, 47 (D.D.C. 1996), this discretion is constrained by the "principle of preference" favoring and encouraging settlements in appropriate cases. *See Pigford v. Glickman,* 185 F.R.D. 82, 103 (D.D.C. 1999). Preliminary approval of a proposed settlement is warranted "if the preliminary evaluation of the proposed

settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as

unduly preferential treatment of class representatives or of segments of the class, or excessive

compensation for attorneys, and appears to fall within the range of possible approval[.]" Manual

for Complex Litigation, Third, § 30.41 (West 1999); *see also, In re Prudential Sec. Inc. Ltd.

Partnerships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[a]t this stage of the proceeding, the

Court need only find that the proposed settlement fits 'within the range of possible approval'")

(citation omitted); *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 WL

33320580, at *6 (E.D.N.Y. Dec. 26, 1997) ("preliminary approval should be granted and notice

of the proposed settlement given to the class if there are no obvious deficiencies in the proposed

settlements"); *In re Shell Oil Refinery,* 155 F.R.D. 552, 555 (E.D. La. 1993) (*accord*).

At the preliminary approval stage, the Court does not make a final determination of the

merits of the proposed settlement. *Thomas v. NCO Financial Sys.*, No. 00-CV-5118, 2002 U. S.

Dist. LEXIS 14157, at *14 (E.D. Pa. July 31, 2002) (citation omitted). Rather, full evaluation is

made only at the final approval stage, after notice of the settlement has been given to the

members of the class and class members have had an opportunity to both review the terms of the

settlement in detail and voice their views of the settlement. *See* 3B MOORE'S FEDERAL PRACTICE

9 23.80[2.-1], at 23-479 (2d ed. 1993). "Once preliminary approval is bestowed, the second step

of the process ensues; notice is given to the class members of a hearing, at which time class

members and the settling parties may be heard with respect to final court approval." *In re

NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Finally, the opinion of experienced counsel supporting the settlement is entitled to

considerable weight in a court's evaluation of a proposed settlement. *In re Michael Milken &

Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). *See In re Vitamins Antitrust Litig.*, Nos.

8

MISC. 99-197(TFH), MDL 1285, 2001 WL 856290 at *2 (D.D.C. July 19, 2001). ("A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (*quoting Manual for Complex Litig.*, at § 30.42); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried.").

Here, the Settlement falls well within the range of possible approval and there are no grounds to doubt the fairness of the proposed Settlement.

### B.      The Proposed Settlement Is Within the Range of Possible Approval.

In approving a class settlement, courts in this Circuit and others have repeatedly and expressly deferred to the judgment of experienced counsel achieving class-wide settlements through arms-length negotiations. Chief Judge Hogan observed that: "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-790, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003)(quotation omitted); *see also In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004); *In re Vitamins Antitrust Litig.*, No. 99-197, 200 U.S. Dist. LEXIS 8931, at *22 (D.D.C. Mar. 31, 2000); *Stewart v. Rubin*, 948 F. Supp. 1077, 1099 (D.D.C. 1996); *see also* Newberg on Class Actions § 11.51 ("[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."). That presumption should attach here.

Every aspect of the proceedings, from motion practice through the completion of the settlement negotiations, has been sharply contested. The proposed Settlement is the product of contentious negotiations, which took place over the span of nearly one year, and which was overseen by Magistrate Judge Kay. The negotiations included several face to face meetings and numerous conference calls between counsel. The counsel representing the direct purchaser class are very experienced in antitrust class actions with specific expertise in the pharmaceutical area, having settled over the past five years numerous prior cases involving delayed generic entry on behalf of a nearly identical class of direct purchasers for hundreds of millions of dollars collectively.

In considering a request for preliminary approval, the Court is asked to determine whether the proposed settlement "fall[s] within the range of possible approval." *Manual for Complex Litigation (Third)* § 30.41, at 237. "In any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion...." *Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972). *See, e.g., Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Here, for the reasons discussed above, this is an excellent Settlement for the Class, especially since the action is continuing against Barr, against whom there is the possibility of an additional recovery for the Class.

