# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., *et al.*,<br><br>          Plaintiffs,<br><br>    v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., *et al.*,<br><br>          Defendants | Civil Action No. 05-2195 (CKK) |

## DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH WARNER CHILCOTT DEFENDANTS ONLY

Plaintiffs Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale Drug Co., Inc., Rochester Drug Co-Operative, Inc., American Sales Company, Inc., SAJ Distributors, Inc., and Stephen L. LaFrance Holdings, Inc. (collectively, the "Direct Purchaser Class Plaintiffs" or the "Plaintiffs"), respectfully move this Court for an order granting final approval of the settlement of this litigation entered into between Plaintiffs on behalf of themselves and the certified class of direct purchasers they represent[1] and Defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals), Ltd. (collectively, "Warner Chilcott") on November 28, 2007 (the "Settlement").

---

[1] October 22, 2007, the Court certified a class defined as follows: "All persons and entities in the United States who purchased Ovcon 35 directly from Defendants at any time during the period April 22, 2004 through December 31, 2006. Excluded from the Class are Defendants and their officers, directors, subsidiaries or affiliates, and all governmental entities. Also excluded are hospitals, universities and clinics." October 22, 2007 Order (Doc. #137). The class definition was amended for purposes of this partial settlement to exclude certain retail pharmacy chains, Walgreen Co., Eckerd Corporation, Maxi Drug, Inc. dba Brooks Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc., CVS Pharmacy, Inc., Rite Aid Corporation, and Rite Aid Hdqtrs. Corp. *See* January 2, 2008 Preliminary Approval Order (Doc. # 172).

On January 2, 2008, this Court entered an Order preliminarily approving the Settlement, amending the definition of the Direct Purchaser Class, and authorizing the sending of notice to the Class members. The Class members have all timely received notice according to the notice plan approved by the Court, and there have been no objections to, or requests for exclusion from, the Settlement. For the reasons set forth in the attached memorandum, Direct Purchaser Class Plaintiffs hereby respectfully seek an order from the Court that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class and is, therefore, fully and finally approved, pursuant to Federal Rule of Civil Procedure 23(e). A proposed Final Order and Judgment as to the Warner Chilcott Defendants is attached hereto as Exhibit 1.

DATED: May 27, 2008                              Respectfully submitted,

                                                 Linda Nussbaum (DC Bar No. 483254)
                                                 KAPLAN FOX & KILSHEIMER LLP
                                                 850 Third Avenue, 14th Floor
                                                 New York, NY 10022
                                                 Telephone: 212-687-1980
                                                 Facsimile: 212-687-7714

                                                 Daniel Berger
                                                 Eric L. Cramer
                                                 Ellen T. Noteware
                                                 BERGER & MONTAGUE, P.C.
                                                 1622 Locust Street
                                                 Philadelphia, PA 19103
                                                 Telephone: 215-875-3000
                                                 Facsimile: 215-875-4604

William Isaacson (DC Bar No. 414788)
Tanya Chutkan (DC Bar No. 420478)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone: 202-237-2727
Facsimile: 202-237-6131

Richard B. Drubel (DC Bar No. 334359)
Kimberly H. Schultz
BOIES, SCHILLER & FLEXNER LLP
26 S. Main Street
Hanover, NH 03755
Telephone: 609-643-9090
Facsimile: 609-643-9010

Bruce E. Gerstein
Barry S. Taus
Kevin S. Landau
GARWIN GERSTEIN & FISHER, LLP
1501 Broadway, Suite 1415
New York, NY 10011
Telephone: 212-398-0055
Facsimile: 212-764-6620

Thomas M. Sobol
HAGENS, BERMAN, SOBOL &
SHAPIRO, LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: 617-482-3700
Facsimile: 617-482-3003

Diane M. Nast
RODA NAST P.C.
801 Estelle Drive
Lancaster, PA 17601
Telephone: 717-892-1000
Facsimile: 717-892-1200

Michael D. Hausfield
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
1100 New York Avenue, NW
West Tower, Suite 500
Washington, D.C. 20005-3964
Telephone:    202-408-4600
Facsimile:    202-408-4699

*Executive Committee Members for Direct
Purchaser Class Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MEIJER, INC., *et al.*,

                **Plaintiffs,**

v.

