## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., *et al.*,<br><br>    Defendants | Civil Action No. 05-2195 (CKK) |

## DECLARATION OF LINDA P. NUSSBAUM, ESQ. IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH WARNER CHILCOTT DEFENDANTS ONLY

I, Linda P. Nussbaum, Esq., declare as follows:

1.    I am a partner with the law firm of Kaplan Fox & Kilsheimer LLP, one of the Co-Lead Counsel for the Direct Purchaser Class Plaintiffs[1] in this action.  I submit this declaration in support of Direct Purchaser Class Plaintiffs' Motion for Final Approval of the Settlement with the Warner Chilcott Defendants.  I have been extensively involved in the litigation of this action and have personal knowledge of the facts set forth in this declaration and, if called upon to do so, I could and would competently testify to them.

2.    The Settlement Agreement, dated November 28, 2007, provides, *inter alia*, for the payment of a total of nine million dollars in cash by the Warner Chilcott Defendants and this amount has been deposited in escrow and is earning interest for the

---

[1] The Direct Purchaser Class Plaintiffs are Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale Drug Co., Inc., Rochester Drug Co-Operative, Inc., American Sales Company, Inc., SAJ Distributors, Inc., and Stephen L. LaFrance Holdings, Inc.  For the purposes of this declaration, they are collectively referred to as "Direct Purchaser Plaintiffs" or "Plaintiffs."

benefit of the Class. The Settlement[2] resolves all claims asserted by the Direct Purchaser Class Plaintiffs against Defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals), Ltd. (collectively, "Warner Chilcott" or the "Warner Chilcott Defendants"). Defendant Barr Pharmaceuticals, Inc. ("Barr") is not a party to the Settlement. As part of the Agreement, Warner Chilcott has also agreed to cooperate in certain ways with Direct Purchaser Class Plaintiffs' continued litigation against Barr.

3.    This declaration sets forth the nature of the claims asserted, a summary of the principal proceedings to date, the settlement negotiations, and demonstrates why the Settlement between the Direct Purchaser Class Plaintiffs and the Warner Chilcott Defendants is fair, reasonable, and adequate, and in the best interests of the Class, and should be approved by the Court.

## I.    BACKGROUND OF THE CASE

### A.    The Litigation

4.    This case has been aggressively prosecuted and vigorously defended for approximately two and one half years. The action was commenced in November 2005 with the filing of six complaints by Direct Purchaser Class Plaintiffs, all alleging that Warner Chilcott and Barr violated Section 1 of the Sherman Act, 15 U.S.C. §1, by illegally delaying the entry of generic Ovcon 35. The complaints alleged that, in exchange for a $20 million payment from Warner Chilcott, Barr agreed not to sell its generic Ovcon 35 in competition with Warner Chilcott's Ovcon 35. This agreement

---

[2]    All capitalized terms used herein are defined as they are in the Settlement Agreement.

denied direct purchasers of Ovcon 35 the benefits of generic competition and caused

them to pay higher prices for Ovcon 35 products.

5.     At or around the same time as the filing of the Direct Purchaser Class

Plaintiffs' complaints, other actions with the same factual basis were filed by the State

Attorneys' General, individual direct purchasers, an indirect purchaser class, a third party

payor class, and the Federal Trade Commission.

6.     Since March 2006, extensive document, deposition, and expert discovery

have taken place.  Defendants Barr and Warner Chilcott (collectively, "Defendants")

have produced more than 1.3 million pages of documents and third parties, pursuant to

subpoenas, have produced additional thousands of pages of documents.  These

documents were carefully reviewed and analyzed by teams of attorneys and paralegals for

the Direct Purchaser Class.  In conjunction with the Federal Trade Commission, the State

Attorneys' General and the individual direct purchaser plaintiffs, Plaintiffs took and

defended more than 25 fact witness depositions, more than a dozen expert depositions

and numerous third parties.  Direct Purchaser Class Counsel took the lead in many if not

most of these depositions.  Class Counsel retained experts as to pharmaceutical industry

and economics, damages, and pharmaceutical supply chain issues and consulted

extensively with these experts regarding economic, pharmaceutical, and marketing issues,

including the quantification of damages incurred by the Class.  Plaintiffs have also taken

the depositions of Barr's and Warner Chilcott's experts.

7.     Following completion of extensive Class discovery, including submission

of expert reports and the taking and defending of expert depositions, Direct Purchaser

Class Plaintiffs filed a motion for class certification.  As the Court is aware, there was

extensive litigation over the propriety of class certification and discovery relating to class certification, which included Defendants' taking the deposition of substantial absent class members, and Class Counsel's securing the support and confidence of three substantial absent class members known as the "Big 3" National wholesalers – Cardinal Health, Inc., AmerisourceBergen Corp., and McKesson Corp.  In an Opinion and Order dated October 22, 2007, the Court certified the Class.  (Doc. #137.)  The Class is defined as follows: "All persons and entities in the United States who purchased Ovcon 35 directly from Defendants at any time during the period April 22, 2004 through December 31, 2006. Excluded from the Class are Defendants and their officers, directors, subsidiaries or affiliates, and all governmental entities.  Also excluded are hospitals, universities and clinics."

