UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., *et al.*,<br><br>    Defendants. | Civil Action No. 05-2195 (CKK) |

**MEMORANDUM OPINION**
(July 10, 2008)

This matter comes before the Court on the Direct Purchaser Class Plaintiffs' Motion [179] for Final Approval of Settlement With Warner Chilcott Defendants Only. The Direct Purchaser Class Plaintiffs previously moved for preliminary approval of the settlement, which the Court granted by Order dated January 2, 2008. The Direct Purchaser Class Plaintiffs filed their Motion for Final Approval on May 27, 2008. On June 30, 2008, the Court held a fairness hearing related to the settlement, as required by Federal Rule of Civil Procedure 23(e). The arguments and representations made on the record during that fairness hearing are hereby expressly incorporated and made a part of this Memorandum Opinion.

Upon a searching review of the Direct Purchaser Class Plaintiffs' Motions for preliminary and final approval of the settlement, the arguments and representations made at the fairness hearing, the relevant statutes and case law, and the entire record herein, the Court shall grant the Direct Purchaser Class Plaintiffs' [179] Motion for Final Approval of Settlement With Warner Chilcott Defendants Only.

## BACKGROUND

*A.     Factual and Procedural Background*

Plaintiffs–Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale Drug Co., Inc., Rochester Drug Co-operative, Inc., American Sales Company, Inc., SAJ Distributors, Inc., and Stephen L. LaFrance Holdings, Inc. (collectively "Direct Purchaser Class Plaintiffs" or "Plaintiffs")–brought this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a class of direct purchasers of Ovcon 35 during the period April 22, 2004 through December 31, 2006.[1]  The Direct Purchaser Class Plaintiffs named as Defendants to this action Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., Galen (Chemicals), Ltd. (together "Warner Chilcott"), and Barr Pharmaceuticals, Inc. ("Barr") (collectively with Warner Chilcott, "Defendants").

This action began in November 2005 with the filing of six separate complaints in six separate actions by various Direct Purchaser Class Plaintiffs.  5/27/08 Decl. of Linda P. Nussbaum, Esq. in Support of Direct Purchaser Plaintiffs' Motion, attached as exhibit thereto

---

[1] As discussed in greater detail below, on October 22, 2007, the Court issued a Memorandum Opinion and Order certifying a class of: "All persons and entities in the United States who purchased Ovcon 35 directly from Defendants at any time during the period April 22, 2004 through December 31, 2006," with the exception of "Defendants and their officers, directors, subsidiaries or affiliates, and all governmental entities," as well as "hospitals, universities and clinics." *See* 10/22/07 Order, Docket No. [137].  The Court's October 22, 2007 Order also appointed the Direct Purchaser Class Plaintiffs as class representatives, and appointed Kaplan Fox & Kilsheimer LLP; Berger & Montague, P.C.; Boies, Schiller & Flexner LLP; Garwin, Gerstein & Fisher, L.L.P.; Hagens Berman Sobol & Shapiro LLP; and Roda Nast, P.C. as class counsel. *Id.*  For purposes of the partial settlement between Direct Purchaser Class Plaintiffs and Warner Chilcott, the following pharmacy chains (who are plaintiffs in other related actions before this Court) were excluded from the class definition: Walgreen, Co., Eckerd Corp., Maxi Drug, Inc. d/b/a Brooks Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc., CVS Pharmacy, Inc., Rite Aid Corporation, and Rite Aid Hdqtrs. Cprp.  *See* 1/2/08 Order, Docket No. [172].

