## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr>
<td>
MEIJER, INC.; MEIJER DISTRIBUTION,<br>
INC.; LOUISIANA WHOLESALE DRUG<br>
CO., INC.; ROCHESTER DRUG CO-<br>
OPERATIVE, INC.; AMERICAN SALES<br>
COMPANY, INC.; SAJ DISTRIBUTORS,<br>
INC.; and STEPHEN L. LaFRANCE<br>
HOLDINGS, INC., on behalf of themselves<br>
and all others similarly situated,<br>
<br>
                Plaintiffs,<br>
<br>
    v.<br>
<br>
BARR PHARMACEUTICALS, INC.,<br>
<br>
                Defendant.
</td>
<td>
Civil Action No. 05-2195 (CKK)
</td>
</tr>
</table>

**DIRECT PURCHASER CLASS PLAINTIFFS'
MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY
APPROVAL OF SETTLEMENT WITH
BARR PHARMACEUTICALS, INC.**

## TABLE OF CONTENTS

**PAGE**

I.     PRELIMINARY STATEMENT ........................................................................................ 2

II.    FACTUAL AND PROCEDURAL BACKGROUND............................................................ 4

    A.   Discovery and Related Disputes Before the Court ............................................................ 4

    B.   Summary Judgment and Trial Preparation ....................................................................... 5

III.   ARGUMENT..................................................................................................................... 5

    A.   Preliminary Approval of the Settlement is Warranted....................................................... 5

    B.   The Proposed Settlement Is Within the Range of Possible Approval ................................ 7

    C.   The Proposed Settlement Does Not Disclose Grounds To Doubt Its Fairness................... 8

    D.   An Appropriate Point for Settlement Has Been Reached ................................................ 10

    E.   The Opinion of Experienced Counsel Supports Approval ............................................... 10

    F.   The Proposed Notice to Class Members and Method of Notification is Adequate.......... 11

IV.   CONCLUSION................................................................................................................ 16

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006) ..................................................................................... 15

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ...................................................................................... 8

*Hainey v. Parrott,*
   No. 02-CV-733, 2007 U.S. Dist. LEXIS 69647 (S.D. Ohio Sept. 20, 2007) ........... 15

*In re Auto. Refinishing Paint Antitrust Litig.,*
   MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ................................. 14

*In re Carbon Black Antitrust Litig,,*
   No. 03-10191 (D. Mass. Nov. 29, 2006) ................................................................ 14

*In re Linerboard Antitrust Litig.,*
   MDL No. 1261 (E.D. Pa. Jan. 6, 2004) .................................................................. 15

*In re Lorazepam & Clorazepate Antitrust Litig.,*
   MDL No. 1290 (TFH), 2003 WL 22037741 (D.D.C. June 16, 2003)............................ 7, 10, 11

*In re MCC Antitrust Litig.,*
   No. 01-0111 (E.D. Pa. Nov. 7, 2006) ..................................................................... 14

*In re Medical X-Ray Film Antitrust Litig.,*
   No. CIV. A. 93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ...................... 5

*In re Michael Milken & Assoc. Sec. Litig.,*
   150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................................ 6

*In re NASDAQ Market-Makers Antitrust Litig.,*
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................ 6

*In re Nat'l Student Mktg.  Litig.,*
   68 F.R.D. 151 (D.D.C. 1974)................................................................................... 10

*In re OSB Antitrust Litig.,*
   No. 06-82 (E.D. Pa. Aug. 7, 2008) ......................................................................... 14

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,*
163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 5

*In re Shell Oil Refinery,*
155 F.R.D. 552 (E.D. La. 1993) ................................................................. 6

*In re Urethane Antitrust Litig.,*
2:04-MD-1616 (D. Kan. Oct. 25, 2007) ................................................... 15

*In re Vitamins Antitrust Litig.,*
305 F. Supp. 2d 100 (D.D.C. 2004) .............................................. 7, 10, 11

*In re Vitamins Antitrust Litig.,*
No. 99-197, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 30, 2000) ........................................... 7

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) ...................................................................... 8

*Pigford v. Glickman,*
185 F.R.D. 82 (D.D.C. 1999)...................................................................... 5

*Reed v. General Motors Corp.,*
703 F.2d 170 (5th Cir. 1983) ..................................................................... 6

*Thomas v. NCO Financial Sys.,*
No. 00-5118, 2002 U.S. Dist. LEXIS 14157 (E.D. Pa. July 31, 2002) ...................................... 6

*United States v. District of Columbia,*
933 F. Supp. 42 (D.D.C. 1996)................................................................... 5

**Statutes**

Class Action Fairness Act of 2005
28 U.S.C. § 1715.................................................................................... 12

Sherman Act,
15 U.S.C. § 1........................................................................................... 4

**Other Authorities**

3B MOORE'S FEDERAL PRACTICE 9 (2d ed. 1993) ......................................... 6

Alba Conte & Herbert Newberg,
NEWBERG ON CLASS ACTIONS (4th ed. 2002)...................................... 7, 11

MANUAL FOR COMPLEX LITIGATION,
THIRD (West 1999) ......................................................................... 5, 6, 8, 9

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2007) ......................... 11, 12

**Rules**

Fed. R. Civ. P.
  Rule 23(e) ........................................................................................................................ 5

  Rule 23(c)(2)(B) ........................................................................................................ 11, 13

Plaintiffs Meijer, Inc., Meijer Distribution, Inc., Louisiana Wholesale Drug Co., Inc., Rochester Drug Co-Operative, Inc., American Sales Company, Inc., SAJ Distributors, Inc., and Stephen L. LaFrance Holdings, Inc. (collectively the "Direct Purchaser Class Plaintiffs," "Plaintiffs" or "Class Representatives"), by their undersigned counsel ("Class Counsel"), move for an order pursuant to Federal Rule 23(e) granting preliminary approval to a settlement of this direct purchaser antitrust class action (the "Settlement") between the Class[1] and defendant Barr Pharmaceuticals, Inc. ("Barr"); approving the form and manner of notice to the Class; appointing a claims administrator; and approving a proposed schedule for completing the approval process.