C.     **The Proposed Settlement Does Not
       Disclose Grounds to Doubt Its Fairness.**

Plaintiffs faced several hurdles in the prosecution of this case. For instance, defendants argued that the exclusive license and supply agreements between Warner Chilcott and Barr were entered into for legitimate business reasons, namely because Warner Chilcott was experiencing supply problems with its then supplier of Ovcon, Bristol Myers-Squibb Co. ("BMS"). Thousands of pages of documents were produced by BMS and a half dozen employees and former employees of BMS were deposed. Defendants also alleged, and provided expert testimony by Dr. Tracy Lewis, that an exclusive license agreement with Barr was the best way to ensure Barr fulfilled its contractual obligations. Plaintiffs also faced a "relevant market" defense, which if accepted, could have precluded recovery. If these arguments were accepted -- and the Court were to deny Plaintiffs' motion to declare defendants' conduct per se illegal under the antitrust laws (which eventuality would moot the supply and relevant market defenses) – it is certainly conceivable that a jury could have found that no violation of the antitrust laws had occurred.

While Plaintiffs believe that they have a strong likelihood of overcoming these arguments, and in winning their "per se" motion, there was a risk that they would lose that motion. Without Warner Chilcott in the case, however, this and other defenses become more difficult for Barr to prove (because, *e.g.*, most of the evidence comes in through Warner Chilcott witnesses), and thus the Settlement improves the Class's likelihood of success against Barr.

The *Manual for Complex Litigation (Third)* recommends that on request for preliminary approval the Court examine whether there are grounds to doubt the fairness of the settlement. § 30.41, at 237. In addition to being well within the range of possible approval, the proposed

Settlement does not disclose any ground for the Court to doubt its fairness and thus meets this additional standard.

The Settlement was reached after arm's length and hard-fought negotiations, overseen and facilitated by a capable and experienced mediator. The Class was represented by counsel with extensive experience in litigating antitrust class actions, particularly in the pharmaceutical area, and Warner Chilcott was represented by similarly experienced counsel. The Settlement, which also has the explicit support of three of the largest members of the Class, was reached after extensive analysis by Class Counsel of the applicable law and facts, including the review of 1.3 million pages of documents produced by Warner Chilcott, the depositions of Warner Chilcott and Barr witnesses and as well as third-party witnesses, extensive expert discovery and the other pre-trial analysis described above.

Finally, there are no obvious deficiencies with the Settlement. It should therefore be preliminarily approved.

### D.    An Appropriate Point for Settlement Has Been Reached

In evaluating a proposed settlement, courts consider "the stage of the proceedings when settlement has been offered and [the] degree of completed discovery." *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974). "Courts thus consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and the range of recovery." *In re Lorazepam & Clorazepat Antitrust Litig.*, 205 F.R.D. 369, 377 (D.D.C. 2002).

The proposed Settlement is the product of an extensive analysis of the factual and legal issues involved in this case. Fact and expert discovery have been completed. There are now

pending motions for summary judgment. The parties are fully aware of the facts and legal issues involved in this case.

Settlements are favored that do not come too early to be suspicious or too late to be a waste of resources, but which come at a "desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation." *Vitamins*, 305 F. Supp. 2d at 105.

### E.    The Opinion of Experienced Counsel Supports Approval

The "[o]pinion of experienced and informed [counsel] should be afforded substantial consideration" by a court in evaluating the reasonableness of a proposed settlement. *Lorazepam & Clorazepate*, 205 F.R.D. at 380. Class Counsel firmly believe that the proposed settlement is fair, reasonable, and adequate to the Class. Counsel is very experienced in class action and antitrust matters, and in fact, members of this group of counsel have served as lead counsel in the *Lorazepam* case as well as in a multitude of other delayed generic entry antitrust class actions, including, *e.g.*, *Taxol* (Civil Action No. 1:01cv2313, D.D.C.), *Platinol* (Civil Action No. 1:04cv248, D.D.C.), *Children's Ibuprofen* (Civil Action No. 04-mc535, D.D.C.), *Remeron* (Civil Action No. 03-0085, D.N.J.), *Relafen* (Civil Action No. 01-12239, D. Mass.), *Hytrin/Terazosin* (Civil Action No. 1:99cv1317, S.D. Fla.), *Buspar/Buspirone* (Civil Action No. 01cv7951, S.D.N.Y.), and *Cardizem* (Civil Action No. 99md1278, E.D. Mich.). Thus, there is no group of Plaintiffs' counsel more familiar with this specific type of litigation in the pharmaceutical industry, or more able to evaluate these claims on behalf of a direct purchaser class.