**WARNER CHILCOTT HOLDINGS
COMPANY III, LTD.,** *et al.*,

                **Defendants**

Civil Action No. 05-2195 (CKK)

## DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH WARNER CHILCOTT DEFENDANTS ONLY

### I.   INTRODUCTION

Plaintiffs Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale Drug Co., Inc., Rochester Drug Co-Operative, Inc., American Sales Company, Inc., SAJ Distributors, Inc., and Stephen L. LaFrance Holdings, Inc. (collectively, the "Direct Purchaser Class Plaintiffs" or the "Plaintiffs"), individually and as representatives of a certified Direct Purchaser Class[1] of entities that purchased Ovcon 35 directly from defendant Warner Chilcott[2] (the "Class") respectfully submit this memorandum in support of their request for final approval, pursuant to Rule 23(e) of the Federal Rules of

---

[1]   The Direct Purchaser Class, for purposes of this Settlement, is defined as it was in this Court's January 2, 2008 Preliminary Approval Order and in the Class Notice: All persons and entities in the United States who purchased Ovcon 35 directly from Defendants at any time during the period April 22, 2004 through December 31, 2006. Excluded from the Class are Defendants and their officers, directors, subsidiaries or affiliates, and all governmental entities. Also excluded are hospitals, universities and clinics. Certain retail pharmacy chains are also excluded: Walgreen Co., Eckerd Corporation, Maxi Drug, Inc. dba Brooks Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc., CVS Pharmacy, Inc., Rite Aid Corporation, and Rite Aid Hdqtrs. Corp. *See* Notice to the Class (attached as Exhibit 1 to the Declaration of Michael Evans of EPIQ Systems Concerning the Mailing of Notice (the "EPIQ Dec.")).

[2]   "Warner Chilcott" means defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals), Ltd.

Civil Procedure, of the proposed settlement of this antitrust action entered into with Warner Chilcott (the "Settlement"). Direct Purchaser Plaintiffs have not entered into a settlement with defendant Barr Pharmaceuticals, Inc. ("Barr"), against whom the litigation is actively being litigated.

Plaintiffs reached this arms' length Settlement with Warner Chilcott on November 28, 2007 with the able assistance of Magistrate Judge Alan Kay, who served as a mediator and facilitator of the parties' negotiations. The Settlement provides for Warner Chilcott to pay nine million dollars ($9,000,000.00) and to cooperate, in certain enumerated respects, with the continued litigation against Barr. Indeed, the nine million dollars has already been deposited into an escrow account pursuant to the terms of the Settlement. The Settlement is the product of hard-fought negotiations over nearly a year by experienced counsel on both sides. These negotiations, involving multiple mediation sessions with Magistrate Judge Kay, occurred after Plaintiffs had engaged in and completed extensive factual and expert discovery, consulted with damages experts, and fought successfully to certify the Class.

On January 2, 2008, this Court preliminarily approved the Settlement, approved the form of Notice, and directed Class Counsel to disseminate the Notice to the Class. (1/2/08 Order, Doc. #172.) Notices have now been sent to all of the members of the Class, and the time to request exclusion from the Class or to object to the Settlement has elapsed. Notably, not a single member of this sophisticated Class of direct purchasers of pharmaceutical products has objected to, or has asked to be excluded from, the Settlement. In addition, three of the largest members of the Class – AmerisourceBergen Corp., McKesson Corp., and Cardinal Health, Inc. – who, in the aggregate, make up a

significant amount of the claims – have expressed affirmative support for the Settlement. This unanimous support for the Settlement reflects the significant cash and other benefits that the Settlement provides, and the fairness and adequacy of this partial resolution of this complex antitrust class action.[3]

As detailed here, in the papers previously submitted in support of preliminary approval (Doc. #158), in the Declaration of Linda P. Nussbaum, Esq. In Support of Motion for Final Approval of Settlement ("Nussbaum Dec."), and the Declaration of Michael Evans of EPIQ Systems Concerning the Mailing of Notice, the Claims Administrator (the "EPIQ Dec."), the Settlement, which provides for a cash payment of nine million dollars ($9,000,000) deposited into an interest bearing account for the benefit of the Class (the "Settlement Fund"), as well as Warner Chilcott's cooperation in the continuance of the litigation against defendant Barr, is an exceptional result for the Class and should be approved as fair, reasonable, and adequate.

As reflected in the Class' overwhelmingly favorable reaction, the Settlement is fair, reasonable, and adequate.  Moreover, Warner Chilcott's agreements to cooperate in certain ways will provide valuable aid with respect to Plaintiffs' continued prosecution of the case against Barr.  Warner Chilcott has agreed to withdraw certain of its expert reports and testimony, and to produce additional documents and to provide certificates of authenticity for documents to be used at trial.