        8.      On November 14, 2007, Direct Purchaser Class Plaintiffs filed a motion for partial summary judgment.  (Doc. ##149-50.)  In this motion, Plaintiffs requested that the Court rule that Defendants have committed a *per se* violation of Section 1 of the Sherman Act.  Barr also filed a motion for summary judgment on November 28, 2007. (Doc. #157.)  The Court has not yet ruled on these motions, which are fully briefed.

**B.      The Mediation and Terms of the Proposed Settlement**

        9.      On November 13, 2006, this Court ordered the parties to engage in mediation and appointed Magistrate Judge Alan Kay to preside over such proceedings. (Doc. #78.)  Magistrate Judge Kay has extensive experience in mediating pharmaceutical antitrust class actions.  Settlement negotiations took place intermittently over the course of one year, including multiple in person meetings and numerous telephone calls with the Magistrate Judge.

4

10.    On November 28, 2007, Plaintiffs and the Warner Chilcott Defendants entered into a Settlement Agreement (the "Agreement") of the claims against Warner Chilcott only.  A true and correct copy of the Agreement is attached as Exhibit A and is incorporated herein by this reference.  The Agreement provides, *inter alia*, that Warner Chilcott will pay the Class nine million dollars ($9,000,000.00) into an escrow account within five days after the date this Court granted preliminary approval of the Settlement. Exh. A ¶6.  The Agreement further provides that Warner Chilcott shall cooperate with Plaintiffs in certain ways in the continued litigation of this action against Barr.  *Id.* at ¶14. Among other things, Warner Chilcott agreed to produce additional documents and to provide certificates of authenticity for documents to be used at trial.  *Id.*  Warner Chilcott has also agreed that certain experts it retained will not testify in the action and that their reports and testimony are withdrawn.  *Id.*  This cooperation has real value in Plaintiffs' continuing litigation against Barr.

**C.    Form and Manner of Notice to the Class**

11.    On December 7, 2007, Plaintiffs filed a Motion for Preliminary Approval of the Settlement.  (Doc. #158.)  On January 2, 2008, the Court entered an order preliminarily approving the Settlement with Warner Chilcott, amending the definition of the Class for purposes of the Settlement Agreement,[3] approving the form of Notice, and directing Class Counsel to cause dissemination of the Notice to the Class.  (1/2/08 Order, Doc. #172.)

---

[3]  The definition of the Class was amended to exclude any claims asserted, whether by assignment or otherwise, by the following entities: Walgreen Co., Eckerd Corporation, Maxi Drug, Inc. dba Brooks Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc., CVS Pharmacy, Inc., Rite Aid Corporation, and Rite Aid Hdqtrs. Corp.

12.    EPIQ Systems, the Claims Administrator, oversaw the dissemination of the Notice to the identified Class members.  On January 24, 2008, all entities that were identified as potential Class members in Warner Chilcott's business records were sent, via first class mail, a copy of the Notice.  The Notice sets forth their rights under the Settlement, including their rights to (a) exclude themselves from the Class and Settlement, (b) object to the Settlement, and (c) attend the Fairness Hearing. *See* Declaration of EPIQ Systems and Exhibit 1.

13.    As stated in the Notice, Class members had the right to opt out of the class or to exclude themselves from the Class and the Settlement by March 10, 2008.  Objections to the Settlement were due by April 4, 2008.  The time by which to request exclusion or to object to the Settlement has passed and no Class member has asked to be excluded or has objected to the Settlement.

## II.    THE PROPOSED PARTIAL SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE AND THUS SHOULD BE APPROVED BY THIS COURT

### A.  The Settlement Resulted from Arms' Length Negotiations by Informed Counsel

14.    The Settlement here with the Warner Chilcott Defendants was the result of arm's length negotiations between informed and experienced counsel.  Every aspect of the proceedings, from motion practice (including class certification) through the completion of settlement negotiations, has been sharply contested.  Settlement here was only achieved after lengthy and adversarial proceedings – after more than 25 depositions of factual witnesses, numerous third parties and more than one dozen depositions of experts, review and analysis of more than one million documents, consulting of Plaintiffs' expert witnesses, review and analysis of Defendants' expert witness reports,

and the filing of a successful motion for class certification and after a motion for partial summary judgment had been filed, but not ruled upon.