(hereinafter "Nussbaum Decl.") ¶ 4. Each of the complaints alleged that Warner Chilcott and Barr had violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by illegally delaying the entry of a generic version of Warner Chilcott's Ovcon 35 onto the market. *Id.* In particular, the complaints alleged that, in exchange for a $20 million payment from Warner Chilcott, Barr agreed not to sell its generic Ovcon 35 in competition with Warner Chilcott's Ovcon 35. *Id.* According to the complaints, this agreement denied direct purchasers of Ovcon 35 the benefits of generic competition and caused them to pay higher prices for Ovcon 35. *Id.* At or around the same time as the filing of the Direct Purchaser Class Plaintiffs' complaints, related actions involving the same factual allegations were filed by the Federal Trade Commission, the Attorneys' General of thirty-four (34) States and the District of Columbia, individual direct purchasers, an indirect purchaser class, and a third party payor class. *Id.* ¶ 5. On April 14, 2006, the Direct Purchaser Class Plaintiffs filed an Amended Class Action Complaint in the above-captioned action and dismissed the other actions brought by Direct Purchaser Class Plaintiffs. *See* 4/4/06 Minute Order; Am. Class Act. Compl., Docket No. [30].

      The Court entered a scheduling order regarding fact and expert discovery between the parties to this action. Pursuant to that scheduling order, since March 2006, extensive document, deposition, and expert discovery has taken place. Nussbaum Decl. ¶ 6. In particular, Defendants produced more than 1.3 million pages of documents, and third parties–pursuant to subpoenas–have produced thousands of additional pages of documents, all of which have been reviewed and analyzed by teams of attorneys and paralegals for the Direct Purchaser Class. *Id.* Further, in conjunction with the plaintiffs in the other related actions, the Direct Purchaser Class Plaintiffs took and defended the depositions of more than 25 fact witnesses, more than a dozen experts, and

numerous third parties. *Id.* Direct Purchaser Class Counsel took the lead in many of these depositions, which included the depositions of Barr's and Warner Chilcott's experts. *Id.* In addition, Direct Purchaser Class Counsel retained experts as to the pharmaceutical industry and economics, damages, and pharmaceutical supply chain issues, and consulted with these experts "regarding economic, pharmaceutical, and marketing issues, including the quantification of damages incurred by the Direct Purchaser Class." *Id.*

After the completion of this extensive discovery, which included the submission of expert reports and the taking and defending of expert depositions, the Direct Purchaser Class Plaintiffs filed their motion for class certification. *Id.* ¶ 7. Defendants vigorously opposed the motion for class certification, and on October 22, 2007, the Court issued a Memorandum Opinion and Order certifying the class, as defined in note 1, above. *Id.*; *see generally* 10/22/07 Class Cert. Mem. Op., Docket No. [143] and Order, Docket No. [137]. During the course of the class certification litigation, Defendants took the deposition of substantial absent class members, and Class Counsel secured the support and confidence of three such absent class members, known as the "Big Three" National Wholesalers–Cardinal Health, Inc., AmerisourceBergen Corp., and McKesson Corp. Nussbaum Decl. ¶ 4; *see also* Class Cert. Mem. Op., Docket No. [143] at 20-22. Finally, on November 14, 2007, the Direct Purchaser Class Plaintiffs filed a motion for partial summary judgment, *see* Docket Nos. [149] and [150], in which they argued that Defendants committed a *per se* violation of Section 1 of the Sherman Act. Barr filed a cross-motion for summary judgment. *See* Docket No. [157]. Warner Chilcott did not file a motion for summary judgment as the settlement negotiations between Warner Chilcott and the Direct Purchaser Class Plaintiffs had already begun. *See* 11/27/07 Minute Order. The cross-motions for summary judgment filed

by the Direct Purchaser Class Plaintiffs and Barr are currently pending before this Court.