This Settlement which was achieved after extensive mediation sessions over a several-year period, first with Magistrate Judge Kay and then with Prof. Eric D. Green, includes a cash payment of thirteen million dollars ($13,000,000) from Barr to the Class. If finally approved by the Court, the Settlement, when combined with the prior settlement with the Warner Chilcott Defendants for $9 million, would represent a superior and highly beneficial result for the Class, and conclude this action in its entirety.[2]

---

[1]     The Court, in its Opinion and Order dated October 22, 2007 (Docket No. 138 ), granted Plaintiffs' motion for certification of a Class defined as follows:

> All persons or entities in the United States who purchased Ovcon 35 directly from Warner Chilcott at any time during the period April 22, 2004 through December 31, 2006. Excluded from the Class are Defendants and their officers, directors, management, and employees, subsidiaries or affiliates, and all governmental entities. Also excluded are hospitals, universities and clinics.

Per this Court's Order Preliminarily Approving the Proposed Settlement with the Warner Chilcott Defendants, dated January 2, 2008 (Dkt. No. 172), the Class definition also excludes any claims asserted, whether by assignment or otherwise, by the following entities: Walgreen Co., Eckerd Corporation, Maxi Drug, Inc. d/b/a Brooks Pharmacy, Albertson's Inc., The Kroger Co., Safeway, Inc., Hy-Vee, Inc., CVS Pharmacy, Inc., Rite Aid Corporation, and Rite Aid Hdqtrs. Corp.: (the "Individual Plaintiffs"). The foregoing shall be hereinafter referred to as "the Class" or the "Direct Purchaser Class."

[2]     As the Court is aware, Plaintiffs had previously settled with the Warner Chilcott Defendants for nine million dollars ($9,000,000) (the "Partial Settlement"). The Court granted final approval to that Partial Settlement on July 10, 2008 (Docket Nos. 181 and 182). The term "Parties" used herein will refer only to the Direct Purchaser Plaintiffs and Barr. Upon final approval, and pursuant to leave of Court, Plaintiffs will distribute the total net settlement fund, consisting of the monies from the Settlement and Partial Settlement simultaneously. Pursuant to

I.    **PRELIMINARY STATEMENT**

Counsel for Barr and the Direct Purchaser Class Plaintiffs executed a Settlement Agreement dated December 15, 2008 (the "Agreement" attached to the Motion as Exhibit "A"). The Agreement provides, among other things, that Barr will pay the Class thirteen million dollars ($13,000,000.00) in cash (the "Settlement Fund"), plus interest earned thereon, less any fees and expenses awarded by the Court. (Agreement ¶ 6). In exchange, the Class will agree to seek dismissal of all claims against Barr with prejudice and to provide Barr with a Class-wide release (the "Settlement"). *Id.* ¶ 4(b).

Given the substantial cash benefit to the Class from the Settlement, which, when combined with the previous Settlement with Warner Chilcott, provides the Direct Purchaser Class with an aggregate cash payment of twenty-two million dollars ($22,000,000), the certified Class Representatives all support the Settlement. Likewise, Class Counsel have concluded, after extensive discovery and investigation of the facts,[3] and consideration of the possible legal and factual defenses to this case, that it would be in the best interests of the Class to enter into this Settlement Agreement. Class Counsel considers the Settlement set forth herein to be fair, reasonable, adequate and in the best interests of the Class.

Finally, and significantly, Class Counsel has also communicated about the Settlement with counsel for three of the largest members of the Class, namely, AmerisourceBergen Corp., McKesson Corp. and Cardinal Health, Inc. These three Class members, each a large corporation in the Fortune 500, make up a significant percentage of the claims of the Class in this case (and will likely be entitled, collectively, to more than 50% of the net Settlement Fund). As the Court

---

leave of Court, the proceeds of the Partial Settlement continue to reside in a Court-approved escrow account, earning interest.

[3]      Fact and expert discovery were concluded and the parties had exchanged certain pre-trial materials and were otherwise preparing for trial at the time the Settlement was reached.

will recall, they each previously submitted declarations to the Court in support of certification of the Class, which declarations the Court relied upon, in part, in certifying the Class. All three of these entities supported the prior settlement with Warner Chilcott and support the Settlement with Barr.

Accordingly, by this Motion, Class Counsel request that the Court enter Proposed Order preliminarily approving the Settlement (the "Order") (attached to the Motion as Exhibit "C"), a proposed form of which is attached to the Motion as Exhibit "B," which would:  (1) grant preliminary approval of the Settlement; (2) approve the form and manner of giving notice to the Class; (3) set a hearing for final approval of the Settlement; (4) appoint a claims administrator; and (5) set a schedule for other deadlines. The Parties here note that the process and procedures proposed here are based in large part on those that were previously approved by the Court in the Warner Chilcott settlement.

With respect, the Motion should be granted because the proposed Settlement falls well within the range of possible approval and there are no grounds to doubt its fairness.  The Settlement was negotiated by experienced counsel, with extensive oversight first by Magistrate Judge Kay and then by Prof. Eric D. Green. The parties had recently appeared before the Court and were actively engaged in complying with the Court's procedures for pre-trial preparation. The proposed Settlement has the explicit support of all named Plaintiffs and three of the largest absent members of the Class.  Finally, public policy favors the settlement of complex class actions.  Accordingly, Class Counsel respectfully requests that the Court enter the proposed Order.