Consequently, the opinion of Plaintiffs' Counsel that the proposed settlement is "fair, adequate, and reasonable" is deserving of this Court's consideration. *Vitamins* 305 F. Supp. 2d at 106; *see also Lorazepam & Clorazepate*, 205 F.R.D. at 380.

13

**F.     The Proposed Notices to Class Members and Method of Notification Are Adequate**

In light of the foregoing, Class Counsel request that notice of the proposed settlement be given to members of the Class. Rule 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R.Civ. P. 23 (c)(2)(B); *see* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, §8.2 at 162-65 (4th ed. 2002); *see also* Manual for Complex Litigation (Fourth) § 21.311 (2007) (individual notice by mail generally preferred where absent class members can be readily identified).

The Agreement provides that written notice will be mailed via First Class Mail to each member of the Class, which consists of approximately thirty members – all of whom are substantial businesses. The form of written notice to be mailed is attached as Exhibit C (the "Notice"). The Notice provides details regarding the terms of the partial Settlement with Warner Chilcott and the rights of Class members to share in the recovery. It provides the date, time and place of the final hearing to consider the proposed Settlement and information about the right of Class members to be present at the final hearing. The Notice also provides contact information for Class Counsel.

The form and manner of Notice proposed here fulfill all of the requirements of Rule 23 and due process and have been approved by both Warner Chilcott and Barr. Class Counsel respectfully request that the Court direct that the proposed Notice of the proposed partial Settlement be approved for distribution to Class members. It should be noted that these Class members have all been previous class members in other pharmaceutical antitrust direct purchaser actions. Several of them, including the three largest Class members, have been in contact with Class Counsel, know about the Settlement, and have approve the proposed Settlement in

advance.

The proposed Notice complies with the recommendations contained in Section 21.311 of the Manual for Complex Litigation (Fourth), which suggests that a Class Notice should:

- Describe succinctly the positions of the parties;

- Identify the opposing parties, class representatives, and counsel;

- Describe the relief sought; and

- Explain any risks and benefits of retaining class membership and opting out, while emphasizing that the court has not ruled on the merits of any claims or defenses.

Plaintiffs prepared the proposed Notice based on samples promulgated by the Federal Judicial Center. *See www.fjc.gov.* This follows the guidance provided in the Advisory Committee Notes for the 2003 Amendments to Rule 23(c)(2), noting that the Federal Judicial Center's "illustrative clear-notice forms . . . provide a helpful starting point." Courts also have favorably referenced these samples. *See, e.g., Wachtel v. Guardian Life Inc. Co. of Am.,* 453 F.3d 179, 185 n.6 (3rd Cir. 2006); *Whiteway v. FedEx Kinkos Office and Print Servs.,* No C 05-2320 SBA, 2007 WL 1381514, at *2 (N.D. Cal. May 8, 2007).

In accordance with Rule 23(c)(2)(B), the proposed notice explains "concisely and clearly" and in "plain, easily understood language" the nature of the action (Exhibit C at Q.2); the definition of the class (*Id.* at Q.6); the class claims, issues and defenses (*Id.* at Q.2); the right of class members to enter appearances through counsel (*Id.* at Q.25); the right of class members to exclude themselves from the class and when and how to do so (*Id.* at Q.12-15); and the binding effect of a class judgment (*Id.* at Q.11). *See also id.* at 1.