---

[3] Plaintiffs' counsel has decided to defer requesting attorneys' fees or reimbursement for expenses and representative plaintiff incentive awards until a final resolution of the case against Barr so that the Court will have a full picture of the ultimate result before deciding on the propriety of these requests.  For similar reasons, as well as to avoid inefficiencies and unnecessary costs and redundancies, Plaintiffs have decided to defer the process of allocating net settlement proceeds to the Class until the case is finally resolved. Once the case resolves against Barr, Plaintiffs anticipate making requests for all of these items.

The Settlement here thus satisfies the criteria employed by the Court in this

District for evaluating the fairness, adequacy, and reasonableness of class action

settlements. Plaintiffs and Class Counsel respectfully request that this Court finally

approve the Settlement as fair, adequate, and reasonable, and in the best interests of the

Class.[4]

## II.    BACKGROUND OF THE CASE

### A.    The Litigation

This case has been aggressively prosecuted and vigorously defended for

approximately two and one half years. Nussbaum Dec. ¶ 4. The action was commenced

in November 2005 with the filing of six complaints by Direct Purchaser Class Plaintiffs,

all alleging that Warner Chilcott and Barr violated Section 1 of the Sherman Act, 15

U.S.C. §1, by illegally delaying the entry of generic Ovcon 35. *Id.* The complaints

alleged that, in exchange for a $20 million payment from Warner Chilcott, Barr agreed

not to sell its generic Ovcon 35 in competition with Warner Chilcott's Ovcon 35. *Id.*

This agreement denied direct purchasers of Ovcon 35 the benefits of generic competition

and caused them to pay higher prices for Ovcon 35 products. *Id.*

At or around the same time as the filing of the Direct Purchaser Class Plaintiffs'

complaints, other actions with the same factual basis were filed by the State Attorneys'

General, individual direct purchasers, an indirect purchaser class, a third party payor

class, and the Federal Trade Commission. *Id.* at ¶ 5.

Since March 2006, extensive document, deposition, and expert discovery has

taken place. *Id.* at ¶ 6. Defendants have produced more than 1.3 million pages of

documents. Moreover, third parties, pursuant to subpoenas, have produced additional

---

[4]    A proposed order is attached hereto as Exhibit 1.

thousands of pages of documents and data. *Id.* These documents were carefully reviewed and analyzed by teams of attorneys and paralegals. *Id.* In conjunction with the Federal Trade Commission, State Attorneys' General and the individual direct purchaser plaintiffs, Plaintiffs took and defended more than 25 fact witness depositions, and more than a dozen expert depositions. *Id.* Direct Purchaser Class Plaintiffs' counsel took the lead in many, if not most, of these depositions. *Id.* Class Counsel retained experts as to pharmaceutical industry and economics, damages, and pharmaceutical supply chain issues and consulted extensively with these experts regarding economic, pharmaceutical, and marketing issues, including the quantification of damages incurred by the Class. *Id.* Plaintiffs have also taken the depositions of Barr's and Warner Chilcott's experts. *Id.*

Following completion of extensive Class discovery, including submission of expert reports and the taking and defending of expert depositions, Direct Purchaser Class Plaintiffs filed a motion for class certification. *Id.* at ¶ 7. After a hard fought dispute over the propriety of discovery relating to class certification as well as the propriety of class certification more generally, this Court granted class certification on October 22, 2007 (10/22/07 Order, Doc. #137). *Id..* As this Court is aware, during the class dispute, the Direct Purchaser Class Plaintiffs were able to garner the affirmative support, confidence, and endorsement of three substantial absent class members known as the "Big 3" National wholesalers – Cardinal Health, Inc., AmerisourceBergen Corp., and McKesson Corp. *Id.* (10/22/07 Order, Doc. #137).

On November 14, 2007, Direct Purchaser Class Plaintiffs filed a motion for partial summary judgment. *Id.* at ¶ 8 (Doc. ##149-50). In this motion, Plaintiffs requested that the Court rule that Defendants have committed a *per se* violation of

Section 1 of the Sherman Act. *Id.* Barr also filed a motion for summary judgment on November 28, 2007. *Id.* (Doc. #157). The Court has not yet ruled on these motions, which are fully briefed. *Id.*

**B.    The Mediation and Terms of the Proposed Settlement**

On November 13, 2006, this Court ordered the parties to engage in mediation and appointed Magistrate Judge Kay to preside over such proceedings. *Id.* at ¶ 9 (Doc. #78). Magistrate Judge Kay has extensive experience in mediating pharmaceutical antitrust class actions. *Id.* Settlement negotiations took place intermittently over the course of one year, including multiple in person meetings and numerous telephone calls with the Magistrate Judge. *Id.*