15.    The proposed Settlement is the result of contentious, arms' length negotiations by able and experienced counsel, which took place over the course of approximately one year.  Pursuant to the Court's November 13, 2007, Order, the parties met with Magistrate Judge Kay, who has extensive experience in mediating pharmaceutical antitrust class actions.  The negotiation sessions involved, *inter alia*, multiple in person meetings and numerous telephone calls with the Magistrate Judge.  As a result, Plaintiffs were able to achieve a favorable settlement for the Class.

### B.  The Proposed Settlement Terms Are Fair, Reasonable, and Adequate in Relation to the Strength of Plaintiffs' Case

16.    Under the terms of the Agreement in this case, Warner Chilcott has agreed to pay nine million dollars into the Settlement fund and provide other meaningful cooperation against the remaining defendant.  This amount provides a meaningful degree of recovery to Class members from the Warner Chilcott Defendants.  Indeed, nine million dollars is a substantial fraction of the overcharge to the Class computed by Plaintiffs' damages expert, especially in light of this being only a partial settlement,[4] with defendants jointly and severally liable for the entire overcharge claim (times three).

17.    By contrast, had the case gone to trial against Warner Chilcott, it would have contested liability and damages.  Plaintiffs faced several hurdles in the continued prosecution of this case.

---

[4]  *See* May 18, 2007 Declaration of Jeffrey J. Leitzinger, Ph.D., attached as Exhibit 73 to the Appendix in support of Plaintiffs' Opposition to Barr's Motion for Summary Judgment.

18.     Therefore, while Plaintiffs believe that they would prevail at trial and on summary judgment, all litigation, including this case, has attendant risks, and settlement with Warner Chilcott has both improved the Plaintiffs' chances against the remaining defendant and eliminated downside risks of continuing against Warner Chilcott. Given these uncertainties as well as the ordinary risks and delays inherent in complex antitrust litigation, the Settlement provides a significant benefit to the Class. Moreover, even if Plaintiffs prevailed at trial, as in many complex antitrust actions, any outcome would have led to an appeal – by one or both sides – and a possible remand for retrial, thus further delaying the final resolution of this action. If Class Plaintiffs won at trial, any ruling may be reversed on appeal. And even if Class Plaintiffs won both at trial and on appeal, litigating this case to its conclusion could take years, delaying recovery for the Plaintiffs and the Class and keeping the Defendants' ill-gotten gains squarely in the hands of the Defendants. For purposes of time-value of money alone, a prompt settlement of the magnitude achieved is in the interests of the Plaintiffs and the Class.

19.     Finally, as a matter of strategy, the Settlement with Warner Chilcott offers the Class significant advantages in prosecuting its claims against Barr. For instance, Warner Chilcott and Barr have sought to justify their anticompetitive conduct in this case by arguing that (a) Warner Chilcott needed to pay Barr to refrain from entering the market with Barr's competing generic Ovcon product because Warner Chilcott supposedly needed a new raw material supplier, and Barr could purportedly only do that as Warner Chilcott's exclusive supplier; and (b) the entry of a low priced generic Ovcon product is supposedly bad for consumers because it reduces the incentives that brand name companies like Warner Chilcott have for promoting their more expensive products

through advertising and sampling. Whatever may be said about the merits of these defenses, one thing is clear: they make a lot more sense coming from Warner Chilcott than they do from Barr. If the Settlement is approved, Barr – a generic drug manufacturer – will be put in the awkward position on summary judgment and at trial of speaking for Warner Chilcott as to Warner Chilcott's supply needs and, incongruously, arguing that Barr's own entry as a competitor with a less expensive generic product would have actually harmed consumers – *an argument that contradicts numerous of Barr's own public statements about the consumer benefits of generic competition.*

20.    Furthermore, Warner Chilcott's agreement to cooperate with Plaintiffs in certain ways, as part of the Settlement, benefits the continued prosecution of the case against Barr. Warner Chilcott has agreed to withdraw certain expert reports and testimony, produce additional documents, and to provide certificates of authenticity for documents to be used at trial.

**C.    The Lawsuit Is at an Appropriate Point for Settlement**

21.    The Settlement occurred at a point where Class Counsel had sufficient information to evaluate a proposed settlement. This Settlement is the product of an extensive analysis of the factual and legal issues involved in this case. Fact and expert discovery have been completed and summary judgment motions are pending. Having conducted extensive discovery and consulted with experts, Plaintiffs' counsel are well aware of the facts and legal issues involved in this case and hold well-founded views of the merits of the case and the risks of ongoing litigation.