The Court initially referred this action to Magistrate Judge Alan Kay for mediation on November 13, 2006, at the request of the parties. *See* Docket No. [78]. Over the course of the following year, settlement negotiations between the Direct Purchaser Class Plaintiffs and Warner Chilcott occurred intermittently, via both in-person meetings and telephone calls with Magistrate Judge Kay, as well as private discussions between the parties. Nussbaum Decl. ¶ 9. On November 28, 2007, the Direct Purchaser Class Plaintiffs and Warner Chilcott entered into a Settlement Agreement of the Direct Purchaser Class Plaintiffs' claims against Warner Chilcott. *Id.* ¶ 10. A copy of that Settlement Agreement is attached at Exhibit A to Direct Purchaser Class Plaintiffs' Motion and the Court has thoroughly reviewed it. *See* Pls.' Mem., Ex. A. On December 7, 2007, Direct Purchaser Class Plaintiffs filed a Motion for Preliminary Approval of the Partial Settlement with Warner Chilcott. *Id.* ¶ 11; Docket No. [158]. On January 2, 2008, the Court entered an Order preliminarily approving the settlement with Warner Chilcott, amending the Class definition for purposes of the Settlement Agreement, *see supra* note 1, approving the Direct Purchaser Class Plaintiffs' proposed form of Notice, and directing Class Counsel to cause the dissemination of the Notice to the Class. *See* Docket No. [172]; Nussbaum Decl. ¶ 11.

   B.   *The Terms of the Settlement Agreement*

Pursuant to the Settlement Agreement, Warner Chilcott paid the Class nine million dollars ($9,000,000.00) into an escrow account within five days after the date this Court granted preliminary approval of the Settlement. Nussbaum Decl. ¶ 10; Pls.' Mem., Ex. A ¶ 6. In addition, Warner Chilcott agreed to cooperate with the Direct Purchaser Class Plaintiffs in certain ways in connection with their continued litigation of their claims against Barr in this

action.  Nussbaum Decl. ¶ 10; Pls.' Mem., Ex. A ¶ 14.  In particular, Warner Chilcott agreed to produce additional documents to the Direct Purchaser Class Plaintiffs and to provide certificates of authenticity for documents that the Direct Purchaser Class Plaintiffs plan to use at trial against Barr.  Nussbaum Decl. ¶ 10; Pls.' Mem., Ex. A ¶ 14.  Further, Warner Chilcott agreed that certain experts it retained will not testify in this action and that those experts' reports and testimony are withdrawn.  Nussbaum Decl. ¶ 10; Pls.' Mem., Ex. A ¶ 14.  Direct Purchaser Class Plaintiffs and their counsel assert that "[t]his cooperation has real value in Plaintiffs' continuing litigation against Barr."  Pls.' Mem. at 6; Nussbaum Decl. ¶ 10.

      C.     *Form and Manner of Notice to the Class*

As approved by the Court in its January 2, 2008 Order preliminarily approving the Settlement with Warner Chilcott, *see* Docket No. [172], EPIQ Systems served as Claims Administrator for the Settlement and oversaw the dissemination of Notice to the identified Class members.  Nussbaum Decl. ¶ 12.  On January 24, 2008, all entities that were identified as potential Class members in Warner Chilcott's business records were sent a copy of the Notice via first class mail.  *Id.*; *see also* 5/19/08 Decl. of Michael Evans of EPIQ Systems Concerning the Mailing of Notice, filed as Exhibit to Plaintiffs' Motion (hereinafter "EPIQ Decl.") ¶¶ 1-4.  EPIQ initially sent ninety-two Notices (ninety-one on January 24, 2008 and another on February 29, 2008).  EPIQ Decl. ¶ 4.  Of the Notices mailed, through May 15, 2008, EPIQ received sixteen Notices returned as undeliverable, and was able to re-mail five Notices based on updated mailing information.  *Id.*  EPIQ determined that the remaining 11 Notices returned as undeliverable were redundant mailings to subsidiaries of parent companies identified as potential Class members.  *Id.*  To the best of EPIQ's knowledge, a copy of the Notice has been sent to all parent companies

identified as Class members. *Id.* During the June 30, 2008 Fairness Hearing in this matter, counsel for the Direct Purchaser Class Plaintiffs clarified that the Class in this action likely includes less than forty members, and that the greater number of Notices mailed resulted from the fact that certain Class members had more than one mailing address. Nevertheless, Class Counsel assured the Court that all of the Class members in this case had received at least one (and sometimes two) Notices.