## II. **FACTUAL AND PROCEDURAL BACKGROUND**

This case has been aggressively prosecuted and vigorously defended for more than three years. The action was commenced in November 2005 with the filing of six complaints by different Direct Purchaser Class Plaintiffs, all alleging that Warner Chilcott and Barr violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by illegally delaying the entry of generic Ovcon 35. The complaints each alleged that in exchange for a $20 million payment, Barr agreed not to sell its generic Ovcon 35 in competition with Warner Chilcott's branded Ovcon 35. This agreement, the complaints alleged, denied direct purchasers of Ovcon 35 the benefits of generic competition and caused them to pay higher prices for Ovcon 35 Products (defined to include brand and AB-rated generic versions of Ovcon 35).

### A. **Discovery and Related Disputes Before the Court**

Discovery commenced in March of 2006. Defendants produced more than one million pages of documents, only a portion of which had previously been produced to the Federal Trade Commission (FTC) in the related action. These documents were carefully reviewed and analyzed by teams of attorneys and paralegals. In addition, after the Class drafted and served subpoenas, thousands of pages of third-party documents were produced and analyzed. Subsequently, working cooperatively with the state Attorneys General and the Individual Direct Purchaser Plaintiffs (identified in note 1, *ante*), Plaintiffs took and defended more than 40 fact witness depositions, and nine expert depositions. Class Counsel retained experts in the following areas: pharmaceutical industry and economics, damages and pharmaceutical supply chain issues. Class Counsel consulted extensively with their experts regarding economic, pharmaceutical and marketing issues including the quantification of damages incurred by Class. Plaintiffs have also taken and analyzed the depositions of Barr's and Warner Chilcott's experts.

## B.      Summary Judgment and Trial Preparation

Plaintiffs prepared and filed a motion for partial summary judgment and responded to Barr's motion for summary judgment.  The Court granted in part, and denied in part, Barr's motion for summary judgment and denied Plaintiffs' motion for partial summary judgment.  At the time of the Settlement, the parties were in the midst of trial preparations, had already exchanged trial witness and exhibit lists and designations, and had just filed and served motions in *limine* and *Daubert* motions.

## III.   ARGUMENT

### A.      Preliminary Approval of the Settlement is Warranted

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a classwide basis.   While approval of class settlements lies within the discretion of this Court, *see United States v. District of Columbia,* 933 F. Supp. 42, 47 (D.D.C. 1996), this discretion is constrained by the "principle of preference" favoring and encouraging settlements in appropriate cases.  *See Pigford v. Glickman,* 185 F.R.D. 82, 103 (D.D.C. 1999). Preliminary approval of a proposed settlement is warranted "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval[.]"  MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.41 (West 1999); *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.,* 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[a]t this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval'") (citation omitted); *In re Medical X-Ray Film Antitrust Litig.,* No. CIV. A. 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious

deficiencies in the proposed settlement"); *In re Shell Oil Refinery,* 155 F.R.D. 552, 555 (E.D. La. 1993) (same).

At the preliminary approval stage, the Court does not make a final determination of the merits of the proposed settlement. *See Thomas v. NCO Financial Sys.,* No. 00-5118, 2002 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. July 31, 2002). Rather, full evaluation is made only at the final approval stage, after notice of the settlement has been given to the members of the class and class members have had an opportunity to both review the terms of the settlement in detail and voice their views of the settlement. *See* 3B MOORE'S FEDERAL PRACTICE 9 23.80[2.-1], at 23-479 (2d ed. 1993). "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re NASDAQ Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Finally, the opinion of experienced counsel supporting the settlement is entitled to considerable weight in a court's evaluation of a proposed settlement. *See In re Michael Milken & Assoc. Sec. Litig.,* 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *In re Vitamins Antitrust Litig.,* MDL No. 1285 (TFH), 2001 WL 856290 at *2 (D.D.C. July 19, 2001). (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery") (*quoting* MANUAL FOR COMPLEX LITIG., at § 30.42); *Reed v. General Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried.").

Here, the Settlement falls well within the range of possible approval and there are no grounds to doubt the fairness of the proposed Settlement. Moreover, the Barr Settlement is

substantially higher (44% more) than the Partial Settlement with Warner Chilcott, which this Court previously approved.

**B.     The Proposed Settlement Is Within the Range of Possible Approval**

In approving class settlement, courts in this Circuit and others have repeatedly and expressly deferred to the judgment of experienced counsel achieving class-wide settlements through arms'-length negotiations.  Chief Judge Hogan observed that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290 (TFH), 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quotation omitted); *see also In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004); *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 U.S. Dist. LEXIS 8931, at *22 (D.D.C. Mar. 30, 2000); *Stewart v. Rubin*, 948 F. Supp. 1077, 1099 (D.D.C. 1996); *see also* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 11.51 (4th ed. 2002) ("[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").  That presumption should attach here.

Every aspect of the proceedings, from motion practice through the completion of the settlement negotiations, has been sharply contested.  The proposed Settlement is the product of contentious negotiations mediated by Magistrate Judge Kay and, then, Prof. Eric D. Green.  The negotiations included several face-to-face meetings and numerous conference calls between counsel and/or the mediators over the course of several years.  Counsel representing the Direct Purchaser Class are very experienced in antitrust class actions with specific expertise in the pharmaceutical area, having settled over the past five years numerous prior cases involving

delayed generic entry on behalf of a nearly identical class of direct purchasers, for hundreds of millions of dollars collectively.

In considering a request for preliminary approval, the Court is asked to determine whether the proposed settlement "fall[s] within the range of possible approval." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 237. "In any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . ." *Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972). *See, e.g., Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of a potential recovery.").