Similarly, in accordance with the Manual for Complex Litigation recommendations, the proposed Notice describes succinctly each party's position (*Id.* at Q.2); identifies the opposing parties, class representatives and counsel (*Id.* at Q.3, 24); describes the relief sought (*Id.* at Q.2);

and explains any risks and benefits of retaining class membership and opting out (*Id.* at Q.11-15), while emphasizing that the Court has not yet ruled on the merits (*Id.* at Q.2, 5). *See also id.* at 1. The proposed Notice also describes how the lawyers will be paid (*Id.* at Q.26), what to expect with regard to the trial and any payments (*Id.* at Q.7-10, 21-22), and how to obtain more information. (*Id.* at Q.27). It also describes the settlement with Warner Chilcott. (*Id.* at Q.7).

Plaintiffs propose mailing the proposed Notice to each class member within thirty (30) days after the Court approves a final draft, and including within that notice a forty-five (45) day opt-out period, which has been called an "unquestionably sufficient" opt out period. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 562 (D.N.J. 1997).

Similar forty-five day opt-out periods have been used in other class actions. *See, e.g., Franklin v. General Trucking, LLC,* No. 07-5002, 2007 WL 3125122, at *2 (W.D. Ark. Oct. 23, 2007); *In re Napster, Inc. Copyright Litig.,* Nos. C-MDL-00-1369 MHP, C 04-1671 MHP, 2007 WL 2907892, at *3 (N.D. Cal. Oct. 2, 2007); *Oncology & Radiation Assocs., P.A. v. Bristol-Myers Squibb Co.,* No. Civ.A.1:01CV02313(EG), 2003 WL 21087979, at *2 (D.D.C. May 13, 2003); *In re Remeron End-Payor Antitrust Litig.,* No. 02-2007 FSH, Civ. 04-5126 FSH, 2005 WL 2230314, at *13 (D.N.J. Sept. 13, 2005).

Finally, Plaintiffs propose that Epiq Systems, Inc. ("Epiq") be appointed to serve as Claims Administrator for the settlement. Epiq is a national leader in claim administration services for class action cases. *See* Epiq's website at www.epiqsystems.com. Epiq has served as claims administrator for the historic Department of Justice/Microsoft antitrust litigation and in *In re Children's Ibuprofen Oral Suspension Litig.* C.A. 1:04cv01366 (ESH) in this judicial district.

IV.    **CONCLUSION**

For these reasons, Class Counsel respectfully request that the Court grant this Motion for

Preliminary Approval of Partial Settlement with Warner Chilcott Defendants Only and enter the

Proposed Order attached as Exhibit B.

Dated: _____                    Respectfully Submitted,

                                          KAPLAN FOX & KILSHEIMER LLP

                                          _____
                                          Linda Nussbaum (DC Bar No. 483254)
                                          850 Third Avenue, 14th Floor
                                          New York, NY 10022
                                          Telephone: 212-687-1980
                                          Facsimile: 212-687-7714

                                          William Isaacson (D.C. Bar No. 414788)
                                          Tanya Chutkan (D.C. Bar No. 420478)
                                          BOIES, SCHILLER & FLEXNER LLP
                                          5301 Wisconsin Avenue, N.W., Suite 800
                                          Washington, DC 20015
                                          Telephone: 202-237-2727
                                          Facsimile: 202-237-6131

                                          Richard B. Drubel (D.C. Bar No. 334359)
                                          Kimberly H. Schultz
                                          BOIES, SCHILLER & FLEXNER LLP
                                          26 S. Main Street
                                          Hanover, NH 03755
                                          Telephone: 609-643-9090
                                          Facsimile: 609-643-9010

                                          Daniel Berger
                                          Eric L. Cramer
                                          Ellen T. Noteware
                                          BERGER & MONTAGUE, P.C.
                                          1622 Locust Street
                                          Philadelphia, PA
                                          Telephone: 215-875-3000
                                          Facsimile: 215-875-4604

Bruce E. Gerstein
Barry S. Taus
Kevin S. Landau
GARWIN GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10011
Telephone: 212-398-0055
Facsimile: 212-764-6620

Thomas M. Sobol
HAGENS, BERMAN, SOBOL &
   SHAPIRO, LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: 617-482-3700
Facsimile: 617-482-3003

Diane M. Nast
RODA NAST P.C.
801 Estelle Drive
Lancaster, PA 17601
Telephone: 717-892-1000
Facsimile: 717-892-1200

**Executive Committee Members for Direct
Purchaser Class Plaintiffs**