On November 28, 2007, Plaintiffs and Warner Chilcott entered into a Settlement Agreement (the "Agreement") of the claims against Warner Chilcott only. *Id.* at ¶ 10; *see also* Exhibit A (Settlement Agreement). Pursuant to the terms of the Agreement, Warner Chilcott paid the Class nine million dollars ($9,000,000.00) into an escrow account after this Court granted preliminary approval of the Settlement. *Id.*, Exh. A ¶ 6. The Agreement further provides that Warner Chilcott shall cooperate with Plaintiffs in certain ways in the continued litigation of this action against Barr. *Id.*, Exh. A ¶ 14. Among other things, Warner Chilcott agreed to produce additional documents and to provide certificates of authenticity for documents to be used at trial. *Id.* Warner Chilcott has also agreed that certain experts it retained will not testify in the action and that their reports and testimony are withdrawn. *Id.* This cooperation has real value in Plaintiffs' continuing litigation against defendant Barr. *Id.* at ¶ 10.

The certified class representatives as well as the Class members who received the court-ordered Notice fully support the Settlement. *Id.* at ¶¶ 22-23. Additionally, Class Counsel communicated with counsel for the three largest members of the Class – AmerisourceBergen Corp., McKesson Corp., and Cardinal Health, Inc. – who make up a significant amount of the claims of the Class in this case. *See* Motion for Preliminary Approval at 4; Nussbaum Dec. ¶ 22. These three entities support the Settlement with Warner Chilcott. *See id.*

## C.    Form and Manner of Notice to the Class

On December 7, 2007, Plaintiffs filed a Motion for Preliminary Approval of the Settlement. Nussbaum Dec. ¶ 11 (Doc. #158). On January 2, 2008, the Court entered an order preliminarily approving the Settlement with Warner Chilcott, amending the definition of the Class for purposes of the Settlement Agreement,[5] approving the form of Notice, and directing Class Counsel to cause dissemination of the Notice to the Class. *Id.* (1/2/08 Order, Doc. #172). On January 24, 2008, all entities that were identified as potential Class members in Warner Chilcott's business records were sent, via first class mail, a copy of the Notice. EPIQ Dec. ¶ 4. The Notice sets forth their rights under the Settlement, including their rights to (a) exclude themselves from the Class and Settlement, (b) object to the Settlement, and (c) attend the Fairness Hearing. *Id.* at ¶ 5, Exh. 1.

As stated in the Notice, Class members had the right to opt out of the class by informing the claims administrator by March 10, 2008. *Id.* at ¶ 6. Class members who did not exclude themselves from the Class and the Settlement could object to the

---

[5] The definition of the Class was amended to exclude any claims asserted by entities who had brought their own individual actions.

7

Settlements in writing by April 4, 2008. *Id.* The time by which to request exclusion or to object to the Settlement has passed and no Class member has asked to be excluded or has objected to the Settlement. *Id.* at ¶ 7.

### III.     THIS COURT SHOULD APPROVE THE PARTIAL SETTLEMENT

### A.     Settlements of Class Actions Are Encouraged

It is well-settled that courts favor and encourage settlements of lawsuits. *See Vista Healthplan, Inc. v. Warner Holdings Co., III, Ltd.*, 246 F.R.D. 349, 357 (D.C. Cir. 2007); *In re Vitamins Antitrust Litig.*, Misc. No. 99-197(TFH), MDL 1285, 2001 U.S. Dist. LEXIS 25066, at *21 (D.C. Cir. July 19, 2001) ("*Vitamins II*"); *Osher v. SCA Realty I,* 945 F. Supp. 298, 304 (D.C. Cir. 1996). Courts particularly encourage settlements in complex litigation because such settlements promote the interests of judicial economy by encouraging litigants to determine their respective rights among themselves. *See In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.C. Cir. 2004) ("*Vitamins III*") ("The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action settlements."); *Osher,* 945 F. Supp. at 304 ("In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resourced required in many such suits"); *Ranieri v. Sherman*, Case No. 93-0022 CRR, 1994 U.S. Dist. LEXIS 21370, at **31-32 (D.C. Cir. Dec. 23, 1994) ("Courts have a significant '...interest in encouraging settlements, particularly in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources.'") (*quoting Mayfield v. Barr*, 985 F.2d 1090, 1092 (1993)).

Moreover, there is a strong public interest in private antitrust litigation generally. *See, e.g., Pilsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp.*,

442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil. Co.,* 405 U.S. 251, 262 (1972)

(Supreme Court equating private antitrust plaintiffs with "private attorneys general").