**D.     The Class Supports the Settlement**

22.     The reaction of the Class has been overwhelmingly and exclusively in favor of the proposed Settlement.  The Certified Class representatives all support the Settlement.  Three of the largest members of the Class, AmerisourceBergen Corp., McKesson Corp., and Cardinal Health, Inc. – who, in the aggregate, make up a significant amount of the claims of the Class in this case – affirmatively support the Settlement.  This favorable reaction to the Settlement by these large, sophisticated Direct Purchaser Plaintiffs, who have their own counsel who each have been engaged in the litigation of the case (Defendants took the depositions of each of the "Big 3" wholesalers in this case), is overwhelming evidence that the Settlement has been well received.

23.     The reaction of the other Class members is likewise favorable.  The deadline for requesting exclusion from the class or objecting to the Settlement has passed, and *no* members have objected to or opted to exclude themselves from the Settlement.  This is especially significant since the Class members are all sophisticated commercial entities, many with in-house or outside counsel.  Moreover, all have been involved in other pharmaceutical antitrust actions and are familiar with such actions, the counsel involved, and the basic theories of damages and recovery.

**E.     The Opinion of Experienced Counsel Supports Approval of the Settlement**

24.     Class Counsel firmly believes that the proposed Settlement is fair, reasonable and adequate.  Class counsel is very experienced in class actions and antitrust matters.  Members of the Executive Committee have served as lead counsel in a

multitude of other delayed generic entry antitrust class actions.[5] Thus, there is no group of Plaintiff's counsel more familiar with this specific type of litigation in the pharmaceutical industry, or more able to evaluate these claims on behalf of a direct purchaser class.

### III.    CONCLUSION

25.    For the foregoing reasons, and the reasons contained in the accompanying Memorandum In Support of Motion for Final Approval, this Court should approve the Settlement with Warner Chilcott as fair, reasonable, and adequate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27 day of May, 2008 at New York, New York.

_____
Linda P. Nussbaum

---

[5]  These cases include *Taxol* (Civil Action No. 1:01cv2313, D.C. Cir.), *Platinol* (Civil Action No. 1:04cv248, D.C. Cir.), *Children's Ibuprofen* (Civil Action No. 04-mc535, D.C. Cir.), *Remeron* (Civil Action No. 03-0085, D.N.J.), *Relafen* (Civil Action No. 01-12239, D. Mass.), *Hytrin/Terazosin* (Civil Action No. 1:99cv1317, S.D. Fla.), *Buspar/Buspirone* (Civil Action No. 01cv7951), *Cardizem* (Civil Action No. 99md1278, E.D. Mich.) and *In re Lorazepam & Clorazepate Antitrust Litig.* (MDL Docket No. 1290, Civil Action No. 99-0790(TFH), D.C. Cir.).

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., MEIJER DISTRIBUTION, INC., LOUISIANA WHOLESALE DRUG CO., INC., ROCHESTER DRUG CO-OPERATIVE, INC., VALLEY WHOLESALE DRUG COMPANY, INC., AMERICAN SALES COMPANY, INC., SAJ DISTRIBUTORS, INC., and STEPHEN L. LaFRANCE HOLDINGS, INC, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC., <br><br> Defendants. | No. 05 Civ. 2195 (CKK) |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, dated November 28, 2007 (the "Settlement

Agreement"), is made and entered into by and among defendants Warner Chilcott Holdings

Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott

Company, Inc., and Galen (Chemicals), Ltd. (together "Warner Chilcott," or the "Warner

Chilcott Defendants"), and plaintiffs Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale

Drug Co. Inc., Rochester Drug Co-Operative, Inc., American Sales Company, Inc., SAJ

Distributors, Inc. and Stephen L. LaFrance Holdings, Inc. ("Plaintiffs") and the Direct Purchaser

Class (or the "Class") (as defined below) in the class action Meijer, Inc., et al. v. Warner Chilcott

Holdings Company III, Ltd., et al., D.D.C., 05-2195 (the "Class Action").

WHEREAS, Plaintiffs have alleged, among other things, that Warner Chilcott's agreement with defendant Barr Pharmaceuticals, Inc. ("Barr") dated March 24, 2004 was illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1, causing Plaintiffs and other members of the Class to incur significant overcharge damages;

WHEREAS, the Warner Chilcott Defendants deny each and every one of Plaintiffs' allegations of unlawful conduct, deny that they have engaged in any wrongdoing whatsoever, and have asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs and the Warner Chilcott Defendants agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Warner Chilcott Defendants or of the truth of any of the claims or allegations alleged in the Class Action;

WHEREAS, counsel for Plaintiffs and the Warner Chilcott Defendants have engaged in arm's-length settlement negotiations, and this Settlement Agreement, which embodies all of the terms and conditions of the settlement between the Warner Chilcott Defendants and Plaintiffs (the "Settlement"), both individually and on behalf of the Direct Purchaser Class, has been reached, subject to the final approval of the Court;