As required by the Court's January 2, 2008 Order, the Notice distributed to the Class sets forth the rights of Class members under the Settlement, including their rights to (a) exclude themselves from the Class and Settlement, (b) object to the Settlement, and (c) attend the Fairness Hearing. EPIQ Decl. ¶ 5, Ex. 1 (Notice); *see also* Nussbaum Decl. ¶ 12. In addition, the Notice identified the address to which requests from persons and entities seeking to exclude themselves from the Settlement Class were to be sent. EPIQ Decl., Ex. 1 (Notice) at 4-5. As further stated in the Notice, Class members had the right to opt out of the Class or to exclude themselves from the Settlement by March 10, 2008, and Objections to the Settlement were due by April 4, 2008. *Id.* Thus, the time by which Class members were required to request exclusion from or object to the Settlement has passed, and no Class member has asked to be excluded or objected to the Settlement. EPIQ Decl. ¶ 7; Nussbaum Decl. ¶ 13.

    D.    *Joint Motion for Final Approval and Fairness Hearing*

On May 27, 2008, Direct Purchaser Class Plaintiffs filed their Motion for Final Approval of Settlement With Warner Chilcott Defendants Only. Docket No. [179]. As required by Federal Rule of Civil Procedure 23(e), the Court held a fairness hearing on the record on June 30, 2008. Counsel for the Direct Purchaser Class Plaintiffs and Warner Chilcott appeared at the

hearing. No objectors appeared at the hearing, despite being advised of their opportunity to do so via the Notice campaign.

## II: LEGAL STANDARD

Approval of a proposed class action settlement lies within the discretion of the District Court. *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) ("*Vitamins II*") (citing *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)). Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal or compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). In considering whether to approve a proposed class action settlement, the Court must strike a balance between a rubber stamp approval and "the detailed and thorough investigation that it would undertake if it were actually trying the case." *United States v. District of Columbia*, 933 F. Supp. at 47. Furthermore, there is a long-standing judicial attitude favoring class action settlements, and the Court's "discretion is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases." *Vitamins II*, 305 F. Supp. 2d at 103 (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999); citing *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993)).

## III: DISCUSSION

Pursuant to Rule 23(e), the Court must consider whether the proposed settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998); Fed. R. Civ. P. 23(e). There is no single test in this Circuit for determining whether a proposed class action settlement should be approved under

Rule 23(e). *Pigford*, 185 F.R.D. at 98. However, in making such a determination, courts in this Circuit have considered the following factors, among others: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of the plaintiffs' case; (3) the stage of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel. *Vitamins II*, 305 F. Supp. 3d at 104 (citing numerous cases); *In re Baan Company Secs. Litig.*, 284 F. Supp. 2d 62, 64-67 (D.D.C. 2003). The Court shall address these factors in the order the Direct Purchaser Class Plaintiffs consider them in their Memorandum in support of their Motion for Final Approval.

    A.    *Arm's-Length Negotiations*

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Vitamins II*, 305 F. Supp. 2d at 104; *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290 (TFH), 2003 WL 22037741, *2 (D.D.C. Jun. 16, 2003) ("*Lorazepam II*"). As discussed above, the settlement in this action was reached after extensive discovery, factual investigation, and legal analysis. Pls.' Mem. at 12; Nussbaum Decl. ¶¶ 6, 14. Furthermore, the settlement was the result of months of contentious settlement negotiations, including in person and telephonic meetings between counsel, and oversight by Magistrate Judge Kay. Pls.' Mem. at 12; Nussbaum Decl. ¶¶ 9, 15. The Court has been presented with absolutely no evidence that the settlement is anything other than the product of arm's-length negotiation between experienced counsel.