### C. The Proposed Settlement Does Not Disclose Grounds To Doubt Its Fairness

Plaintiffs faced many hurdles in the prosecution of this case. For instance, Defendants argued that the exclusive license and supply agreements between Warner Chilcott and Barr were entered into for legitimate business reasons, namely because Warner Chilcott was experiencing serious supply problems with its then-supplier of Ovcon, Bristol Myers-Squibb ("BMS"). Thousands of pages of documents were produced by BMS and a half-dozen employees and former employees of BMS were deposed. Defendants also alleged, and provided expert testimony by, Dr. Tracy Lewis, that an exclusive license agreement with Barr was the best way to ensure Barr fulfilled its contractual obligations. Plaintiffs also faced a "relevant market" defense, which if accepted, could have precluded recovery. It is certainly conceivable that a jury could have found that no violation of the antitrust laws had occurred, especially given that on

summary judgment the Court determined that the Agreement would be evaluated under the rule of reason and could not be condemned as a *per se* unlawful restraint of trade.

While Plaintiffs believe that they were likely to overcome these arguments at trial, and then on appeal, there was a risk that they would lose at trial or on appeal.

The MANUAL FOR COMPLEX LITIGATION (THIRD) recommends that on request for preliminary approval the Court examine whether there are grounds to doubt the fairness of the settlement. § 30.41, at 237. In addition to being well within the range of possible approval, the proposed Settlement does not disclose any ground for the Court to doubt its fairness and thus meets this additional standard.

The Settlement was reached after arms'-length and hard-fought negotiations, overseen and facilitated by two capable and experienced mediators. The Class was represented by counsel with extensive experience in litigating antitrust class actions, particularly in the pharmaceutical area, and Barr was represented by similarly-experienced counsel. The Settlement, which also has the explicit support of three of the largest members of the Class, was reached after extensive analysis by Class Counsel of the applicable law and facts, including the review of more than one million pages of documents produced by defendants and third parties, the depositions of Warner Chilcott and Barr witnesses and as well as third-party witnesses, extensive expert discovery and preparation for trial. Combined with the Partial Settlement, the Settlement brings the total recovery by the Direct Purchaser Class in this case to $22 million, a substantial portion of provable overcharges to the Class (more than 80% of one of Plaintiffs' expert economist's damages scenarios).

Finally, there are no obvious deficiencies with the Settlement. It should therefore be preliminarily approved.

**D.      An Appropriate Point for Settlement Has Been Reached**

In evaluating a proposed settlement, courts consider "the stage of the proceedings when settlement has been offered and [the] degree of completed discovery." *In re Nat'l Student Mktg. Litig.,* 68 F.R.D. 151, 155 (D.D.C. 1974). "Courts thus consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and the range of recovery." *Lorazepam & Chlorazepate,* 2003 WL 22037741, at *4-5.

The proposed Settlement is the product of an extensive analysis of the factual and legal issues involved in this case.  Fact and expert discovery were completed.  Cross-motions for summary judgment were filed and decided.  Significant pre-trial materials, including trial witness and exhibit lists and motions in *limine* were exchanged.  The parties are fully aware of the facts and legal issues involved in this case.

Settlements are favored that do not come too early to be suspicious or too late to be a waste of resources, but which come at a desirable point in litigation for the parties to reach an agreement and to resolve issues without further delay, expense and litigation.  *See Vitamins,* 305 F. Supp. 2d at 105.  This is just such a settlement.

**E.      The Opinion of Experienced Counsel Supports Approval**

The "[o]pinion of experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *See Lorazepam & Clorazepate,* 2003 WL 22037741, at *6.  Class Counsel firmly believes that the proposed settlement is fair, reasonable and adequate to the Class.  Counsel is experienced in

class action and antitrust matters, and in fact, members of this group of counsel have served as lead counsel in the *Lorazepam* case and as lead counsel or class counsel in a multitude of other delayed-generic-entry antitrust class actions, including, *e.g.*, *Taxol* (Civil Action No. 1:01-2313, D.D.C); *Platinol* (Civil Action No. 1:04cv248, D.D.C.); *Children's Ibuprofen* (Civil Action No. 04-MD-535, D.D.C.); *Tricor* (Civil Action No. 05-340 (D. Del.); *Remeron* (Civil Action No 03-0085, D.N.J.); *Relafen* (Civil Action No. 01-12239, D. Mass); *Hytrin/Terazosin* (Civil Action No. 1:99-1317, S.D. Fla.); *Buspar/Buspirone* (Civil Action No. 01-7951, S.D.N.Y.); and *Cardizem* (Civil Action No. 99-mdl-1278, E.D. Mich.). Thus, there is no group of Plaintiffs' counsel more familiar with this specialized type of litigation in the pharmaceutical industry, or more able to evaluate these claims on behalf of a Direct Purchaser Class.

Consequently, the opinion of Class Counsel that the proposed settlement is "fair, reasonable and adequate" is deserving of this Court's consideration. *See Vitamins,* 305 F. Supp. 2d at 106; *see also Lorazepam & Clorazepate,* 2003 WL 22037741, at *6.

### F.     The Proposed Notice to Class Members and Method of Notification is Adequate

In light of the foregoing, Class Counsel request that notice of the proposed Settlement be given to members of the Class. Rule 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R.Civ. P. 23(c)(2)(B); *see* NEWBERG ON CLASS ACTIONS, §8.2 at 162-65; *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.311 (2007) (individual notice by mail generally preferred where absent class members can be readily identified).