The Settlement here serves the public interest by providing a significant monetary award

to the Class for the overcharges they have been allegedly forced to pay as a result of

Defendants' challenged agreement. The instant Settlement may also help deter similar

anticompetitive behavior by others in the marketplace. *See Minnesota Mining & Mfg.*

*Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 318 (1965) ("Congress has

expressed its belief that private antitrust litigation is one of the surest weapons for

effective enforcement of the antitrust laws."). This is particularly important in the

pharmaceutical industry, where the harm to purchasers and society caused by efforts to

delay or thwart competition is well known.

**B.**     **The Proposed Settlement Is Fair, Adequate, and Reasonable**

    **1.**     **Standards**

        Federal Rule of Civil Procedure 23(e) provides, in part, that the court may

approve a settlement of a class action that would bind class members "only after a

hearing and on finding that it is fair, reasonable, and adequate." Approval of a proposed

class action settlement is left to the discretion of the court. *Cohen v. Warner Chilcott*

*Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 113 (D.C. Cir. 2007); *Vitamins III,* 305 F. Supp. 2d at

103 (*citing United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.C. Cir. 1996)).

This exercise of discretion is, however, constrained by the "principle of preference"

favoring and encouraging settlements. *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.C.

Cir. 1999). "'The court must eschew any rubber stamp approval...yet at the same time, it

must stop short of the detailed and thorough investigation that it would undertake if it

were actually trying the case.'" *Vitamins III,* 305 F. Supp. 2d at 103 (*quoting District of Columbia,* 933 F. Supp. at 47)).

Moreover, in fulfilling its "limited role when reviewing a proposed class action settlement," courts "should not substitute their judgment for that of counsel who negotiated the settlement." *Osher,* 945 F. Supp. at 304. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ranieri,* 1994 U.S. Dist. LEXIS 21370, at *32 (*quoting* Newberg, NEWBERG ON CLASS ACTIONS §11.50 (3rd ed. 1992)). "Absent evidence of fraud or collusion, such settlements are not to be trifled with."[6] *Osher,* 945 F. Supp. at 304 (*quoting Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992).

## 2.    Factors to Be Weighed By the Court

No single test exists in this Circuit for determining whether a proposed class action settlement should be approved. *Vitamins III,* 305 F. Supp. 2d at 103. Courts consider the facts and circumstances of the case and determine whether "'the interests of the class as a whole are being served if the litigation is resolved by settlement rather than pursued.'" *Id.* at 103-04 (*quoting* MANUAL FOR COMPLEX LITIGATION (Third), §30.42 at 238 (1995)). In making this determination, courts in this Circuit typically consider the following factors, among others: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of plaintiffs' case; (3) the stage of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel. *Cohen,* 522 F. Supp. 2d at 117;

---

[6]  Partial settlements are considered under the same principals and standards as settlements which impact the entire action. *See Vitamins II,* 2001 U.S. Dist. LEXIS 25066, at **20-23 (applying law and standards to partial settlement).

*Vitamins III,* 305 F. Supp. 2d at 104 (*citing* numerous cases); *In re Baan Company Secs. Litig.,* 284 F. Supp. 62, 64-67 (D.C. Cir. 2003). The ultimate question is "whether the settlement is adequate and reasonable and not whether a better settlement is conceivable." *In re Vitamins Antitrust Litig.,* Misc. No. 99-197(TFH), 2000 U.S. Dist. LEXIS 8931, at *19 (D.C. Cir. Mar. 31, 2000) (*"Vitamins I")* (quoting *In re Flat Glass Antitrust Litig.,* slip op. at 6 (W.D. Pa. Feb. 9, 2000)).

Application of these five factors here indicates that the Settlement with Warner Chilcott should be approved.

### a)    The Settlement Resulted from Arms' Length Negotiations by Informed and Experienced Counsel

In approving a class settlement, courts in this Circuit and others have repeatedly and expressly deferred to the judgment of experienced and informed counsel achieving class wide negotiations through arm's length negotiations. *See, e.g., Cohen,* 522 F. Supp. 2d at 120-121; *Vitamins I,* 2000 U.S. Dist. LEXIS 8931, at *22; *Stewart v. Rubin,* 948 F. Supp. 1077, 1099 (D.C. Cir. 1996); *McGuinness v. Parnes,* Civil Action No. 87-2728-LFO, 1989 WL 29814, at *1(D.C. Cir. Mar. 22, 1989); *see also In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 424-25 (S.D. Tex. 1999); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 312-13 (N.D. Ga. 1993); 4 Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.51 ("[C]ourts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered."). The Court in *Vitamins III* recognized that "[a] 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"

*Vitamins III,* 305 F. Supp. 2d at 104 (*quoting* MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995)).  That presumption should attach here.