WHEREAS, the Court appointed Class counsel have concluded, after extensive discovery and investigation of the facts, and after carefully considering the circumstances of the Class Action, including the claims asserted in the Amended Class Action Complaint filed on April 14, 2006 by Plaintiffs this Action (the "Complaint"), and the possible legal and factual defenses thereto, that it would be in the best interests of the Direct Purchaser Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a benefit to the Direct Purchaser Class (including the

promised cooperation of the Warner Chilcott Defendants with Plaintiffs and the Class in

pursuing their claims against the remaining defendant, Barr, as detailed below), and further, that

Class counsel consider the Settlement set forth herein to be fair, reasonable, adequate and in the

best interests of the Direct Purchaser Class; and,

WHEREAS, the Warner Chilcott Defendants have concluded, despite their belief that

they are not liable for the claims asserted and that they have good defenses thereto, that it would

be in their best interests to enter into this Settlement Agreement to avoid the uncertainties of

litigation, and thereby avoid the risks inherent in complex litigation;

NOW THEREFORE, it is agreed by the undersigned, on behalf of the Warner Chilcott

Defendants, the Plaintiffs, and the Direct Purchaser Class, that the Class Action and all claims of

Plaintiffs and the Class be settled, compromised and dismissed on the merits and with prejudice

as to the Warner Chilcott Defendants only and, except as hereinafter provided, without costs as

to Plaintiffs, the Class or the Warner Chilcott Defendants, subject to the approval of the Court,

on the following terms and conditions:

1.    **Class Certification**.    The Court, in its Opinion and Order dated October 22,

2007, granted Plaintiffs' motion for certification of a Class defined as follows:

> All persons or entities in the United States who purchased Ovcon 35
> directly from Warner Chilcott at any time during the period April 22, 2004
> through December 31, 2006. Excluded from the Class are Defendants and their
> officers, directors, management, and employees, subsidiaries or affiliates, and all
> governmental entities. Also excluded are hospitals, universities and clinics.

The parties further agree that, for purposes of this Settlement Agreement and application

to the Court for approval thereof, the definition of the Class shall be amended to explicitly

exclude any claims of the following entities:  Walgreen Co., Eckerd Corporation, Maxi Drug,

Inc. d/b/a Brooks Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc.,

CVS Pharmacy, Inc., Rite Aid Corporation, and Rite Aid Hdqtrs. Corp. The definition of the Class shall also be amended to explicitly exclude any claims assigned by Class members to the foregoing entities.

2. **Reasonable Best Efforts to Effectuate This Settlement**. Counsel for the undersigned agree to recommend approval of this Settlement by the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement Agreement.

3. **Motion for Preliminary Approval.** Plaintiffs shall file with the Court a motion for preliminary approval of the Settlement and amendment to the definition of the Class as provided in paragraph 1 on or before November 30, 2007. The Warner Chilcott Defendants shall have the right to review prior to Plaintiffs' filing, and Plaintiffs shall provide to the Warner Chilcott Defendants at least two business days in advance of filing, their motion for preliminary approval of the Settlement. In the event that the Court preliminarily approves the Settlement, Plaintiffs shall, in accord with the order of preliminary approval, provide Class members with notice of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs' counsel will recommend notice of the Class by means of direct U.S. first class mail.

4. **Motion for Final Approval and Entry of Final Judgment**. If the Court preliminarily approves the Settlement, Plaintiffs shall submit a motion for final approval of this Settlement by the Court, after appropriate notice to the Class, and shall seek entry of an order and Final Judgment, the text of which Plaintiffs and the Warner Chilcott Defendants shall agree upon. Plaintiffs shall afford the Warner Chilcott Defendants no fewer than five business days to review and comment on draft motions and supporting papers relating to final approval of this

4

Settlement. The text of the final judgment proposed order presented to the Court shall, among other things:

a.    find this Settlement Agreement and its terms as being fair, reasonable and adequate as to Plaintiffs and the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing consummation of the Settlement pursuant to its terms;

b.    direct that the action pending against only the Warner Chilcott Defendants be dismissed with prejudice, and, except as provided herein, without costs;

c.    retain exclusive jurisdiction over this Settlement Agreement, including the administration and consummation of this Settlement;

d.    direct that the judgment of dismissal of the action pending against only the Warner Chilcott Defendants shall be final and appealable;

e.    direct that, for a period of five years, the Clerk of the Court shall maintain the record of those members of the Class, if any, who have timely excluded themselves from the Class and that a certified copy of such records be provided to the Warner Chilcott Defendants;

f.    incorporate the release language contained in paragraph 11 herein;

g.    bar and enjoin all members of the Class who have not timely excluded themselves from the Class Action from filing or continuing to prosecute any lawsuit, action, or arbitration against the Warner Chilcott Defendants in any jurisdiction based on or relating to the facts and circumstances underlying the claims released in paragraph 11; and

h.    at the option of Class counsel who may decide to defer the following requests until the conclusion of this class action against Barr, award from the Settlement Fund (defined below) up to $50,000 per representative Plaintiff as an incentive award, and awarding attorneys' fees and costs to counsel for Plaintiffs and the Class.