    B.    *The Terms of the Settlement in Relation to the Strength of Plaintiffs' Case*

While the Direct Purchaser Class Plaintiffs continue to believe that they would prevail at

trial in this matter, they acknowledge in their Motion for Final Approval that (as this Court recognized in approving settlements in two of the related class actions), they "faced several hurdles in the continued prosecution of this case." Pls.' Mem. at 13-14 (citing *Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 118 (D.D.C. 2007) and *Vista Healthplan, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 246 F.R.D. 349, 361 (D.D.C. 2007)).  In particular, the Direct Purchaser Class Plaintiffs note that complex antitrust litigation is rife with uncertainties, risks, and delays, and explain that their settlement with Warner Chilcott "has both improved the Plaintiff's chances against the remaining defendant [Barr] and eliminated downside risks of continuing against Warner Chilcott.  Pls.' Mem. at 14.  Direct Purchaser Class Plaintiffs also correctly recognize that, even if they had prevailed at trial, "it is likely that any verdict would have been followed by an appeal, which might have further delayed the final resolution of the case" against Warner Chilcott.  *Id.* (quoting *Cohen*, 522 F. Supp. 2d at 118).  Similarly, during the Fairness Hearing, counsel for Warner Chilcott recognized that there was a wide disparity between the damages estimates produced by Plaintiffs' experts and Defendants' experts, and explained Warner Chilcott's conclusion that the inherent risks of going before a jury on a pharmaceutical case warranted paying what Warner Chilcott viewed as a significant amount of money to settle the case.

     As to the particular terms of their Settlement with Warner Chilcott, the Direct Purchaser Class Plaintiffs stress the significance of Warner Chilcott's agreement to cooperate with them in their continued litigation against Barr.  Pls.' Mem. at 15.  As noted above, under the Settlement Agreement, Warner Chilcott agreed to produce additional documents, to provide certificates of authenticity for documents that the Direct Purchaser Class Plaintiffs plan to use at trial against

Barr, that certain of its retained experts will not testify in this action, and that those experts' reports and testimony are withdrawn. Nussbaum Decl. ¶ 10; Pls.' Mem., Ex. A ¶ 14. The Direct Purchaser Class Plaintiffs' Motion asserts–and their attorney confirmed during the Fairness Hearing–that "[t]his cooperation has real value in Plaintiffs' continuing litigation against Barr." Pls.' Mem. at 6; Nussbaum Decl. ¶ 10.

The Direct Purchaser Class Plaintiffs explain–and their counsel stressed during the Fairness Hearing–that the Direct Purchaser Class Plaintiffs' Settlement with Warner Chilcott also offers them significant strategic advantages in prosecuting their claims against Barr, above and beyond the litigation cooperation described above. Pls.' Mem. at 15. Specifically, Plaintiffs acknowledge that Warner Chilcott had sought–and Barr continues to seek–to justify the agreement at issue in this action by arguing, first, that Warner Chilcott needed to pay Barr to refrain from entering the market with its competing generic Ovcon product because Warner Chilcott needed a new raw material supplier and Barr could only act as such if it was Warner Chilcott's exclusive supplier; and, second, that the entry of a lower priced generic alternative may actually be harmful to consumers because it reduces the incentives for brand name companies to promote their products through advertising and sampling. Pls.' Mem. at 15; Nussbaum Decl. ¶ 19. The Direct Purchaser Class Plaintiffs believe that these defenses make more sense when offered by Warner Chilcott than when offered by Barr, and that as a result of the Settlement, Barr will be left in the position of "speaking for Warner Chilcott as to Warner Chilcott's supply needs and [] arguing that Barr's own entry as a competitor with a less expensive generic product would have actually harmed consumers." Pls.' Mem. at 15; Nussbaum Decl. ¶ 19.