The Agreement provides that written notice of the settlement, like the prior notice of the pendency of the class action in this case, will be mailed via First Class Mail to each member of

the Class, which consists of approximately thirty members – all of whom are substantial businesses. The form of written notice to be mailed is attached to the Motion as Exhibit "B" (the "Notice"), and was agreed to by Barr.  The Notice provides details regarding the terms of the Settlement with Barr and the rights of Class members to share in the recovery.  It provides the date, time and place of the final hearing to consider the proposed Settlement and information about the right of Class members to be present at the final hearing.[4]  The Notice also provides contact information for Class Counsel.

The form and manner of Notice proposed here fulfill all of the requirements of Rule 23, 28 U.S.C. § 1715 and due process.  Class Counsel respectfully request that the Court direct that the Proposed Notice of the proposed Settlement be approved for distribution to Class Members. It should be noted that these class members have all previously been class members in other pharmaceutical antitrust direct purchaser class actions that have settled or been certified for litigation purposes.  Several of them, including the three largest Class members, have been in contact with Class Counsel, know about the Settlement, and have approved the proposed Settlement in advance.

The proposed Notice complies with the recommendations contained in Section 21.311 of the MANUAL FOR COMPLEX LITIGATION (FOURTH), which suggests that a Class Notice should:

- Describe succinctly the position of the parties;

- Identify the opposing parties, class representatives, and counsel;

- Describe the relief sought; and

---

[4]      Pursuant to the Class Action Fairness Act  of 2005 ("CAFA"), Defendant Barr may be required to serve proposed settlement documents (*i.e.*, a copy of the Settlement Agreement, the Complaint, notice of scheduled hearings, and any proposed or final orders or judgments) on appropriate state and federal officials, including the U.S. Attorney General; state attorneys general for each state in which class members reside; and licensing or regulatory bodies, within 10 days of filing a proposed settlement with the Court.  *See* 28 U.S.C. § 1715.  If CAFA does apply, an order granting final approval of a proposed settlement should not be issued earlier than 90 days after the dates on which the appropriate federal and state officials are notified of the settlement. *Id.*

- Explain any risks and benefits of retaining class membership and opting out, while emphasizing that the court has not ruled on the merits of any claims or defenses.

Moreover, the Notice is substantially similar to the Notice previously approved by this Court with respect to the pendency of the class action and Partial Settlement with Warner Chilcott.

In accordance with Rule 23(c)(2)(B), the proposed notice explains "concisely and clearly" and in "plain, easily understood language" the nature of the action (Exhibit B to the Motion at 3); the definition of the class (*id.* at 4); the class claims, issues and defenses (*id.* at 3); the right of class members to enter appearances through counsel (*id.* at 6); the right of class members to object to the settlement and/or be heard at the hearing (*id.* at 6-7); and the binding effect of a class judgment (*id.* at 5).

Similarly, in accordance with the MANUAL FOR COMPLEX LITIGATION'S recommendations, the proposed Notice describe succinctly each party's position (*id.* at 3); identifies the opposing parties, Class Representative and Class Counsel (*id.* at 3, 5-6); describes the relief sought (*id.* at 3); and explains that the Court has not ruled on the merits (*id.* at 3). The proposed Notice also describes how the lawyers will be paid (*id.* at 6); what Class Members should expect with regard to any other payments (*id.* at 6); and how to obtain more information (*id.* at 7). It also describes the definition of Class Members (*id.* at 4). Plaintiffs propose mailing the proposed Notice to each Class member by first class U.S. mail within thirty (30) days after the Court approves the final form of notice.

As the Court is aware, Class members were given the opportunity to exclude themselves from the Class in association with the notice of pendency of class action and Partial Settlement with the Warner Chilcott Defendants mailed in January of 2008 with a deadline for exclusion of

March 10, 2008. No Class member excluded itself during this period. Consistent with the Rules, due process, and common practice with regard to direct purchaser antitrust class actions, there is no need for a second opportunity for Class Members to opt-out in light of the Barr settlement. The decision as to whether or not to afford a second exclusion period rests in the sound discretion of this Court. *See* Advisory Committee Notes to 2003 Amendments to Rule 23(e)(4). The opt-out provision in the previously mailed notice made clear that if Class members decided to remain in the Class, they would "not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Warner Chillcott or Barr about the legal issues in this case." Class members were informed that if they did not opt out all of the Court's orders would "apply to [them] and legally bind" them.

Because the Notice of Pendency was sent less than a year ago, and there has been no change in circumstances among the Class members, there is no need for a second opt-out period. Foregoing a second opt-out period is common practice with regard to antitrust class actions. *See, e.g., In re OSB Antitrust Litig.*, No. 06-826 (E.D. Pa. Aug. 7, 2008) (ordering that no second opt-out opportunity was warranted) (attached hereto as Exhibit A); *In re Carbon Black Antitrust Litig.*, No. 03-10191 (D. Mass. Nov. 29, 2006) (preliminarily approving settlement and explaining that "[i]n light of the previous notice to class members of the pendency of this action and the certification of the class, which complied fully with the requirements of Rule 23 and due process, there is no need for an additional opt-out opportunity pursuant to Rule 23(e)[(4)]") (attached hereto as Exhibit B); *In re MCC Antitrust Litig.*, No. 01-0111 (E.D. Pa. Nov. 7, 2006) (ordering preliminary approval and noting that because notice of the class certification that previously been sent had included an opt-out provision, "there is no need for an additional opt-out opportunity pursuant to Rule 23(e)[(4)]") (attached hereto as Exhibit C); *In re Auto.*

14

*Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *3 (E.D. Pa. May 11, 2004) (holding that second opt-out opportunity is not needed where there has been no change in circumstances since class certification and class members could still object to settlement); *In re Linerboard Antitrust Litig.*, MDL No. 1261 (E.D. Pa. Jan. 6, 2004) (same) (attached hereto as Exhibit D).[5] The Class members in the instant case are sophisticated companies generally familiar with Hatch-Waxman pharmaceutical antitrust class actions, and Plaintiffs already have the active support of a substantial percentage of the Class (calculated by purchases).   An additional opt-out provision is unnecessary.