Every aspect of the proceedings, from motion practice (including class certification) through the completion of settlement negotiations, has been sharply contested.  Settlement here was only achieved after lengthy and adversarial proceedings – after more than 25 depositions of factual witnesses and more than one dozen depositions of experts, review and analysis of more than one million documents, consulting of Plaintiffs' expert witnesses, review and analysis of Defendants' expert witness reports, and the filing of a successful motion for class certification and after a motion for partial summary judgment had been filed, but not ruled upon.  Nussbaum Dec. ¶ 14.

The proposed Settlement is the result of contentious, arms' length negotiations by able and experienced counsel, which took place over the course of one year.  *Id.* at ¶ 15.  Pursuant to the Court's November 13, 2007, Order, the parties met with Magistrate Judge Kay, who has extensive experience in mediating pharmaceutical antitrust class actions. *Id.*  The negotiation sessions involved, *inter alia*, multiple in person meetings and numerous telephone calls with the Magistrate Judge.  *Id.*  As a result, Plaintiffs were able to achieve a favorable settlement for the Class, which not only includes monetary reimbursement but includes Warner Chilcott's agreement to cooperate in certain ways with Plaintiffs in the continued litigation against Barr.  *Id.*

Nothing in the course of the parties' negotiations or the substance of the settlement discloses any grounds to doubt its fairness.  *See Vitamins III,* 305 F. Supp. 2d at 104.  To the contrary, the facts disclose the opposite.  Therefore this factor supports approval of the Settlement.

### b) The Proposed Settlement Terms Are Fair, Reasonable, and Adequate in Relation to the Strength of Plaintiffs' Case

In determining whether to approve a proposed settlement of a class action, "[t]he court's primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case." *Thomas v. Albright,* 139 F.3d 227, 231 (D.C. Cir. 1998).  In antitrust actions, although plaintiffs "could potentially recover treble damages, the standard for evaluating settlement involves a comparison of the settlement amount with the estimated single damages." *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 377 n.12 (D.C. Cir. 2002); *see also In re Ampicillin Antitrust Litig.,* 82 F.R.D. 652, 654 (D.C. Cir. 1979).

Under the terms of the Agreement in this case, Warner Chilcott has paid nine million dollars into the Settlement Fund.  The Agreement also provides other meaningful cooperation against the remaining defendant, Barr.  This amount provides a meaningful degree of recovery to Class members from Warner Chilcott.  Indeed, nine million dollars is a substantial fraction of the overcharge to the Class computed by Plaintiffs' damages expert, especially in light of this being only a partial settlement,[7] with defendants jointly and severally liable for the entire overcharge claim (times three).

By contrast, had the case gone to trial against Warner Chilcott, Warner Chilcott would contest liability and damages.  As this Court recognized in approving the settlement of the indirect purchasers' and the third party payors' class actions, *Cohen* and *Vista Healthplan*, Plaintiffs faced several hurdles in the continued prosecution of this case. *See Cohen,* 522 F. Supp. 2d at 118; *Vista Healthplan,* 246 F.R.D. at 361.

---

[7] *See* May 18, 2007 Expert Report of Jeffrey J. Leitzinger, Ph.D., attached as Exhibit 73 to the Appendix in support of Plaintiffs' Opposition to Barr's Motion for Summary Judgment.

Therefore, while Plaintiffs believe that they would prevail at trial and on summary judgment, all litigation, including this case, has attendant risks, and settlement with Warner Chilcott has both improved the Plaintiffs' chances against the remaining defendant and eliminated downside risks of continuing against Warner Chilcott. *See Vitamins II*, 2001 U.S. Dist. LEXIS 25066, at *25 ("[I]n the absence of this Settlement, the parties would have engaged in substantial litigation ... [over disputed issues]. Given these uncertainties as well as the ordinary risks and delays inherent in complex antitrust litigation, the Settlement appears to provide a significant benefit to the Class.").

Moreover, even if Plaintiffs prevailed at trial, as in many complex antitrust actions, "any verdict inevitably would have led to an appeal and might as well have resulted in appeals by both sides and a possible remand for retrial, thereby further delaying final resolution of this case." *Vitamins I*, 2000 U.S. Dist. LEXIS 8931, at *24; *see Cohen*, 522 F. Supp. 2d at 118 ("Even if Plaintiffs had prevailed over these obstacles at trial, it is likely that any verdict would have been followed by an appeal, which might have further delayed the final resolution of the case.").