5.    **Finality of Settlement**. This Settlement Agreement shall become final upon the occurrence of all of the following:

(i)    the Warner Chilcott Defendants have not availed themselves of any right to withdraw from the Settlement pursuant to paragraphs 15 or 16 hereof;

(ii)   it is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

(iii)   entry, as provided for in paragraph 4 herein, is made of the final judgment of dismissal with prejudice against Plaintiffs and the members of the Class who have not timely excluded themselves from the Class Action; and

(iv)   the time for appeal from the Court's approval of this Settlement Agreement as described in (ii) hereof and entry of a final judgment as described in (iii) hereof has expired or, if appealed, either such appeal shall have been dismissed prior to resolution by the Court, or approval of this Settlement Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

6.    **Settlement Consideration: Cash**.  Subject to the provisions hereof, and in full, complete and final settlement of the Plaintiffs' and Direct Purchaser Class's claims in the Class Action against the Warner Chilcott Defendants only (but not the claims against Barr or any other person, firm, or corporation), the Warner Chilcott Defendants shall pay nine million dollars ($9,000,000) in cash (the "Settlement Amount") into an escrow account (the "Settlement Fund"), held and administered by an escrow agent to be selected by the Direct Purchaser Plaintiffs' Executive Committee in the Class Action litigation. Promptly following execution of this Agreement, the Direct Purchaser Class shall provide the Warner Chilcott Defendants with instructions for depositing the Settlement Amount into the Settlement Fund, and the Warner Chilcott Defendants shall deposit the Settlement Amount into the Settlement Fund within five business days after the date the Court grants preliminary approval to the Settlement. The escrow account shall be established and administered pursuant to an escrow agreement in a form satisfactory to the parties.  It is intended that the escrow account be treated as a "qualified settlement fund" for federal income taxes purposes pursuant to Treas. Reg. § 1.468B-1 and that any taxes due as a result of income earned by the Settlement Fund will be paid from the

Settlement Fund. The Settlement Fund and any interest earned by the Settlement Fund shall be for the benefit of the Class, less (a) reasonable attorneys' fees and expenses approved by the Court (and any interest awarded thereon), (b) any Court-approved Plaintiff incentive awards for acting as Class representatives, and (c) payment of applicable taxes and any and all administrative and notice expenses associated with this litigation or Settlement.

7.     **Full Satisfaction: Limitations of Interest and Liability**.  Members of the Class who have not timely excluded themselves from the Class Action shall look solely to the Settlement Fund for settlement and satisfaction, against the Warner Chilcott Defendants only, of all claims that are released hereunder.  Except as provided by order of the Court, no Class member shall have any interest in the Settlement Fund or any portion thereof.

8.     **Reimbursement of Costs, Fees and Expenses**.  Named Plaintiffs and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all costs, fees and expenses including, but not limited to, the costs of notice of this Settlement to Class members and administration of the Settlement Fund.  The Warner Chilcott Defendants shall not be liable for any costs, fees or expenses (other than their share of the Secure Dealroom electronic notification system as previously ordered by the Court through the date of the Court's final approval of this Settlement Agreement) of any of the Plaintiffs' respective attorneys, experts, advisors, agents and/or representatives, but rather all costs, fees and expenses as approved by the Court shall be paid solely out of the Settlement Fund.

9.     **Disbursement of the Settlement Fund**. If this Settlement Agreement becomes final pursuant to the provisions of paragraph 5 herein, the Settlement Fund shall be distributed to Class members as ordered by the Court. Prior to the Settlement becoming final pursuant to the provisions of paragraph 5 and upon the Court granting preliminary approval to the Settlement,

7

the escrow agent may make disbursements from the Settlement Fund for the costs and expenses of Class notice and for administration of the Settlement Fund. Disbursements for attorneys' fees and reasonable expenses awarded by the Court, and any incentive awards for the named Plaintiffs, may be made from the Settlement Fund on the later of: (1) five (5) business days after the date when no appeal or reargument can be taken from the final judgment described in paragraph 4 herein; or (ii) if an appeal is taken or a review is sought from the final judgment, five (5) business days after the date when no subsequent appeal, motion for reargument, or petition for certiorari can be taken from an order determining that the final judgment is final. If no objections to the Settlement are asserted, then disbursements for attorneys' fees and reasonable expenses awarded by the Court, and any incentive awards for the named Plaintiffs, may be made from the Settlement Fund five (5) business days after final judgment, as described in paragraph 4 herein, is entered by the Court. The Warner Chilcott Defendants shall have no liability or responsibility with respect to disbursements from or administration of the Settlement Fund. To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement, also to be signed by Plaintiffs and the Warner Chilcott Defendants, are read together, the terms of this Settlement Agreement shall control.