Finally, as to the dollar amount of the settlement, the Direct Purchaser Class Plaintiffs explain that nine million dollars ($9,000,000), "is a substantial fraction of the overcharge computed by Plaintiffs' damages expert, especially in light of this being a partial settlement, with [D]efendants jointly and severally liable for the entire overcharge claim (times three)." Pls.' Mem. at 13. Class Counsel elaborated on this view during the Fairness Hearing, highlighting that Plaintiffs' expert had estimated single damages to the Class as a whole at between $26 million and $46 million, while Defendants' experts estimated single damages at less than $20 million. Class Counsel explained that if the nine million dollars Plaintiffs received under the Settlement with Warner Chilcott were doubled (to account for damages attributable to Barr), the total recovery would be $18 million, and thus close to the low end of the experts' damages estimates. Class Counsel further stressed that, because Defendants are jointly and severally liable and Plaintiffs are eligible for treble damages, the Direct Purchaser Class Plaintiffs may still recover a very significant damages award from Barr. As an example, Class Counsel explained that if Plaintiffs received a single damages award of $30 million, it would be trebled to result in an award of $90 million. After the $9 million recovered from Warner Chilcott was subtracted from the total damages award, Barr would be liable for the remaining $81 million in damages. As such, the Direct Purchaser Class Plaintiffs determined that the nine million dollars they would recover in their Settlement with Warner Chilcott represented "a meaningful degree of recovery to Class members from Warner Chilcott, Pls.' Mem. at 13, and, as Class Counsel noted during the fairness hearing, would defray some of the risk for Class members and allow the Class to have some money in hand.

In addition to the terms discussed above, the Court also inquired about two additional

features of the Settlement during the Fairness Hearing, and briefly addresses those features herein.  First, the Settlement Agreement includes a so-called "Most Favored Nations Provision." *see* Pls.' Mot., Ex. A ¶ 13.  As Class Counsel explained during the Fairness Hearing, under that provision, if the Class were to settle or compromise its claims against Barr in this action for less than nine million dollars in monetary compensation, the Class would be required to reimburse Warner Chilcott for the difference between the nine million dollars paid by Warner Chilcott to the Class and the amount paid to the Class by Barr.  *Id.*  The Most Favored Nations Provision, however, will expire on July 31, 2008, as the litigation against Barr progresses.[2]

Second, the Direct Purchaser Class Plaintiffs' Motion notes that Class Counsel is deferring its request for attorneys' fees, reimbursement of expenses, and incentive awards for Class representatives "until a final resolution of the case against Barr so that the Court will have a full picture of the ultimate result before deciding on the propriety of these requests."  Pls.' Mem. at 3 n.3.  During the Fairness Hearing, Class Counsel clarified that the nine million dollars already paid by Warner Chilcott to the Class had been paid into escrow and is currently earning interest.  Upon the resolution of the litigation against Barr, any recovery from Barr will be added to the amount then in escrow and Class Counsel will make a request for attorneys' fees, costs, and incentive awards based upon, and to be deducted from, the total recovery on behalf of the Class.  *Id.*  Class Counsel explained that it is inefficient to have two distributions to the Class, as

---

[2] The Settlement Agreement provides that the Most Favored Nations Provision expires upon the earlier of (i) sixty days following the Court's determination of the currently pending cross-motions for summary judgment filed by the Direct Purchaser Class Plaintiffs and Barr; (ii) July 31, 2008; and (iii) sixty days prior to the opening date of the Direct Purchaser Class Plaintiffs' trial against Barr.  As the cross-motions remain pending before the Court, July 31, 2008 will be the earliest of these events to occur.

each distribution involves significant costs, and that because the Class members' recovery will be delayed until a single distribution is possible, attorneys' fees, costs, and incentive awards will be delayed as well.  In addition, the delay will allow the Court to assess the requests for attorneys' fees, costs, and incentive awards in comparison to the total recovery on behalf of the Class, as it is required to do.  In this way, also, members of the Class will receive their distributions before attorneys' fees are paid.