Finally, Plaintiffs propose that Epiq Systems, Inc. ("Epiq") be appointed again to serve as Claims Administrator for the Settlement. Epiq, which handled the service and administration of the Notice for the Warner Chilcott settlement, is a national leader in claims administration services for class action cases. *See* Epiq's website at www.epiqsystems.com. Epiq has served as claims administrator for the historic Department of Justice/Microsoft antitrust litigation and in *In re Children's Ibuprofen Oral Suspension Litig.*, C.A. 1:04cv01366 (ESH) in this judicial district.

---

[5]     *Accord, e.g., Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (affirming district court's refusal to require second opt-out opportunity and explaining that "[r]equiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached"); *In re Urethane Antitrust Litig.*, 2:04-MD-1616 (D. Kan. Oct. 25, 2007) (holding that second opt-out opportunity not needed where no new significant developments and class members may still object to settlement) (attached hereto as Exhibit E); *Hainey v. Parrott*, No. 02-CV-733, 2007 U.S. Dist. LEXIS 69647, at *25 (S.D. Ohio Sept. 20, 2007) (holding that a second opt-out period was not required and noting that "establishing a second opt-out period would not be in the best interests of the class because it would result in additional administrative costs, which in turn reduces the amount available for distribution").

## IV.   CONCLUSION

For these reasons, Class Counsel respectfully request that the Court grant this Motion for

Preliminary Approval of the Settlement with Barr and enter the Proposed Order attached to the

Motion as Exhibit "C."

Dated: December 15, 2008

Respectfully Submitted,

KAPLAN FOX & KILSHEIMER LLP

_____/s/ Linda Nussbaum_____

Linda Nussbaum (DC Bar No. 483254)
Christine Fox
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714

Eric L. Cramer
Peter Kohn
Ellen T. Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA
Telephone: 215-875-3000
Facsimile: 215-875-4604

William Isaacson (D.C. Bar No. 414788)
Tanya Chutkan (D.C. Bar No. 420478)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone: 202-237-2727
Facsimile: 202-237-6131

Richard B. Drubel (D.C. Bar No. 334359)
Kimberly H. Schultz
BOIES, SCHILLER & FLEXNER LLP
26 S. Main Street
Hanover, NH 03755
Telephone: 609-643-9090
Facsimile: 609-643-9010

Bruce E. Gerstein
Barry S. Taus
Kevin S. Landau
GARWIN GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10011
Telephone: 212-398-0055
Facsimile: 212-764-6620

Thomas M. Sobol
HAGENS, BERMAN, SOBOL &
 SHAPIRO, LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: 617-482-3700
Facsimile: 617-482-3003

Diane M. Nast
RODA NAST P.C.
801 Estelle Drive
Lancaster, PA 17601
Telephone: 717-892-1000
Facsimile: 717-892-1200

**Executive Committee Members for Direct
Purchaser Class Plaintiffs**

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | ) | |
| **IN RE OSB ANTITRUST LITIGATION** | ) | |
| | ) | |
| | ) | **Master File No.  06-826** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| **DIRECT PURCHASER ACTIONS** | ) | |
| | ) | |
| | ) | |

### ORDER

AND NOW, this 7th day of August, 2008, it is ORDERED that the RV Class Members' Motion for Entry of Order Allowing Opt-out Rights with Respect to All Pending Settlements (Doc. No. 842) is DENIED as follows:

1.      On August 3, 2007, I certified a direct purchaser class in this massive antitrust case. On September 17, 2007, I granted final approval to a settlement with Huber. On March 10, 2008, I preliminarily approved settlements with Georgia-Pacific and Ainsworth. On April 14, 2008, I preliminarily approved a settlement with Tolko.

2.      In preliminarily approving the Georgia-Pacific and Ainsworth settlements, I also authorized the sending of a Combined Notice to the GP and Ainsworth Settlement Classes and the Litigation Class. The Combined Notice stated that Class Members who did not opt out of the Litigation Class by May 9, 2008 would "be bound by any decision or judgment entered by the Court." (Doc. No. 833, Ex. A.) The Combined Notice was sent to approximately 17,000 potential Class Members and posted in the April issue of the LBM Journal. Eight entities opted out by the May 9, 2008 deadline.

3.      In the succeeding weeks, Plaintiffs sought preliminary approval of settlements

with the five remaining Defendants.  The RV Class Members opposed approval because the

Combined Notice did not allow a second opt-out period.  On July 23, 2008, the RVCMs filed the

instant Motion, again arguing that all Litigation Class Members should be afforded an

opportunity to opt out of the proposed settlements.  (Doc. No. 842.)  In the alternative, the

RVCMs argue that they alone should be allowed a second opt-out.  (Id. at 13-14; 8/5/08 Hrg. Tr.

at 28, 31-32.)

4.     Although due process requires the court to afford class members an opportunity to

opt out of a certified class, it does not require a new opt-out opportunity whenever a settlement is

reached and its terms are disclosed.  See In re Visa Check/Mastermoney Antitrust Litig., 297 F.

Supp. 2d 503, 518 n.18 (E.D.N.Y. 2003); Officers for Justice v. Civil Serv. Comm'n of City and

County of San Francisco, 688 F.2d 615, 635 (9th Cir. 1982) ("to hold that due process requires a

second opportunity to opt out after the terms of the settlement have been disclosed to the class

would impede the settlement  process so favored in the law").