If Class Plaintiffs won at trial, any ruling may be reversed on appeal. And even if Class Plaintiffs won both at trial and on appeal, litigating this case to its conclusion could take years, delaying recovery for the Plaintiffs and the Class and keeping the Defendants' ill-gotten gains squarely in the hands of the Defendants. For purposes of time-value of money alone, a prompt settlement of the magnitude achieved is in the interests of the Plaintiffs and the Class: "the settlement negotiated by the parties provides for relatively prompt recovery." *Pigford,* 185 F.R.D. at 104-05.

Furthermore, Warner Chilcott's agreement to cooperate with Plaintiffs in certain ways, as part of the Settlement, benefits the continued prosecution of the case. Warner Chilcott has agreed to withdraw certain expert reports and testimony, produce additional documents, and to provide certificates of authenticity for documents to be used at trial. Nussbaum Dec. ¶ 20, Exh. A ¶ 14.

Finally, as a matter of strategy, the Settlement with Warner Chilcott offers the Class significant advantages in prosecuting its claims against Barr. For instance, Warner Chilcott and Barr have sought to justify their anticompetitive conduct in this case by arguing that (a) Warner Chilcott needed to pay Barr to refrain from entering the market with Barr's competing generic Ovcon product because Warner Chilcott supposedly needed a new raw material supplier, and Barr could purportedly only do that as Warner Chilcott's exclusive supplier; and (b) the entry of a low priced generic Ovcon product is supposedly bad for consumers because it reduces the incentives that brand name companies like Warner Chilcott have for promoting their more expensive products through advertising and sampling. Nussbaum Dec. ¶ 19. Whatever may be said about the merits of these defenses, one thing is clear: they make a lot more sense coming from Warner Chilcott than they do from Barr. *Id.* If the Settlement is approved, Barr – a generic drug manufacturer – will be put in the awkward position on summary judgment and at trial of speaking for Warner Chilcott as to Warner Chilcott's supply needs and, incongruously, arguing that Barr's own entry as a competitor with a less expensive generic product would have actually harmed consumers – *an argument that contradicts numerous of Barr's own public statements about the consumer benefits of generic competition. Id.*

In short, given the complexities and uncertainties inherent in complex antitrust cases, the strategic advantages offered by the settlement, plus Warner Chilcott's agreement to cooperate in certain ways, the Settlement clearly provides a significant benefit to the Class. It certainly "falls within the range of fair, adequate and reasonable settlements deserving of final approval." *Vitamins III,* 305 F. Supp. 2d at 105.

### c)    The Lawsuit Is at an Appropriate Point for Settlement

In evaluating a proposed settlement, courts consider "the stage of proceedings when settlement has been offered and degree of completed discovery." *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.C. Cir. 1974). In doing so, courts will take into account "whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of 2 litigations vis-à-vis the probability of success and range of recovery." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL Docket No. 1290(TFH), 2003 U.S. Dist. LEXIS 12344, at **14-15 (D.C. Cir. June 16, 2003).

This Settlement is the product of an extensive analysis of the factual and legal issues involved in this case. Fact and expert discovery have been completed and summary judgment motions are pending. Having conducted extensive discovery and consulted with experts, Plaintiffs' counsel are well aware of the facts and legal issues involved in this case and hold well-founded views of the merits of the case and the risks of ongoing litigation.

This Settlement does "not come too early to be suspicious nor too late to be a waste of resources" and is "at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation." *See*

*Vitamins III,* 305 F. Supp. 2d at 105. Therefore, this factor also supports approval of the Settlement.

### d)     The Class Supports the Settlement

Courts typically consider the reaction of the class in determining the reasonableness of the settlement. *Vitamins III,* 305 F. Supp. 2d at 105; *Osher v. SCA Realty I,* 945 F. Supp. 298, 304 (D.C. Cir. 1996). "The existence of even a relatively few objections certainly counsels in favor of approval." *Lorazepam & Clorazepate*, 2003 U.S. Dist. LEXIS 12344, at *19.

Here, the reaction of the Class has been overwhelmingly and exclusively in favor of the proposed Settlement. *See id. (quoting Osher,* 945 F. Supp. at 305) (existence of no timely filed objections indicates that Class members are in favor of the proposed settlement). The Certified Class Representatives all support the Settlement. Nussbaum Dec. ¶22. As the Direct Purchaser Class Plaintiffs explained in their Motion for Preliminary Approval, three of the largest members of the Class, AmerisourceBergen Corp., McKesson Corp., and Cardinal Health, Inc. – who, in the aggregate, make up a significant amount of the claims of the Class in this case – affirmatively support the Settlement. *Id.*; *see* Motion for Preliminary Approval at 4. This favorable reaction to the Settlement by these large, sophisticated Direct Purchaser Plaintiffs, who have their own counsel who each have been engaged in the litigation of the case (Defendants took the depositions of each of the "Big 3" wholesalers in this case), is overwhelming evidence that the Settlement has been well received.