   10. **Attorneys' Fees, Expenses and Costs.** Class counsel intend to seek, solely from the Settlement Fund, reimbursement of reasonable costs and expenses incurred in the prosecution of this action and attorneys' fees in an amount not to exceed 33 1/3 % of the gross Settlement Fund (plus interest thereon). The Warner Chilcott Defendants agree to take no position with respect to the application by Class counsel for the attorneys' fees, named plaintiff incentive awards, and expense payments as set forth above.

   11. **Releases.**

(a)    Upon this Settlement Agreement's becoming final in accordance with paragraph 5 hereof, the Warner Chilcott Defendants and their present and former parents, subsidiaries, divisions, affiliates, stockholders, officers, directors (including, without limitation, Roger Boissoneault), employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) only (the "Released Parties"), but not Barr or any other person, firm, or corporation, shall be released and fully and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Class who have not timely excluded themselves from the Class Action (including any of their past, present or future officers, directors, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors or successors), whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising out of any conduct alleged in the Class Action or otherwise relating to the facts, occurrences, transactions, or other matters alleged in the Class Action and any damages or other harm allegedly resulting therefrom (the "Released Claims"). The Released Claims do not include any claims relating to any product defect, breach of contract, or similar claim relating to Ovcon 35 or Femcon not directly related to the facts, occurrences, transactions, or other matters alleged in the Class Action. (The reference to Femcon is not intended to limit the scope of the Released Claims for any acts, occurrences, transactions or other matters alleged in, or otherwise relating

9

to, the Class Action.)  Each member of the Class hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any Released Party based, in whole or in part, on any of the Released Claims.

(b)    In addition, as to the Warner Chilcott Defendants, each Class member hereby expressly waives and releases, upon the Settlement Agreement's becoming final, any and all provisions, rights, benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  **General Release: extent**.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each Class member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph 11, but each Class member hereby expressly waives and fully, finally and forever settles and releases, upon this Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of this paragraph 11 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class member also hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against the Warner Chilcott Defendants under § 17200, *et seq.,* of the California Business and Professions Code, which claims are expressly incorporated into this paragraph 11.

12.    **Reservation of Claims.**  The Class members intend by this Settlement Agreement

to settle with and release only the Released Parties that such Class members have released pursuant to paragraph 11 hereof, and the parties do not intend this Settlement Agreement, any part hereof or any other aspect of the proposed settlement or release, to release or otherwise affect in any way any rights a Class member has or may have against Barr or any other party or entity whatsoever other than the Released Parties with respect to the Released Claims pursuant to paragraph 11 hereof.

      13.    **Most Favored Nations Provision.** If, prior to the Expiration Date specified in the second sentence of this paragraph, the Class settles or compromises the claims it is prosecuting against Barr in the Class Action by accepting less than nine million dollars ($9,000,000) in monetary compensation from Barr, then the Class shall reimburse the Warner Chilcott Defendants for the difference between the amount paid to the Class by the Warner Chilcott Defendants and the amount paid to the Class by Barr. The obligation contained in this paragraph shall expire and be of no further force or effect upon the earlier of: (i) sixty (60) days following the Court's determination of any motions for summary judgment; (ii) July 31, 2008; or (iii) sixty (60) days prior to the opening trial date as contained in a Court order (the "Expiration Date").

      14.    **Cooperation Provision**. The Warner Chilcott Defendants also agree to negotiate in good faith and then produce to Plaintiffs a reasonable and limited production of documents sufficient to evidence (a) the launch of the authorized generic of Estrostep FE, and (b) Warner Chilcott's internal analysis, if any, of the economics of that launch. In addition, should the Plaintiffs' claims come to trial, the Warner Chilcott Defendants also agree (a) to supply Plaintiffs with certifications pursuant to Rule 902(11) of the Federal Rules of Evidence, for a reasonable number of the documents that the Warner Chilcott Defendants produced in discovery during the

11

Class Action and/or pursuant to this paragraph, (b) to produce current or former Warner Chilcott

employees at trial only pursuant to a subpoena valid and unobjectionable in all respects under

Fed. R. Civ. P. 45, or an order of a court of appropriate jurisdiction, and (c) that Professors

Henry Grabowski and John Hauser, experts retained in this Class Action by the Warner Chilcott

Defendants only, will not testify on behalf of any party, and that their reports and testimony are

hereby withdrawn from the Class Action.