      C.      *The Status of the Litigation at the Time of Settlement*

In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts "consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery." *Lorazepam II*, 2003 WL 22037741, *4.  Here, the Court finds that the settlement does not "come too early to be suspicious nor too late to be a waste of resources" but is rather "at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation." *Vitamins II*, 305 F. Supp. 2d at 105.  As noted above, the Settlement Agreement in this action was executed after two years of litigation.  By that point in time, the Direct Purchaser Class Plaintiffs and Class Counsel had reviewed over 1.3 million pages of documents, participated in the depositions of more than 25 fact witnesses, more than a dozen experts, and numerous third parties, and retained experts on the pharmaceutical industry and economics, damages, and pharmaceutical supply chain issues. Nussbaum Decl. ¶ 6.  In addition, the Settlement was reached after more than a year of negotiations between the parties and with the aid of Magistrate Judge Kay.  *Id.* ¶ 9.  The Court therefore concludes that, at the time settlement was reached, both parties possessed well-founded

views of the merits of their respective positions and the potential for, and likely amount, of any recovery.

        D.      *The Reaction of the Class*

The Class' reaction to the settlement in this case appears to have been overwhelmingly positive, and is a factor which counsels in favor of approval. *Lorazepam II*, 2003 WL 22037741, at *5. EPIQ, the Claims Administrator, sent ninety-two Notices to potential Class members and ensured that a copy of the Notice was sent to all parent companies identified as Class members based on Warner Chilcott's sales records. EPIQ Decl. ¶ 4. That Notice advised Class members of the deadlines for excluding themselves from the Settlement and for objecting to the Settlement. EPIQ Decl. ¶ 5, Ex. 1 (Notice); *see also* Nussbaum Decl. ¶ 12. No Class members have objected to or opted out of the Settlement. EPIQ Decl. ¶ 7; Nussbaum Decl. ¶ 13.

In addition, the Court notes that the Certified Class Representatives all support the Settlement, and that the "Big Three"–Cardinal Health, Inc., AmerisourceBergen Corp., and McKesson Corp., who in the aggregate make up a significant amount of the claims in this case–affirmatively support the Settlement. Nussbaum Decl. ¶ 22; *see also* Pls.' Mot. for Prelim. Approval at 4. As the Direct Purchaser Class Plaintiffs note, and stressed during the Fairness Hearing, the "Big Three" are large, sophisticated Class members, each of whom have their own counsel who has participated in the litigation of this case. Nussbaum Decl. ¶ 22.

        E.      *The Opinion of Experienced Counsel*

As Judge Thomas F. Hogan has noted, the opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Lorazepam II*, 2003 WL 22037741, at *6. Class Counsel are clearly of the opinion

that the settlement in this action is fair, adequate, and reasonable. Pls.' Mem. at 18; Nussbaum Decl. ¶ 24. Furthermore, Class Counsel in this case are very experienced in class actions and antitrust matters, and in particular, have served as lead counsel in a number of pharmaceutical antitrust cases in this District and others. Final Mem. at 18 & n.8; Nussbaum Decl. ¶ 24 & n.5. In sum, the Court agrees with Class Counsel that the total value of the settlement in this action (including the value that the Direct Purchaser Class Plaintiffs attribute to the cooperation they will be receiving from Warner Chilcott in their continued litigation against Barr) appears reasonable in light of the substantial difficulties faced by Direct Purchaser Class Plaintiffs in litigating this case against Warner Chilcott. Moreover, for all of the reasons discussed above, the Court finds that the settlement represents the product of arm's length-negotiations between experienced counsel, after adequate opportunity for discovery. As such, the Court concludes that the settlement is fair, adequate, and reasonable, and that the requirements of Rule 23(e)(1)(C) are therefore met.

## IV: CONCLUSION

For the foregoing reasons, the Court shall grant the Direct Purchaser Class Plaintiffs' [179] Motion for Final Approval of Settlement With Warner Chilcott Defendants Only. The parties' proposed Order and Final Judgment accompanies this Memorandum Opinion.

Date:   July 10, 2008

                                           /s/
                                   COLLEEN KOLLAR-KOTELLY
                                   United States District Judge