5.     Notices of the Huber, GP, Ainsworth, and Tolko settlements were sent before the

May 9, 2008 opt-out deadline for the Litigation Class.  Because Class Members had not had a

prior opportunity to opt out of the certified class, they were permitted to opt out of each of these

settlements.  Thus, a Class Member could opt out of the Settlement Class while remaining a part

of the Litigation Class, or vice versa.

6.     In contrast, the five settlements at issue here were achieved *after* the Class

Members had the opportunity to opt out of the Litigation Class.  Accordingly, due process does

not require a second opportunity to opt out of the Class with respect to each of these settlements.

7.     Under Rule 23(e)(4), a court may, within its discretion, allow "a new opportunity

2

to request exclusion to individual class members who had an earlier opportunity to request exclusion but chose not to." Fed. R. Civ. P. 23(e)(4); Fed. R. Civ. P. 23(e) advisory committee's notes. "Many factors may influence the court's decision," including "changes in the information available to class members since expiration of the first opportunity to request exclusion . . ." Fed. R. Civ. P. 23(e) advisory committee's notes. Neither Rule 23(e)(4) nor due process requires the court to provide a second opt-out period because Class Members did not learn the terms of new settlements until after the opt-out date.  See Denney v. Deutsche Bank AG, 443 F.3d 253, 271 (2d Cir. 2006) ("Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached.").

8.     In asking me to order a second opt-out period with respect to the five new settlements, the RVCMs argue: 1) there has been a significant new development since May 9th; 2) the Notice did not make clear that they would be bound by subsequent settlements; 3) they did not have sufficient information before the deadline to decide whether to opt out; and 4) a second opt-out would not cause substantial delay or expense, or prejudice any party.  I do not agree.

9.     The "new development" the RVCMs offer is an inadvertent error in calculating the Georgia-Pacific settlement.  Following preliminary approval, the Parties learned that the GP settlement was based on inaccurate sales data.  The Parties promptly amended the settlement to reflect the correct data.  Because I had preliminarily approved the GP settlement on March 10, 2008 (two months before the before the May 9th Litigation Class opt-out date), Class Members had two opt-out opportunities: they could opt out of the Settlement Class while remaining in the Litigation Class.  Thus, the instant Motion (in which the RVCMs request two opt-out

3

opportunities) is inapplicable to the GP settlement.

10.     The RVCMs nonetheless argue that the calculation error in the GP settlement "creates a basis for reasonable doubt on the soundness of other data upon which Designated Counsel have relied." (Doc. No. 842 at 5.)  Surely this is an overstatement.  There is no evidence that the data underlying the remaining settlements is flawed.  Accordingly, I fail to see how the inadvertent use of inaccurate data in one settlement amounts to a "new development" warranting a second opt-out period for the remaining five settlements.  At oral argument, counsel for the RVCMs suggested that he might unearth similar inaccuracies if Class Counsel allowed him additional discovery into the mass of data related to these five settlements.  (8/5/08 Hrg. Tr. at 27.)  There is nothing before me that remotely warrants such a fishing expedition.

11.     The RVCMs next argue that the wording of the Combined Notice and the history of the litigation together suggested that Class Members would have a second opportunity to opt out of subsequent settlements.  The RVCMs correctly note that (as I have discussed) in the earlier settlements, Class Members were afforded the opportunity to opt out of the Settlement Class while remaining in the Litigation Class (or vice versa).  This ignores, however, that these earlier settlements were preliminarily approved and noticed before the opt-out deadline for the Litigation Class.  Moreover, the Combined Notice adequately informed Class Members that they would be bound by any subsequent settlements if they chose to remain in the Litigation Class. The Notice explicitly provided that Litigation Class Members would be "bound by any decision or judgment entered by the Court."  The RVCMs suggest that this admonition did not relate to subsequent settlements because a class action settlement is merely a "decision made by class counsel and the settling defendant." (Doc. No.  805 at 4-5, n.1.)  The suggestion is obviously

4

incorrect.  The RVCMs are sophisticated business people represented by experienced counsel.  As they well know, a class action settlement must be approved by a court if it is to bind the class.  Fed. R. Civ. P. 23(e).  Thus, when they reviewed the Combined Notice, the RVCMs necessarily understood that anyone who chose to remain in the Litigation Class after May 9th would be bound by all my subsequent decisions – including those pertaining to settlements.  In these circumstances, the Litigation Class Members received adequate notice that they would be bound by subsequent settlements.

12.     The RVCMs contend that even if the Combined Notice was adequately informative regarding subsequent settlements, their misinterpretation of the Notice constitutes excusable neglect warranting a second opt-out opportunity.  In assessing whether excusable neglect exists warranting relief from a deadline, the court looks to 1) the danger of prejudice to the parties; 2) the length of delay and its potential effect on the judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the claimant; and 4) whether the claimant acted in good faith.  In re Orthopedic Bone Screw Prods. Liability Litig., 246 F.3d 315, 322-23 (3d Cir. 2001).  The first and third factor weigh against the RVCMs.  Both LP and Grant have argued persuasively that they would be prejudiced because their decisions to settle – after the opt-out deadline – were made "on the basis of being able to assess its exposure to potential opt-out claims."  (Doc. No. 847 at 6.)  (See also 8/5/08 Hrg. Tr. at 23.)  Moreover, the delay was within the claimants' control: the RVCMs are represented by able and experienced counsel who certainly understood the Combined Notice, and was free to consult with Counsel for the settling Parties.  Cf. In re Cendant Corp. PRIDES Ligit., 235 F.3d 176, 183 (3d Cir. 2000) (delay excused where the "reason for the delay ... was either unforeseeable sabotage by mailroom

employees . . . or even more simply, a mailroom which did not operate as it should have in the ordinary course of business"). Accordingly, I conclude that the RVCMs are not entitled to a second opt-out because of excusable neglect.