The reaction of the other Class members is likewise favorable. The time to object or to opt-out has passed, and *no* members have objected to or opted to exclude

17

themselves from the Settlement. EPIQ Dec. ¶ 7. This is especially significant since the Class members are all sophisticated commercial entities with in-house or outside counsel. Nussbaum Dec. ¶ 23. Moreover, all have been involved in other pharmaceutical antitrust actions and are familiar with such actions, the counsel involved, and the basic theories of damages and recovery. *Id.*

Thus, this factor weighs firmly in favor of approval.

### e)    The Opinion of Experienced Counsel Supports Approval of the Settlement

The opinion of "experienced and informed counsel" – such as the attorneys here – "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Lorazepam & Clorazepate*, 2003 U.S. Dist. LEXIS 12344, at **19-20; *see Cohen*, 522 F. Supp. 2d 105 (*quoting Lorazepam & Clorazepate*, 2003 U.S. Dist. LEXIS 12344); *Vitamins III*, 305 F. Supp. 2d at 106. Class Counsel's "professional judgment is not controlling, but is entitled to considerable weight in the Court's determination of the overall adequacy of the settlement." *Luevano v. Campbell*, 93 F.R.D. 68, 88 (D.C. Cir. 1981).

Class Counsel firmly believes that the proposed Settlement is fair, reasonable and adequate to the Class. Nussbaum Dec. ¶ 24. Counsel is very experienced in class actions and antitrust matters, and, in fact, members of this group of counsel have served as lead counsel in the *Lorazepam & Clorazapate* case, as well as in a multitude of other pharmaceutical antitrust class actions.[8] *Id.* Thus, there is no group of Plaintiffs' counsel

---

[8]    These cases include *Taxol* (Civil Action No. 1:01cv2313, D.C. Cir.), *Platinol* (Civil Action No. 1:04cv248, D.C. Cir.), *Children's Ibuprofen* (Civil Action No. 04-mc535, D.C. Cir.), *Remeron* (Civil Action No. 03-0085, D.N.J.), *Relafen* (Civil Action No. 01-12239, D. Mass.), *Hytrin/Terazosin* (Civil

more familiar with this specific type of litigation against the pharmaceutical industry, or more able to evaluate these claims on behalf of a direct purchaser class.

Plaintiffs submit that all of the factors typically considered by courts in this District clearly favor final approval of the proposed Settlement.

## IV    CONCLUSION

For the foregoing reasons, this Court should approve the Settlement with Warner Chilcott as fair, reasonable, and adequate.

DATED: May 27, 2008                          Respectfully submitted,

Linda Nussbaum (DC Bar No. 483254)
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714

Daniel Berger
Eric L. Cramer
Ellen T. Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:  215-875-3000
Facsimile:  215-875-4604

William Isaacson (DC Bar No. 414788)
Tanya Chutkan (DC Bar No. 420478)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone:  202-237-2727
Facsimile:  202-237-6131

---

Action No. 1:99cv1317, S.D. Fla.), *Buspar/Buspirone* (Civil Action No. 01cv7951), and *Cardizem* (Civil Action No. 99md1278, E.D. Mich.). *Id.*

Richard B. Drubel (DC Bar No. 334359)
Kimberly H. Schultz
BOIES, SCHILLER & FLEXNER LLP
26 S. Main Street
Hanover, NH 03755
Telephone:  609-643-9090
Facsimile:  609-643-9010

Bruce E. Gerstein
Barry S. Taus
Kevin S. Landau
GARWIN GERSTEIN & FISHER, LLP
1501 Broadway, Suite 1415
New York, NY 10011
Telephone:  212-398-0055
Facsimile:  212-764-6620

Thomas M. Sobol
HAGENS, BERMAN, SOBOL &
SHAPIRO, LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone:  617-482-3700
Facsimile:  617-482-3003

Diane M. Nast
RODA NAST P.C.
801 Estelle Drive
Lancaster, PA 17601
Telephone:  717-892-1000
Facsimile:  717-892-1200

Michael D. Hausfield
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
1100 New York Avenue, NW
West Tower, Suite 500
Washington, D.C. 20005-3964
Telephone:   202-408-4600
Facsimile:    202-408-4699

*Executive Committee Members for Direct
Purchaser Class Plaintiffs*