      15.    **Withdrawal From or Modification of the Settlement Fund**.  If, after notice of

the Settlement is sent to the Class, (a) any of Class members AmerisourceBergen Corp.,

Cardinal Health, Inc., or McKesson Corp. exclude themselves from the Class, or (b) seven (7) or

more of the Class members exclude themselves from the Class, then the Warner Chilcott

Defendants may withdraw from or seek to modify the Settlement, provided however, that any

such election must be made by the Warner Chilcott Defendants in writing within ten (10)

business days following the later of (i) the deadline for Class members to exclude themselves

from the Class, or (ii) the last date on which Plaintiffs provide Warner Chilcott with notice of an

exclusion.  Plaintiffs agree to provide the Warner Chilcott Defendants with all exclusions within

three (3) business days of receipt.  If the Warner Chilcott Defendants withdraw from the

Settlement under these circumstances, the Settlement Agreement shall be cancelled and

terminated.

      16.    **Effect of Disapproval**.  If the Court declines to finally approve this Settlement

Agreement, or if such approval is set aside on appeal or materially modified, or if the Court does

not enter the Final Judgment in substantially the form provided for in paragraph 4, or if the Court

enters the Final Judgment and appellate review is sought, and on such review, the Final

Judgment is not affirmed or is affirmed with material modification, then this Settlement

Agreement shall be terminated upon the election of the Warner Chilcott Defendants or the Plaintiffs, acting through their counsel. A modification or reversal on appeal of any amount of Class counsel's fees and expenses awarded by the Court from the Settlement Fund, or the amount of an incentive award to the named representative Plaintiffs, shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such Final Judgment and shall not give rise to any right of termination.

17. **Termination**. In the event that the Settlement Agreement is terminated pursuant to paragraph 15 or 16, or for any reason does not become final in accordance with the terms of paragraph 5 hereof, then (a) this Settlement Agreement shall be of no force or effect, except for payment of notice and administrative fees and costs from the Settlement Fund, (b) the Settlement Fund, including any and all interest earned thereon, shall be returned to the Warner Chilcott Defendants less only the costs incurred in giving notice to the Class and administering the Settlement, and (c) any release pursuant to paragraph 11 above shall be of no force or effect.

18. **Preservation of Rights**. The parties hereto agree that this Settlement Agreement, whether or not it shall become final, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by the Warner Chilcott Defendants, or of the truth of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Class Action or in any other action or proceeding. The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of the Settlement Agreement.

19. **Stay and Resumption of Proceedings**. The parties agree, subject to the approval

13

of the Court, that proceedings in the Class Action against the Warner Chilcott Defendants only (and not against Barr) shall be stayed. In the event that the Settlement Agreement is not approved by the Court or the Settlement does not become final pursuant to paragraph 5, proceedings involving the Warner Chilcott Defendants will resume in the Class Action, in a reasonable manner to be approved by the Court.

20.     **Binding Effect**. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors of the parties hereto and to the Released Parties. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and their counsel shall be binding upon all members of the Class.

21.     **Modifications to Agreement**. This Settlement Agreement shall not be modified in any respect except by a writing executed by all parties hereto.

22.     **Independent Settlement**. This Settlement of the claims against the Warner Chilcott Defendants in this Class Action is entirely independent of all other cases and is not conditioned on approval by any other Plaintiffs or settlement of any other case.

23.     **Headings**. The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

24.     **No Party is the Drafter**. None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

25.     **Choice of Law**. All terms of this Settlement Agreement shall be governed by and

14

interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflicts of laws principles.

26.    **Consent to Jurisdiction**. The Warner Chilcott Defendants and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Columbia, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein.

27.    **No Admission**. Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by the Plaintiffs, the Class or the Warner Chilcott Defendants including, without limitation, that the Warner Chilcott Defendants have engaged in any conduct or practices that violate any antitrust statue or other law.

28.    **Execution in Counterparts**. This agreement may be executed in counterparts. Facsimile or electronic signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Settlement Agreement of the date first herein above written.

Peter C. Thomas
**Simpson Thacher & Bartlett, LLP**
601 Pennsylvania Avenue, N.W.
North Building
Washington, DC 20004
Phone:    (202) 220-7735
Fax:       (202) 220-7702

*On Behalf of Defendants, Warner Chilcott*
*Holdings Company III, Ltd., Warner Chilcott*
*Corporation, Warner Chilcott*
*(US) Inc., Warner Chilcott Company,*
*Inc., and Galen (Chemicals), Ltd.*

Daniel Berger
Eric L. Cramer
Ellen T. Noteware
**Berger & Montague, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-3000
Fax:    (215) 875-4604

Linda P. Nussbaum
**Kaplan Fox & Kilsheimer LLP**
805 Third Avenue, 22nd Floor
New York, NY 10022
Phone:    (212) 687-1980
Fax:       (212) 687-7714

*On Behalf of the Executive Committee for*
*the Direct Purchaser Class*

16