13.     The RVCMs next contend that they could not make an informed decision before the May 9th opt-out deadline because of the "delayed opportunity . . . to obtain access to sealed filings." (Doc. No. 833 at 20.) As I noted in an earlier Order denying their request to extend the opt-out deadline, the RVCMs alone are responsible for this delay. (Doc. No. 758.) Although they were notified of the settlements with GP and Ainsworth months before the May 9, 2008 opt-out date, the RVCMs did not seek access to the sealed documents until May 5, 2008 – four days before the deadline. (Id.) Plainly, these events do not warrant a second opt-out period.

14.     Once again, contrary to the RVCMs' assertion, LP has shown that it would be prejudiced by a second opt-out period. At oral argument, Grant argued persuasively that it, too, would be prejudiced by a second opt-out period. (Hrg. Tr. at 23.) I believe this weighs against allowing a second opt-out.

15.     The reasons advanced for a second opt-out are not substantial, nor are they unusual in a case of this size and complexity. Allowing a second opt-out for those reasons would make it vastly more difficult to settle these kinds of multi-Defendant cases where settlements are likely to be concluded seriatim over an extended period. See Officers for Justice, 688 F.2d at 635 ("to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement  process so favored in the law"); Denney v. Deutsche Bank AG, 443 F.3d 253, 271 (2d Cir. 2006) ("Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification

6

would be final until after the final settlement terms had been reached.")

      16.    Finally, at oral argument the RVCMs suggested in the alternative that I should

afford them alone a second opt-out period. When I asked how I could grant this relief to the

RVCMs but deny it to all other Class Members, counsel stated:

> [A]t some point – and I'm speaking against myself in a way here – at some point there are
> deadlines and one, you know, must deal with them with the passage of time.

(Hrg. Tr. at 32.) This is a persuasive reason to deny *all* requests for a second opt-out. The

RVCMs have not offered any legitimate basis to grant them alone a second opt-out.

      17.    In sum, I find that there are no circumstances warranting a second opt-out

opportunity. See Fed. R. Civ. P. 23(e)(4).

IT IS SO ORDERED.

*/s Paul S. Diamond*

_____

Paul S. Diamond, J.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re CARBON BLACK ANTITRUST LITIGATION | Master Docket No. 03-CV-10191-DPW (Lead Case) |
| This Document Relates To: ALL ACTIONS | MDL Docket No. 1543 |

**ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH DEGUSSA CORPORATION, DEGUSSA AG AND DEGUSSA ENGINEERED CARBONS, LP AND AUTHORIZING THE DISSEMINATION OF NOTICE**

AND NOW, this 29th day of November, 2006 upon consideration of the Motion of Plaintiffs for Preliminary Approval, a Motion to which Degussa Corporation, Degussa AG and Degussa Engineered Carbons, LP (collectively, "Degussa") consents, THE COURT HEREBY FINDS THAT:

A.     The proposed settlement between class plaintiffs and Degussa falls within the range for possible approval by the Court and warrants notice apprising class members of the settlement and the setting of procedures for a hearing for final approval under Rule 23(c)

B.     The forms of mailed notice and publication notice, in the form of Exhibits B and C attached to the Settlement Agreement, respectively, satisfy the requirements of due process and are hereby approved as to form.

C.     In light of the previous notice to class members of the pendency of this action and the certification of the class, which complied fully with the requirements of Rule 23 and due process, there is no need for an additional opt-out opportunity pursuant to Rule 23(e)(3).

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Settlement Agreement between class plaintiffs and Degussa is preliminarily approved.

2.      The forms of notice attached to the Settlement Agreement as Exhibits B and C are approved pursuant to Rule 23. The Court finds that this manner of giving notice fully satisfies the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

On or before December 14, 2006, counsel for the Class ("Class Counsel") shall send, via first class mail, the Notice of Partial Settlement in substantially the same form as Exhibit B to the Settlement Agreement to all entities to whom the Notice of Pendency of Class Action was sent on May 16, 2005, except for those class members who excluded themselves from the Class in a timely manner (*See*, Exhibit 2 to the Declaration of Christl Hansman regarding Mailing of Notice of Pendency of Class Action, filed August 2, 2005). The Notice shall also be posted on the internet at a readily accessible website to be created and maintained by the Settlement Administrator.

3.      As soon as practicable after mailing the Notice of Partial Settlement, Class Counsel shall publish a Summary Notice of Partial Settlement, in substantially the same form as Exhibit C to the Settlement Agreement, in one national edition of The Wall Street Journal and shall initiate publication of the Summary Notice of Partial Settlement in one edition of Rubber & Plastic News.

2

4.    Any member of the Class who wishes to object to the terms of the Settlement Agreement must do so in writing, postmarked no later than February 14, 2007, and shall otherwise comply with the requirements set forth in the Notices.

5.    Any motions or memoranda regarding final approval of the Settlement Agreement shall be filed no later than February 28, 2007.

6.    The Court will hold a hearing on March 20, 2007 at 2:30 p.m. in Courtroom 1at the United States Courthouse, One Courthouse Way, Boston, Massachusetts 02210-3002 for the purpose of determining whether the proposed settlement with Degussa is fair, reasonable and adequate and should be approved.  The date and time of the hearing shall be subject to adjournment by the Court without further notice to members of the Classes other than that which may be posted at the United States Courthouse.

7.    All further proceedings, by the class or any of its members, against Degussa are hereby stayed except for any actions required by the Settlement Agreement.


Dated: November 29, 2006

                    /s/ Douglas P. Woodlock
                    Douglas P. Woodlock
                    United States District Judge


3